# Greenberg Traurig

William E. Chipman, Jr.
Tel. 302.661.7371
Fax 302.661.7360
Chipmanw@gtlaw.com

March 10, 2005

**VIA HAND-DELIVERY**
The Honorable Joseph J. Farnan, Jr.
UNITED STATES DISTRICT COURT
844 King Street
Lock Box 27
Wilmington, DE 19801

Re:   Magten Asset Management Corporation v. Northwestern Corporation,
      CA 04-1389-JJF

Dear Judge Farnan:

Today, NorthWestern Corporation filed the enclosed Debtor's Motion (i) to Dismiss Consolidated Appeals of Magten Asset Management Corporation; and (ii) for Leave to Submit Opening Brief which Exceeds 40 Pages (the **"Motion to Dismiss"**).

On February 8, 2005, NorthWestern informed Collins J. Seitz, Jr, Esquire, the mediator assigned to this appeal and related appeals (collectively, the **"Appeals"**), that NorthWestern had reached a global settlement with regard to the Appeals. This global settlement was contingent upon obtaining bankruptcy court approval. Today, Bankruptcy Judge Peterson issued an Order Denying Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York (the **"Settlement Order"**) for the reasons set forth it the Memorandum Opinion Denying Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York (the **"Memorandum Opinion"**). Copies of the Settlement Order and the Memorandum Opinion are enclosed herewith. As a result of the Settlement Order, NorthWestern is prepared to proceed with the mediation before Mr. Seitz.

NorthWestern, however, has filed the enclosed Motion to Dismiss and the accompanying Memorandum of Law in Support of the Motion to Dismiss (**"Memorandum of Law"**) because of its firm belief that these pleadings will narrow the issues to be addressed in connection with the mediation.

Consistent with the Delaware Local Rules, NorthWestern understands that the Appeals are stayed and that the Motion to Dismiss will not be considered by Your Honor until after the mediation has concluded and a scheduling order entered by this Court. NorthWestern also understands that other parties to the Appeals will not be required to file responsive pleadings until same time.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DENVER
FORT LAUDERDALE
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
PHILADELPHIA
PHOENIX
SILICON VALLEY
TALLAHASSEE
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
WILMINGTON
ZURICH

Greenberg Traurig, LLP | Attorneys at Law | Brandywine Building | 1000 West Street | Suite 1540 | Wilmington, DE 19801
Tel 302.661.7000 | Fax 302.661.7360

www.gtlaw.com

The Honorable Joseph J. Farnan, Jr.
March 10, 2005
Page 2

      Counsel are available at the Court's convenience should Your Honor have any questions or concerns regarding the forgoing.

                              Respectfully,

                              William E. Chipman, Jr.

cc:    Collins J. Seitz, Jr, Esquire (via email and facsimile)
       Bonnie Steingart, Esquire (via email and facsimile)
       Mark S. Kenney, Esquire (via email and facsimile)
       Kathleen M. Miller, Esquire (via email and facsimile)
       Charlene D. Davis, Esquire (via email and facsimile)
       Ian Connor Bifferato, Esquire (via email and facsimile)
       Elio Battista, Jr., Esquire (via email and facsimile)
       David L. Finger, Esquire (via email and facsimile)
       Jesse H. Austin, III, Esquire (via email and facsimile)
       Scott D. Cousins, Esquire (via hand)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| NORTHWESTERN CORPORATION, | ) Case No. 03-12872 (JLP) |
| | ) |
| Reorganized Debtor. | ) Re: Docket No. 2832 |
| | ) |

**ORDER DENYING JOINT MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK**

For the reasons set forth in the Court's Memorandum Opinion of this date, the Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York as Indenture Trustee for Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Between Northwestern Corporation, Magten Asset Management Corporation, and Law Debenture Trust Company of New York [Docket No. 2832] is **DENIED**.

Dated: March 10, 2005

_____
The Honorable John L. Peterson
United States Bankruptcy Judge

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | |
| NORTHWESTERN CORPORATION, ) | Case No. 03-12872 (JLP) |
| ) | |
| Reorganized Debtor. ) | Re: Docket No. 2832 |
| ) | |

**MEMORANDUM OPINION DENYING JOINT MOTION OF
MAGTEN ASSET MANAGEMENT CORPORATION AND
LAW DEBENTURE TRUST COMPANY OF NEW YORK**

Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York as Indenture Trustee (the "Indenture Trustee") submitted, pursuant to this Court's direction, a motion for entry of an order under Federal Rule of Bankruptcy Procedure 9019[1] approving a proposed settlement agreement (the "Settlement Agreement") with Northwestern Corporation (the "Debtor") involving litigation and claims by each of the parties [Docket No. 2832] (the "Motion"). Prior to the filing of the Motion, the Debtor had received correspondence from the Plan Committee, which was established under section 7.9 of the Debtor's Confirmed Amended Chapter 11 Plan of Reorganization,[2] and certain other creditors objecting to the terms of the proposed settlement. On February 16, 2005, the Debtor advised Magten and the Indenture Trustee that it would not honor or comply with the proposed Settlement Agreement on grounds

---

[1] Federal Rule of Bankruptcy Procedure 9019 invokes the authority of the court to approve a compromise or settlement upon motion by the trustee. Under 11 U.S.C. § 1107, a debtor-in-possession in a chapter 11 case has the power of a trustee. However, in this case, the plan of reorganization has been confirmed, and under section 1141(b), the confirmation of the plan vests all of the property of the estate in the debtor. Thus, there is no longer a debtor-in-possession, i.e., trustee. The present motion is filed pursuant to the terms of the settlement agreement and the Court may, under these circumstances, adopt and utilize the criteria commonly employed to approve or reject compromise agreements.

[2] The Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code was approved on October 29, 2004 [Docket No. 2238].

1

that the agreement required consent of the Class 7 creditors and that such consent could not be obtained.

After the Court signed an order directing Magten *et al.* to file a motion for approval of the settlement agreement, the Motion was set for hearing for March 8, 2005. In response to the Motion, objections to approval of the Settlement Agreement were filed by the Debtor, the Plan Committee and the Ad Hoc Committee of Class 7 Creditors.[3] To these objections, Magten and the Indenture Trustee filed a joint reply. At the hearing, counsel for the respective parties presented oral argument in support of their respective positions.

The Settlement Agreement arises from a series of ongoing litigation between Magten, the Debtor, the Debtor's officers and counsel involving ten separate, but interrelated, matters. At the outset, I determine that the pending matter is properly before the Court, as the Court invited the present motion to resolve NorthWestern's representations at a prior hearing that a settlement had been reached and required formal application for court approval. I further determine that Magten's argument that the agreement is binding on the parties without court approval is without merit. Indeed, the settlement documents plainly state that the agreement was subject to Bankruptcy Court approval. Thus, case authority dealing with section 363 of the Bankruptcy Code[4] (sale of property of the estate outside the ordinary course of business), *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346 (3d Cir. 1999), or the fact that the Plan has vested

---

[3] The Ad Hoc Committee consists of Avenue Capital Partners, Drawbridge Special Opportunities Advisors LLC, Greenwich International Ltd., Harbert Distressed Investment Master Fund, Ltd., SOF Investments, L.P., Nationwide Life Insurance Company, Nationwide Mutual Insurance Company, and P. Schoenfeld Asset Management LLC.

[4] Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Code ("Code"), 11 U.S.C. § 101 *et seq.*

2

the property in the Debtor and there is no longer a debtor-in-possession, *In re W.R.M.J. Johnson Fruit Farm, Inc.*, 107 B.R. 18 (Bankr. W.D. N.Y. 1989); *In re Nelson Co.*, 117 B.R. 813 (Bankr. E.D. Pa. 1990), are beside the point. Indeed, the issues raised by the objections make clear that the Court must decide whether the Settlement Agreement violates or is consistent with the terms of the Confirmed Plan in order to approve or reject the agreement. This is particularly true because section 7.9 of the Confirmed Plan provides that the Plan Committee was created for "the purpose of overseeing the remaining Claims reconciliation and settlement process," and if a settlement exceeds $100,001, which the present settlement surely does, the Debtor must settle in accordance with the Plan Committee By-Laws, "which provides the Plan Committee with, among other things, the right to object [to] such claims." Finally, it is clear from oral argument that the settlement provisions do impact the rights of Class 7 and Class 9 creditors, and thus court supervision is essential to protect such rights.

The present argument essentially involves the application of claims arising under unsecured subordinated notes called QUIPS, which were allowed in the Plan in the amount of $69,537,873.00. The Indenture Trustee administers such notes and Magten is one of the holders of such notes. Article IV, section 4.8(b)(ii) of the Plan provides that QUIPS note claimants may opt to receive payment of their notes in full under one of two options, but not both, namely:

(1) a Pro Rata Share of 505,591 shares of New Common Stock . . ., plus Warrants exercisable for an additional 2.3% of New Common Stock (collectively, "Option 1"); or

(2) a Pro Rata Share of recoveries, if any, upon resolution of the QUIPS Litigation ("Option 2").

Option 2 is involved in the settlement language. Under Option 2, such holders of claims shall be treated as a Class 9 General Unsecured Claim, "subject to estimation and reserves of Disputed

3

Claims as provided in section 7.5 of the Plan, with Distributions to holders of Class 8(b) Unsecured Subordinated Note Claims which choose Option 2 being made, if at all, only upon entry of a Final Order resolving the QUIPS Litigation (unless otherwise agreed to by the Debtor and the Committee); . . . ."

The QUIPS Litigation involves an action by Magten and the Indenture Trustee seeking to upset a transfer of assets to the Debtor from an entity known as Clark Fork and Blackfoot LLC, under circumstances alleged to occur through actual fraud (Adv. Pro. No. 04-53324). Allied with this adversary action is Magten's and the Indenture Trustee's appeal of the confirmation order, actions against an officer of the company, action against counsel for the Debtor and objections to the award of attorney's fees of said counsel, among other pending matters.

The settlement proposal calls for termination of all litigation and provides allocation and payment of the following by NorthWestern to Magten and the Indenture Trustee: (1) distribution of 382,732 shares of common stock at the reorganization plan value of $20.00 per share, plus 710,449 warrants at a value of $4.50 each; and (2) distribution of those shares of common stock of set aside in a disputed claim reserve pursuant to a stipulation and court order establishing such reserve [Docket No. 2298, November 1, 2004], having a Plan value of $17.1 million, plus $300,000 of common stock from the general reserve set aside for Class 9 claimants. From these distributions, Magten and the Indenture Trustee would pay their own attorney's fees and costs (over $2 million) from the sale of such shares, the parties would execute mutual releases and all litigation would come to an end.

In the stipulation approved November 1, 2004, the parties agreed that Magten's proof of claim of $50 million would result in a reserve of 50% of the proof of claim, equaling $25 million of the Class 9 reserved shares, but to the extent that the litigation claim exceeded $25 million,

4

the "holders of such claims shall have any deficiency satisfied out of the general Disputed Claims Reserve" described in the Plan. That general Class 9 reserve set aside $140 million of shares for over forty disputed claims, only two of which have been resolved.

While the Plan Committee and the Ad Hoc Committee challenge the amount, and therefore the reasonableness of the settlement, the crux of the real objection comes from the manner in which Magten's shares are being distributed, its impact on Class 7 and Class 9 creditors and the violation of section 4.8(b)(ii) of the Plan.

The Plan provides that to the extent shares allocated to Class 8(b) are not distributed to Option 2 holders, those shares are to be distributed to Class 7 and Class 9 creditors. *See* Debtor's Second Amended and Restated Plan of Reorganization, Section 4.8(b)(ii). Thus, Magten and the other non-accepting QUIPS holders who took Option 2 received only a Class 9 claim, not a distribution from the 505,591 shares allocated to Option 1 holders. To grant, as the Settlement Agreement does, both types of recovery requires the consent of the Class 7 and Class 9 creditors, either by way of amendment to the Plan or absence of any objections from those classes. But a plan amendment is not legally available because the Plan has been substantially consummated and objection to the distribution has been presented vigorously by Class 7.

A confirmed plan may be modified or amended after confirmation, but only before substantial consummation has taken place. Section 1127(b) provides: "The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan . . . ." Indeed, Notice of Substantial Consummation of the Plan was filed on December 29, 2004 [Docket No. 2519], and the notice received widespread publication.

5

As to consent by Class 7 creditors, as set forth in the Ad Hoc Committee objection, their veto right to the settlement has been clearly stated. Moreover, it is clear that the parties to the settlement realized that the Debtor could not, as it states, "dip into" the Class 9 disputed claim reserve, which is in excess of the Magten reserve of $25 million, to distribute stock to Magten and the Indenture Trustee for the benefit of Magten. Yet, it is admitted that this general reserve is clearly where the 382,732 shares must come from. To do so would not only set Options 1 and 2 on their head after confirmation, and therefore violate the Plan, but would, according to the Debtor, have a serious potential adverse impact on the reserve for other disputed claims. For example, PPL Montana's disputed claim of $140 million was reserved at $50 million by stipulation, claims from rejection of pension plan exceed $12 to $15 million, and Hyland's claim of $30 million is still unresolved. To date, Cornerstone's claim of $19.5 million and Comanche Park of $750,000 have been resolved, with distributions made from the general reserve. To resolve the remaining claims, which have an asserted amount of $120 million, there remains 3,720,600 shares with a Plan value of $74,412,000. Such financial dilemma surely means that it is imprudent to distribute the 382,732 shares to Magten from the Class 9 reserve over and above the reserve fixed by the November 1, 2004 Stipulation.

I conclude that the Debtor and Magten *et al.* entered into the Settlement Agreement in good faith, knowing nevertheless that the Plan provisions required the consent of the Class 7 and Class 9 creditors, and certainly both later realized the Plan, at this late date, cannot be amended to accommodate the settlement terms.

Had the settling parties agreed upon a settlement amount which equaled the amount of the Magten/Indenture Trustee reserve of $25 million, the agreement may have been able to carry the day, for the parties recognize that approval of a proposed settlement is within the "sound

discretion" of the Court, and the Court is not burdened to decide numerous questions of law or fact, but rather canvases the issues and circumstances attending the litigation, including cost, to determine whether the agreement falls below the lowest point in range of reasonableness. *In re Martin*, 91 F.3d 389 (3d Cir. 1996); *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

Since the Debtor has now concluded the settlement is not in the best interests of the estate, that it violates express provisions of the Plan and therefore cannot be implemented, particularly where Class 7 and Class 9 creditors vigorously object, as does the Plan Committee, the only conclusion for the Court is that the proposed Settlement Agreement must be rejected for the reasons set forth above. This memorandum does not foreclose further settlement negotiations, and indeed it may be in the best interest of all parties to revisit the present proposal within the limits of the Magten/Indenture Trustee reserve, with a potential supplement from other sources of new common stock, particularly where one of the objectors have taken note that an officer of the company was also the beneficiary of the proposed settlement.[5]

For the reasons set forth above, the Joint Motion of Magten and Law Debenture to approve the Settlement Agreement is DENIED without prejudice. A separate order denying the Motion shall enter.

Dated: March 10, 2005

The Honorable John L. Peterson
United States Bankruptcy Judge

---

[5] One unsettling fact, as stated at the hearing by counsel for the Indenture Trustee, is that the Option 1 bond holders who overwhelmingly voted in favor of the Plan have not received distribution of their shares of new Common Stock due to the dispute over payment and allocation of the Indenture Trustee's attorney's fees. Thus, that class is being held hostage by the continuing litigation, which apparently does not bother the objecting parties.

7