# EXHIBIT "B"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (CGC) |
| Debtor. | : | |
|  | : | |
|  | : | |
| MAGTEN ASSET MANAGEMENT CORPORATION, | : | |
|  | : | C.A. No. 0 4 - 1 3 8 9 |
| Appellant, | : | |
| v. | : | |
| NORTHWESTERN CORPORATION, | : | |
| Appellee. | : | |

**EMERGENCY MOTION OF MAGTEN ASSET MANAGEMENT
CORPORATION FOR A STAY PENDING APPEAL OF THE ORDER
CONFIRMING THE DEBTOR'S SECOND AMENDED AND
RESTATED PLAN OF REORGANIZATION**

Magten Asset Management Corporation ("Magten"), by and through its undersigned

counsel, hereby respectfully moves (this "Motion") this Court on an emergency basis pursuant to

Rule 8005 of the Federal Rules of Bankruptcy Procedure and Rule 62 of the Federal Rules of

Civil Procedure for a Stay of the Order Confirming the Debtor's Second Amended and Restated

Plan of Reorganization pending Magten's appeal from that order.

1

120087.01600/40146473v1

Magten submits the accompanying brief in support of this Motion.

Dated:  Wilmington, Delaware
        October 26, 2004

BLANK ROME LLP

*E E Ba*

Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 425-6400
Facsimile:   (302) 425-6464

-and –

FRIED, FRANK, HARRIS, SHRIVER &
    JACOBSON LLP
Bonnie Steingart, Esq.
Gary L. Kaplan, Esq.
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:  (212) 859-4000

Counsel for Magten Asset Management
    Corporation

2

120087.01600/40146473v1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (CGC) |
| Debtor. | : | |
| | : | |
| | : | |
| MAGTEN ASSET MANAGEMENT CORPORATION, | : | C.A. No. _____ |
| Appellant, | : | |
| v. | : | |
| NORTHWESTERN CORPORATION, | : | |
| Appellee. | : | |

## ORDER GRANTING EMERGENCY MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION FOR A STAY PENDING APPEAL OF THE ORDER CONFIRMING THE DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION

**UPON** the emergency motion (the "Motion") of Magten Asset Management Corp. ("Magten") for a stay pending appeal of the Order (the "Confirmation Order") Confirming the Debtor's Second Amended And Restated Plan of Reorganization; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 158 and 1334; and the Court having reviewed the Motion and any responses and objections to the Motion; and the Court, after due deliberation, has determined that that sufficient cause exists to grant a stay pending appeal of the Confirmation Order, it is hereby

1

ORDERED, that the Motion[1] is **GRANTED**, and all objections to the Motion are overruled; and it is further

ORDERED, that the Confirmation Order is stayed pending a determination on Magten's appeal; and it is further

ORDERED, that Magten does not have to post a bond or other appropriate security to the District Court.

Dated: Wilmington, Delaware
      October _____, 2004

                                  _____

                                  UNITED STATES DISTRICT JUDGE

---

[1]     Any capitalized term used herein but not otherwise defined shall have the meaning ascribed to such term in the brief in support of the Motion.

## CERTIFICATE OF SERVICE

I, Elio Battista, Jr. certify that I am not less than 18 years of age, and that on October 26,

2004, I caused service of the attached *Emergency Motion of Magten Asset Management*

*Corporation for a Stay Pending Appeal of the Order Confirming the Debtor's Second Amended*

*and Restated Plan of Reorganization* to be made on the parties listed below as indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.

_____
Elio Battista, Jr.

**BY HAND DELIVERY**

Scott D. Cousins, Esquire
William E. Chipman, Jr., Esquire
*Greenberg Traurig, LLP*
1000 West Street, Suite 1530
Wilmington, DE 19801

*(Counsel for Debtor)*

**BY FEDERAL EXPRESS**
Jesse J. Austin, Esquire
Karol K. Denniston, Esquire
Paul, Hastings, Janofsjy & Walker LLP
600 Peachtree Street
Suite 2400
Atlanta, GA 30308

*(Counsel for Debtor)*

3

120087.01600/40146473v1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2004 OCT 26  PM 2: 37

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (CGC) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| MAGTEN ASSET MANAGEMENT | : | |
| CORPORATION, | : | C.A. No. _0 4 - 1 3 8 9_ |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTHWESTERN CORPORATION, | : | |
| | : | |
| Appellee. | : | |

## BRIEF IN SUPPORT OF EMERGENCY MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION FOR A STAY PENDING APPEAL OF THE ORDER CONFIRMING THE DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
Bonnie Steingart, Esq.
Gary L. Kaplan, Esq.
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000

Counsel for Magten Asset Management
   Corporation

**BLANK ROME LLP**
Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 North Market Street
Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400

Dated: October 26, 2004

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................3

JURISDICTION AND VENUE ...........................................................................7

RELIEF REQUESTED...........................................................................................7

I.  The Court Should Stay The Confirmation Order In Its Entirety.................................7

    A.  Magten Will Likely Succeed on the Merits of its Appeal from the
    Confirmation Order.............................................................................8

    B.  Magten Will Suffer Irreparable Harm if a Stay is Not Granted.............................13

    C.  Granting a Stay Will Not Substantially Injure Other Parties.................................14

    D.  A Stay Pending Appeal Would Serve the Public Interest.....................................15

II. Even If The Court Is Not Willing To Stay The Confirmation Order In Its Entirety, Certain
Portions Of The Confirmation Order Must Be Stayed To Protect The Rights Of QUIPS
Holders ..........................................................................................................16

NO BOND SHOULD BE REQUIRED ...............................................................17

CONCLUSION....................................................................................................19

120087.01600/40146474v1

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                          <u>Page(s)</u>

<u>In re AOV Indus., Inc.,</u>
    792 F.2d 1140 (D.C. Cir. 1986)..........................................................................10

<u>In re Abbotts Dairies of Pa., Inc.,</u>
    788 F.2d 143 (3d Cir. 1986)...............................................................................13

<u>In re America's Voice, Inc.,</u>
    No. 00-1408 (ESH), 2000 U.S. Dist. LEXIS 14761 (D.D.C. Oct. 4, 2000) .......................9

<u>In re Byrd,</u>
    172 B.R. 970 (Bankr. W.D. Wash. 1994)..................................................17, 18

<u>Citizens Nat'l Bank (In re Turner),</u>
    207 B.R. 373 (B.A.P. 2d Cir. 1997)..........................................................................9

<u>In re Columbia Gas Sys.,</u>
    Civil Action No. 92-127-SLR, 1992 U.S. Dist. LEXIS 3253
    (D. Del. Mar. 10, 1992)...............................................................................7,8

<u>In re Combined Metals Reduction Co.,</u>
    557 F.2d 179 (9th Cir. 1977) ...............................................................................13

<u>Consol. Rock Prods. Co. v. Du Bois,</u>
    312 U.S. 510 (1941)...............................................................................11

<u>Country Squire Assocs. of Carle Place, L.P. v. Rochester Cmty. Sav. Bank</u>
<u>(In re Country Squire Assocs. of Carle Place, L.P.),</u>
    203 B.R. 182 (B.A.P. 2d Cir. 1996)..........................................................................13

<u>In re Del. & Hudson Ry. Co.,</u>
    90 B.R. 90 (Bankr. D. Del. 1988) ...............................................................................7

<u>In re Edwards,</u>
    228 B.R. 573 (Bankr. E.D. Pa. 1999) ...............................................................................8

<u>Evans v. Buchanan,</u>
    435 F. Supp. 832 (D. Del. 1997)...............................................................................7

<u>Evans v. Buchanan,</u>
    455 F. Supp. 705 (D. Del. 1978).................................................................................8

<u>In re Farrell Lines, Inc.,</u>
    761 F.2d 796 (D.C. Cir. 1985) ...............................................................................17

iii

Goldstein v. Miller,
    488 F. Supp. 156 (D. Md. 1980), aff'd, 649 F.2d 863, aff'd sub nom.
    Overbook Egg Nog Corp. v. Miller, 649 F.2d 864 (4th Cir. 1981) .....................................8

In re Hellesen,
    BK No. 97-11695-MWV, Chapter 13, 1999 Bankr. LEXIS 1891
    (Bankr. D.N.H. Jan. 11, 1999) ...........................................................................9

Hirschfeld v. Bd. of Elections,
    984 F.2d 35 (2d Cir. 1993)...............................................................................9

John Doe Agency v. John Doe Corp.,
    488 U.S. 1306 (1989)...................................................................................13

In re Mariner Post-Acute Network, Inc.,
    267 B.R. 46 (Bankr. D. Del. 2001) ..................................................................9

Morgan v. Polaroid Corp. (In re Polaroid Corp.),
    Civil Action No. 02-1353 (JJF), 2004 U.S. Dist. LEXIS 1917
    (D. Del. Feb. 9, 2004) ...................................................................................8

O'Bryan v. Estelle,
    691 F.2d 706 (5th Cir. 1982) ..........................................................................8

Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc.
(In re Columbia Gas Sys., Inc.),
    997 F.2d 1039 (3d Cir. 1993)..........................................................................9

Pension Benefit Guar. Corp. v. Sharon Steel Corp. (In re Sharon Steel Corp.),
    159 B.R. 730 (Bankr. W.D. Pa. 1993) ............................................................8

Providence Journal Co. v. FBI,
    595 F.2d 889 (1st Cir. 1979)..........................................................................13

In re Public Serv. Co.,
    116 Bankr. 347 (Bankr. D.N.H. 1990).............................................................8

Republic of the Phil. v. Westinghouse Elec. Corp.,
    949 F.2d 653 (3d Cir. 1991)..........................................................................7

In re Sentry Operating Co.,
    264 B.R. 850 (Bankr. S.D. Tex. 2001) .........................................................12

In re Sovereign Group 1985-27, Ltd.,
    142 B.R. 702 (E.D. Pa. 1992) .....................................................................12

In re Sphere Holding Corp.,
    162 B.R. 639 (E.D.N.Y. 1994) ................................................................17, 18

iv

In re Theatre Holding Corp.,
    22 B.R. 884 (Bankr. S.D.N.Y. 1982) ..................................................................................18

In re Toy & Sports Warehouse, Inc.,
    37 B.R. 141 (Bankr. S.D.N.Y. 1984) ..................................................................................11

In re United Merchs. & Mfgs., Inc.,
    138 B.R. 426 (D. Del. 1992) ......................................................................................13, 18

In re Westwood Plaza Apartments, Ltd.,
    150 B.R. 163 (Bankr. E.D. Tex. 1993) ..............................................................................17

## Federal statutes

28 U.S.C. § 158 (1993 & Supp. 2004) ......................................................................................7

28 U.S.C. § 1334 (1993 & Supp. 2004) ....................................................................................7

28 U.S.C. § 1408 (1993) ............................................................................................................7

28 U.S.C. § 1409 (1993) ............................................................................................................7

## Federal rules

Fed. R. Bankr. P. 8005 ............................................................................................................17

## States Statutes

Mont. Code Ann. § 31-2-339 (2004) ......................................................................................10

Mont. Code Ann. § 72-33-219 (2004) ......................................................................................9

120087.01600/40146474v1

Pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure and Rule 62 of the Federal Rules of Civil Procedure, Magten Asset Management Corporation ("Magten"), by and through its undersigned counsel, hereby submits this Brief in Support of its Emergency Motion (the "Motion") seeking a Stay of the Order (the "Confirmation Order") Confirming the Debtor's Second Amended and Restated Plan of Reorganization (the "Plan") pending Magten's appeal from that order.

## INTRODUCTION

1.    By its Motion, Magten is seeking a stay of the Confirmation Order in order to prosecute an appeal from that order. Unless a stay of the Confirmation Order is granted, Magten and the holders of the Series A 8.45% Quarterly Income Preferred Securities (the "QUIPS") face a substantial risk that once the Plan is effective they will be deprived of their rights with no recourse, as any subsequent appeal of the Confirmation Order may be rendered moot.[1]

2.    The holders of the QUIPS are victims of a scheme orchestrated by the Debtor to defraud the creditors of Clark Fork and Blackfoot LLC ("Clark Fork"), the Debtor's subsidiary, and deprive such creditors of any recourse for this fraudulent scheme. In November 2002, the Debtor transferred certain electric, natural gas and propane utility assets (the "Montana Utility Assets") for inadequate consideration at a time when it was insolvent and was not financially capable of performing its obligations under the indenture governing the QUIPS notes. The public, however, was not apprised of the Debtor's true financial condition until six months after the transfer when the Debtor publicly admitted that the financial statements available at the time of the transfer of the assets were significantly overstated. Due to the Debtor's insolvency and false financials, holders of the QUIPS were denied their right to seek a full recovery against the transferred assets.

---

[1]    Magten does not in any way argue or concede that once the Plan is effective, Magten's appeal will be moot.

1

3.      Throughout the Debtor's chapter 11 case, Magten, on behalf of the trust holding the QUIPS, has sought to avoid the fraudulent conveyance of the Montana Utility Assets, and Magten and Law Debenture Trust Company of New York ("Law Debenture"), as Indenture Trustee for the Indenture governing the QUIPS, filed a complaint seeking to avoid the fraudulent transfer of the Montana Utility Assets (the "Adversary Proceeding").  As a result of the Bankruptcy Court's decision denying in part the Debtor's motion to dismiss the Adversary Proceeding, holders of the QUIPS continued to pursue an equitable remedy for the fraudulent conveyance of the Montana Utility Assets.  The Debtor's Plan, however, discharges the equitable rights and remedies of the QUIPS holders, thereby depriving QUIPS holders of a remedy for the harms caused by the Debtor's fraudulent conveyance.  Specifically, the Plan dispenses with the requirements of Section 1129 of the Bankruptcy Code by forcing the holders of the QUIPS to choose between (i) a *de minimus* recovery on account of their QUIPS holdings and forego any claim or right with respect to the Adversary Proceeding, or (ii) a disputed litigation claim that, if allowed, will provide only a $.69 recovery in common stock.  A stay of the Confirmation Order is necessary in order to ensure that the holders of the QUIPS are not deprived of their rights to the Montana Utility Assets without any appellate review.

4.      Furthermore, although the Court should stay the Confirmation Order in its entirety pending Magten's appeal, at a minimum, the Court should stay the Confirmation Order to the extent that it would deprive QUIPS holders of their equitable right to recover on account of the fraudulent conveyance of the Montana Utility Assets.  By staying the provisions in the Plan and Confirmation Order that compromise the rights the QUIPS holders, the Plan can go effective without causing any injury to the Debtor, its creditors, or its customers, while at the same time protecting those creditors of Clark Fork who are the victims of the Debtor's fraud.

2

## BACKGROUND

Chapter 11 Proceeding

5.       The Debtor is a publicly traded Delaware corporation that was incorporated in

1923. The Debtor, together with its direct and indirect non-debtor subsidiaries, comprise one of

the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of

the United States, serving approximately 608,000 customers throughout Montana, South Dakota

and Nebraska

6.       Magten holds in excess of 40% of the QUIPS issued by Montana Capital I (the

"Trust"). The Trust is a business trust established pursuant to the Delaware Business Trust Act.

The Trust was established by The Montana Power Company ("Montana Power"), predecessor in

interest to Clark Fork (f/k/a NorthWestern Energy, LLC), as a financing vehicle. The only assets

of the Trust are the 8.45% Junior Subordinated Debentures due 2036 issued by Montana Power.

7.       On September 29, 2000, Montana Power entered into a unit purchase agreement

with the Debtor, pursuant to which the Debtor agreed to purchase the Montana Utility Assets. In

order to facilitate the assets sale to the Debtor, Montana Power created a subsidiary, Montana

Power Company LLC.

8.       On November 15, 2002, the Debtor orchestrated the transfer of substantially all of

the utility assets of its directly owned subsidiary, Clark Fork to the Debtor for inadequate

consideration (the "Transfer"). Though the Clark Fork assets had a value well in excess of

$1 billion, the total consideration received for the Transfer was the assumption of approximately

$700 million of liabilities by the Debtor. As a result of this Transfer, Clark Fork was rendered

insolvent.

3

9.    On April 16, 2003, the Debtor reported its financial results for the fiscal year

ended ("FYE") 2002 – the year in which the Transfer occurred. These filings included a

restatement of the previously unaudited quarterly results for the first three quarters of FYE 2002.

Specifically, the Debtor's restated financials indicated an additional $878.5 million in previously

unreported "negative charges." See Exhibit A. Immediately thereafter, the United States

Securities and Exchange Commission (the "SEC") launched an informal investigation into the

Debtor's financial restatements. This investigation became a formal investigation in December

2003, and has not yet been conclusively resolved. See Exhibit B, Second Amended and Restated

Disclosure Statement at Art. III §M ¶15.

10.    On September 14, 2003, the Debtor filed a voluntary petition for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to sections

1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and

manage its property as a debtor in possession.

11.    On March 11, 2004, the Debtor filed its initial plan of reorganization and

disclosure statement with the Bankruptcy Court, as well as its motion in support of the

Disclosure Statement.

12.    On May 14, 2004 the Debtor filed its First Amended Plan and Disclosure

Statement with the Bankruptcy Court, and on May 25, 2004, the Debtor filed its revised First

Amended Plan and Disclosure Statement. On May 26, 2004, the Bankruptcy Court approved the

revised First Amended Disclosure Statement.

13.    On August 9, 2004, Magten filed an objection to the Debtor's First Amended Plan

of Reorganization. See Exhibit C.

4

14.    On August 19, 2004, four business days before the scheduled confirmation hearing, the Debtor filed its Second Amended Plan and Disclosure Statement.

15.    On August 25, 2004, Magten filed an objection to the Second Amended Plan and Disclosure Statement. That same day, over the objections of Magten and Law Debenture, the Bankruptcy Court held a hearing with respect to the Debtor's disclosure statement and began the confirmation hearing.

16.    On August 31, 2004, the Debtor filed its revised Second Amended and Restated Plan (see Exhibit D) and revised Second Amended and Restated Disclosure Statement, and on September 2, 2004, the Bankruptcy Court entered an order approving the Second Amended and Restated Disclosure Statement.

17.    On September 21, 2004, Magten filed an objection to the Plan (See Exhibit E), and on October 6, 2004, the Bankruptcy Court continued the confirmation hearing with respect to the Plan. Subsequently, on October 8, 2004, the Bankruptcy Court held a teleconference during which the Bankruptcy Court confirmed the Plan over Magten and Law Debenture's objections. See Exhibit F.

18.    On October 19, 2004, the Bankruptcy Court entered the Confirmation Order. See Exhibit G.

19.    On October 22, 2004 Magten filed with the Bankruptcy Court an Emergency Motion (the "Emergency Motion") for a Stay Pending Appeal of the Order Confirming the Debtor's Second Amended and Restated Plan of Reorganization. See Exhibit H. On October 25, 2004, the Bankruptcy Court held a hearing on the Emergency Motion and denied Magten's Emergency Motion. See Exhibit S.

5

20.     On October 25, 2004, Magten filed a notice of appeal of the Confirmation Order with the Bankruptcy Court. <u>See</u> Exhibit I.

<u>The Adversary Proceeding Seeking to Avoid the Transfer</u>

21.     After the Debtor filed its chapter 11 petition, the extent of the harm to the creditors of Clark Fork became clear.  Instead of receiving a full recovery on account of their claim as they would have if the Transfer had never occurred, it became clear that holders of the QUIPS would receive a minimal recovery under the Debtor's Plan.

22.     On March 17, 2004, Magten filed its motion for relief from the automatic stay to commence an adversary proceeding seeking to avoid the fraudulent transfer.  On April 8, 2004, the Bankruptcy Court granted Magten's motion, thereby allowing Magten and Law Debenture to commence this adversary proceeding against the Debtor.

23.     On April 16, 2004, Magten, together with Law Debenture, filed a complaint (the "Complaint") on behalf of the holders of the QUIPS against the Debtor in the Bankruptcy Court seeking to set aside the fraudulent conveyance of the Montana utility assets. <u>See</u> Exhibit J.

24.     On May 14, 2004, the Debtor filed a motion to dismiss the Complaint, and on June 16, Magten and Law Debenture submitted an objection to that motion and a memorandum of law in support of its objection.  On June 28, 2004, the Debtor filed a reply in further support of its motion to dismiss the Complaint.

25.     On August 20, 2004, the Bankruptcy Court entered a decision denying in part the motion to dismiss on the ground that Magten and Law Debenture have standing as creditors of Clark Fork if Magten and Law Debenture can prove under applicable law that the release provided in Section 1102 of the Indenture was obtained through actual fraud or as part of a fraudulent scheme. <u>See</u> Exhibit K.

6

26.     Magten and Law Debenture are pursuing the Adversary Proceeding and seek a full recovery on account of the fraudulent conveyance of the Montana Utility Assets.

## JURISDICTION AND VENUE

27.     The Court has jurisdiction over this matter as a core proceeding under 28 U.S.C. §§1334 and 158. The relief requested herein is predicated on Rule 8005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue in this district is proper pursuant to 28 U.S.C. §§1408 and 1409.

## RELIEF REQUESTED

### I.     The Court Should Stay The Confirmation Order In Its Entirety

28.     Bankruptcy Rule 8005 empowers the Court to stay any judgment or order pending appeal. "[A] stay may be appropriate in a case where the threat of irreparable injury to the applicant is immediate and substantial, the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear and the interests of the other parties and the public are not harmed substantially." Evans v. Buchanan, 435 F. Supp. 832, 844 (D. Del. 1997).

29.     In determining whether to stay the Confirmation Order, the Court must consider: (1) whether Magten is likely to succeed on the merits; (2) whether Magten will be irreparably harmed if a stay is not issued; (3) whether the issuance of a stay will substantially injure other parties; and (4) whether the public interest is affected. Republic of the Phil. v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991); see also In re Del. & Hudson Ry. Co., 90 B.R. 90, 91 (Bankr. D. Del. 1988); In re Columbia Gas Sys., Inc., Civil Action No. 92-127-SLR, 1992 Dist. LEXIS 3253, at *3-4 (D. Del. 1992). See Exhibit L. In assessing whether Magten has satisfied its burden of showing that a stay pending appeal is warranted, no one factor should be isolated rather, the Court must balance and weigh all relevant factors. Evans v. Buchanan, 455

7

F. Supp. 705, 708 (D. Del. 1978); In re Edwards, 228 B.R. 573 (Bankr. E.D. Pa. 1999)

(balancing all factors in making the determination whether to grant a stay); Pension Benefit

Guar. Corp. v. Sharon Steel Corp. (In re Sharon Steel Corp.), 159 B.R. 730, 733 (Bankr. W.D.

Pa. 1993) (finding that the bankruptcy court can balance the factors "in light of the overall

circumstances of the case"). As discussed below, given the Plan's explicit violations of the

Bankruptcy Code and the substantial harm that will befall Magten, all four factors are satisfied

and entry of a stay pending appeal is warranted.

### A.    Magten Will Likely Succeed on the Merits of its Appeal from the Confirmation Order

30.    The first prong of the standard – a likelihood of success on the merits – requires

the movant to have a "'substantial case,' or a strong case on appeal." In re Columbia Gas Sys.,

1992 U.S. Dist. LEXIS 3253 at *4 (D. Del. Mar. 10, 1992)(citation omitted)(quoting In re Public

Serv. Co., 116 Bankr. 347, 349 (Bankr. D.N.H. 1990)); Morgan v. Polaroid Corp. (In re Polaroid

Corp.), Civil Action No. 02-1353 (JJF), 2004 U.S. Dist. LEXIS 1917 at *4 (D. Del. Feb. 9,

2004). See Exhibit M. The "likelihood-of-success" standard, however, "does not mean that the

trial court needs to change its mind or develop serious doubts concerning the correctness of its

decision in order to grant a stay pending appeal." Goldstein v. Miller, 488 F. Supp. 156, 172 (D.

Md. 1980), aff'd, 649 F.2d 863, aff'd sub. nom. Overbrook Egg Nog Corp. v. Miller, 649 F.2d

864 (4th Cir. 1981). See also O'Bryan v. Estelle, 691 F.2d 706, 708 (5th Cir. 1982) (movant

need not always show probability of success; substantial case on merits and serious legal

question, coupled with balance of equities, weighs heavily in favor of granting stay). This prong

merely reflects a court's "intent to restrict appellate review to those parties with colorable claims

while at the same time conserving judicial resources by eliminating frivolous appeals." See

8

Citizens Nat'l Bank (In re Turner), 207 B.R. 373, 376-77 (B.A.P. 2d Cir. 1997)(citation omitted)(citing Hirschfeld v. Bd. of Elections, 984 F.2d 35 (2d Cir. 1993)).

31.     The Plan should not have been confirmed because the primary assets upon which the Debtor seeks to reorganize – the Montana Utility Assets – are not property of the Debtor's estate.[2]  Under Montana state law, because the assets were transferred in a fraudulent conveyance, the Montana Utility Assets are held in constructive trust and should be returned to Clark Fork, the Debtor's non-debtor subsidiary.[3]  Because the Montana Utility Assets are being held in constructive trust for the holders of the QUIPS, those assets are not property of the Debtor's estate pursuant to Section 541 of the Bankruptcy Code.  See Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.), 997 F.2d 1039, 1059 (3d Cir. 1993) ("Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust."(footnote omitted));  In re America's Voice, Inc., No. 00-1408 (ESH), 2000 U.S. Dist. LEXIS 14761 (D.D.C. Oct. 4, 2000) (finding that because Debtor held property in a fiduciary capacity under constructive trust the property cannot constitute property of the estate) See Exhibit N; In re Mariner Post-Acute Network, Inc., 267 B.R. 46 (Bankr. D. Del. 2001) (stating that property held by a debtor in constructive trust for another cannot be used by the debtor to pay its creditors); In re Hellesen, BK No. 97-11695-MWV, Chapter 13, 1999 Bankr. LEXIS 1891, at *20 (Bankr. D.N.H. Jan. 11, 1999) ("Constructive trust property never becomes property of the estate because it belongs to someone else.") See Exhibit O.

---

[2]     By this Motion, Magten reserves all of its objections with respect to the Confirmation Order.
[3]     Pursuant to MCA § 72-33-219, "A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it."

9

32.    The Plan, however, is flawed because it grants liens on the Montana Utility assets, purports to revest those assets in the Debtor free and clear of liens claims and interests, and provides for a distribution scheme predicated upon the Montana Utility Assets being property of the Debtor's estate. See Exhibit D, Sections 1.157, 5.2 and 5.7. If the Plan becomes effective as currently proposed, the Debtor will obtain clear title to property that does not belong to it, and the holders of the QUIPS will be deprived of their interest in that property.

33.    Furthermore, the Plan should not have been confirmed because the causes of action asserted in the Adversary Proceeding are not dischargeable upon the Debtor's emergence from chapter 11 because they are not "claims" under Section 101(5) of the Bankruptcy Code. Because there is no available monetary remedy for a fraudulent conveyance under Montana state law,[4] the causes of action asserted in the Adversary Proceeding should not be deemed "claims" and, therefore, survive the Debtor's emergence from bankruptcy.

34.    In addition, the Plan vitiates the requirements in Section 1129 of the Bankruptcy Code.  In particular, the Debtor required the QUIPS holders to choose between a recovery on each right – a $.14 recovery on account of their claim for principal plus interest or the right to recover up to $.69 of common stock in the Adversary Proceeding. See Exhibit D, Section 4.8 (b). Forcing holders of the QUIPS to choose between recoveries is inappropriate as it requires holders of the QUIPS to forego one of their separate rights.[5] Bundling these two rights and requiring the holders of the QUIPS to choose between two separate recoveries to which they are entitled violates Section 1122 of the Bankruptcy Code. See In re AOV Indus., Inc., 792 F.2d

---

[4]    MCA § 31-2-339, which governs the remedies available to creditors in seeking to set aside a fraudulent conveyance, provides for remedies that are all equitable in nature but not for any form of monetary relief.

[5]    Magten recognizes that it is not entitled to more than a 100% recovery on account of the QUIPS. Therefore, to the extent that the holders of the QUIPS receive a 100% recovery in the fraudulent conveyance action, such recovery would be reduced by any recovery that the QUIPS holders receive under the Plan.

1140, 1152 (D.C. Cir. 1986) (finding that "[i]t is disparate treatment when members of a common class are required to tender more valuable consideration – be it their claim against specific property of the debtor or some other cognizable chose in action – in exchange for the same percentage of recovery").

35.    The Bankruptcy Court held that the election of remedies is appropriate because the two remedies – a recovery on the notes and a recovery on the fraudulent conveyance – are mutually exclusive. See Exhibit F at 31-34. According to the Bankruptcy Court, if the fraudulent conveyance is proven, there is a rescission and the holders of the QUIPS do not have a claim against the Debtor on account of the QUIPS notes but have a claim against Clark Fork. See id. at 33-34. On the other hand, if there was no fraudulent conveyance, the holders of the QUIPS only get a recovery on the QUIPS and are not entitled to a recovery on account of the fraudulent conveyance. Id. This reasoning, however, is inherently inconsistent because if there is rescission, the Montana Utility Assets must be returned to Clark Fork. While the Bankruptcy Court recognized that the fraudulent conveyance is a separate and distinct remedy, its decision deprives the QUIPS holders of realizing a full recovery on account of that cause of action.

36.    Additionally, because Class 8(b) voted to reject the Plan, the Debtor was required to seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code, thereby cramming down the Plan on Class 8(b). See Exhibit G at ¶NN. The Plan, however, does not satisfy the requirements of section 1129(b) because, among other things, it discriminates unfairly against class 8(b) and provides distributions to equity holders and creditors whose claims are subordinate to creditors in Class 8(b). See In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 151-52 (Bankr. S.D.N.Y. 1984) (quoting Consol. Rock Prods. Co. v. Du Bois, 312 U.S. 510 (1941)) (noting that the doctrine of absolute priority provides that "creditors and shareholders

11

may participate in the debtor's assets only in accordance with their respective priorities, and that

senior classes must receive full compensation for their claims before other classes can

participate"(citation omitted)); In re Sovereign Group 1985-27, Ltd., 142 B.R. 702, 705 (E.D. Pa.

1992) ("Under current law, failure to comply with the absolute priority rule is fatal to the

proposed plan of reorganization.").

37.     Moreover, the Bankruptcy Court confirmed the Plan on the basis that all

distributions going to junior creditors are a "gift" from senior creditors. See Exhibit G at ¶12(a).

That reasoning, however, ignored the fact that the distribution being made to the holders of the

QUIPS is a distribution pursuant to the Plan from the Debtor, not creditors in senior classes. The

Debtor cannot circumvent the confirmation requirements set forth in the Bankruptcy Code by

claiming that distributions made to creditors are a "gift" from other creditors when, in actuality,

it is the Debtor who is making the distributions pursuant to the Plan. In re Sentry Operating Co.,

264 B.R. 850, 864-65 (Bankr. S.D. Tex. 2001) (rejecting a creditor's argument that the plan does

not unfairly discriminate by paying a greater recovery to one class of creditors over another class

of creditors of equal rank because such an argument "does not address specific statutory

confirmation requirements" and "is a siren's song that is insufficient as a foundation for plan

confirmation"). Thus, while the Bankruptcy Court determined that the distributions under the

Plan do not discriminate unfairly because senior creditors are free to "give up" a portion of their

proceeds to unsecured creditors (see Exhibit G at ¶¶12(a) and NN), there is no authority under

the Bankruptcy Code to support the Bankruptcy Court's decision.

38.     At a minimum, for the reasons set forth above, Magten has established a strong

likelihood of success on the merits with respect to the Bankruptcy Court's erroneous approval of

12

the Confirmation Order.  As such, there is sufficient basis for the Court to conclude that Magten

will likely succeed on appeal.

### B.    Magten Will Suffer Irreparable Harm if a Stay is Not Granted

39.    If a stay is not granted, Magten will suffer substantial harm.  The Debtor has

indicated its intent to make the Plan effective as early as November 1, 2004.  See Exhibit P at

¶14.  Even if expedited, an appeal from the Confirmation Order will not be resolved by that date.

If the Plan becomes effective before Magten's appeal can be decided, the Debtor will likely

assert that Magten's appeal will be rendered moot because the Plan has been substantially

consummated and the appropriate remedy – a return of the Montana Utility Assets –  more

difficult or even impossible to fashion.  See In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 150

n.6 (3d Cir. 1986) ("[A]ppeal must be dismissed as moot when an event occurs that prevents the

appellate court from granting any effective relief."(citations omitted)).  But see In re United

Merchs. & Mfrs., Inc., 138 B.R. 426, 429 (D. Del. 1992) (citing In re Combined Metals

Reduction Co., 557 F.2d 179 (9th Cir. 1977) ("[S]ubstantial consummation does not sufficiently

justify dismissal for mootness in all circumstances."(citations omitted)).

40.    Such loss of appellate review has been recognized as the consummate form of

irreparable injury.  See, e.g., John Doe Agency v. John Doe Corp., 488 U.S. 1306, 1309 (1989);

Providence Journal Co. v. FBI, 595 F.2d 889, 890 (1st Cir. 1979); Country Squire Assocs. of

Carle Place, L.P. v. Rochester Cmty. Sav. Bank (In re Country Squire Assocs. of Carle Place,

L.P.), 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996).  The only way to prevent such irreparable injury

is by staying the Confirmation Order until Magten's appeal is addressed.

41.    Moreover, pursuant to the terms of the Plan, QUIPS holders pursuing the

Adversary Proceeding will receive a maximum recovery of $.69 in common stock only if they

13

prevail on the causes of action asserted in the Adversary Proceeding. See Exhibit D, Section

4.8(b). Absent the inappropriate provisions of the Plan, Magten would be able to receive 100

cents on the dollar in cash. Unless the Plan is stayed, Magten may forever be deprived of its

rightful remedy. Additionally, to the extent the QUIPS holders do not prevail, QUIPS holders

that have elected to pursue the Adversary Proceeding are left with *no* recovery on account of

their rights, while other creditors that are *pari passu* with the QUIPS are receiving a $.14

recovery on their note holdings.

      42.    Ultimately, through the terms of the Plan, the Debtor has unfairly and

unnecessarily forced the holders of the QUIPS to receive substantially less than they are

rightfully entitled to receive. Because the harm to be visited upon Magten in the absence of a

stay will be both unjustified and irreparable, the Court should stay the Confirmation Order

pending its appeal.

        C.   **Granting a Stay Will Not Substantially Injure Other Parties**

      43.    A stay of the Confirmation Order pending Magten's appeal will not cause any

substantial harm to any of the parties in the bankruptcy proceeding. The Debtor will not suffer

any substantial harm by simply delaying, until the appeal is decided, the distributions of the new

common stock and cash called for by the Plan. Moreover, the Debtor's creditors will not suffer a

material harm because the value of the stock they are to receive should not decrease as a result of

the stay.

      44.    The Debtor will likely assert that a stay of the Confirmation Order will prevent

the Debtor from securing its commitment for exit financing. The Debtor has previously stated

that its commitment for exit financing will expire at the end of October and that any delay in

going effective *may* adversely affect interest rates. See Exhibit P at ¶ 14. The Debtor's concerns

14

with respect to its exit financing are exaggerated as the Debtor should be able to obtain an extension on its financing commitment. The Debtor remains one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States and, without difficulty, obtained favorable terms on its post-petition financing. Accordingly, there is no reason to think that a delay of confirmation should affect the Debtor's ability to secure adequate exit financing upon reasonable terms. As such, it is unreasonable for the Debtor to allege that it, or its creditors, will be "substantially harmed" as a result of a stay.

45.    In addition, to the extent the Court grants Magten's request for a stay, Magten will expedite the appellate process in whatever manner the Court directs so as to limit any potential harm to the Debtor by the imposition of a stay.

### D.    A Stay Pending Appeal Would Serve the Public Interest

46.    The imposition of a stay pending appeal would undoubtedly benefit the public interest because there is an obvious concern in ensuring that the rights of creditors are not disregarded by the fraudulent actions of large corporations. Fraudulent conveyance statutes, like the Uniform Fraudulent Transfer Act (the "UFTA"), are fundamental to the protection of a creditor's rights. The purpose of the UFTA is primarily to protect unsecured creditors against transfers and obligations injurious to their rights. A debtor cannot transfer assets with the intention to defraud its creditors. Allowing the Debtor's Plan to go forward without fully protecting the rights of the QUIPS holders would permit the Debtor to benefit from its deceptive actions. Ultimately, this would have grand implications – by engaging in deliberate and wide-ranging fraud, a company can deprive its creditors of their rights and claims.

47.    Moreover, in the wake of the numerous recent accounting frauds committed by various corporate giants, there is a strong public interest to protect creditors from such fraud.

15

120087.01600/40146474v1

When the Debtor orchestrated the Transfer of the Montana Utility Assets from Clark Fork, the Debtor was hopelessly insolvent and had no realistic ability to perform Clark Fork's obligations under the QUIPS' Indenture. Indeed, less than six months after its assumption of Clark Fork's obligations, the Debtor retroactively restated its earnings and publicly repudiated its obligation to make payments to holders of the QUIPS, and less than a year after the Transfer it commenced the above-captioned Chapter 11 case. The public interest will be served by ensuring that the rights of creditors are not trampled by the fraudulent actions of the Debtor.

48.     In addition, a stay will further public policy goals because there is a legitimate interest in seeing that a debtor's plan of reorganization conforms to the requirements of the Bankruptcy Code: otherwise the public confidence in the bankruptcy process will be undermined.

## II. Even If The Court Is Not Willing To Stay The Confirmation Order In Its Entirety, Certain Portions Of The Confirmation Order Must Be Stayed To Protect The Rights Of QUIPS Holders

49.     Notwithstanding the fact that consideration of the above factors in this case weigh heavily in favor of granting a stay pending appeal of the Confirmation Order, to the extent that the Court determines not to stay the Confirmation Order, the Court should stay those portions of the Confirmation Order that compromise the rights of the QUIPS holders and limit their rightful recovery. Essentially, all provisions in the Confirmation Order that limit the QUIPS holders recovery and affect their rights should be stayed pending a resolution of the appeal.

50.     As previously stated, the Plan disregards the requirements of Section 1129 of the Bankruptcy Code and forces QUIPS holders to take a significantly smaller recovery then what they are entitled to. The Plan inappropriately cuts off the rights of the QUIPS holders in the Montana Utility Assets and, at a minimum, the Court should ensure that the rights of the QUIPS

16

holders are protected pending an appeal. The Debtor could easily issue additional stock or set aside sufficient cash to enable Magten and the holders of the QUIPS to fully recover on any judgment received in the Adversary Proceeding,[6] and have the Plan go effective without causing any injury to the Debtor, its creditors, or its customers, while at the same time protecting those creditors of Clark Fork who are the victims of the Debtor's fraud. Therefore, to the extent that the Court is reluctant to stay the Confirmation Order, those portions of the Confirmation Order that affect the rights of the QUIPS should be stayed.

## NO BOND SHOULD BE REQUIRED

51.    Bankruptcy Rule 8005 allows the Court, in its *discretion*, to condition a stay pending appeal on the filing of a bond. Fed. R. Bankr. P. 8005. See, e.g. In re Farrell Lines, Inc., 761 F.2d 796 (D.C. Cir. 1985) (involuntary debtor's appeal to district court was not dismissed for failure to post a bond); In re Byrd, 172 B.R. 970, 974 (Bankr. W.D. Wash. 1994) (holding that posting of a bond is discretionary, and thus, not a prerequisite to granting a stay pending appeal); In re Sphere Holding Corp., 162 B.R. 639, 644-45 (E.D.N.Y. 1994) (debtor would not be required to file bond as condition to obtaining injunctive relief against creditors' pursuit of collection); In re Westwood Plaza Apartments, Ltd., 150 B.R. 163 (Bankr. E.D. Tex. 1993) (HUD would be granted stay pending appeal without posting supersedeas bond, subject to conditions requested by debtor).

52.    Because the requirement of posting a bond is discretionary, courts have relieved appellants of the obligation to post security for a stay where little or no injury or prejudice to

---

[6]    The Debtor, upon its emergence from bankruptcy, will have in excess of $2 billion in claims. The total face amount of the QUIPS is $69 million plus accrued interest. The Debtor has testified on several occasions that it can feasibly set aside cash to satisfy the claims of the holders of the QUIPS and still have ample funds to fully operate its business and successfully emerge from chapter 11. See Exhibit Q. In fact, according to the Debtor's monthly operating report for the period of August 2004, the Debtor had approximately $112 million of unrestricted cash. See Exhibit R. Indeed, the Debtor can set aside a mere $50 million in cash to secure the full recovery of those QUIPS holders that succeed in their litigation.

17

appellees will occur. In re United Merchs. & Mfrs. Inc., 138 B.R. 426, 427 (D. Del. 1992) (stay of further distributions pursuant to confirmed chapter 11 plan would not be conditioned upon filing of a bond because the debtor would not suffer any loss as a result of the stay pending appeal). See also In re Sphere Holding Corp., 162 B.R. at 644 (recognizing that the posting of a bond is discretionary). In addition, "the court is free to fashion a remedy other than requiring the posting of a supersedeas bond where the appellant's financial condition prevents it from obtaining such a bond." In re Byrd, 172 B.R. at 974 (citations omitted). It would be an undue burden to require creditors who have already been harmed by the Debtor's fraud and face losing their legal rights to post a bond in order to stay the Confirmation Order. Moreover, to the extent that only the appropriate provisions in the Confirmation Order stayed, the Debtor cannot show that either itself or its creditors will suffer any damage or injury that would necessitate the posting of a bond. In re Sphere Holding Corp., 162 B.R. at 644; see also In re Theatre Holding Corp., 22 B.R. 884, 885-86 (Bankr. S.D.N.Y. 1982) (the only compensable damages to a party opposing the appeal are those which are the "natural and proximate" result of the stay). Likewise, the Court can fashion other appropriate relief to protect all parties in interest, including requiring the Debtor to set aside $50 million in value to ensure that the rights of the holders of the QUIPS are preserved. The limited relief sought by Magten – the protection of the QUIPS' holders rights – will not jeopardize the Debtor's ability to consummate the Plan and will have no detrimental affect on the ongoing operations of the Reorganized Debtor.

120087.01600/40146474v1

## CONCLUSION

53.    WHEREFORE, Magten respectfully requests that the Court enter an order staying

the Confirmation Order or, in the alternative, ensure that the Confirmation Order protects the

rights and interest of the holders of the QUIPS and grants such other and further relief as the

Court may deem proper.

Dated:  Wilmington, Delaware
        October 26, 2004

                                    BLANK ROME LLP

                                    Mark J. Packel (DE No. 4048)
                                    Elio Battista, Jr. (DE No. 3814)
                                    1201 Market Street, Suite 800
                                    Wilmington, DE 19801
                                    Telephone:    (302) 425-6400
                                    Facsimile:    (302) 425-6464

                                          -and –

                                    FRIED, FRANK, HARRIS, SHRIVER &
                                        JACOBSON LLP
                                    Bonnie Steingart, Esq.
                                    Gary L. Kaplan, Esq.
                                    One New York Plaza
                                    New York, NY 10004
                                    Telephone:  (212) 859-8000
                                    Facsimile:  (212) 859-4000

                                    Counsel for Magten Asset Management
                                        Corporation

479233

19

120087.01600/40146474v1

## CERTIFICATE OF SERVICE

I, Elio Battista, Jr. certify that I am not less than 18 years of age, and that on October 26,

2004, I caused service of the attached *Brief In Support of Emergency Motion of Magten Asset*

*Management Corporation for a Stay Pending Appeal of the Order Confirming the Debtor's*

*Second Amended and Restated Plan of Reorganization* to be made on the parties listed below as

indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.

_____

Elio Battista, Jr.

**BY HAND DELIVERY**

Scott D. Cousins, Esquire
William E. Chipman, Jr., Esquire
*Greenberg Traurig, LLP*
1000 West Street, Suite 1530
Wilmington, DE 19801

*(Counsel for Debtor)*

**BY FEDERAL EXPRESS**

Jesse J. Austin, Esquire
Karol K. Denniston, Esquire
Paul, Hastings, Janofsjy & Walker LLP
600 Peachtree Street
Suite 2400
Atlanta, GA 30308

*(Counsel for Debtor)*

20

120087.01600/40146474v1