hereby finds that the separate classification of Class 8(a) and Class 8(b) is consistent with the broad discretion afforded the Debtor in formulating the Plan, was not proposed to manipulate the vote and is consistent with the requirements of Section 1122(a) of the Bankruptcy Code and applicable law.

        a.      Magten and Law Debenture also object to the treatment provided to Class 8(b) claims under the Plan. The Court finds that the claims of the Magten and Law Debenture are subordinated to the claims of the Class 7 holders under the express language of the QUIPS Indenture. The Court reiterates its findings regarding valuation and finds that without the agreement of the more-senior Class 7 holders, the holders of Class 8(b) would not be entitled to a distribution under the Plan because there is insufficient value for Class 8(a) or Class 8(b) to receive any distribution in accordance with the strict priority rule. The Court finds persuasive the holding in In re Union Financial Services Group, Inc., 303 B.R. 390, 421-22 (Bankr. E.D. Mo. 2003) and holds that there can be no unfair discrimination where a plan allocates to a class of junior creditors certain value to which those creditors "[had] no right, title or interest . . . [and] which would otherwise [have been] required by applicable law to be paid

directly to" more senior creditors. Accordingly, the Court

finds that the treatment of Class 8(b) claims is consistent

with the Bankruptcy Code and applicable law and does not

unfairly discriminate against Magten and Law Debenture.

                                  **b.**        Magten and Law Debenture

object to the D&O Trust Channeling Injunction and the

D&O Insurance Entity Injunction and assert the injunctions

are not consensual and that the Debtor is abandoning

potential value to the estate. As described in the Voting

Agent Resolicitation Declaration, over 70% of each of the

impaired classes entitled to vote consented to the releases.

Voting Agent Resolicitation Declaration ¶ 19 [Dkt. No.

2170, Debtor's Exh. 185]. Moreover, the Plan, including

the D&O Trust Channeling Injunction and the D&O

Insurance Entity Injunction, were approved

overwhelmingly by the holders of Class 7, Class 8(a), Class

9 and Class 12 claims. Voting Agent Resolicitation

Declaration ¶ 16 [Dkt. No. 2170, Debtor's Exh. 185].

Upon consideration of the evidence and arguments

presented by the parties, the Court does not find Magten's

and Law Debenture's arguments persuasive. The Court

finds that the factors set forth in In re Master Mortgage Inv.

Fund, Inc., 168 B.R 930, 935 (Bankr. W.D. Mo. 1994) and

In re Dow Corning Corp., 280 F.3d 648 (6th Cir. 2002)
weigh in favor of approving the D&O Trust Channeling
Injunction and the D&O Insurance Entity Injunction.

(1)   Identity of
Interest.  Upon consideration of the evidence, the
Court finds that an identity of interest exists
between the Debtor and the parties released under
the Plan.  The Debtor's Officers and Directors
share an identity of interest with the Debtor based
on statutory and contractual indemnification
rights negotiated with the Debtor and provided in
the Debtor's Certificate of Incorporation.

(2)   Substantial
Contribution to Reorganization.  The Court also
finds that the post-petition Officers and Directors
have provided consideration in the form of
assigning their interest in the remaining D&O
Policies' proceeds under the Insurance
Assignment Agreement, Exhibit B to the Plan, to
the fund the D&O Trust.  The Directors and
Officers have provided consideration in the form
of assigning their rights and interests in the D&O
Policies to the D&O Trust.  Under Article 6 and

Section 10.5(e) of the Plan and the D&O Trust,
the Officers and Directors are giving up their
direct access to the D&O Policies, which they
relied on when they accepted their positions with
the Debtor. Moreover, the Officers and Directors
are agreeing to be channeled into the D&O Trust
with no guaranty that their defense costs will be
paid in full. See Plan §10.5(e). The Court finds
that the Officers and Directors have contributed
substantially to the Debtor's Plan and to the
reorganization.

(3)    Essential to
Reorganization. The Court finds that the D&O
Trust Channeling Injunction and the D&O
Insurance Entity Injunction are necessary to the
Plan and without such injunctions the Debtor's
ability to reorganize would be jeopardized. The
D&O Trust Channeling Injunction and the D&O
Insurance Entity Injunction are integral elements
of the Debtor's Plan and represent part of a global
agreement among the parties, which is premised
on all of the mutually interdependent elements,
including the formation and funding of the D&O

Trust. Moreover, the Court finds that the D&O Trust is essential to accomplish the Class Action settlement which requires the Debtor to provide a mechanism to make distributions to parties who choose to opt out of that settlement. See Plan 4.15. The Court finds that without the D&O Trust Channeling Injunction and the D&O Insurance Entity Injunction there would be no D&O Trust and no settlement of the Class Action; accordingly, the Court finds that the D&O Trust Channeling Injunction and the D&O Insurance Entity Injunction is essential to the Debtor's reorganization.

(4)

Overwhelming Creditor Support. As evidenced by the Voting Agent Resolicitation Declaration, the Plan was overwhelmingly accepted by all the impaired classes, except for Class 8(b). Voting Agent Resolicitation Declaration ¶ 16 [Dkt. No. 2170, Debtor's Exh. 185]. In particular, 100% of holders of Claims in Class 12 who submitted ballots, the only class impacted by the D&O Trust Channeling Injunction and the D&O Insurance

Entity Injunction, voted to accept the First
Amended Plan. <u>See</u> Voting Agent Declaration,
¶14. In addition 71.43% of holders of Class 12
Claims who submitted ballots expressly voted to
accept the releases provided under the Plan.
Accordingly, the Court holds that this factor of
the <u>Master Mortgage/Dow Corning</u> test is
satisfied.

(5)    Plan Pays All
or Substantially All of the Claims Affected by the
Injunction. Article VI of the Plan and the D&O
Trust Documents provide a mechanism to pay
claimants with D&O Trust Claims in Class 12.
While the Court cannot determine at this time
what claims will be made against the D&O Trust,
and whether all such claims will be paid, the
Debtor projects that all such claims will be paid in
full.

(6)    Plan Provides
an Opportunity for those Claimants who Choose
Not to Settle to Recover in Full. Section 6.1 and
6.5 of the Plan provides holders of Class 12 D&O
Trust Claims the ability to pursue their causes of

action and present any valid claims to the D&O
Trust for distribution so long as funds remain
available for the D&O Trust.

(7)    Specific
Factual Findings.  After consideration of all the
factors and the evidence, and after due
deliberation, the Court hereby reiterates its
findings above regarding the Master
Mortgage/Dow Corning factors and finds that
such factors weigh in favor of approving the D&O
Trust Channeling Injunction and D&O Insurance
Entity Injunction.

c.    The Court also finds
persuasive the Debtor's argument that the Debtor is
precluded from recovering under any applicable D&O
Policy for any such claims against its Officers and
Directors because of the "insured versus insured" exclusion
in the D&O Policies.  See, e.g., Cohen v. National Union
Fire Ins. Co. (In re County Seat Stores, Inc.), 280 B.R. 319
(Bankr. S.D.N.Y. 2002).  As established at the hearing on
the MOU Motion, each of the Debtor's D&O Policies
includes an express "insured versus insured" exclusion.  It
is clear that in the absence of any insurance coverage, any

claims the Debtor may have against its Officers and Directors would be essentially valueless. The Court hereby finds that the releases provided for in the Plan, including, but not limited to, the D&O Trust Channeling Injunction and the D&O Insurance Entity Injunction are appropriate, necessary and consistent with the Bankruptcy Code and all applicable law.

      d.     Magten and Law Debenture also contend that the Plan cannot be confirmed until the QUIPS Litigation is finally resolved. The Debtor has filed its Motion Pursuant to Sections 105(a), 363(b) and 502(c) of the Bankruptcy Code for Estimation of Magten Asset Management's Claims and to Establish Disputed Claim Reserve [Dkt. No. 1951] (the "Magten Estimation Motion") and its Motion Pursuant to Sections 105(a), 363(b) and 502(c) of the Bankruptcy Code for Estimation of Claims of Law Debenture Trust Company of New York and to Establish Disputed Claim Reserve [Dkt. No. 2093] (the "Law Debenture Estimation Motion"). The Court finds persuasive the reasoning in In re Continental Airlines Corp., 60 B.R. 903, 905-06 (Bankr. S.D. Tex. 1986), recognizing how unfair it would be to withhold payments to creditors while a large claim is being liquidated. The

43

Court finds that awaiting the end of the QUIPS Litigation would hamper the efficient administration of the estate and delay distribution of allowed claims to other creditors. Accordingly, the Court overrules the objections of Magten and Law Debenture in their entirety, and adjourns both the Magten Estimation Motion and the Law Debenture Estimation Motion so that the parties could reach an agreement on the amount of the Disputed Claim Reserve. To the extent the parties are unable to agree on the amount of the Disputed Claim Reserve, upon request of one of the parties, the Court shall hold a hearing on both the Magten Estimation Motion and the Law Debenture Estimation Motion on an expedited basis solely to establish prior to the proposed Effective Date of the Plan the amount of the Disputed Claim Reserve.

                e.        Magten and Law Debenture also asserted in rem property interests in the Montana Assets and that such assets were being held in a constructive trust for the benefit of the QUIPS holders. The Court finds that neither Magten nor Law Debenture took any action to impose a constructive trust on the Montana Assets and presented no evidence whatsoever as to why they should be entitled to a constructive trust with

44

respect to the Montana Assets. Magten and Law Debenture had the burden of presenting evidence on this issue measured by a clear and convincing standard which they failed to carry. Moreover, Magten and Law Debenture failed to cite a statute or case in support of their in rem property interests. This Court finds persuasive Section 7 of the Uniform Fraudulent Transfer Act, as adopted in Montana, which contemplates that money damages are an adequate remedy for fraudulent transfer claims. Accordingly, the Court finds that no constructive trust has been established and that money damages are an appropriate remedy for the holders of QUIPS Litigation Claims. The Court also finds that the QUIPS Litigation Claims will be treated in the same manner as disputed unsecured claims under Section 7.5 of the Plan. Whatever claims may be asserted in the QUIPS Litigation are nothing more than general unsecured claims against the Debtor's estate and are treated as such. Accordingly, the Court finds that the holders of QUIPS Litigation Claims are not entitled to a segregated cash reserve and as stated above, such holders shall be treated as Class 9 General Unsecured Claims subject to the Disputed Claims Reserve.

Accordingly, the Court hereby overrules the Magten and Law Debenture Objections in their entirety.

        f.      Law Debenture also belatedly raised an objection to confirmation of Debtor's Plan based on PUHCA. Neither Magten nor Law Debenture presented any evidence in connection with their PUHCA objection. Accordingly, the Court hereby overrules the Magten and Law Debenture Objections in their entirety.

        g.      Magten and Law Debenture also asserted that the Plan unfairly discriminates against Class 8(a) and Class 8(b) claims because such claims do not receive the same treatment as Class 11, environmental claims, which Magten and Law Debenture argue should be equally ranked with Class 8. The Court finds that valid business, factual, and legal reasons exist for separately classifying Class 8 and Class 11 claims, and thus finds that the claims are not substantially similar. Accordingly, the Court finds that the Plan does not unfairly discriminate against Class 8 claim holders, and the treatment of Class 11 claims in the Plan and under the Court's Order Approving (1) Stipulation between Debtor, Clark Fork and Blackfoot, LLC, Atlantic Richfield Company, United States, State of Montana, and Salish and Kootenai Tribes and (2) Debtor's

Motion for Order Pursuant to Bankruptcy Rule 9019
Approving Settlement Agreement Among Debtor, Clark
Fork and Blackfoot LLC and Atlantic Richfield Company
[Dkt. No. 1674] is appropriate. Therefore, Magten's and
Law Debenture's objections are overruled in their entirety.

11.     Objections to FIFO Method of Distribution
under the D&O Trust. The Hylland Objection and the Milbank
Objection object to the FIFO method of payment under the D&O
Trust as discriminatory as similarly situated creditors may receive
different treatment of their claims. Upon consideration of the
arguments and evidence, the Court finds the FIFO method of
payment provided for under the D&O Trust Documents is not only
consistent with the distribution method in place under the D&O
Policies being channeled to the D&O Trust, but also the most
equitable distribution available. The Court hereby overrules the
Hylland and Milbank Objections to the FIFO method of payment
provided for under the D&O Trust Documents.

12.     Cornerstone Objections [Dkt. Nos. 2168 and
2169]. Cornerstone Propane, L.P. and Cornerstone Propane
Partners, L.P. (collectively, "Cornerstone") filed limited objections
to the Confirmation of the Debtor's Second Amended and Restated
Plan of Reorganization. The limited objections request that, in the
event the Debtor's Motion for Order Approving Compromise and

**47**

Settlement Among Debtor and Certain Related Affiliates and Cornerstone Propane Partners, L.P. and Cornerstone Propane, L.P. and Certain of Their Related Affiliates Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [Dkt. No. 2154] (the "Cornerstone Settlement") is not granted. The Debtor will increase the reserves for Dispute Claims as provided for in Paragraph 27 herein. Accordingly, the Court hereby overrules the limited objections filed by Cornerstone.

13.   Remaining Objections. To the extent not otherwise overruled, resolved or withdrawn, the Court hereby overrules any remaining objections to confirmation of the Debtor's Plan in their entirety.

P.   Reasonable Classification of Claims (Section 1122(a)). Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests in Article IV of the Plan. Other than the objections of Magten and Law Debenture which have been overruled as discussed above in Paragraph O. 12(a) and 12(b), no other objections have been asserted to the Debtor's classification of Claims under the Plan and the Court incorporates its findings herein. The Claims or Equity Interests in each particular Class are substantially similar to the other Claims or Equity Interests of such Class, and therefore the Plan satisfies the requirements of Section 1122(a) of the Bankruptcy Code.

Q.   Designation of Classes (Section 1123(a)(1)). Valid business, factual, and legal reasons exist for the Debtor's designation of Classes of Claims and Equity Interests in Article IV

of the Plan. Other than the objections of Magten and Law Debenture which have been
overruled as discussed above in Paragraph O. 12(a) and 12(b), no other objections have
been asserted to the Debtor's designation of Classes under the Plan and the Court
incorporates its findings herein. Article IV of the Plan properly designates all Classes of
Claims and Equity Interests, and therefore the Plan satisfies the requirements of Section
1123(a)(1) of the Bankruptcy Code.

R.  Specification of Unimpaired Classes (Section 1123(a)(2)). Article IV of the Plan
specifies the Classes of Claims and Equity Interests which are unimpaired or impaired.
The Plan provides that Classes 1 through 6, Classes 10 and 11 and Class 14, as well as
Administrative Claims and Priority Tax Claims are unimpaired. Accordingly, the Plan
satisfies the requirements of Section 1123(a)(2) of the Bankruptcy Code.

S.  Specification of Treatment of Impaired Classes (Section 1123(a)(3)). Article IV of the
Plan specifies the treatment of each impaired Class. The Plan designates Class 7, Class
8(a), Class 8(b), Class 9, Class 12, Class 13 and Class 15 as impaired. Sections 4.7, 4.8,
4.9, 4.12, 4.13, and 4.15 of the Plan specifies the treatment of the impaired classes.
Accordingly, the Plan satisfies the requirements of Section 1123(a)(3) of the Bankruptcy
Code.

T.  No Discrimination (Section 1123(a)(4)). Article IV of the Plan provides the same
treatment for each Claim or Equity Interest of a particular Class, unless the holder of a
particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim
or Equity Interest. The Plan incorporates the settlement whereby the more-senior Class 7
shares a portion of distributions payable to it with the holders of Class 8(a) and Class
8(b). Reiterating its findings set forth in Paragraph 12 above, the Court finds persuasive

49

the holding in In re Union Financial Services Group, Inc., 303 B.R. 390, 421-22 (Bankr. E.D. Mo. 2003) and holds that there can be no unfair discrimination where a plan allocates to a class of junior creditors certain value to which those creditors "[had] no right, title or interest . . . [and] which would otherwise [have been] required by applicable law to be paid directly to" more senior creditors. Accordingly, the Plan does not discriminate unfairly and satisfies the requirements of Section 1123(a)(4) of the Bankruptcy Code.

U. Implementation of the Plan (Section 1123(a)(5)). Article V and the other provisions of the Plan provide adequate means for its implementation, including, but not limited to, the following provisions: (i) Section 5.1 provides for funding of the Plan; (ii) Section 5.4 provides for the issuance and distribution of New Common Stock; (iii) Section 5.1 and Article VI provide for the creation of the D&O Trust and the transfer of D&O Trust Assets and any proceeds or Causes of Action thereunder to the D&O Trust; (iv) Section 5.1 provides for the disbursement of cash payments to certain parties in accordance with the Plan; (v) Article IV and Section 5.5 provide for the cancellation of the Unsecured Notes, Unsecured Subordinated Notes and all Equity Interests; (vi) Sections 5.3, 5.7 and 9.4 provide for the continued corporate existence of the Debtor; (vii) Section 9.1 and 9.2 provide for the selection of the directors and officers of the Reorganized Debtor; and (viii) Section 9.3 provides for the necessary corporate action to be taken to effectuate the Plan. Accordingly, the Plan satisfies the requirements of Section 1123(a)(5) of the Bankruptcy Code.

V. Equity Securities (Section 1123(a)(6)). The Plan provides for the inclusion of a provision in the Reorganized Debtor Charter that prohibits the issuance of non-voting

equity securities and therefore, the Plan satisfies the requirements of Section 1123(a)(6) of the Bankruptcy Code. Plan, Section 5.3.

W. Selection of Officers and Directors (Section 1123(a)(7)). The Plan provides for the governance through a Board of Directors of Reorganized Debtor in a manner that is consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and therefore the Plan satisfies the requirements of Section 1123(a)(7) of the Bankruptcy Code.

X. Impairment or Unimpairment of Claims or Equity Interests and Modification of Rights of Secured Claims (Section 1123(b)(1) and (5)). The Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Equity Interests, and therefore complies with Section 1123(b)(1) and (5) of the Bankruptcy Code. Plan, Art. IV.

Y. Assumption or Rejection of Executory Contracts and Unexpired Leases (Section 1123(b)(2)). The Plan provides for the assumption of all executory contracts or unexpired leases that have not been rejected or otherwise treated in the Plan with the Bankruptcy Court's approval on or prior to the Confirmation Date. Plan, §8.1. The Debtor has represented that it intends to assume the obligations related to the permits. See Assumption Notice. The Debtor has also filed its Assumption Motion with the Court. In addition, in Section 8.1 of the Plan, the Debtor provided a procedure for parties to object to the cure amounts as provided in the Assumption Notice. Accordingly, the Plan complies with Section 1123(b)(2) of the Bankruptcy Code.

Z. Settlement and Compromise (Section 1123(b)(3)). The Plan provides for the settlement or adjustment of certain Claims or Equity Interests belonging to the Debtor or its estate

ATI/1060234.9                                          51

which is fair and equitable and in the best interests of the Debtor, its estate and all holders of Claims and Equity Interests. In particular, the Plan incorporates the settlement whereby the more-senior Class 7 shares a portion of distributions payable to it with the holders of Class 8(a) and Class 8(b). See Plan, Art. IV. Accordingly, the Plan complies with Section 1123(b)(3) of the Bankruptcy Code.

AA.  Compliance with Provisions of the Bankruptcy Code (Section 1129(a)(1)). The Plan complies with all applicable provisions of the Bankruptcy Code including, without limitation, Sections 1122 and 1123 and, as required pursuant to Rule 3016(b) of the Bankruptcy Rules, is dated and identifies the Debtor as proponent of the Plan, and therefore the Plan satisfies the requirements of Section 1129(a)(1) of the Bankruptcy Code.

BB.  Plan Proponent's Compliance with Provisions of the Bankruptcy Code (Section 1129(a)(2)). The Debtor, as proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code including, without limitation, Sections 1125 and 1126, and therefore the Debtor has satisfied the requirements of Section 1129(a)(2) of the Bankruptcy Code.

CC.  Plan Proposed in Good Faith (Section 1129(a)(3)). The Plan has been proposed in good faith for the valid business purpose of restructuring the Debtor's indebtedness and has not been proposed by any means forbidden by law. Confirmation Hearing Transcript at 115 (testimony of William Austin); Confirmation Hearing Transcript at 170 (testimony of Mike Hanson); Confirmation Hearing Transcript at 217 (testimony of Brian Bird). Magten and Law Debenture are the only parties to contend that the Plan was not proposed in good faith and their objections have been overruled as set forth above in

Paragraph O. 12. Based upon the evidence presented, the arguments of counsel and after due deliberation, the Court hereby finds that the Plan was negotiated at arms' length among representatives of the Creditors' Committee and other parties-in-interest, Confirmation Hearing Transcript at 315, 328 (testimony of Bradley Geer), was proposed in good faith for a valid business purpose, Confirmation Hearing Transcript at 115 (testimony of William Austin); Confirmation Hearing Transcript at 170 (testimony of Mike Hanson); Confirmation Hearing Transcript at 217 (testimony of Brian Bird), and provides a return to unsecured creditors. Plan, §§ 4.7, 4.8, and 4.9. Accordingly, the Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code.

DD.     Payment of Costs and Expenses (Section 1129(a)(4)). Any payment made or to be made by the Debtor for services or for costs and expenses in connection with this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, has been approved by, or will be subject to the approval of, this Court as reasonable, and therefore the Plan satisfies the requirements of Section 1129(a)(4) of the Bankruptcy Code.

EE. Disclosure of Identities of Officers, Directors and Insiders (Section 1129(a)(5)). The Debtor has disclosed the identity and affiliation of those individuals proposed to serve, after confirmation of the Plan, as a director, officer or trustee of the Reorganized Debtor pursuant to the Notice of Designation of Board Members for the Reorganized Debtor Pursuant to Section IV.G of the Debtor's First Amended Disclosure Statement [Dkt. No. 1878] filed with the Court on August 10, 2004. The terms of employment, and the appointment to, or continuance in such office of each designated individual is consistent with the interests of creditors and equity security holders and with public policy, and

therefore the Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy
Code.

FF. No Rate Change (Section 1129(a)(6)).  The Plan does not contain any changes in rates
subject to the jurisdiction of any governmental regulatory commission, and therefore the
Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy Code.  Plan, §
12.2 and Disclosure Statement, Exhibit F-2.

GG.      Best Interests of Creditors (Section 1129(a)(7)).  As discussed above in Paragraph
11, the testimony elicited by the Debtor and the Creditors' Committee at the August 25,
2004  Confirmation Hearing supports the treatment afforded to the Equity Holders as
well as Class 8(b).  This Court finds persuasive the testimony and evidence presented by
the Debtor and the Creditors' Committee regarding valuation and as such, the Plan
complies with the "absolute priority rule" set forth in Section 1129(b)(2) because there
are no claimants junior to either Equity Holders or Class 8(b) that will receive or retain
any property under the Plan.  See 11 U.S.C. § 1129(b)(2)(B)(ii).  With respect to each
impaired Class of Claims and Equity Interests, such Class has either accepted the Plan, or
each holder of a Claim or Equity Interest will receive or retain under the Plan on account
of such Claim, property of a value, as of the Effective Date of the Plan, that is not less
than the amount that such holder would receive or retain if the Debtor were liquidated
under Chapter 7 of the Bankruptcy Code on such date.  Therefore, the Plan satisfies the
requirements of Section 1129(a)(7) of the Bankruptcy Code.

HH.      Plan Acceptance (Section 1129(a)(8)).  Section 1129(a)(8) of the Bankruptcy
Code requires that each Class has either accepted the Plan, or is not impaired under the
Plan and thus is conclusively presumed to have accepted the Plan pursuant to Section

1126(f) of the Bankruptcy Code. Classes 1 through 6 and Classes 10, 11 and 14 are Unimpaired Under the Plan. Classes 7, 8(a), 9, and 12 have voted to accept the Plan. Classes 13 and 15 are presumed to have rejected the Plan because such classes will receive no Distribution under the Plan. Class 8(b) is the only impaired class to vote to reject the Plan. Therefore, the Plan fails to satisfy the requirements of Section 1129(a)(8) with respect to Classes 8(b), 13 and 15. Section 1129(b) of the Bankruptcy Code allows the Plan to be confirmed despite the rejection by Class 8(b) and the deemed rejection by Classes 13 and 15 because: (i) the Plan does not discriminate unfairly with respect to each non-accepting impaired class; (ii) the Plan is "fair and equitable" with respect to each non-accepting impaired class; (iii) at least one impaired class has accepted the Plan (without counting acceptances by insiders); and (iv) the Plan satisfies the requirements set forth in Section 1129(a) of the Bankruptcy Code other than Section 1129(a)(8). The Court reiterates its findings in Paragraph O.12 above where it held that the Plan did not discriminate unfairly against Class 8(b) and overruled the objections of Magten and Law Debenture. For the reasons set forth herein and above in Paragraph O.12, the Court finds that the Plan is fair and equitable. As set forth in the Voting Agent Resolicitation Declaration, Classes, 7, 8(a), 9, and 12 have voted to accept the Plan. Accordingly, the Court finds that the Plan can be confirmed under Section 1129(b) of the Bankruptcy Code.

II. Treatment of Administrative Claims, Priority Claims and Priority Tax Claims (Section 1129(a)(9)). The Plan satisfies the requirements of Section 1129(a)(9) of the Bankruptcy Code because, except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims pursuant

to Section 507(a)(1) of the Bankruptcy Code, Priority Claims pursuant to Sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code and Priority Tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code, shall be treated in accordance with the applicable provisions of Section 1129(a)(9)(A), (B) or (C) of the Bankruptcy Code. Plan Sections 2.2, 2.3, and 4.1.

JJ. Acceptance By at Least One Impaired Class (Section 1129(a)(10)). Classes 7, 8(a), 9 and 12 are impaired under the Plan and have voted to accept the Plan. Voting Agent Resolicitation Declaration ¶ 16. Accordingly, at least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class, and therefore the Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code.

KK.      Feasibility (Section 1129(a)(11)). Confirmation of the Plan is not likely to be. followed by the liquidation, or the need for further financial reorganization, of the Debtor or Reorganized Debtor. The Court hereby finds that given the Debtor's estimated expenses and income, and taking into account cash reserves, the Reorganized Debtor will be able to satisfy its obligations under the Plan, as well as its obligations arising in connection with its ongoing business operations. Upon review of the evidence presented at the Confirmation Hearing, particularly the testimony of William Austin (Confirmation Hearing Transcript at 116), Mike Hanson (Confirmation Hearing Transcript at 169-170) and Brian Bird (Confirmation Hearing Transcript at 218-219), and after due deliberation, the Court hereby finds that the Plan is feasible because it: (i) provides the financial wherewithal necessary to implement the Plan; and (ii) offers reasonable assurance that consummation of such Plan will not be followed by a liquidation or subsequent

reorganization of the Reorganized Debtor.  See Plan, Art. V.  Accordingly, the Plan satisfies Section 1129(a)(11) of the Bankruptcy Code.

LL. Payment of Fees (Section 1129(a)(12)).  The Debtor has paid or, pursuant to Section 2.2 of the Plan, shall pay, on or prior to the Effective Date, all amounts due under 28 U.S.C. § 1930, and therefore the Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code.

MM.    Retiree Benefits (Section 1129(a)(13)).  Pursuant to Section 8.6 of the Plan, from and after the Effective Date, the Reorganized Debtor shall continue to pay any retiree benefits (as such benefits may have been modified during the Chapter 11 Case) solely to the extent, and for the duration of the period, the Debtor is contractually or legally obligated to provide such benefits, subject to any and all rights of the Debtor under applicable law (including, without limitation, the Debtor's right to amend or terminate such benefits prior to or after the Effective Date), and therefore the Plan satisfies the requirements of Section 1129(a)(13).

NN.    Cramdown (Section 1129(b)).  Section 1129(b) of the Bankruptcy Code is not applicable to Classes 1, 2, 3, 4, 5, 6, 7, 8(a), 9, 10, 11, 12 and 14 because each such class has accepted (or are deemed to have accepted) the Plan.  The Court reiterates its findings in Paragraph O. 12 above overruling the objections of Magten and Law Debenture. Holders of Class 8(b) claims are not discriminated against unfairly as such claims are subordinate to Class 7, Unsecured Note Claims.  Section 1129(b) is satisfied with respect to holders of Class 8(b), QUIPS Claims, Class 13, Other Equity Interests, and Class 15, Opt-Out Securities Claim, because the Plan does not discriminate unfairly against such holders and no class junior to the such classes is retaining or receiving any property

under the Plan except as otherwise consented to in connection with the settlement implemented by the Plan pursuant to which Class 7 has consented to transferring a portion of the recovery they would otherwise be entitled to Class 8(a) and accepting members of Class 8(b).  See Plan, §§ 4.7, 4.8 and 4.9.

OO.    No Other Plan (Section 1129(c)).  No other plan of reorganization has been filed with respect to the Debtor's Chapter 11 Case.

PP. Avoidance of Taxes or Application of Securities Laws (Section 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and no party-in-interest that is a governmental unit has objected to Plan confirmation on such grounds.  Thus, the Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

QQ.    Good Faith Solicitation (Section 1125(e)).  Based on the record before the Bankruptcy Court in this Chapter 11 Case, the Debtor and the Committee, and all of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates, and representatives have acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, but not limited to, any action or inaction in connection with their participation in the activities described in Section 1125 of the Bankruptcy Code, and are entitled to the protection afforded by Section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in the Plan.  Confirmation Hearing Transcript at 170 (testimony of Mike Hanson); Confirmation Hearing Transcript at 217 (testimony of Brian Bird).

RR.     <u>Conditions Precedent to Confirmation</u>. The Debtor has satisfied all conditions precedent set forth in Section 11.1 of the Plan.

SS. <u>Implementation of the Plan</u>. All documents necessary to implement the Plan, including without limitation, the D&O Trust Documents and all other relevant and necessary documents shall, upon execution, be valid, binding and enforceable agreements in accordance with their terms, and not be in conflict with any federal or state law.

TT.<u>Plan Transfers</u>. All transfers of real or personal property by the Debtor are transfers under the Plan and are, therefore, free from the imposition of taxes of the kind specified in Section 1146(c) of the Bankruptcy Code. Plan, § 14.2.

UU.     <u>Exemption from Securities Laws</u>. All securities (specifically including the New Common Stock and the Warrants) issued in connection with the Plan shall be exempt from registration requirements to the maximum extent permitted by Section 1145 of the Bankruptcy Code and applicable non-bankruptcy laws.

VV.     <u>Performance and Compliance</u>. The execution, delivery or performance by the Debtor or the Reorganized Debtor, as the case may be, of the Exit Financing Facility (as defined below) on the terms contemplated by the Plan, the Commitment Letter, the Orders of the Montana Public Service Commission and the Federal Energy Regulatory Commission (collectively, the "<u>Financing Regulatory Orders</u>") and all relevant and related documents and agreements and compliance by the Debtor or the Reorganized Debtor, as the case may be, with the terms thereof is authorized by, and shall not conflict with, the terms of the Plan or this Confirmation Order. The financial accommodations to be extended pursuant to the documents related to the Exit Financing Facility (collectively, the "<u>Exit Financing Facility Documents</u>"), which shall be comprised of the

$250 million credit facility comprised of (a) revolving credit facility and (b) a term B loan credit facility (or some combination thereof, and up to $350 million of senior secured notes, all to be secured by first mortgage bonds issued under the Debtor's indenture covering its Montana public utility assets and under the Debtor's indenture covering its South Dakota public utility assets (collectively, the "Exit Financing Facility"), are being extended in good faith and for legitimate business purposes. Confirmation Hearing Transcript at 210-212 (testimony of Brian Bird).

WW.     Modification of the Plan Documents. On October 4, 2004, the Debtor filed its Notice of Filing Plan Supplement in Connection with Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 2157, Debtor's Exh. 180] (the "Notice of Plan Supplement"). Attached to the Notice of Plan Supplement were revised forms of the following: (i) Insurance Assignment Agreement; (ii) D&O Protected Parties Settlement Agreement; (iii) NorthWestern Corporation D&O Trust Agreement; (iv) NorthWestern Corporation D&O Trust Distribution Procedures; (v) Certificate of Trust of the NorthWestern Corporation D&O Trust; and (vi) By-laws of the NorthWestern Corporation D&O Trust. In accordance with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan are hereby deemed to have accepted the Plan and Plan Documents as amended. No holder of a Claim who has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the revised Plan Documents. Disclosure of the revised Plan Documents through the Notice of Plan Supplement constitutes due and sufficient notice thereof.

THEREFORE, NOW, after due deliberation, the Court
hereby ORDERS, ADJUDGES AND DECREES that:

1. Confirmation. The Plan shall be, and hereby is, confirmed having
met the requirements of Section 1129 of the Bankruptcy Code. To
the extent not withdrawn, or otherwise resolved, any and all
objections to confirmation shall be and hereby are overruled in
their entirety.

2. Implementation of the Plan. In accordance with Section 1142 of
the Bankruptcy Code, the implementation and consummation of
the Plan in accordance with its terms shall be, and hereby is,
authorized and approved, and the Debtor, or the Reorganized
Debtor, as applicable, and other Persons contemplated by the Plan
shall be, and they hereby are, authorized, empowered and directed
to issue, execute, deliver, file and record any document, whether or
not any such document is specifically referred to in the Plan, the
Disclosure Statement, or any exhibit thereto, and to take any action
necessary or appropriate to implement and consummate the Plan in
accordance with its terms without further application to, or order
of, this Court including, without limitation, the execution of any
and all documents deemed necessary or appropriate in connection
with the Exit Financing Facility, the New Common Stock and the
D&O Trust and the consummation of the transactions
contemplated thereby, including without limitation, the granting of

61

the security interests in certain assets of the Reorganized Debtor; provided, however, that no such security interest granted by this Order or the Plan shall alter, affect or subordinate the existing security interest of the CSFB Lenders under the CSFB Facility in the event that the CSFB Facility is not paid in full and replaced by, in part, the Exit Financing Facility, and all such documents shall, upon execution, be valid, binding and enforceable agreements in accordance with their terms and not be in conflict with any federal or state law.

3. Binding Effect. In accordance with Section 1141(a) of the Bankruptcy Code, the Plan and its provisions shall be, and hereby are, binding upon the Debtor, any Person acquiring or receiving a distribution under the Plan, any entity issuing securities under the Plan, any lessor of property to the Debtor, any lessee of property from the Debtor, any creditor of the Debtor and any holder of a Claim against or Equity Interest in the Debtor, and their respective successors and permitted assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted or rejected the Plan, or will or will not receive a distribution under the Plan.

4. Transfers Free and Clear of Liens and Exemption From Transfer Taxes. As set forth in Section 14.2 of the Plan, in accordance with Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or

exchange of a security, including, without limitation, the New Common Stock, or the making or delivery of an instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, may not be taxed under any law imposing a stamp or similar tax.

5.  Acceptance and Execution of Plan Documents.  Without in any manner limiting the relief granted pursuant to the preceding decretal paragraph, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

6.  Issuance of New Securities.  Pursuant to the Plan, the Debtor is authorized to issue the New Common Stock and the Warrants, without the need for any corporate action or action by the Debtor's shareholders or Board of Directors.

7.  Allowance of Unsecured Note Claims.  Under Section 4.7(b) of the Plan, as of the Effective Date, the Unsecured Note Claims shall be deemed allowed in the aggregate amount of $898,264,683, which includes accrued and unpaid interest on the Unsecured Note

Claims relating to the period up to but not including the Petition
Date.

8. Cancellation of Unsecured Notes and Related Instruments.

Pursuant to Section 4.7 of the Plan, as of the Effective Date: (i) all
Unsecured Notes shall be cancelled and deemed null and void and
of no further force and effect, and (ii) all obligations of any Person
under the Unsecured Notes, the Unsecured Notes Indentures and
all other agreements, instruments and documents evidencing the
Unsecured Notes and the rights of the holders thereof, are hereby
cancelled and deemed null and void and of no further force and
effect (all without further act or action by any Person), except that
such Unsecured Notes Indentures and other agreements that
govern the rights of holders of the Unsecured Notes shall continue
in effect solely for the purposes of allowing the Indenture Trustee,
agent or servicer thereunder to make the distributions to be made
on account of such Claims under the Plan, as provided in the Plan,
and allowing such Indenture Trustee, agent or servicer to enforce
its Indenture Trustee Charging Lien, as more particularly described
in Section 5.18 of the Plan. Without limiting the foregoing, each
holder of an Unsecured Note Claim is hereby deemed to consent to
the cancellation and release of any guarantee, instrument,
agreement or other documents respecting payment of the
Unsecured Notes and the release of any and all Claims it may have

with respect to any property or assets of the Debtor and/or the Reorganized Debtor.

9. <u>Allowance of Unsecured Subordinated Notes represented by the TOPrS Notes and Related Instruments</u>. Under Section 4.8(a)(i) of the Plan, as of the Effective Date, the Unsecured Subordinated Note Claims represented by the TOPrS Notes shall be deemed Allowed in the aggregate amount of $321,069,399, which amount shall include accrued and unpaid interest on the TOPrS Notes relating to the period up to but not including the Petition Date.

10. <u>Cancellation of Unsecured Subordinated Notes represented by the TOPrS Notes and Related Instruments</u>. Pursuant to Section 4.8 of the Plan, as of the Effective Date: (i) all Unsecured Subordinated Notes represented by the TOPrS Notes shall be cancelled and deemed null and void and of no further force and effect, and (ii) all obligations of any Person under the Unsecured Subordinated Notes represented by the TOPrS Notes, the Unsecured Subordinated Notes Indentures and all other agreements, instruments and documents evidencing the Unsecured Subordinated Notes represented by the TOPrS Notes and the rights of the holders thereof, including any related Claims and Causes of Action, including, but not limited to, fraudulent transfer claims against the Debtor, are hereby cancelled and deemed null and void and of no further force and effect (all without further act or action by any

Person), except that such Unsecured Subordinated Notes Indentures and other agreements that govern the rights of holders of the Unsecured Subordinated Notes represented by the TOPrS Notes shall continue in effect solely for the purposes of allowing the Indenture Trustee, agent or servicer thereunder to make the distributions to be made on account of such Claims under the Plan, as provided in the Plan, and allowing such Indenture Trustee, agent or servicer to enforce its Indenture Trustee Charging Lien, as more particularly described in Section 5.18 of the Plan. Without limiting the foregoing, each holder of an Unsecured Subordinated Note Claim is hereby deemed to consent to the cancellation and release of any guarantee, instrument, agreement or other documents respecting payment of the Unsecured Subordinated Notes represented by TOPrS Notes and the release of any and all Claims it may have with respect to any property or assets of the Debtor and/or the Reorganized Debtor except as expressly provided in the Plan.

11. <u>Allowance of Unsecured Subordinated Notes and other Claims represented by the QUIPS Notes and Related Instruments</u>. Claims of the QUIPS holders shall be deemed allowed as provided for under Section 4.8(b) of the Plan.

12. <u>Cancellation of Unsecured Subordinated Notes represented by the QUIPS Notes and Related Instruments</u>.

         a.     Except as provided in paragraph

12(b) below with respect to, and only with respect to, those

Claims or Causes of Action that are currently pending in

the QUIPS Litigation and being pursued by those holders

of the Unsecured Subordinated Notes represented by the

QUIPS Notes who chose or are deemed to have chosen

Option 2 pursuant to Section 4.8(b) of the Plan, and as of

the Effective Date: (i) all Unsecured Subordinated Notes

represented by the QUIPS Notes shall be cancelled and

deemed null and void and of no further force and effect,

and (ii) all obligations of any Person under the Unsecured

Subordinated Notes represented by the QUIPS Notes, the

QUIPS Indentures and all other agreements, instruments

and documents evidencing the Unsecured Subordinated

Notes represented by the QUIPS Notes and the rights of the

holders thereof, including any Claims and Causes of

Action, related thereto or arising thereunder are hereby

cancelled, released, terminated, and deemed null and void

and of no further force and effect (all without further act or

action by any Person), except that such QUIPS Indentures

and other agreements that govern the rights of holders of

the Unsecured Subordinated Notes represented by the

QUIPS Notes shall continue in effect solely for the

purposes of allowing the Indenture Trustee, agent or servicer thereunder to make the distributions to be made on account of such Claims under the Plan, as provided in the Plan, and allowing such Indenture Trustee, agent or servicer to enforce its Indenture Trustee Charging Lien, as more particularly described in Section 5.18 of the Plan. Without limiting the foregoing, each holder of an Unsecured Subordinated Note Claim is hereby deemed to consent to the cancellation and release of any guarantee, instrument, agreement or other documents respecting payment of the QUIPS Notes and the release of any and all Claims that it may have with respect to any property or assets of the Debtor and/or the Reorganized Debtor.

       b.    For those holders of Unsecured Subordinated Notes represented by the QUIPS Notes who have chosen Option 2, such holders shall, in accordance with Section 4.8(b)(ii)(2) of the Plan, now be deemed to hold disputed General Unsecured Claims against the Debtor (i.e. Class 9 Claims) in the amount of the indebtedness evidenced by such holders' QUIPS Notes, and shall be entitled to receive a Pro Rata Share of recoveries from the QUIPS Litigation, if any, upon resolution of such QUIPS Litigation, without the necessity

of becoming plaintiffs in the QUIPS Litigation so long as the Indenture Trustee shall be a plaintiff in the QUIPS Litigation or as may be approved by the Court. The QUIPS Notes and related instruments shall remain valid against the Debtor for the limited purposes of permitting the pursuit of those Claims or Causes of Action that are currently pending in the QUIPS Litigation and the Debtor hereby recognizes that the cancellation of the QUIPS Notes hereunder shall not be a defense to the QUIPS Litigation for any purpose.

13. Cancellation of Other Equity Interests. On the Effective Date, all Equity Interests shall be deemed canceled, annulled and extinguished and all other agreements, instruments and documents evidencing the Equity Interests and the rights of the holders thereof, shall be automatically cancelled and deemed null and void and of no further force and effect (all without further act or action by any Person) and holders of Equity Interests shall not be entitled to receive or retain any property or interest in property under the Plan on account of such Equity Interest.

14. Cessation of Trading. Related to the provisions of Paragraphs, 8, 10, 12 and 13 above, the trading of the Unsecured Notes, Unsecured Subordinated Notes and Equity Interests shall cease at 5:00 p.m. (EST) on the Effective Date.

15. Securities Laws Exemption. Pursuant to Section 5.17 of the Plan,
the New Common Stock, the Warrants and other securities that
may be deemed to be issued pursuant to or in connection with the
Plan shall be exempt from registration requirements to the
maximum extent permitted by Section 1145 of the Bankruptcy
Code and applicable non-bankruptcy laws.

16. Indenture Trustees' Charging Lien. On the Effective Date, the
Reorganized Debtor is hereby authorized to pay the Indenture
Trustees' Fees and Expenses in full and in Cash, in an amount to
be agreed upon among the Debtor and each of the Indenture
Trustees. In the event that the parties cannot reach an agreement
on the amount thereof, any disputed amount shall be determined
by the Court, pursuant to Section 503 of the Bankruptcy Code, and
in accordance with the terms of the applicable Indenture.
Otherwise, the Indenture Trustees shall not be required to file an
application with the Court for payment of Indenture Trustees' Fees
and Expenses. Upon receipt of payment by any Indenture Trustee
of Indenture Trustees' Fees and Expenses, any Indenture Trustee
Charging Lien under the applicable Indenture shall automatically
be deemed released to the extent of payment on account of
Indenture Trustees' Fees and Expenses; to the extent any Indenture
Trustees' Fees and Expenses are not paid by the Reorganized
Debtor (whether as a result of disagreement between the Indenture

Trustee and the Reorganized Debtor, and/or following
determination by the Bankruptcy Court) the Indenture Trustee
Charging Lien of such Indenture Trustee shall not be impaired.
Such payments shall be in full and final satisfaction of all pre- and
post-petition Claims of the Indenture Trustees. Subject to the
Reorganized Debtor's obligations under Section 5.18 of the Plan,
distributions to holders of Unsecured Notes, Unsecured
Subordinated Notes, the South Dakota Pollution Control Bond
Claims, Gas Transition Bond Claims or the Montana Pollution
Control Bond Obligation Claims pursuant to the Plan will not be
reduced on account of payments made to the Indenture Trustees, as
applicable, on account of the Indenture Trustees Charging Liens.

Notwithstanding the above, on the Effective Date, and
subject only to the review of the fee auditor appointed in this
Chapter 11 Case, the Debtor, and/or the Reorganized Debtor, as
the case may be, is hereby authorized to pay Harbert and
Wilmington Trust an aggregate amount of $2.25 million on
account of their legal, advisory, consulting and other professional
fees and expenses, which amount shall be allocated among Harbert
and Wilmington Trust by agreement between Harbert and
Wilmington Trust. Notwithstanding anything set forth herein, the
fees of Goldin Associates shall not be subject to review by the fee
auditor appointed in this Chapter 11 Case. Neither Wilmington

Trust nor Harbert shall be required to file an application with the Court for payment of such fees and expenses, provided that to the extent that the aggregate legal, advisory, consulting and other professional fees and expenses incurred by Harbert and Wilmington Trust exceed $2.25 million, Harbert and Wilmington Trust (and their professionals) may seek reimbursement of such fees and expenses by submitting an application to the Court pursuant to Section 503(b) of the Bankruptcy Code, provided that the Creditors' Committee reserves the right to object to such application or applications as set forth in Section 5.18 of the Plan. Notwithstanding anything set forth herein, if the fees and expenses of Wilmington Trust are not reimbursed in full by the estate, the deficiency shall be paid out of the distributions received by Wilmington Trust on behalf of the Class 8(a) Claims. The Plan provides that Wilmington Trust shall have the right (but not the obligation) to sell in the public market that portion of the 6.60% of the New Common Stock distributed to Class 8(a) and received by Wilmington Trust as a distribution to the extent necessary to pay legal and advisory fees and expenses incurred by Wilmington Trust that are not otherwise reimbursed by the Debtor's estate.

If the fees and expenses of the respective Indenture Trustees (other than Wilmington Trust as noted above) are not reimbursed in full by the Debtor, then any deficiency may be paid

out of the distributions received by the respective Indenture Trustee on behalf of their respective class claimants. Such Indenture Trustee shall have the right, but not the obligation, to sell into the public market any portion of the New Common Stock distributed to its respective class claimants and received by the Indenture Trustee as a distribution to the extent necessary to pay legal and advisory fees and expenses incurred by the Indenture Trustee that are not otherwise reimbursed by the Debtor.

Notwithstanding anything to the contrary in this Order or the Plan, the Reorganized Debtor shall pay in the ordinary course of the Reorganized Debtor's business the reasonable fees and expenses of the Indenture Trustees after the Effective Date in connection with the Distributions to holders of the Unsecured Notes, the Unsecured Subordinated Notes, the South Dakota Pollution Control Bond Claims, Gas Transition Bond Claims or the Montana Pollution Control Bond Claims under the Plan. Nothing in Section 5.19 of the Plan shall be deemed to limit the obligations of the Reorganized Debtor to the trustee under the indentures with respect to any Secured Bonds which are Reinstated under the provisions of the Plan.

17. Creation of the D&O Trust. On the Effective Date, the D&O Trust shall be created in accordance with the Plan and the D&O Trust Documents. The D&O Trust shall be a "qualified settlement fund"

within the meaning of Section 468B of the Internal Revenue Code and the regulations issued thereunder. On the Effective Date, all right, title and interest in and to the D&O Trust Assets and any proceeds or Causes of Action thereunder shall be transferred to and vested in the D&O Trust, free and clear of all Claims, Equity Interests, Encumbrances and other interests of any Person without further action of any Person.

18. Transfer of Claims and Demands to the D&O Trust. On the Effective Date, all liabilities, obligations, and responsibilities relating to all D&O Trust Claims shall be transferred to the D&O Trust.

19. Discharge of Liabilities to Holders of D&O Trust Claims. Except as provided in the Plan Documents, as amended by the Debtor on October 4, 2004 [Dkt. No. 2157], and the Confirmation Order, the transfer to, vesting in, and assumption by the D&O Trust of the D&O Trust Assets and the D&O Insurance Assignment, as amended by the Debtor on October 4, 2004 [Dkt. No. 2157], as contemplated by the Plan, the D&O Protected Parties Settlement Agreement, as amended by the Debtor on October 4, 2004 [Dkt. No. 2157], and the Insurance Assignment Agreement, as amended by the Debtor on October 4, 2004 [Dkt. No. 2157], among other things, on the Effective Date shall, and hereby does, (a) discharge, release and extinguish all obligations and liabilities of the Debtor

and the Reorganized Debtor for and in respect of all D&O Trust
Claims, and (b) discharge, release and extinguish all obligations
and liabilities of the Released Parties for and in respect of all D&O
Trust Claims. On the Effective Date, the D&O Trust shall assume
liability for any D&O Trust Claims that arise out of the D&O
Proceedings and shall pay the D&O Trust Claims and Defense
Costs in accordance with the TDP.

20. D&O Trust Channeling Injunction. The sole recourse of the
holder of a D&O Trust Claim in respect of such Claim shall be the
D&O Trust pursuant to the provisions of the D&O Trust
Channeling Injunction and the TDP, and such holder shall have no
right whatsoever at any time to assert its D&O Trust Claim against
the Debtor, the Reorganized Debtor or any Released Party or any
property or interest in property of the Debtor, the Reorganized
Debtor or any Released Party; provided, however, that neither the
D&O Trust Channeling Injunction nor the D&O Insurance Entity
Injunction shall apply to the holders of the QUIPS, to the extent
that such holders did not consent to the releases.

21. Reinstatement of Unimpaired Secured Claims. Each holder of an
Allowed Bank One DIP Financing Claim, CSFB Financing Claim,
Secured Bondholder Claim, or Other Secured Claim shall receive
in full satisfaction, settlement, release, extinguishment and
discharge thereof, full Reinstatement of such Allowed Claim,

except to the extent that any of the aforementioned claims are paid in full or paid in accordance with the Exit Financing Facility.

22. Corporate Action, New Incentive Plan and Management Compensation. On the Effective Date, all matters provided for under the Plan that would otherwise require further action by the directors or stockholders of the Debtor or the Reorganized Debtor, including, without limitation: (i) the adoption of the Reorganized Debtor Charter and by-laws; (ii) removal of existing directors and the initial selection of directors and officers of the Reorganized Debtor; and (iii) the distribution of Cash and the issuance and distribution of New Common Stock and Warrants pursuant to the Plan; and (iv) implementation of the New Incentive Plan, including the Special Recognition Grants to management employees provided in Section 9.3(b) of the Plan, were actual, necessary costs and expenses of preserving the bankruptcy estate and shall be deemed to have occurred, be authorized, and be in effect from and after the Effective Date in each case without further action under applicable law, regulation, order, or rule, including without limitation, any action by the stockholders of the Debtor or the Reorganized Debtor.

Other than as provided in Section 9.3(b) of the Plan, the New Board, in its sole discretion, shall be authorized to decide all other issues related to the New Incentive Plan and management

compensation including, but not limited to, employment

agreements, base salaries, change of control provisions, short and

long-term incentives, benefits and the like as is normal and

customary for senior management of corporations similar to

Reorganized Debtor.

23. <u>Reorganized Debtor Corporate Structure</u>.  The Reorganized Debtor

is hereby directed to "ring fence" its regulated energy and utility

business and assets in that such assets and businesses will be

owned by the Reorganized Debtor as the parent company.  All of

the Debtor's and the Reorganized Debtor's non-regulated energy

related or other businesses will be held in wholly owned

subsidiaries of the Reorganized Debtor. Such wholly owned

subsidiaries will have no employees of their own, but will be

served by the Reorganized Debtor's utility employees whose costs

will be charged to the non-regulated subsidiaries through

intercompany transfer pricing, which pricing mechanisms shall be

subject to review by the regulatory commissions having

jurisdiction over the Reorganized Debtor's rates.  Any debt

incurred by the non-regulated subsidiaries' operations will be

incurred at the subsidiary level and will be non-recourse to the

Reorganized Debtor.

24. <u>Amendment or Modification of the Plan of Reorganization</u>.  The

Plan may be altered, amended or modified at any time before or

after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder. The Debtor specifically reserves the right to amend or modify the Plan in the event that the Court or the District Court either does not approve, in total, the settlement of the Class Action pursuant to the proposed Class Action Settlement Documents, or approves the proposed settlement of the Class Action but limits the parties to whom the Debtor may give releases pursuant to such settlement. In such event, the Debtor's claims against any parties not released as proposed in the Class Action Settlement Documents shall be preserved for the benefit of the Debtor's creditors and Estate and the Plan, as may be amended, may provide a mechanism reasonably satisfactory to the Creditors' Committee to prosecute and/or preserve such claims for the benefit of the Debtor's Estate. The Debtor may, with notice to the

78

Creditors' Committee, the DIP Lenders and the CSFB Lenders, but without notice to holders of Claims or Equity Interests insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit hereto or in any Plan Document.

25. <u>Distributions to Holders as of the Record Date</u>. As of the close of business on October 20, 2004 (the "<u>Record Date</u>"), the claims register (for Claims) and the transfer ledgers (for Secured Notes and Unsecured Notes) shall be closed, and there shall be no further changes in the record holders of any Claims or Equity Interests. The Debtor and Reorganized Debtor shall have no obligation to recognize any transfer of any Claims or Equity Interests occurring after the close of business on the Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject the Plan pursuant to Section 7.1 of the Plan) with only those holders of record as of the close of business on the Record Date.

26. <u>Distributions to Class 10</u>. Each holder of an Allowed Convenience Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (i) Cash equal to the amount of the Allowed Convenience Claim up to $20,000, on or as soon as practicable after the later of (1) sixty (60) days after the Effective Date and (2) the date that is ten (10) Business Days after

a Class 2 Unsecured Priority Claim becomes an Allowed Convenience Claim by a Final Order; or (ii) such other treatment as the Debtor and such holder shall have agreed upon in writing.

The Debtor shall file a schedule of convenience class claims at least five (5) days prior to the Effective Date. Such schedules shall include the holder of the Allowed Convenience Claim and the amount of such Allowed Convenience Claim. On or before the Effective Date, the Debtor shall segregate the funds necessary to pay the scheduled Allowed Convenience Claims into a segregated account. Parties-in-interest shall have ten (10) days from the date of filing of the schedule of convenience class claims to file objections to the amount of the Allowed Convenience Claim. Within sixty (60) days after the Effective Date or as soon thereafter as practicable, the Debtor shall pay such Allowed Convenience Claims so long as no objections have been filed to such Claim or the parties have agreed to an Allowed Convenience Claim amount.

27. Disputed Claims Reserve. The Reorganized Debtor is hereby directed to maintain the Disputed Claims Reserve equal to the aggregate of any distributable amounts of New Common Stock equal to the relevant percentage of the Distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims in the amount of such

Disputed Claim or such lesser amount as required by a Final
Order. The Debtor shall establish an initial reserve of 13.5% of
New Common Stock allocated to Class 7 and Class 9 for the
Disputed Claims Reserve and such reserve may be subject to
adjustment prior to the Effective Date pursuant to Section 7.5 of
the Plan. As to PPLM, its reserve has been established pursuant to
the PPLM Stipulation [Dkt. No. 2183] entered by the Court on
October 6, 2004. In the event the Cornerstone Settlement is not
approved, the Reorganized Debtor shall increase both the Disputed
Claim Reserve and the reserve of New Common Stock for the
Disputed Claim Reserve in connection with the disputed
Cornerstone claims in the amount of the Cornerstone claims or
such lesser amount as may be agreed to by the parties or
established by the Court.

28. Releases, Injunctions and Exculpations. The discharge, injunction,
release and exculpation and other provisions contained in Article
X of the Plan are approved in all respects, in accordance with the
terms and conditions of this Order, and are fair, equitable,
reasonable and in the best interests of the Debtor, its Estate, its
creditors and other parties-in-interest in the Chapter 11 Case.

29. No Release for Certain Netexit Parties. Notwithstanding any
language to the contrary contained in the Plan, Confirmation Order
and/or Plan Documents including, but not limited to, the D&O

Trust Documents, no provision shall release the officers, directors, assignees, agents, employees, or attorneys of the Netexit Debtors from liability to the Netexit Debtors, or any creditor, trustee or the Official Committee of Unsecured Creditors appointed in the Netexit Cases, except to the extent any such claim, right or Cause of Action may be characterized as a D&O Proceeding or covered by the D&O Policies, the D&O Trust Channeling Injunction or the D&O Insurance Entity Injunction.

Notwithstanding any provision to the contrary in the Plan or this Confirmation Order, the Debtor's claims asserted against the Netexit Debtors shall not be released or discharged.

30. No Release, Discharge, Injunction as to Richard Hylland. Notwithstanding any provision to the contrary set forth in the Plan, nothing in the Plan or this Confirmation Order shall be deemed to release, discharge or otherwise affect the Debtor's or Reorganized Debtor's rights to assert Claims or Causes of Action against Richard Hylland (excluding Claims for rights of indemnification and contribution with respect to the Class Action and D&O Proceedings), or defenses to any Claims which Richard Hylland has asserted or may assert against the Debtor.

31. No Release for Magten Asset Management Corporation. Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, the Plan documents, or this

Confirmation Order, no provision shall release Magten Asset

Management Corporation, or any of its respective present or

former Affiliates, officers or directors, or any of their respective

present or former stockholders, members (in their capacity as

members only), employees, advisors, attorneys, financial advisors,

agents or Professionals in their capacities as such.

32. Mutual Releases with Respect to Wilmington Trust and Harbert.

As of the Effective Date and other than with respect to

Distributions provided for in Section 4.8 of the Plan on account of

their respective Allowed Unsecured Subordinated Note Claims and

as part of the compromise and settlement with respect to

Distributions to Class 8(a) provided for in the Plan, any and all

Claims and Causes of Action both known and unknown on behalf

of Harbert and Wilmington Trust, individually and collectively on

the one hand, and on behalf of the Debtor, the Reorganized Debtor

and the Creditors' Committee, on the other hand, and each of the

foregoing respective Affiliates and their parents, subsidiaries,

officers, directors or any of their former or present stockholders,

members (in their capacity as members only), employees, advisors,

attorneys, financial advisors, accountants, auditors, agents or

Professionals in their capacities as such, shall be deemed forever

mutually released and discharged from any and all known and

unknown Causes of Action of any nature that any Person may have