asserted, or could have asserted or could in the future assert, directly or indirectly, against each of Harbert, Wilmington Trust and the Debtor, the Reorganized Debtor and the Creditors' Committee, respectively, specifically including but not limited to claims and issues which have been raised by Harbert and Wilmington Trust concerning the Debtor's filings with respect to and claims of an exemption under PUHCA; provided, however, that any claims which Wilmington Trust may have in respect of an Indenture Trustee Charging Lien or that Wilmington Trust and/or Harbert may have pursuant to Section 5.18 herein are excluded from the forgoing releases subject to any objections that the Debtor, the Reorganized Debtor or the Creditors' Committee may assert thereto.

33. No Release as to Pension Plans.  Notwithstanding any language to the contrary in the Debtor's Plan, nothing in the Plan or this Confirmation Order shall be construed as releasing, discharging, or otherwise relieving the Debtor or any other party who may be a fiduciary with respect to the Pension Plans of any potential liability for breaches of fiduciary duties owed to the Pension Plans under ERISA.

34. No Release as to the Securities and Exchange Commission. Notwithstanding any language to the contrary in the Debtor's Plan, nothing in the Plan or this Confirmation Order shall release any

non-Debtor, including any officer and/or director of the Debtor and/or any Non-Debtor included in the Released Parties, from liability to the United States Securities and Exchange Commission, in connection with any legal action brought by such governmental unit against such person(s).

35. No Injunction Against or Impairment of Claims of Goldman Sachs & Co. or Milbank Tweed Hadley & McCloy LLP Against Non-Debtors. Notwithstanding any language to the contrary in the Debtor's Plan, nothing in the Plan or this Confirmation Order enjoins, releases or otherwise impairs any claim of Goldman Sachs & Co. or Milbank Tweed Hadley & McCloy LLP against any person or entity other than the Debtor and the Reorganized Debtor or otherwise limits any defense, setoff, counterclaim or cross claim either may have against any person or entity, except that any recovery by Goldman Sachs & Co. or Milbank Tweed Hadley & McCloy LLP on such counterclaim or cross claim against the Debtor or Reorganized Debtor shall be limited by the Plan.

36. Preservation of Rights of TA Debtors. Notwithstanding any provisions of the Plan to the contrary, confirmation of the Plan and the occurrence of the Effective Date thereunder shall not: (i) affect or in any way impede or diminish any rights, if any, that the TA Debtors may have with respect to certain insurance policies held in the name of the Montana Power Company, (ii) affect any setoff

rights that have been asserted previously in a timely filed proof of claim or a motion filed prior to confirmation of the Plan; and (iii) limit or release in any way any claims of the TA Debtors against any individual who previously served as an officer or director of any of the TA Debtors, or their present or former predecessors, in such individual's capacity as an officer or director of such TA Debtor.

37. Limitations of Releases, Exculpation, Discharge and Injunction. Except as specifically provided for in the Plan, the releases, exculpation, discharge and injunctions (other than the D&O Trust Channeling Injunction and the D&O Insurance Entity Injunction) with respect to non-Debtor third parties are hereby approved and shall be effective only as to those holders of Claims and Interests which vote to accept the Plan and mark their respective ballots in the place provided consenting and agreeing to the release, exculpation, discharge and injunction provisions of the Plan. The releases, exculpation, discharge and injunctions provided for in the Plan shall not be effective with respect to those releases and settlement of claims proposed to be released and settled under the Class Action Settlement Documents in the event that both this Court and the District Court do not approve such proposed settlement by final, non-appealable judgment and/or order, or approve the settlement on the condition that the Debtor limit the

parties to whom the Debtor may give releases pursuant to such Class Action Settlement Documents.

In the event the Class Action Settlement is not approved by the District Court and does not become effective: (a) the Plan and any proposed Order confirming the Plan (i) will not release any non-Debtor defendants in the Securities Litigation or any non-Debtor for that matter, from the claims asserted or to be asserted in the Securities Litigation; and (ii) will not affect, in any way, the Class Claimants' rights to obtain relief for their claims in the Securities Litigation; (b) the Lead Plaintiffs and the Class Claimants shall retain their rights to pursue their claims and access the proceeds of any available D&O Policies that provide coverage for the claims asserted in the Securities Litigation; and (c) the Debtor's current and former officers and directors, financial advisors, accountants, auditors, agents or professionals will not be released and discharged from any cause of action in connection with the Class Action.

38. Exit Financing Facility Documents. Pursuant to the Order Authorizing the Debtor to Enter into Certain Agreements Related to Exit Financing Facility and to Pay Fees in Connection Therewith Pursuant to 11 U.S.C. §§ 105, 107(b) and 363(b) and Bankruptcy Rule 9018 entered on September 22, 2004 (the "Commitment Letter Order"), and the Financing Regulatory

Orders, the Debtor was authorized to enter into the Commitment
Letter dated August 12, 2004 (the "Commitment Letter"). The
Commitment Letter indicated that the liens securing the Exit
Financing Facility will be secured by new first mortgage bonds
which, in part, shall replace the CSFB Facility Montana First
Mortgage Bonds and the CSFB Facility South Dakota First
Mortgage Bonds, however, nothing in this Order, the Plan or the
Commitment Letter Order shall in any way alter, affect or
subordinate the existing security interests of the CSFB Lenders
granted under the CSFB Facility in the event the CSFB Facility is
not paid in full and replaced by, in part, the Exit Financing
Facility. The Montana Indenture shall constitute a first lien on the
Montana utility business assets (and on such related or other assets
as provided in the Montana Indenture) now existing and after-
acquired subject to the exceptions permitted by the Montana
Indenture. The South Dakota Indenture shall constitute a first lien
on the South Dakota, North Dakota, Iowa and Nebraska utility
business assets (and on such related or other assets as provided in
the South Dakota Indenture) now existing and after-acquired
subject to the exceptions permitted by the South Dakota Indenture.

Consistent with Sections 1.157 and 5.2 of the Plan, nothing
contained in this Order, the Plan, or the Exit Financing Facility
Documents shall in any way violate any Secured Bonds indenture

covenants or otherwise alter, affect, or subordinate the existing
security interests in or liens (the "Bond Liens") upon any of the
Debtor's assets (or the priority thereof) granted under, in respect
of, or in connection with the Secured Bonds, or the indentures,
security agreements, or other documents entered into in connection
with the issuance of Secured Bonds (collectively, the "Secured
Bond Documents").

The new first mortgage bonds or any other instrument
securing the Exit Financing Facility shall not bear the legend
requested by Magten and/or Law Debenture. Any objection to the
Exit Financing Facility or confirmation of the Debtor's Plan, in
particular the objections of Magten and/or Law Debenture,
requesting that such instruments bear a legend is overruled.

39. Post-Effective Date Authority. On or after the Effective Date, the
Reorganized Debtor shall be authorized to use, acquire and dispose
of property and compromise or settle any post-Effective Date
claims or interests without supervision or approval by the Court
and free of any restrictions of the Bankruptcy Code or Bankruptcy
Rules, other than restrictions expressly imposed by the Plan or this
Order.

40. Term of Injunctions or Stay. Unless otherwise provided in the
Plan or this Order, all injunctions or stays provided for in the
Chapter 11 Case pursuant to Section 105 or 362 of the Bankruptcy

Code, or otherwise, and in existence on the date hereof, will remain in full force and effect until the Effective Date.

Each of the injunctions relating to the D&O Proceedings and the D&O Trust as set forth in the Plan are hereby approved and shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by the Plan. Notwithstanding anything to the contrary contained in the Plan, all actions in the nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

Any and all injunctions contemplated by the Plan shall be limited to the extent necessary to permit the Debtor and/or the TA Debtors, or any trustee, agent or committee of creditors acting on behalf of or in the place of the Debtor and/or the TA Debtors, to commence and litigate any and all Claims or Causes of Action with respect to the alleged ownership interests in the MPC Policies.

41. Revesting of Assets. Except as otherwise provided by the Plan, pursuant to Section 1141(b) of the Bankruptcy Code, on the Effective Date, title to all properties and assets of the Debtor and its Estate shall vest in the Reorganized Debtor free and clear of all liens, claims and encumbrances, except as expressly provided in the Plan, and this Order shall be a judicial determination of

discharge and extinguishment of all such Claims, Liens, or Equity
Interests.

Nothing in the Plan or this Order releases or nullifies any
liability to a governmental entity under police and regulatory
statutes and regulations that any entity would be subject to as the
owner or operator of property after the Effective Date. Nothing in
the Plan or this Order shall release, discharge, or preclude any
Claim that arises after the Effective Date that the United States
Environmental Protection Agency or any state environmental
agency may have against the Debtor or any remedies of the United
State Environmental Protection Agency or state environmental
agencies that are not within the definition of Claim as set forth in
Section 101(5) of the Bankruptcy Code.

42. Revesting of Railroad Permits in Reorganized Debtor's Name. On
the Effective Date, or as soon thereafter as practicable, the
Disbursing Agent shall be authorized to pay $1,000 to Burlington
Northern Santa Fe Railroad Company, Montana Rail Link, Inc.,
Montana Western Railway Company, and Rarus Railway
Company and the Reorganized Debtor shall receive blanket
assignment of all permits currently held in the name of Montana
Power Company or NorthWestern Energy, LLC.

43. Full and Final Satisfaction. Notwithstanding anything to the
contrary in this Order or the Plan, upon receipt of and acceptance

of a full and final Distribution from the Reorganized Debtor, any and all Claims and Causes of Action as between the Debtor and the claimant accepting the Distribution shall be fully and finally resolved.

44. <u>Avaya Indemnification Obligation</u>. On November 24, 2003, the Court entered an Order Authorizing the Debtor to Incur and Perform Obligations Under the Expanets, Inc. Asset Purchase Agreement and All Ancillary Documents and Granting Related Relief. Pursuant to such order and this Confirmation Order, the Debtor has and is hereby deemed to assume the indemnification obligations detailed in the documents executed in connection with the sale of the Netexit, Inc.'s assets to Avaya, Inc.

45. <u>Plan Documents</u>. All Persons holding Claims or Equity Interests which are dealt with under the Plan, including, without limitation, the D&O Protected Parties Settlement Agreement and the Insurance Assignment Agreement, shall be, and they hereby are, directed to execute, deliver, file or record any document, and to take any action necessary to implement, effectuate and consummate the Plan in accordance with its terms, and all such Persons shall be bound by the terms and provisions of all documents to be executed by them in connection with the Plan, whether or not such documents actually have been executed by such Persons.

ATL/1060234.9                                        92

46. Executory Contracts and Unexpired Leases. Any unexpired lease
or executory contract that has not been expressly assumed or
rejected by the Debtor (or otherwise treated by the Plan) shall be,
and hereby are, deemed to have been assumed by the Debtor as of
the Effective Date of the Plan.

47. Distributions of Cure Amounts. The Debtor filed its Omnibus
Motion for Court Approval to Assume Certain Executory
Contracts Pursuant to Section 365 of the Bankruptcy Code and
Granting Related Relief on September 22, 2004. The motion
included the party to the contract to be assumed and the amount of
the cure payment. On or before the Effective Date, the Debtor
shall segregate the funds necessary to pay the cure amounts,
including sufficient funds to pay any disputed cure amounts in full,
into a segregated account. Within sixty (60) days after the
Effective Date or as soon thereafter as practicable, the Debtor shall
pay such cure amounts so long as no objections have been filed to
such cure amounts or the parties have agreed to a different cure
amount.

48. Payment of Fees and Expenses of the MPSC and MCC. Pursuant
to the Order Approving Stipulation and Settlement Agreement
Among Debtor, Montana Public Service Commission and Montana
Consumer Counsel entered on July 19, 2004 [Dkt. No. 1706], the
Debtor shall pay professional fees and expenses of the Montana

Public Service Commission, Montana Consumer Counsel and the
Montana Attorney General in the amount of approximately
$2,297,768.86 as of May 31, 2004 and any additional fees and
expenses of such parties incurred through the Effective Date. Such
fees and expenses shall be paid pursuant to Section 1129(a)(4) of
the Bankruptcy Code and such payments will be made no later
than the Effective Date. The Montana Public Service
Commission, Montana Consumer Counsel and the Montana
Attorney General shall not be required to file an application with
the Court for payment of such fees and expenses.

49. Written Verification of Material Non-Public Information for
Wilmington Trust and Harbert. On the Effective Date, the Debtor
shall deliver to Wilmington Trust and Harbert written verification
that all material non-public information that has been disclosed to
Wilmington Trust and/or Harbert by the Debtor and its advisors
prior to the Effective Date has been publicly disclosed (pursuant to
the Disclosure Statement or otherwise).

50. Effect of Failure of Conditions. In the event that one or more of
the conditions specified in Section 11.2 of the Plan have not
occurred on or before 120 days after the Confirmation Date, upon
notification submitted by the Debtor to the Court, counsel for the
Creditors' Committee, counsel for the DIP Lenders, and counsel
for the CSFB Lenders (a) this Confirmation Order shall be

vacated, (b) no Distributions under the Plan shall be made, (c) the Debtor and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

51. Retention of Jurisdiction. This Court hereby retains jurisdiction of this Chapter 11 Case pursuant to, to the extent and scope of, and for the purposes set forth in Article XIII of the Plan.

52. Professional Fees. All Persons seeking an award by the Court of Professional Fees, or of compensation for services rendered to the Debtor or a Committee or reimbursement of expenses incurred through and including the Effective Date under Sections 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5) of the Bankruptcy Code, (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Effective Date, and (b) if granted such an award by the Court, shall be paid in full in such amounts as are Allowed by

the Court (i) on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Claim and the Debtor or, on and after the Effective Date, Reorganized Debtor, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Court. Parties-in-interest shall have thirty (30) days after the filing of a final fee application to object to such fee application. All Professional Fees for services rendered in connection with the Chapter 11 Case and the Plan after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date, the prosecution of Causes of Action preserved hereunder and the resolution of Disputed Claims, shall be paid by the Reorganized Debtor upon receipt of an invoice therefore, or on such other terms as Reorganized Debtor may agree to, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Reorganized Debtor and any Professional cannot agree on the amount of post-Effective Date fees and expenses to be paid to such Professional, such amount shall be determined by this Court.

53. [Final Fee Application Hearing. A hearing to consider final Professional Fee applications shall be held before this Court on

1-2-9 , 200 4 at 9:00a.m. or as soon thereafter as counsel can be heard.]

54. Notice. Notice of entry of this Order and of the Effective Date of the Plan, substantially in the form annexed hereto as Exhibit A (which notice is hereby approved in all respects) shall be, and hereby is, deemed sufficient if (a) served by first-class mail within twenty (20) days following the Effective Date upon: (i) all person having filed a notice of appearance herein and (ii) all holders of · Claims and Equity Interests which are impaired under the Plan and (b) published once in each of the following: (i) Great Falls Tribune; (ii) the Missoulian; (iii) New York Times; (iv) Rapid City Journal; (v) USA Today; (vi) The Wall Street Journal; (vii) Billings Gazette; and (viii) Argus Leader. A copy of this Order may also be obtained by submitting a written request for such document to the Debtor's noticing agent, Kurtzman Carson Consultants LLC, 12910 Culver Blvd., Suite I, Los Angeles, California 90066-6709; Attn: NorthWestern Corporation, or by viewing the documents on the noticing agent's website at http://www.kccllc.net/northwestern. In addition, copies of the this Order may be viewed on the Debtor's website, www.northwestern.com.

55. Effect of Reference to Plan in this Order. The failure to reference or discuss any particular provision of the Plan in this Order shall

have no effect on the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Order.

56. Headings. Headings utilized herein are for the convenience of reference only, and shall not constitute a part of the Plan or this Order for any other purpose.

57. No Preclusive Effect. In the event that the Plan does not become effective, no findings of fact entered by this Court in connection with confirmation of this Plan will have preclusive effect in connection with confirmation of any subsequently-filed plan of reorganization.

58. Reversal. If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of the Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtor. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of

this Order, the Plan, all documents relating to the Plan and any amendments or modifications to any of the foregoing.

59. Inconsistencies. In the event of any discrepancies, inconsistencies or conflicts between the Plan or other document executed under or in connection with the Plan, the provisions of the Plan shall govern. In the event of any discrepancies, inconsistencies or conflicts between the Court's oral ruling on October 8, 2004 and this Order, the provisions of the Court's October 8, 2004 oral ruling shall govern.

60. Integration of Confirmation Order Provisions. The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

61. Final Order. This Order is a Final Order and the period in which an appeal must be filed shall commence immediately upon the entry hereof. Notwithstanding Bankruptcy Rule 3020(e), this Order shall be effective and enforceable immediately upon entry hereof.

> Dated: October 19th, 2004
> Wilmington, Delaware
>
> _Jeareeef Cauer_
> _____
> United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re: NORTHWESTERN CORPORATION,    : : Chapter 11  Case No. 03-12872
Debtor.                             : : (CGC)
                                    : :
                                    :

## NOTICE OF (A) ENTRY OF ORDER CONFIRMING THE DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND (B) THE OCCURRENCE OF THE EFFECTIVE DATE

### TO ALL HOLDERS OF CLAIMS, HOLDERS OF INTEREST AND OTHER PARTIES IN INTEREST:

**PLEASE TAKE NOTICE,** that on October ___, 2004, an order (the "Confirmation

Order") was entered by the Honorable Charles G. Case, United States Bankruptcy Judge,

confirming, pursuant to the provisions of Title 11, United States Code, 11 U.S.C. §§ 101 et seq.

(the "Bankruptcy Code"), the Second Amended and Restated Plan of Reorganization Under

Chapter 11 of the Bankruptcy Code (the "Plan") of NorthWestern Corporation, former debtor and

debtor-in-possession (the "Debtor"). A copy of the Confirmation Order is on file with the Clerk

of the Bankruptcy Court for the District of Delaware and is available for inspection at the Clerk's

office during normal business hours and on the Court's website at www.deb.uscourts.gov. A

copy of the Confirmation Order may also be obtained by submitting a written request for such

documents to the Debtor's Noticing Agent, Kurtzman Carson Consultants LLC, 12910 Culver

Blvd., Suite I, Los Angeles, California 90066-6709; Attn: NorthWestern Corporation, or by

viewing the document on the noticing agent's website at www.kccllc.net/northwestern. In

addition, copies of the Confirmation Order may be viewed on the Debtor's website at

www.northwestern.com.

**PLEASE TAKE FURTHER NOTICE**, that the Effective Date of the Plan occurred on

November ___, 2004.

    Dated: Wilmington, Delaware
    November _____, 2004

    Respectfully submitted,

    PAUL, HASTINGS, JANOFSKY &
    WALKER LLP
    600 Peachtree Street
    Suite 2400
    Atlanta, GA 30308
    Jesse H. Austin, III
    Karol K. Denniston
    Telephone: (404) 815-2400

    and

    GREENBERG TRAURIG, LLP

    Scott D. Cousins (No. 3079)
    Victoria Watson Counihan (No.
    3488) William E. Chipman, Jr. (No.
    3818)
    The Brandywine Building
    1000 West Street, Suite 1540
    Wilmington, DE 19801
    Telephone: (302) 661-7000

    *Co-Counsel for the Debtor and
    Debtor-in-Possession*

(l)    Cogeneration and Small Power Production Long-Term Power Purchase Agreement dated November 16, 1984 (Wisconsin Creek);

(m)    Cogeneration and Small Power Production Long-Term Power Purchase Agreement dated November 15, 1984 (Strawberry Creek); and

(n)    Cogeneration and Small Power Production Long-Term Power Purchase Agreement dated October 31, 1984 (South Dry Creek).

1.149  "QSF" shall mean a "qualified settlement fund" within the meaning of Section 1.468B-1(c) of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended from time to time.

1.150  "QUIPS" shall mean any outstanding 8.45% Cumulative Quarterly Income Preferred Securities, Series A, issued by Montana Power Capital I, a Delaware statutory business trust.

1.151  "QUIPS Claims" shall mean an Allowed Claim by the holder of a QUIPS Note.

1.152  "QUIPS Indenture" shall mean the Indenture, dated as of November 1, 1996, between The Montana Power Company, as issuer, and The Bank of New York, as trustee, as amended or supplemented from time to time.

1.153  "QUIPS Litigation" shall mean that certain adversary proceeding filed in the Chapter 11 Case against the Debtor by Magten Asset Management Corporation and Law Debenture Company of New York, in its capacity as indenture trustee, identified as Adversary Proceeding No. 04-53324 (CGC).

1.154  "QUIPS Notes" shall mean any outstanding 8.45% Junior Subordinated Debentures of the Montana Power Company due 2036, issued under the QUIPS Indenture.

1.155  "Record Date" shall mean the date established in the Confirmation Order for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order, then the Record Date shall be the Confirmation Date.

1.156  "Registration Rights Agreement" shall mean that certain registration rights agreement with certain entities providing for the registration of the New Common Stock, including New Common Stock issuable pursuant to the Warrants.

1.157  "Reinstated" or "Reinstatement" shall mean: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of such Claim so as to leave such Claim Unimpaired in accordance with Section 1124 of the

Bankruptcy Code; or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitled the holder of such Claim. Anything to the contrary notwithstanding, the South Dakota First Mortgage Bond Claims, the Montana First Mortgage Bond Claims, the CSFB Facility Montana First Mortgage Bonds, the CSFB Facility South Dakota First Mortgage Bonds, South Dakota Pollution Control Bond Claims, the Gas Transition Bond Obligations and the Montana Pollution Control Bond Claims, and the documents evidencing same, shall remain in full force and effect and not be cancelled, and the Debtor's obligations thereunder, and the obligations of the MPC Natural Gas Funding Trust, shall not be discharged pursuant to the terms of this Plan or otherwise, and the Debtor shall cause and require the MPC Natural Gas Funding Trust to act in accordance therewith.

1.158  "Released Parties" shall mean the Debtor, Reorganized Debtor, Officers and Directors, or any of their former or present employees (excluding persons whose service as Officers or Directors of the Debtor or any Affiliate thereof terminated prior to the Petition Date), advisors, attorneys, financial advisors, accountants and other professionals in their capacities as such, and each of their representatives and agents (including any professionals retained by such persons or entities).

1.159  "Reorganized Debtor" shall mean the Debtor after the Effective Date.

1.160  "Reorganized Debtor Charter" shall mean the certificate of incorporation of Reorganized Debtor attached as Exhibit A to this Plan.

1.161  "Retiree Benefits" shall mean payments to any Person for the purpose of providing or reimbursing payments for retired employees of the Debtor and of any other entities as to which the Debtor is obligated to provide retiree benefits and the eligible spouses and eligible dependents of such retired employees, for medical, surgical, or hospital care benefits, or in the event of death of a retiree under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established by the Debtor prior to the Petition Date, as such plan, fund or program was then in effect or as heretofore or hereafter amended.

1.162  "SEC" shall have the meaning set forth in Section 1.46, D&O Proceedings definition, supra.

1.163 "SEC Inquiry" shall have the meaning set forth in Section 1.46, D&O Proceedings definition, supra.

1.164 "Securities Claims" means any Claim or claim asserted in, arising under or related to the Class Action other than any Claim asserted therein on behalf of any Person that is a defendant in the Class Action and other than any Claim asserted therein on behalf of any Person whose liability in respect of the subject matter of the Class Action will be released pursuant to the Class Action Settlement Documents.

1.165 "Schedules" shall mean, collectively, the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

1.166 "SDPUC" shall mean the South Dakota Public Utilities Commission, or any successor thereto.

1.167 "Secured Bondholder Claims" shall mean an Allowed Claim by the holder of any Secured Bond.

1.168 "Secured Bonds" shall mean any and all of the Gas Transition Bonds, the South Dakota First Mortgage Bonds, the Montana First Mortgage Bonds, CSFB Facility Montana First Mortgage Bonds, CSFB Facility South Dakota First Mortgage Bonds, the Montana Pollution Control Bonds, or the South Dakota Pollution Control Bonds.

1.169 "Secured Claim" shall mean any Claim which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or in the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

1.170 "Setoff" shall mean any right of a Creditor to offset a mutual debt owing by such Creditor and any right of the Debtor to offset a mutual debt owing by such Debtor to a Creditor against a Claim of the Debtor, including, without limitation, such rights under Section 553 of the Bankruptcy Code.

1.171 "South Dakota First Mortgage Bond Claims" shall mean an Allowed Claim by the holder of a South Dakota Mortgage Bond.

1.172 "South Dakota First Mortgage Bonds" shall mean any outstanding bonds issued under the South Dakota Indenture other than any CSFB Facility South Dakota First Mortgage Bonds, specifically any of the following:

First Mortgage Bonds, 7% Series due 2023; and

New Mortgage Bonds, 7.10% Series due 2005.

1.173 "South Dakota Indenture" shall mean the General Mortgage Indenture and Deed of Trust, dated as of August 1, 1993, between Northwestern Public Service Company, as issuer, and The Chase Manhattan Bank, as trustee, and any supplements thereto.

1.174 "South Dakota Pollution Control Bonds" shall mean any outstanding bonds issued under the South Dakota Pollution Control Indentures.

1.175 "South Dakota Pollution Control Bond Claims" shall mean an Allowed Claim by the holder of a South Dakota Pollution Control Bond.

1.176 "South Dakota Pollution Control Bond Obligations" shall mean any obligations under any of the following agreements or indentures:

Sale Agreement, dated as of June 1, 1993, between Mercer County, North Dakota and Northwestern Public Service Company, relating to $7,550,000 Pollution Control Refunding Revenue Bonds Series 1993;

Indenture and Security Agreement, dated as of June 1, 1993, from Northwestern Public Service to Mercer County, North Dakota, relating to $7,550,000 Pollution Control Refunding Revenue Bonds Series 1993;

Loan Agreement, dated as of June 1, 1993, between Grant County, South Dakota and Northwestern Public Service Company, relating to $6,400,000 Pollution Control Refunding Revenue Bonds Series 1993A;

Indenture and Security Agreement, dated as of June 1, 1993, from Northwestern Public Service to Grant County, South Dakota, relating to $6,400,000 Pollution Control Refunding Revenue Bonds Series 1993A;

Loan Agreement, dated as of June 1, 1993, between Grant County, South Dakota and Northwestern Public Service Company, relating to $3,400,000 Pollution Control Refunding Revenue Bonds Series 1993B;

Indenture and Security Agreement, dated as of June 1, 1993, from Northwestern Public Service to Grant County, South Dakota, relating to $3,400,000 Pollution Control Refunding Revenue Bonds Series 1993B;

Loan Agreement, dated as of June 1, 1993, between City of Salix, Iowa and Northwestern Public Service Company, relating to $4,000,000 Pollution Control Refunding Revenue Bonds Series 1993; and

Indenture and Security Agreement, dated as of June 1, 1993, from Northwestern Public Service to City of Salix, Iowa, relating to $4,000,000 Pollution Control Refunding Revenue Bonds Series 1993.

1.177 "South Dakota Pollution Control Indentures" means the following indentures:

Indenture of Trust, dated as of June 1, 1993, between Grant County, South Dakota, as issuer, and Wells Fargo Bank Minnesota, National Association, as trustee (Series A);

Indenture of Trust, dated as of June 1, 1993, between Grant County, South Dakota, as issuer, and Wells Fargo Bank Minnesota, National Association, as trustee (Series B);

Indenture of Trust, dated as of June 1, 1993, between Mercer County, North Dakota, as issuer, and Wells Fargo Bank Minnesota, National Association, as trustee; and

Indenture of Trust, dated as of June 1, 1993, between the City of Salix, Iowa, as issuer, and Wells Fargo Bank Minnesota, National Association, as trustee.

1.178 "South Dakota Public Utilities Law" means the provisions of Chapter 49-34A of the South Dakota Codified Laws, and any rules and regulations promulgated in connection therewith, and as the same may be amended or modified from time to time, including any order previously issued by the South Dakota Public Utilities Commission.

1.179 "Special Recognition Grants" shall have the meaning set forth in Section 9.3(b) hereof.

1.180 "Stipulation of Settlement" shall mean that certain stipulation of settlement to be entered in the Class Action.

1.181 "Subordinated Claim" shall mean any Claim: (a) payment of which is subordinated in right of treatment or payment to other Claims under an agreement enforceable under applicable non-bankruptcy law, but only to the extent provided in such agreement; (b) for reimbursement or contribution of a Person that is

liable with the Debtor on another Creditor's Allowed Claim unless and until such Claim is paid in full; or (c) subordinated in right of treatment or payment pursuant to Sections 509(c) or 510 of the Bankruptcy Code.

1.182  "Subsequent Distribution Date" shall mean each six (6) month anniversary of the Effective Date.

1.183  "Surplus Distributions" shall mean the Distributions created pursuant to Section 7.7 of this Plan.

1.184  "TAC" shall mean the Trust Advisory Committee established pursuant to Article 5 of the D&O Trust Agreement.

1.185  "TA Debtors" shall mean the debtors and debtors-in-possession in the jointly administered bankruptcy cases of Touch America Holdings, Inc, et al.

1.186  "TDP" or "D&O Trust Distribution Procedures" shall mean that certain trust distribution procedures attached as Exhibit F to this Plan.

1.187  "Tax Claim" shall mean an Allowed Claim for an amount entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.188  "TOPrS Indenture" shall mean the Subordinated Debt Securities Indenture, dated as of August 1, 1995, between Northwestern Public Service Company, as issuer, and The Chase Manhattan Bank, as trustee, as amended or supplemented from time to time.

1.189  "TOPrS Notes" shall mean any outstanding Subordinated Debentures issued pursuant to the TOPrS Indenture, specifically any of the following:

8.125% Junior Subordinated Deferrable Interest Debentures due 2025, issued pursuant to a First Supplemental Indenture, dated as of August 1, 1995;

7.20% Junior Subordinated Deferrable Interest Debentures due 2038, issued pursuant to a Second Supplemental Indenture, dated as of November 15, 1995;

8.25% Junior Subordinated Deferrable Interest Debentures due 2031, issued pursuant to a Third Supplemental Indenture, dated as of December 21, 2001; and

8.10% Junior Subordinated Deferrable Interest Debentures due 2032, issued pursuant to a Fourth Supplemental Indenture, dated as of January 31, 2002.

1.190 "Tort Claim" shall mean any Claim relating to personal injury, property damage or products liability or other similar Claim asserted against the Debtor, its subsidiaries and/or Affiliates that has not been compromised and settled or otherwise resolved. Tort Claims include Claims arising from or related to products or services provided by the Debtor, its subsidiaries and/or Affiliates or their predecessors prior to the Petition Date regardless of when the accident or injury occurs.

1.191 "Trust Expenses" shall mean the expenses incurred by the D&O Trust as contemplated by the D&O Trust Agreement.

1.192 "Trust Originated Preferred Securities (TOPrS) Claims" shall mean an Allowed Claim by the holder of a TOPrS Note.

1.193 "Trustee" shall mean any Person appointed by the Bankruptcy Court pursuant to Section 6.2 of this Plan and pursuant to the D&O Trust Agreement.

1.194 "Unclaimed Property" shall mean any Distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to this Plan that: (a) is returned to Reorganized Debtor as undeliverable and no appropriate forwarding address is received within the later of (x) one (1) year after the Effective Date and (y) one (1) year after Distribution is made to such holder; or (b) in the case of a Distribution made in the form of a check, is not negotiated and no request for reissuance is made by the holder of such Allowed Claim.

1.195 "Unsecured Claim" shall mean a Claim for which no property of any kind of the Debtor's Estate serves as security or Collateral other than Claims with respect to Unsecured Note Claims, Trust Originated Preferred Securities (TOPrS) Claims and QUIPS Claims.

1.196 "Unsecured Insider Claims" shall mean Unsecured Claims held by Insiders.

1.197 "Unsecured Note Claims" shall mean an Allowed Claim by the holder of an Unsecured Note.

1.198 "Unsecured Note Indentures" shall mean:

(a)    the Indenture, dated as of November 1, 1998, between the Debtor, as issuer, and The Chase Manhattan Bank, as trustee, and any supplements thereto (the "1998 Indenture"); and

(b)    the Indenture, dated as of December 1, 1989, between The Montana Power Company, as issuer, and Citibank, N.A., as trustee, and any supplements thereto (the "1989 Indenture").

1.199 "<u>Unsecured Note Trustee</u>" shall mean HSBC Bank USA, or any successor thereto (whether under the 1998 Indenture or the 1989 Indenture), in such Person's capacity as indenture trustee under such Unsecured Note Indenture.

1.200 "<u>Unsecured Notes</u>" shall mean any outstanding notes issued under:

(a)     the Indenture, dated as of November 1, 1998, between the Debtor, as issuer, and The Chase Manhattan Bank, as trustee, and any supplements thereto, specifically any of the following:

6.95% Senior Unsecured Debentures due 2028;

7.875% Senior Notes due 2007; and

8.75% Senior Notes due 2012; and

(b)     the Indenture, dated as of December 1, 1989, between The Montana Power Company, as issuer, and Citibank, N.A., as trustee, and any supplements thereto, specifically any of the following:

7.07% Unsecured Medium-Term Notes due 2006;

7.875% Unsecured Medium-Term Notes due 2026; and

7.96% Unsecured Medium-Term Notes due 2026.

1.201 "<u>Unsecured Priority Claims</u>" shall mean Unsecured Claims entitled to priority status pursuant to Section 507 of the Bankruptcy Code.

1.202 "<u>Unsecured Subordinated Note Claims</u>" shall mean an Allowed Claim by the holder of an Unsecured Subordinated Note.

1.203 "<u>Unsecured Subordinated Note Indentures</u>" shall mean the QUIPS Indenture and the TOPrS Indenture.

1.204 "<u>Unsecured Subordinated Note Trustees</u>" shall mean:

(a)     with respect to the QUIPS Indenture, Law Debenture Trust Company of New York; and

(b)     with respect to the TOPrS Indenture, Wilmington Trust,

in either case, or any successor thereto, in such Person's capacity as indenture trustee under such Unsecured Subordinated Note Indenture.

1.205  "Unsecured Subordinated Notes" shall mean the QUIPS Notes and the TOPrS Notes.

1.206  "Warrant Agreement" shall have the meaning set forth in Section 4.7(c) hereof.

1.207  "Warrants" shall have the meaning set forth in Section 4.7(c) hereof.

1.208  "Wilmington Trust" shall mean Wilmington Trust Company in its capacity as Indenture Trustee with respect to the TOPrS Notes.


## ARTICLE II

## TREATMENT OF ALLOWED ADMINISTRATIVE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1    Non-Classification.  As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtor are not classified for the purposes of voting on or receiving Distributions under this Plan. All such Claims are instead treated separately upon the terms set forth in this Article II.

2.2    Administrative Claims.

(a)    In General.  All Administrative Claims shall be paid in full, in Cash, in such amounts as (a) are actual and necessary costs and expenses incurred after the Petition Date in the ordinary course of the Debtor's business when and as such Claims become due and owing or (b) are Allowed by the Bankruptcy Court upon the later of (i) the Effective Date, (ii) the date upon which there is a Final Order allowing such Claim as an Administrative Claim, or (iii) any other date specified in such order, or as may be agreed upon between the holder of such Administrative Claim and the Debtor. Such Administrative Claims shall include all obligations owing to the DIP Lenders arising under the DIP Loan Documents and the DIP Financing Order (including, without limitation, the payment of all fees and expenses required thereunder), costs incurred in the operation of the Debtor's businesses after the Petition Date, the reasonable fees and expenses of Professionals retained by the Debtor and the Creditors' Committee, and the fees due to the United States Trustee pursuant to 28 U.S.C. § 1930.

(b)    Professional Compensation and Expense Reimbursement Claims. Except as otherwise provided here, all Persons seeking an award by the Bankruptcy Court of Professional Fees, or of compensation for services rendered to the Debtor or a Committee or reimbursement of expenses incurred through and including the Effective Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy

Code, (a) shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Effective Date, and (b) if granted such an award by the Bankruptcy Court, shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Claim and the Debtor or, on and after the Effective Date, Reorganized Debtor, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court. Parties-in-interest shall have thirty (30) days after the filing of a final fee application to object to such fee application. All Professional Fees for services rendered in connection with the Chapter 11 Case and this Plan after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date, the prosecution of Causes of Action preserved hereunder and the resolution of Disputed Claims, shall be paid by Reorganized Debtor upon receipt of an invoice therefor, or on such other terms as Reorganized Debtor may agree to, without the need for further Bankruptcy Court authorization or entry of a Final Order. If Reorganized Debtor and any Professional cannot agree on the amount of post-Effective Date fees and expenses to be paid to such Professional, such amount shall be determined by the Bankruptcy Court.

(c)    Claims of DIP Lenders.  On the Effective Date, all outstanding obligations of the Debtor to the DIP Lenders pursuant to the DIP Loan Documents, if any, shall be fully and finally satisfied in accordance with the terms of the DIP Loan Documents, the DIP Financing Order, and this Plan.

(d)    U.S. Trustee's Claims.  U.S. Trustee Claims that are unpaid as of the Effective Date will be paid in cash on the Effective Date.

2.3    Priority Tax Claims.  Allowed Priority Tax Claims shall be paid in full, in cash, upon the later of: (a) the Effective Date; (b) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Tax Claim; (c) the date that such Allowed Priority Tax Claim would have been due if the Chapter 11 Case had not been commenced; or (d) upon such other terms as may be agreed to between the Debtor and any holder of an Allowed Priority Tax Claim; provided, however, that the Debtor may, at its option, in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, make cash payments respecting Allowed Priority Tax Claims deferred to the extent permitted by Section 1129(a)(9) of the Bankruptcy Code and, in such event, the principal amount of such Allowed Priority Tax Claims shall be amortized in equal annual installments over six (6) years from the Effective Date and interest shall accrue from the Effective Date on the unpaid portion of such Allowed Priority Tax Claim at: (x) any applicable statutory rate; (y) the rate applicable to federal judgments pursuant to 28 U.S.C. § 1961; or (z) a rate to be agreed to by the Debtor (or Reorganized Debtor, as the

case may be) and the appropriate governmental unit or, if they are unable to agree, as determined by the Bankruptcy Court.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

       Claims (other than Allowed Administrative Claims and Allowed Priority Tax Claims) and Equity Interests are classified for all purposes, including voting on, confirmation of and distribution pursuant to this Plan, as follows:

| Class | | Status |
|---|---|---|
| Class 1 - - | Priority Claims | Unimpaired |
| Class 2 - - | Unsecured Priority Claims | Unimpaired |
| Class 3 - - | Bank One DIP Financing Claims | Unimpaired |
| Class 4 - - | CSFB Financing Claims | Unimpaired |
| Class 5 - - | Secured Bondholder Claims | Unimpaired |
| Class 6 - - | Other Secured Claims | Unimpaired |
| Class 7 - - | Unsecured Note Claims | Impaired |
| Class 8 - - | Unsecured Subordinated Note Claims | Impaired |
| | Class 8 (a) - Unsecured Subordinated Note Claims Represented by TOPrS Notes | Impaired |
| | Class 8 (b) - Unsecured Subordinated Note Claims Represented by QUIPS Notes | Impaired |
| Class 9 - - | General Unsecured Claims | Impaired |
| Class 10 - - | Unsecured Convenience Claims of $20,000 or Less | Unimpaired |
| Class 11 - - | Environmental Claims | Unimpaired |
| Class 12 - - | D&O Trust Claims | Impaired |
| Class 13 - - | Other Equity Interests | Impaired |
| Class 14 - - | Securities Claims | Unimpaired |
| Class 15 - - | Opt-Out Securities Claims | Impaired |