**ARTICLE IV**

**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

4.1    **CLASS 1 – PRIORITY CLAIMS**

(a)    Impairment and Voting. Class 1 is unimpaired by this Plan. Consequently, each holder of an Allowed Priority Claim is conclusively presumed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

(b)    Distributions. Each holder of an Allowed Priority Claim shall receive, in full satisfaction, settlement, release and discharge thereof, Cash in an amount equal to such Allowed Priority Claim on the later of: (i) the Effective Date; and (ii) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Claim or any other date specified in such Final Order, or as soon thereafter as is practicable, unless the holder of an Allowed Priority Claim and the Debtor or Reorganized Debtor, as the case may be, agree to a different treatment thereof.

4.2    **CLASS 2 – UNSECURED PRIORITY CLAIMS**

(a)    Impairment and Voting. Class 2 is unimpaired by this Plan. Consequently, each holder of an Allowed Unsecured Priority Claim is conclusively presumed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

(b)    Distributions. Each holder of an Allowed Unsecured Priority Claim shall receive, in full satisfaction, settlement, release and discharge thereof, Cash in an amount equal to such Allowed Unsecured Priority Claim on the later of: (i) the Effective Date; and (ii) the date that is ten (10) Business Days after the date upon which there is a Final Order allowing such Claim as an Allowed Unsecured Priority Claim or any other date specified in such Final Order, or as soon thereafter as is practicable, unless the holder of an Allowed Unsecured Priority Claim and the Debtor or Reorganized Debtor, as the case may be, agree to a different treatment thereof.

4.3    **CLASS 3 – BANK ONE DIP FINANCING CLAIMS**

(a)    Impairment and Voting. Class 3 is unimpaired by this Plan. Consequently, each holder of an Allowed Bank One DIP Financing Claim is conclusively presumed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

(b)    Distributions. Each holder of an Allowed Bank One DIP Financing Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge thereof, the amount of such Allowed Claim pursuant to the DIP Financing Order and the DIP Loan Documents on the Effective Date, unless the holder of the

Allowed Bank One DIP Financing Claim and the Debtor or Reorganized Debtor, as the case may be, agree to a different treatment thereof.

### 4.4    CLASS 4 – CSFB FINANCING CLAIMS

(a)    Impairment and Voting.  Class 4 is unimpaired by this Plan. Consequently, each holder of an Allowed CSFB Financing Claim is conclusively presumed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

(b)    Distributions.  Each holder of an Allowed CSFB Financing Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge thereof, full Reinstatement of such Allowed Claim pursuant to the CSFB Order and the CSFB Financing Documents.

### 4.5    CLASS 5 – SECURED BONDHOLDER CLAIMS

(a)    Impairment and Voting.  Class 5 is unimpaired by this Plan. Consequently, each holder of an Allowed Secured Bondholder Claim is conclusively presumed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

(b)    Distributions.  Each holder of an Allowed Secured Bondholder Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge thereof, full Reinstatement of such Allowed Claim.

### 4.6    CLASS 6 – OTHER SECURED CLAIMS

(a)    Impairment and Voting.  Class 6 is unimpaired by this Plan. Consequently, each holder of an Allowed Other Secured Claim is conclusively presumed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

(b)    Distributions.  Each holder of an Allowed Other Secured Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge thereof, full Reinstatement of such Allowed Claim.

### 4.7    CLASS 7 – UNSECURED NOTE CLAIMS

(a)    Impairment and Voting.  Class 7 is impaired by this Plan and holders of Allowed Unsecured Note Claims are entitled to vote to accept or reject this Plan.

(b)    Allowance of Unsecured Note Claims.  On the Effective Date, the Unsecured Note Claims shall be deemed Allowed in the aggregate amount of

$898,264,683, which includes accrued and unpaid interest on the Unsecured Note Claims relating to the period up to but not including the Petition Date.

(c)    Distributions and Effects Thereof.    On the Effective Date the Unsecured Notes shall be automatically cancelled, annulled and extinguished.[1]    On the Effective Date, or as soon thereafter as practicable, each holder of an Unsecured Note Claim, along with holders of Allowed Class 9 General Unsecured Claims which do not choose to be an Allowed Convenience Claim, shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim its Pro Rata Share of: (i) 32,660,000 shares of New Common Stock (such 32,660,000 shares representing 92% of the New Common Stock to be issued and outstanding on the Effective Date prior to any dilution resulting from shares of New Common Stock issued pursuant to the New Incentive Plan and exercise of the warrants to purchase additional shares of New Common Stock allocated to the Class 8(a) and Class 8(b) holders described below (the "Warrants" and the agreement pursuant to which such Warrants are to be issued, the "Warrant Agreement")); plus (ii) the 505,591 shares of New Common Stock allocated to Class 8(b) if Class 8(b) as a class rejects the Plan.    The New Common Stock issued pursuant to this Section 4.7(c) shall be subject to dilution by shares of New Common Stock issued and distributed in accordance with exercise of the Warrants, the New Incentive Plan and such other shares as may be authorized and issued pursuant to the Reorganized Debtor Charter, as may be amended from time to time.

(d)    Cancellation of Unsecured Notes and Related Instruments.    As of the Effective Date, (i) all Unsecured Notes, shall be cancelled and deemed null and void and of no further force and effect, and (ii) all obligations of any Person under the Unsecured Notes, the Unsecured Note Indentures and all other agreements, instruments and documents evidencing the Unsecured Notes and the rights of the holders thereof, shall be automatically cancelled and deemed null and void and of no further force and effect (all without further act or action by any Person), except that such Unsecured Notes Indentures and other agreements that govern the rights of holders of the Unsecured Notes shall continue in effect solely for the purposes of allowing the Indenture Trustee, agent or servicer thereunder to make the distributions to be made on account of such Claims under the Plan, as provided herein, and allowing such Indenture Trustee, agent or servicer to enforce its Indenture Trustee Charging Lien, as more particularly described in Section 5.18 hereof.    Without limiting the foregoing, each holder of an Unsecured Note Claim shall be deemed to consent to the cancellation and release of any guarantee, instrument, agreement or other documents respecting payment of the Unsecured Notes and the release of any and all Claims it may have with respect to any property or assets of the Debtor and/or Reorganized Debtor.

---

[1]    Any securities held by the Debtor for Unsecured Note Claims, Class 7, shall be cancelled, annulled, and extinguished.  The Debtor will not share in any Distributions on account of such holdings.

4.8    **CLASS 8 – UNSECURED SUBORDINATED NOTE CLAIMS**

(a)    Impairment and Voting. Class 8(a) is comprised of holders of Allowed Unsecured Subordinated Note Claims represented by the TOPrS Notes and is impaired by this Plan. Holders of Allowed Unsecured Subordinated Note Claims represented by the TOPrS Notes are entitled to vote to accept or reject this Plan.

(i)    Allowance of Unsecured Subordinated Note Claims. On the Effective Date, the Unsecured Subordinated Note Claims represented by the TOPrS Notes shall be deemed Allowed in the aggregate amount of $321,069,399, which includes accrued and unpaid interest on the TOPrS Notes relating to the period up to but not including the Petition Date.

(ii)    Distributions and the Effects Thereof. On the Effective Date the Unsecured Subordinated Notes represented by the TOPrS Notes shall be automatically cancelled, annulled and extinguished.[2] On the Effective Date, or as soon thereafter as practicable, each holder of an Unsecured Subordinated Note Claim represented by the TOPrS Notes shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim a Pro Rata Share of: (i) 2,334,409 shares of New Common Stock (such 2,334,409 shares representing 6.6% of the New Common Stock to be issued and outstanding on the Effective Date prior to any dilution resulting from shares of New Common Stock issued pursuant to the New Incentive Plan and exercise of the Warrants); plus (ii) Warrants exercisable for an additional 10.7% of New Common Stock. The New Common Stock issued pursuant to this Section 4.8(a)(ii) of this Plan shall be subject to dilution by shares of New Common Stock issued and distributed in accordance with exercise of the Warrants, the New Incentive Plan and such other shares as may be authorized and issued pursuant to the Reorganized Debtor Charter as the same may be amended from time to time. The Warrants to be issued pursuant to this Section 4.8(a)(ii) shall be exercised no later than three years following the Effective Date and shall have such terms and conditions as more particularly set forth on Schedule 4.8 to this Plan.

(iii)    Cancellation of Unsecured Subordinated Notes and Related Instruments. As of the Effective Date, (i) all Unsecured

---

[2]    Any securities held by the Debtor for Unsecured Subordinated Note Claims in Class 8(a) shall be cancelled, annulled, and extinguished. The Debtor will not share in any Distributions on account of such holdings.

Subordinated Notes represented by the TOPrS Notes shall be cancelled and deemed null and void and of no further force and effect, and (ii) all obligations of any Person under or in respect of the Unsecured Subordinated Notes represented by the TOPrS Notes, the Unsecured Subordinated Note Indentures and all other agreements, instruments and documents evidencing the Unsecured Subordinated Notes represented by the TOPrS Notes and the rights of the holders thereof, including, but not limited to, any related Claims and Causes of Action, including, but not limited to, fraudulent transfer claims against the Debtor, shall be cancelled and deemed null and void and of no further force and effect (all without further act or action by any Person), except that such Unsecured Subordinated Notes Indentures and other agreements that govern the rights of the holders of the Unsecured Subordinated Notes represented by the TOPrS Notes shall continue in effect solely for the purposes of allowing the indenture trustee, agent or servicer thereunder to make the distributions to be made on account of such Claims under the Second Amended Plan, as described herein, and allowing such indenture trustee to enforce its Indenture Trustee Charging Lien, as more particularly described in Section 5.18 of the Second Amended Plan. Without limiting the foregoing, each holder of an Unsecured Subordinated Note Claim shall be deemed to consent to the cancellation and release of any guarantee, instrument, agreement or other documents respecting payment of the Unsecured Subordinated Notes represented by TOPrS Notes and the release of any and all Claims it may have with respect to any property or assets of the Debtor and/or Reorganized Debtor.

(b)    Impairment and Voting. Class 8(b) is comprised of holders of Allowed Unsecured Subordinated Note Claims represented by the QUIPS Notes and is impaired by this Plan. Holders of Allowed Unsecured Subordinated Note Claims represented by the QUIPS Notes are entitled to vote to accept or reject this Plan.

(i)    Allowance of Unsecured Subordinated Note Claims. Unless the Debtor or another party-in-interest either objects or specifically reserves the right to object to claims of a holder of Unsecured Subordinated Note Claims represented by the QUIPS Notes, then on the Effective Date, the Unsecured Subordinated Note Claims represented by the QUIPS Notes shall be deemed Allowed in the aggregate amount of $69,537,873, which includes accrued and unpaid interest on the QUIPS Notes relating to the period up to but not including the Petition Date. The Debtor specifically reserves the right to object to all the claims and recoveries of Magten Asset

-36-

Management Corporation, as a holder of Claims and Causes of Action pursuant to the QUIPS Notes.

(ii)  Distributions and the Effects Thereof.  On the Effective Date, or as soon thereafter as practicable,[3] each holder of an Unsecured Subordinated Note Claim represented by the QUIPS Notes and related Claims and Causes of Action who accepts or rejects the Plan may opt to receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim either, but not both:

(1)  a Pro Rata Share of 505,591 shares of New Common Stock (such 505,591 shares representing 1.4% of the New Common Stock to be issued and outstanding on the Effective Date prior to any dilution resulting from shares of New Common Stock issued pursuant to the New Incentive Plan and exercise of the Warrants), plus Warrants exercisable for an additional 2.3% of New Common Stock (collectively, "Option 1"); or

(2)  a Pro Rata Share of recoveries, if any, upon resolution of the QUIPS Litigation ("Option 2").

If a holder of a Class 8(b) Unsecured Subordinated Note claim votes to accept or reject the Plan and chooses Option 1 then: (i) such holder will receive its Pro Rata Share of the Distribution provided for under Option 1; and (ii) such Distribution will be in lieu of and release of any claims and rights the holder may have with respect to the QUIPS Litigation.  If a holder of a Class 8(b) Unsecured Subordinated Note Claim votes to accept or reject the Plan and chooses Option 2, then: (i) such holder's claims shall be treated as a Class 9 General Unsecured Claim, subject to estimation and reserves for Disputed Claims as provided for by Section 7.5 of the Plan, with Distributions to holders of Class 8(b) Unsecured Subordinated Note Claims which choose Option 2 being made, if at all, only upon entry of a Final Order resolving the QUIPS Litigation (unless otherwise agreed to by the Debtor and the Committee); and (ii) any New Common Stock which otherwise would have been distributable to such holder if such holder had chosen Option 1, shall be distributed, pro rata to Class 7 and Class 9, and the Warrants which otherwise would have been distributable

---

[3] Any securities held by the Debtor for Unsecured Subordinated Note Claims in Class 8(b) shall be cancelled, annulled, and extinguished. The Debtor will not share in any Distributions on account of such holdings.

will be canceled. If a holder of a Class 8(b) Unsecured Subordinated Note Claim votes to accept the Plan and does not designate its choice of Option 1 or Option 2, or designates both Option 1 and Option 2, such holder shall be deemed to have chosen Option 1 and its receipt of its Pro Rata Share of the Distribution provided for under Option 1 will be in lieu of and release of any claims and rights to recoveries such holder may have with respect to the QUIPS Litigation.

If a holder of a Class 8(b) Unsecured Subordinated Note Claim does not vote either to accept or reject the Plan but Class 8(b), as a Class, votes to accept the Plan, then such non-voting holder shall be deemed to have chose Option 1 and its receipt of its Pro Rata Share of the Distribution provided by Option 1 will be in lieu of and release of any claims and rights to recoveries such holder may have with respect to the QUIPS Litigation. If a holder of a Class 8(b) Unsecured Subordinated Note Claim does not vote either to accept or reject the Plan but Class 8(b), as a Class, votes to reject the Plan then: (i) such non-voting holder shall be deemed to have chosen Option 2, with Distributions to such holder being made, if at all, only upon entry of a Final Order resolving the QUIPS Litigation (unless otherwise agreed to by the Debtor and the Committee); and (ii) any New Common Stock which otherwise would have been distributable to such holder if such holder had accepted the Plan and chosen Option 1, shall be distributed pro rata to Class 7 and Class 9, and the Warrants which otherwise would have been distributable will be canceled.

The New Common Stock issued pursuant to this Section 4.8 of this Plan shall be subject to dilution by shares of New Common Stock issued and distributed in accordance with exercise of the Warrants, the New Incentive Plan and such other shares as may be authorized and issued pursuant to the Reorganized Debtor Charter as the same may be amended from time to time. The Warrants to be issued pursuant to this Section 4.8 shall be exercised, if at all, no later than three years following the Effective Date and shall have such terms and conditions as more particularly set forth on Schedule 4.8 to this Plan.

(iii)    Cancellation of Unsecured Subordinated Notes and Related Instruments. As of the Effective Date, (i) all Unsecured Subordinated Notes represented by the QUIPS Notes shall be cancelled and deemed null and void and of no further force and effect, and (ii) all obligations of any Person under or in respect of

the Unsecured Subordinated Notes represented by the QUIPS Notes, the Unsecured Subordinated Note Indentures and all other agreements, instruments and documents evidencing the Unsecured Subordinated Notes represented by the QUIPS Notes and the rights of the holders thereof, including, but not limited to, any related Claims and Causes of Action, including, but not limited to, the QUIPS Litigation against the Debtor (at least with respect to those holders of Unsecured Subordinated Notes represented by the QUIPS Notes that have chosen or are deemed to have chosen Option 1), shall be cancelled and deemed null and void and of no further force and effect (all without further act or action by any Person), except that such Unsecured Subordinated Notes Indentures and other agreements that govern the rights of the holders of the Unsecured Subordinated Notes represented by the QUIPS Notes shall continue in effect solely for the purposes of allowing the indenture trustee, agent or servicer thereunder to make the distributions to be made on account of such Claims under the Second Amended Plan, as described herein, and allowing such indenture trustee to enforce its Indenture Trustee Charging Lien, as more particularly described in Section 5.18 of the Second Amended Plan. Without limiting the foregoing, each holder of an Unsecured Subordinated Note Claim shall be deemed to consent to the cancellation and release of any guarantee, instrument, agreement or other documents respecting payment of the Unsecured Subordinated Notes represented by the QUIPS Notes and the release of any and all Claims it may have with respect to any property or assets of the Debtor and/or Reorganized Debtor.

4.9    **CLASS 9 –GENERAL UNSECURED CLAIMS**

(a)    Impairment and Voting.  Class 9 is impaired by this Plan and holders of Allowed General Unsecured Claims are entitled to vote to accept or reject this Plan. Insiders are entitled to vote on the Debtor's Plan; provided, however, pursuant to Section 1129(a)(10) of the Bankruptcy Code, if a class of claims is impaired under the Plan, in order to determine if at least one class of claims that is impaired under the Plan has accepted the Plan, such determination shall be made without including any acceptances of the Plan by any Insiders.

(b)    Allowance of General Unsecured Claims.  On the Effective Date, the holders of Allowed General Unsecured Claims shall be deemed, at their election, eligible to participate in Distributions, as described in Sections 4.9(c) and/or 4.10 up to the amount of the Allowed Claim.

(c)    Distributions.  On the Effective Date, or as soon thereafter as practicable, each holder of an Allowed General Unsecured Claim which does not choose to be an Allowed Convenience Claim, along with holders of Class 7 Unsecured Note Claims, shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim its Pro Rata Share of:  (i) 32,660,000 shares of New Common Stock (such 32,660,000 shares representing 92% of the New Common Stock issued and outstanding on the Effective Date prior to any dilution resulting from shares of New Common Stock issued pursuant to the New Incentive Plan and exercise of the Warrants), plus (ii) the 505,591 shares of New Common Stock allocated to Class 8(b) if Class 8(b), as a class, votes to reject the Plan. The New Common Stock issued pursuant to this Section 4.9(c) shall be subject to dilution by shares of New Common Stock issued and distributed in accordance with exercise of, the Warrants, the New Incentive Plan and such other shares as may be authorized and issued pursuant to the Reorganized Debtor Charter as the same may be amended from time to time.

(d)    Classification of Insider Claims.  Insider claims included in Class 9 – General Unsecured Claims include, but are not limited to, claims related to the rejection of certain non-qualified plans and claims related to employment and separation of Insiders by the Debtor.[4]  To the extent that Insiders have claims for indemnification, advancements, and/or legal fees and expenses related to the Class Action and D&O Proceedings, such claims shall be channeled to and included in Class 12 – D&O Trust Claims.

4.10    **CLASS 10 – UNSECURED CONVENIENCE CLAIMS OF $20,000 OR LESS**

(a)    Impairment and Voting.  Class 10 is unimpaired by this Plan. Consequently, each holder of an Allowed Convenience Claim is conclusively presumed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

(b)    Distributions.  Each holder of an Allowed Convenience Claim shall receive in full satisfaction, settlement, release extinguishment and discharge of such Claim, one of the following forms of treatment:

(i)    Cash equal to the amount of the Allowed Convenience Claim up to $20,000, on or as soon as practicable after the later of (1) the Effective Date and (2) the date that is ten (10) Business Days after a Class 2 Unsecured Priority Claim becomes an Allowed Convenience Claim by a Final Order; or

---

[4]    The Debtor intends to object to the allowance of a number of Insider claims, including, but not necessarily limited to the claims of Cornerstone Propane, L.P., Cornerstone Propane Partners LP, John Charters, Richard Hylland, Merle Lewis, and Daniel K. Newell. Richard Hylland filed a claim in the amount of $30.4 million in connection with his employment with the Debtor and benefits under the Debtor's non-qualified benefit plans.  The Debtor intends to object to Mr. Hylland's claim.

(ii)    Such other treatment as the Debtor and such holder shall have agreed upon in writing.

(c)    <u>Effect of Convenience Class Election</u>.    Holders of Allowed General Unsecured Claims of up to $20,000 or less in Class 9, may elect to participate in Class 10 up to $20,000 by voting to accept this Plan and marking the Ballot in the space provided. Holders of Allowed General Unsecured Claims in excess of $20,000 may elect to reduce the amount of such holder's Allowed Claim to $20,000 and participate in Distributions to be paid to holders of Class 10 Convenience Claims. Such an election constitutes a waiver of the amount of such holder's Allowed General Unsecured Claim in excess of $20,000, and such holder shall be deemed to release the Debtor and Reorganized Debtor from any and all liability for such excess amount.

### 4.11    CLASS 11 - ENVIRONMENTAL CLAIMS

(a)    <u>Impairment and Voting</u>. Class 11 is not impaired under this Plan and holders of Allowed Environmental Claims are not entitled to vote to accept or reject this Plan.

(b)    <u>Distributions</u>.    All of the Debtor's federal, state and local environmental and regulatory obligations including all Environmental Claims, shall be unaffected by the Plan and shall become obligations of the Reorganized Debtor and its Affiliates except as specifically provided for herein.    Holders of an Allowed Environmental Claim shall receive in full satisfaction and settlement thereof full Reinstatement of such Allowed Environmental Claim; provided however, that Claims related to the Milltown Settlement and Stipulation shall be treated as provided for in the Milltown Settlement, Milltown Stipulation, the final consent decree and FERC order related to Milltown Dam.

Claims related to the Milltown Settlement and the Milltown Stipulation shall be treated in accordance with the Milltown Settlement, Milltown Stipulation and any consent decree entered by a court relating to the Milltown Dam site. Assuming that the Debtor's Plan is confirmed and the Effective Date occurs before a consent decree is entered or becomes fully effective, and if such consent decree is subsequently not entered or does not become fully effective, then all of the United States, the State of Montana, and the Confederated Salish and Kootenai Tribes, and Atlantic Richfield Company's rights, claims, arguments and objections with respect to matters within the scope of the Milltown Settlement and Milltown Stipulation shall be preserved until the consent decree is entered and effective. In the event that (a) the consent decree is not entered after it is lodged with the court, (b) the consent decree does not become fully effective pursuant to the conditions in the consent decree, or (c) after entry of the consent decree, the consent decree is overturned on appeal and subsequent negotiations are required, and any of the parties to the Milltown Stipulation assert that the negotiations have irretrievably broken down, then the Milltown Settlement shall be deemed void *ab*

ATL/1005339.47                                    -41-

*initio*, and all funds in the escrow account shall continue to be held in trust in the escrow account pending further order of the Bankruptcy Court.

### 4.12    CLASS 12 - D&O TRUST CLAIMS

(a)    Impairment and Voting.  Class 12 is impaired under this Plan and holders of Allowed D&O Trust Claims are entitled to vote to accept or reject this Plan. To the extent that holders of Allowed D&O Trust Claims are Insiders, such votes shall not be counted in determining whether at least one class of impaired claims has accepted the Plan, as required by Section 1129(a)(10) of the Bankruptcy Code.

(b)    Allowance of D&O Claims.  All Allowed D&O Trust Claims shall be determined and paid pursuant to the terms, provisions, and procedures of the D&O Trust, the D&O Trust Agreement, and the D&O Trust Distribution Procedures.  The D&O Trust will be funded in accordance with the provision of Article VI of this Plan and the D&O Trust Documents, including the Insurance Assignment Agreement.

(c)    Distributions.

(i)    D&O Trust Claims shall be paid from the D&O Trust in FIFO order based on the date of entry of the D&O Proceeding Final Order providing for a Final Award in the D&O Proceeding giving rise to such D&O Trust Claim.  Among D&O Trust Claims created by the same D&O Proceeding Final Order, D&O Trust Claims will be paid in accordance with the D&O Proceeding Final Order giving rise to such D&O Trust Claim.

(ii)    Post Effective Date, on a monthly basis the Reorganized Debtor and any other applicable D&O Trust Claim Holders shall submit to the Trustee a notice setting forth the amount of such D&O Trust Claim Holders' Defense Costs approved and incurred during the previous month, together with all documentation necessary to reasonably satisfy the Trustee of the reasonableness of the claimed Defense Costs (collectively, the "Defense Cost Notice").  The Trustee shall reimburse the Reorganized Debtor and any applicable D&O Trust Claim Holders promptly upon receipt of a Defense Cost Notice and the Trustee's determination that such Defense Costs are reasonable but in no event later than thirty (30) days after receipt of the Defense Cost Notice.

(iii)    The D&O Trust shall be funded by the balance of the remaining proceeds in the D&O Policies after contributions to the Settlement Fund.  The Debtor estimates the remaining proceeds to be approximately $13.0 million, after funding the Settlement Fund and payment of Defense Costs reimbursable pursuant to the Defense Cost Motion.  In the event the D&O Trust funds are exhausted, so long as the SEC Investigation is pending and unresolved, the Reorganized Debtor shall contribute up to and not to exceed $2.5 million for defense costs of the Debtor's current officers and

directors, as determined commencing with the Petition Date, when such claims are determined to be valid by the Trustee under the D&O Trust.

### 4.13   CLASS 13 - OTHER EQUITY INTERESTS

(a)   Impairment and Voting. Class 13 is impaired under this Plan, the holders of Class 13 Claims are entitled to no Distributions under this Plan, and all Equity Interests shall be deemed canceled as of the Effective Date. Class 13 is deemed to have rejected this Plan, and therefore, shall not be entitled to vote to accept or reject this Plan.

(b)   Distributions. On the Effective Date, all Equity Interests shall be canceled, annulled and extinguished and all other agreements, instruments and documents evidencing the Equity Interests and the rights of the holders thereof, shall be automatically cancelled and deemed null and void and of no further force and effect (all without further actor action by any Person) and holders of Equity Interests shall not be entitled to receive or retain any property or interest in property under this Plan on account of such Equity Interests.

### 4.14   CLASS 14 – SECURITIES CLAIMS

Class 14 Claims are claims of holders of claims pursuant to the proposed Stipulation of Settlement entered in the Class Action.[5]  Pursuant to the Plan and the Stipulation of Settlement, the Debtor and various D&O Insurance Contributors will establish a settlement fund (the "Settlement Fund") in the amount of $41 million (of which approximately $37 million is to be contributed from certain of the D&O Policies, excluding the Cornerstone and Montana Power Company policies identified on Exhibit C, and $4 million is to be contributed from other Persons and parties) to settle the Class Action.

Class 14 Claims will be discharged and the Holders thereof shall be forever barred from seeking to recover any payment on their Securities Claims from the Debtor, the Reorganized Debtor, or the Released Parties.

Holders of Securities Claims may elect to refuse to accept the proposed treatment provided in the Class Action Settlement Documents (the "Opt-Out Election"). The holders of Securities Claims who exercise the Opt-Out Election and preserve their

---

[5]     In the event the proposed Stipulation of Settlement is not approved and does not become effective: (a) the Plan and any proposed Order confirming the Plan (i) will not release any non-Debtor for that matter, from the claims asserted or to be asserted in the Securities Litigation; and (ii) will not affect, in any way, the Class Claimants' rights to obtain relief for their claims in the Securities Litigation; (b) the Lead Plaintiffs and the Class Claimants shall retain their rights to pursue their claims and access the proceeds of any available D&O Policies that provide coverage for the claims asserted in the Securities Litigation; and (c) the Debtor's current and former officers and directors, financial advisors, accountants, auditors, agents or professional will not be released and discharged from any cause of action in connection with the Class Action.

rights to proceed against the Debtor in the District Court in accordance with the requirements of the Class Action Settlement Documents, shall be holders of Class 15 Claims.

Holders of Securities Claim who choose the Opt-Out Election prior to Final Approval and become holders of Class 15 Claims shall not be entitled to any Distributions under the Plan and Class 14 Claims when liquidated. Any D&O Proceedings Final Order obtained by such holders of Securities Claims shall be channeled to the D&O Trust.

Distributions from the Settlement Fund shall be made in the amounts, at the times and in the manner provided for in the Class Action Settlement Documents, which shall also govern requirements for qualifying for distributions, the manner and time of the giving of notices, the forms of the documents to be filed by holders of Securities Claims and all other matters concerning the Class Action and its settlement other than as specifically provided for in the Plan. Neither the Debtor nor Reorganized Debtor shall have any responsibility with respect to the Class Action Settlement Documents or the disposition of the Settlement Fund after Final Approval, other than to cooperate in certain respects in the gathering of certain information with respect thereto and coordinating with the carriers of the D&O Policies regarding payment.

The defendants in the Class Action have the option, in their sole discretion, to terminate the Stipulation of Settlement if the amount of the securities as to which an Opt-Out Election is properly exercised exceeds five percent (5%) of such securities, or an amount otherwise agreed to by the defendants in the Class Action.

If the option to terminate the Stipulation of Settlement is not exercised, each holder of a Class 14 Claim will, pursuant to the Class Action Settlement Documents, release all Securities Claims such holder may have against the D&O Protected Parties and the other defendants in the Class Action. Class 14 Claims are unimpaired, and therefore, shall not be entitled to vote to accept or reject this Plan.

4.15    **CLASS 15 – OPT-OUT SECURITIES CLAIMS**

(a)     Impairment and Voting. Class 15 is impaired under this Plan and the holders thereof are entitled to no Distributions under this Plan. Class 15 is deemed to have rejected this Plan, and therefore, shall not be entitled to vote to accept or reject this Plan.

(b)     Distributions. On the Effective Date, all holders of Opt-Out Securities Claims upon receipt of a D&O Proceeding Final Order shall be channeled to the D&O Trust and shall receive the same treatment as holders of Class 12 Claims. Holders of Class 15 Claims shall not be entitled to receive or retain any property or interest in property under this Plan.

(c)    In order to preserve any Securities Claim it may have against the Debtor, each holder of an Opt-Out Securities Claim must execute an Opt-Out Form. Submission of an Opt-Out Form that does not indicate to the contrary, will be deemed to be an election to preserve such Claim in the District Court sitting in bankruptcy and seek a D&O Proceedings Final Order from the District Court.

## ARTICLE V

### MEANS OF IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN

5.1    Plan Funding.  The funds utilized to make cash payments under this Plan have been and/or will be generated from, among other things, the operation of the Debtor's businesses, the sale of certain subsidiary assets and distribution of the proceeds to the Debtor, and cash on hand on the Effective Date.  In addition, the Debtor may enter into a new revolving credit facility to be effective upon the Debtor's exit from Chapter 11.[6]

The D&O Trust shall be funded by the balance of the remaining proceeds in the D&O Policies after contributions to the Settlement Fund as described above.  The Debtor estimates the remaining proceeds to be approximately $13 million.  In the event the D&O Trust Funds are exhausted, the Reorganized Debtor shall contribute up to $2.5 million for defense costs of the Debtor's current officers and directors, as determined commencing with the Petition Date, until the SEC Investigation has concluded.

5.2    CSFB Facility and Secured Bonds.  Unless repaid, claims and interests granted by the CSFB Facility will continue on the Effective Date pursuant to the CSFB Order and the CSFB Financing Documents and will be an obligation of the Reorganized Debtor.  The Secured Bonds will be Reinstated on the Effective Date and will be an obligation of the Reorganized Debtor.

5.3    Reorganized Debtor Charter.  On the Effective Date, the Reorganized Debtor Charter and by-laws will become effective. The Reorganized Debtor Charter, together with the provisions of this Plan, shall, as applicable, provide for, among other things, the incorporation of Reorganized Debtor as a "C" corporation and the authorization of the New Common Stock, and such other provisions as are necessary to facilitate consummation of this Plan, including a provision prohibiting the issuance of non-voting equity securities in accordance with Section 1123(a)(6) of the Bankruptcy Code, all without any further action by the stockholders or directors of the Debtor or Reorganized Debtor.  The issuance of New Common Stock is hereby authorized without

---

[6] On or about August 20, 2004, Motion for Order Authorizing the Debtor to Enter Agreements for its Exit Financing Facility and to Pay Fees and Expenses and Incur Indemnification Obligations in connection therewith pursuant to Sections 105(a), 107(b) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9018.

the need for any further corporate action or action by the New Board or stockholders of Reorganized Debtor.

5.4    New Common Stock. On the Effective Date, Reorganized Debtor shall: (i) have authorized capital of 200,000,000 shares of New Common Stock and 50,000,000 shares of "blank check" preferred stock; and (ii) issue, in accordance with the terms of this Plan, up to 37,765,957 shares of New Common Stock plus Warrants representing an additional 5,304,598 shares of New Common Stock upon exercise of all of the Warrants pursuant to their terms. All shares of New Common Stock and Warrants to be issued pursuant to this Plan shall be, upon issuance, fully paid and non-assessable, and shall be subject to dilution as of the Effective Date only as may be expressly set forth in this Plan, the Plan Documents or the Reorganized Debtor Charter. After the Effective Date, the holders thereof shall have no preemptive or other rights to subscribe for additional shares except as may otherwise be allowed pursuant to the Reorganized Debtor Charter.

5.5    Cancellation and Surrender of Existing Securities Agreements

(a)    Except as may otherwise be provided in this Plan, on the date Distributions are made, (i) the promissory notes, share certificates, bonds and other instruments evidencing any Claim or Equity Interest, to the extent not already cancelled shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule; and (ii) the obligations of the Debtor under the certificate of incorporation, agreements, indentures and certificates of designations governing such Claims and Equity Interests, as the case may be, shall be discharged and released; provided, however, that any such indenture or other agreement that governs the rights of the holder of a Claim based on an existing promissory note, bond and other instrument that is administered by an Indenture Trustee, agent or servicer shall continue in effect solely for the purposes of allowing such Indenture Trustee, agent, or servicer to make the distributions to be made on account of such Claims under the Plan, as provided hereunder, and allowing such Indenture Trustee, agent or servicer to enforce its Indenture Trustee Charging Lien, as more particularly described in Section 5.18 hereof. Notwithstanding the foregoing, the documents and instruments evidencing Claims that are Reinstated and rendered unimpaired pursuant to Article IV hereof, including without limitation the Montana First Mortgage Bond Claims, the South Dakota First Mortgage Bond Claims, South Dakota Pollution Control Bond Claims, the Gas Transition Bond Claims and the Montana Pollution Control Bond Claims, shall not be deemed cancelled.

(b)    Except as otherwise provided herein or agreed by Reorganized Debtor, each holder of a promissory note, share, certificate, bond or other instrument evidencing a Claim or Equity Interest, shall surrender such promissory note, share certificate, bond or instrument to Reorganized Debtor (or the Disbursing Agent), or, with respect to indebtedness that is governed by the Unsecured Note Indentures or the Unsecured Subordinated Note Indentures, the respective indenture trustee, agent or

servicer, as the case may be. Notwithstanding the foregoing, each holder of a promissory note, share certificate, bond or other instrument evidencing those Claims that are Reinstated and rendered unimpaired pursuant to Article IV hereof, including without limitation the Montana First Mortgage Bond Claims, the South Dakota First Mortgage Bond Claims, South Dakota Pollution Control Bond Claims, Gas Transition Bond Claims and the Montana Pollution Control Bond Claims, shall not be required to surrender such promissory note, share certificate, bond or instrument to Reorganized Debtor (or the Disbursing Agent).

(c)    No Distribution of property hereunder shall be made to or on behalf of any holders required to surrender their bonds pursuant to Section 5.5(b) above unless and until such promissory note, share certificate, bond or instrument is received by Reorganized Debtor (or the Disbursing Agent), or the respective Indenture Trustee, agent or servicer, as the case may be, or the unavailability of such promissory note, share certificate, bond or instrument is established to the reasonable satisfaction of Reorganized Debtor (or the Disbursing Agent), or such requirement is waived by Reorganized Debtor. Reorganized Debtor may require any holder that is unable to surrender or cause to be surrendered any such promissory notes, share certificates, bonds or instruments to deliver an affidavit of loss and indemnity reasonably satisfactory to Reorganized Debtor. Any holder that fails within the later of one year after the Effective Date and the date of Allowance of its Claim or Equity Interest: (i) to surrender or cause to be surrendered such promissory note, share certificate, bond or instrument; and (ii) if requested, to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to Reorganized Debtor (or the Disbursing Agent), shall be deemed to have forfeited all rights, Claims and Causes of Action against the Debtor and Reorganized Debtor and shall not participate in any Distribution hereunder.

5.6    Continuation of Bankruptcy Injunction or Stays.

(a)    All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

(b)    Each of the injunctions relating to the D&O Proceedings and the D&O Trust as set forth in this Plan shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by this Plan. Notwithstanding anything to the contrary contained in this Plan, all actions in the nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

(c)    In the event that the D&O Trust determines that an Injunction Default may have occurred, the D&O Trust shall be entitled, by motion or adversary proceeding, in its sole discretion, to seek a determination by the Bankruptcy Court that an Injunction Default has occurred, and the D&O Trust Channeling Injunction shall be of no further force and effect with respect to the Released Parties.

ATL/1005339.47                    -47-

(d)    Any and all injunctions contemplated by the Plan shall be limited to the extent necessary to permit the Debtor and/or the TA Debtors, or any trustee, agent or committee of creditors acting on behalf of or in the place of the Debtor and/or the TA Debtors, to commence and litigate any and all Claims or Causes of Action with respect to the alleged ownership interests in the Montana Power Company Policies.

5.7    Revesting of Assets.  Except as otherwise provided by this Plan, upon the Effective Date, title to all properties and assets of the Debtor shall pass from the Debtor to Reorganized Debtor free and clear of all Claims, Liens, encumbrances and interests of creditors and (except those Claims, Liens, encumbrances and interests created or permitted to continue to be retained pursuant to this Plan) and the Confirmation Order shall be a judicial determination of discharge and extinguishment of all Claims, Liens or Equity Interests (except those created or permitted to continue to be retained pursuant to this Plan).  All pre-Effective Date Claims, liabilities and obligations of the Debtor are treated and/or discharged in accordance with the terms of this Plan and, except as otherwise set forth herein, shall not in any manner be (or be deemed to be) transferred or assumed by Reorganized Debtor.  On the Effective Date, or as soon thereafter as practicable, the Disbursing Agent shall make all Distributions required under this Plan in satisfaction of Allowed Claims against the Debtor including, but not limited to, the following: (i) the consideration described in Section 4.1(b) of this Plan to the holders of Allowed Priority Claims in full and final satisfaction of such Priority Claims; (ii) the consideration described in Section 4.2(b) of this Plan to the holders of Allowed Unsecured Priority Claims in full and final satisfaction of such Unsecured Priority Claims; (iii) the consideration described in Section 4.3(b) of this Plan to the holders of Allowed Bank One DIP Financing Claims in full and final satisfaction of such Bank One DIP Financing Claims; (iv) the consideration described in Section 4.7(c) of this Plan to the holders of Allowed Unsecured Note Claims in full and final satisfaction of such Unsecured Note Claims; (v) the consideration described in Section 4.8(c) of this Plan to the holders of Allowed Unsecured Subordinated Note Claims in full and final satisfaction of such Unsecured Subordinated Note Claims; (vi) the consideration described in Section 4.9(c) of this Plan to the holders of the Allowed General Unsecured Claims in full and final satisfaction of such General Unsecured Claims; and (vii) the consideration described in Section 4.10(b) of this Plan to the holders of the Allowed Unsecured Convenience Claims, in full and final satisfaction of such Unsecured Convenience Claims.

Nothing in the Plan or Confirmation Order releases or nullifies any liability to a governmental entity under police and regulatory statutes and regulations that any entity would be subject to as the owner or operator of property after the Effective Date.  Nothing in the Plan or Confirmation Order shall release, discharge, or preclude any Claim that arises after the Effective Date that the United States Environmental Protection Agency or any state environmental agency may have against the Debtor or any remedies of the United States Environmental Protection Agency or state environmental agencies

that are not within the definition of Claim as set forth in Section 101(5) of the Bankruptcy Code.

### 5.8    Revesting of Railroad Permits in Reorganized Debtor's Name.

On November 15, 2002, the Debtor acquired certain utility operating assets previously held by the Montana Power Company from Northwestern Energy, LLC, including certain railroad permits.  Consistent with the terms of the underlying transaction, the Debtor obtained blanket assignments of permits for a fee of $1,000 from Union Pacific Railroad.  On the Effective Date, or as soon thereafter as practicable, the Disbursing Agent shall pay $1,000 to Burlington Northern Santa Fe Railroad Company, Montana Rail Link, Inc., Montana Western Railway Company, and Rarus Railway Company and the Reorganized Debtor shall receive blanket assignment of all permits currently held in the name of Montana Power Company or NorthWestern Energy, LLC.

### 5.9    General Release of Liens.  Except as otherwise provided in this Plan, or in any contract, instrument, indenture or other agreement or document created in connection with this Plan or the implementation thereof, on the Effective Date, all mortgages, deeds of trust, Liens or other security interests against property of the Estate are hereby released and extinguished, and all the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests will revert to Reorganized Debtor as applicable, and the successors and assigns thereof.

### 5.10    Full and Final Satisfaction.  All payments and all Distributions hereunder shall be in full and final satisfaction, settlement, release and discharge of all Claims and Equity Interests, except as otherwise provided in this Plan.

### 5.11    Waiver of Avoidance Actions.  The Debtor shall provide notice of any Avoidance Actions 30 days prior to the voting deadline and shall initiate them within 180 days of the Effective Date.  After such date, the Debtor and Reorganized Debtor, for and on behalf of themselves and their Estate, hereby waive and release any Avoidance Actions; provided, however, that the foregoing waiver and release shall not apply to any such causes of Action that are pending on such date.

### 5.12    Termination of Subordination Rights.    Except as otherwise provided in this Plan, the classification and manner of satisfying all Claims and Equity Interests under this Plan take into consideration all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, Sections 510(b) and (c) of the Bankruptcy Code or otherwise, that a holder of a Claim or Equity Interest may have against other Claim or Equity Interest holders with respect to any Distribution made pursuant to this Plan.  On the Effective Date, all contractual, legal or equitable subordination rights that a holder of a Claim or Equity Interest may have with respect to any Distribution to be made pursuant to this Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined and Distributions pursuant to this Plan shall not be subject to

payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by any beneficiary of such terminated subordination rights.

     5.13   <u>No Successor Liability; No Liability for Certain Released Claims</u>.

     (a)   Except as otherwise expressly provided in this Plan, with respect to the Debtor, Reorganized Debtor and the D&O Trust, the Debtor, Reorganized Debtor, the other Released Parties, and the D&O Trust do not, pursuant to this Plan, assume, agree to perform, pay, or indemnify creditors for any Claims, liabilities or obligations of the Debtor relating to or arising out of the operations of or assets of the Debtor whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to, the Confirmation Date. Neither the Released Parties, Reorganized Debtor, nor the D&O Trust is, or shall be, a successor to the Debtor by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that Reorganized Debtor and the D&O Trust shall assume the obligations specified in this Plan and the Confirmation Order.

     (b)   Except as otherwise expressly provided in this Plan, effective automatically on the Effective Date, the Released Parties, their respective representatives and the Additional Indemnitees shall not be released from any and all Claims and Causes of Action arising under Section 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or similar Claims or Causes of Action arising under state or any other law, including, if applicable, Claims in the nature of fraudulent transfer, successor liability, corporate veil piercing, or alter ego-type Claims, as a consequence of transactions, events, or circumstances involving or affecting the Debtor (or any of its predecessors) or any of their respective businesses or operations that occurred or existed prior to the Effective Date.

     5.14   <u>Administration Pending Effective Date</u>.  Prior to the Effective Date, the Debtor shall continue to operate its businesses as a debtor-in-possession, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. After the Effective Date, Reorganized Debtor may operate its businesses, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, but subject to the continuing jurisdiction of the Bankruptcy Court as set forth in Article XIII hereof.

     5.15   <u>Setoffs</u>. Nothing contained in this Plan shall constitute a waiver or release by the Debtor of any rights of setoff the Debtor may have against any Person unless otherwise agreed in writing by the Debtor prior to the Effective Date or Reorganized Debtor after the Effective Date.

     5.16   <u>Post-Confirmation Fees, Final Decree</u>.  Reorganized Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. § 1930(a)(6) and the filing of post-confirmation reports, until a final decree is entered. A

final decree shall be entered as soon as practicable after distributions have commenced under this Plan.

     5.17   <u>Section 1145 Exemption</u>.  The issuance of the New Common Stock, the Warrants and other securities that may be deemed to be issued pursuant to this Plan shall be exempt from registration requirements in accordance with Section 1145 of the Bankruptcy Code.

     5.18   <u>Indenture Trustees Charging Lien</u>.  On the Effective Date, Reorganized Debtor will pay the Indenture Trustees' Fees and Expenses in full and in Cash, in an amount to be agreed upon among the Debtor and each of the Indenture Trustees. In the event that the parties cannot reach an agreement on the amount thereof, any disputed amount shall be determined by the Bankruptcy Court, pursuant to Section 503 of the Bankruptcy Code, and in accordance with the terms of the applicable Indenture. Otherwise, the Indenture Trustees shall not be required to file an application with the Bankruptcy Court for payment of Indenture Trustees' Fees and Expenses. Upon receipt of payment by any Indenture Trustee of Indenture Trustees' Fees and Expenses, any Indenture Trustee Charging Lien under the applicable Indenture shall automatically be deemed released to the extent of payment on account of Indenture Trustees' Fees and Expenses; to the extent any Indenture Trustees' Fees and Expenses are not paid by the Reorganized Debtor (whether as a result of disagreement between the Indenture Trustee and the Reorganized Debtor, and/or following determination by the Bankruptcy Court) the Indenture Trustee Charging Lien of such Indenture Trustee shall not be impaired. Such payments shall be in full and final satisfaction of all pre- and post-petition Claims of the Indenture Trustees. Subject to Reorganized Debtor's obligations under this Section, distributions to holders of Unsecured Notes, Unsecured Subordinated Notes, the South Dakota Pollution Control Bond Claims, Gas Transition Bond Claims or the Montana Pollution Control Bond Obligation Claims pursuant to this Plan will not be reduced on account of payments made to the Indenture Trustees, as applicable, on account of the Indenture Trustee Charging Liens.

     Notwithstanding the above, on the Effective Date, and subject only to the review of the fee auditor appointed in this Chapter 11 Case, the Debtor shall pay to Harbert and Wilmington Trust an aggregate amount of $2.25 million on account of their legal, advisory, consulting and other professional fees and expenses, which amount shall be allocated among Harbert and Wilmington Trust by agreement between Harbert and Wilmington Trust. Notwithstanding anything set forth herein, the fees of Goldin Associates shall not be subject to review by the fee auditor appointed in this Chapter 11 Case. Neither Wilmington Trust nor Harbert shall be required to file an application with the Bankruptcy Court for payment of such fees and expenses, provided that to the extent that the aggregate legal, advisory, consulting and other professional fees and expenses incurred by Harbert and Wilmington Trust exceed $2.25 million, Harbert and Wilmington Trust (and their professionals) may seek reimbursement of such fees and expenses by submitting an application to the Bankruptcy Court pursuant to Section

503(b) of the Bankruptcy Code, provided that the Creditor's Committee reserves the right to object to such application or applications. Notwithstanding anything set forth herein, if the fees and expenses of Wilmington Trust are not reimbursed in full by the estate, the deficiency shall be paid out of the distributions received by Wilmington Trust on behalf of the Class 8(a) Claims. Moreover, the Debtor agrees (and this Plan shall provide) that Wilmington Trust shall have the right (but not the obligation) to sell in the public market that portion of the 6.60% of the New Common Stock distributed to Class 8(a) and received by Wilmington Trust as a distribution to the extent necessary to pay legal and advisory fees and expenses incurred by Wilmington Trust that are not otherwise reimbursed by the estate.

If the fees and expenses of the respective Indenture Trustees are not reimbursed in full by the Debtor, then any deficiency may be paid out of the distributions received by the respective Indenture Trustee on behalf of their respective class claimants. The Indenture Trustee shall have the right, but not the obligation, to sell into the public market any portion of the New Common Stock distributed to its respective class claimants and received by the Indenture Trustee as a distribution to the extent necessary to pay legal and advisory fees and expenses incurred by the Indenture Trustee that are not otherwise reimbursed by the Debtor.

5.19    Notwithstanding anything to the contrary herein, Reorganized Debtor shall pay in the ordinary course of the Reorganized Debtor's business the reasonable fees and expenses of the Indenture Trustees incurred after the Effective Date in connection with the Distributions to holders of the Unsecured Notes, the Unsecured Subordinated Notes, the South Dakota Pollution Control Bond Claims, Gas Transition Bond Claims or the Montana Pollution Control Bond Claims under this Plan. Nothing in this Section 5.19 shall be deemed to limit the obligations of the Reorganized Debtor to the trustee under the indentures with respect to any Secured Bonds which are Reinstated under the provisions of this Plan.[7]

5.20    Notwithstanding anything to the contrary herein, upon receipt of and acceptance of a full and final Distribution from the Reorganized Debtor, any and all Claims and Cause of Action as between the Debtor and the claimant accepting the Distribution shall be fully and finally resolved.

---

[7]    The Debtor has been advised that MBIA Insurance Corporation ("MBIA") intends to seek payment of MBIA's costs and expenses incurred by its legal and financial advisors and certain alleged advisory services of MBIA by virtue of certain financial guarantee insurance policies issued by MBIA in connection with the Montana Pollution Control Bond Obligations and/or the South Dakota Pollution Control Bond Obligations. The Debtor intends to object to paying any such costs, expenses and fees, but will do so if otherwise ordered by the Court.

## ARTICLE VI

## IMPLEMENTATION OF THE D&O TRUST

6.1    Creation of the D&O Trust.  On the Effective Date, the D&O Trust shall be created in accordance with this Plan and the D&O Trust Documents.  The D&O Trust shall be a "qualified settlement fund" within the meaning of Section 468E of the Internal Revenue Code and the regulations issued thereunder.  The purpose of the D&O Trust is to assume liability for any D&O Trust Claims that arise out of the D&O Proceedings and to use the D&O Trust Assets to pay such D&O Trust Claims and the Defense Costs in accordance with the D&O Trust Agreement and the TDP, and in such a way that all holders of D&O Trust Claims that involve similar Claims are treated in substantially the same manner.  On the Effective Date, all right, title and interest in and to the D&O Trust Assets and any proceeds or Causes of Action thereunder shall be transferred to and vested in the D&O Trust, free and clear of all Claims, Equity Interests, Encumbrances and other interests of any Person without any further action of any Person.

6.2    Appointment of the Trustee.  Prior to or at the Effective Date, the Debtor shall nominate the Trustee of the D&O Trust.  The Bankruptcy Court, after notice and opportunity for hearing, shall appoint the initial Trustee to serve as Trustee of the D&O Trust in accordance with the D&O Trust Agreement, effective as of the Effective Date.

6.3    Appointment of Trust Advisory Committee Members.  Prior to or at the hearing with respect to the confirmation of this Plan, the Debtor, the Creditors' Committee and the holders of D&O Trust Claims shall nominate three (3) members to the TAC.  On the Confirmation Date, effective as of the Effective Date, the Bankruptcy Court shall appoint the initial members of the TAC (and thereupon the TAC shall be formed) to serve as members of the TAC in accordance with the D&O Trust Agreement.

6.4    Insurance Assignment.  On the Effective Date, Debtor and each of the D&O Insurance Contributors shall execute and deliver the Insurance Assignment Agreement and such agreement shall thereupon be the valid, binding and enforceable obligation of each party thereto in accordance with the terms thereof.  Within six (6) months of the Effective Date, at the direction and request of the D&O Trust, a D&O Insurance Entity or Reorganized Debtor, as applicable, shall pursue any D&O Insurance Rights for the benefit of and to the fullest extent required by the D&O Trust, by negotiation or, if necessary, by the initiation of all appropriate and necessary legal action, to secure such D&O Insurance Rights and shall take such other action as the D&O Trust may request, including but not limited to granting to D&O Trust a security interest in the D&O Insurance Rights and commencing a declaratory judgment action to ascertain whether assignment of those D&O Insurance Rights constitutes a breach thereof.  A D&O Insurance Contributors or the Reorganized Debtor, as applicable, shall immediately transfer any amounts recovered under or on account of any of the D&O Insurance Rights

to the D&O Trust; provided, however, that while any such amounts are held by or under the control of a D&O Insurance Contributors, such amounts shall be held in trust for the benefit of the D&O Trust.

      6.5    Transfer of Claims and Demands to the D&O Trust.  On the Effective Date, all liabilities, obligations, and responsibilities relating to all D&O Trust Claims shall be transferred to the D&O Trust.

      6.6    Discharge of Liabilities to Holders of D&O Trust Claims.  Except as provided in the Plan Documents and the Confirmation Order, the transfer to, vesting in, and assumption by the D&O Trust of the D&O Trust Assets and the D&O Insurance Assignment as contemplated by this Plan, the D&O Protected Parties Settlement Agreement, and the Insurance Assignment Agreement, among other things, on the Effective Date shall (a) discharge, release and extinguish all obligations and liabilities of the Debtor and Reorganized Debtor for and in respect of all D&O Trust Claims, and (b) discharge, release and extinguish all obligations and liabilities of the Released Parties for and in respect of all D&O Trust Claims.  On Effective Date, the D&O Trust shall assume liability for any D&O Trust Claims that arise out of the D&O Proceedings and shall pay the D&O Trust Claims and Defense Costs in accordance with the TDP.

      6.7    Institution and Maintenance of Legal and Other Proceedings.  As of the Effective Date, the D&O Trust shall be empowered to initiate, prosecute, defend, and resolve all Causes of Action related to any asset, liability, or responsibility of the D&O Trust.  The D&O Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all Causes of Action arising from or related to the D&O Insurance Rights.  The D&O Insurance Entities shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all Causes of Action arising from or related to their respective insurance rights to the extent permitted or required by the Insurance Assignment Agreement.

      6.8    Indemnification by the D&O Trust.  As and to the extent provided in the D&O Trust Agreement, the D&O Trust will indemnify and hold harmless each of: (a) the Debtor and Reorganized Debtor and their respective Subsidiaries and their respective past, present and future representatives, in their capacities as such, and (b) the Released Parties.

      6.9    D&O Insurance Entity Injunction.

      (a)    Purpose and Provisions.  To protect the D&O Trust and preserve its assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under Section 105(a) of the Bankruptcy Code, the Bankruptcy Court shall issue the D&O Insurance Entity Injunction, as described in Section 10.5(c) of this Plan; provided, however, that: (i) the D&O Trust shall have the sole and exclusive authority at any time to terminate or reduce or limit the scope of, the D&O Insurance Entity Injunction with respect to any D&O Insurance Entity upon express written notice to such D&O Insurance

Entity; and (ii) the D&O Insurance Entity Injunction is not issued for the benefit of any D&O Insurance Entity and no D&O Insurance Entity is a third-party beneficiary of the D&O Insurance Entity Injunction.

(b)    Terms.    Subject to the provisions provided in Section 6.9(c) of this Plan, all Persons (not including the D&O Trust and, to the extent permitted or required under Section 6.7 of this Plan or the Insurance Assignment Agreement, Reorganized Debtor and the D&O Insurance Entities) that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim, demand or Cause of Action (including any D&O Trust Claim or any Claim or demand for or respecting any Trust Expenses), against any D&O Insurance Entity, based upon, relating to, arising out of, or in any way connected with any Claim, demand, D&O Insurance Rights, D&O Policies, or Release Parties Settlement Agreement whenever and wherever arisen or asserted (including all Claims in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity or admiralty) shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction or recovery with respect to any such Claim, demand, or Cause of Action, including:

(i)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or Cause of Action against any D&O Insurance Entity or against the property of any D&O Insurance Entity, with respect to any such Claim, demand or Cause of Action;

(ii)    enforcing, levying, attaching, collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any D&O Insurance Entity, or against the property of any D&O Insurance Entity, with respect to any such Claim, demand, or Cause of Action;

(iii)    creating, perfecting, or enforcing in any manner, directly or indirectly any Lien against any D&O Insurance Entity, or the property of any D&O Insurance Entity, with respect to any such Claim, demand, or Cause of Action;

(iv)    except as otherwise specifically provided in this Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, or contribution of any kind, directly or indirectly, against any obligation due any D&O Insurance Entity or against the property of any D&O Insurance Entity, with respect to any such Claim, demand, or Cause of Action; and

(v)    taking any act in any manner in any place whatsoever that does not conform to, or comply with, the provisions of the Plan Documents relating to such Claim, demand, or Cause of Action,

provided, however, that (x) the D&O Trust shall have the sole and exclusive authority at any time to terminate, or reduce, or limit the scope of, the D&O Insurance Entity Injunction with respect to any D&O Insurance Entity upon express written notice to such D&O Insurance Entity and (y) the D&O Insurance Entity Injunction is not issued for the benefit of any D&O Insurance Entity and no D&O Insurance Entity is a third-party beneficiary of the D&O Insurance Entity Injunction.

      (c)   Reservations. Notwithstanding anything to the contrary above, this D&O Insurance Entity Injunction shall not enjoin:

      (i)   the rights of Persons to the treatment accorded them under this Plan, including the rights of Persons with D&O Trust Claims or Defense Costs to assert such D&O Trust Claims or Defense Costs against the D&O Trust in accordance with the TDP;

      (ii)   the rights of Persons to assert any Claim, debt, obligation, or liability for payment of Trust Expenses against the D&O Trust;

      (iii)   the rights of the D&O Trust to prosecute any action based on or arising from the D&O Insurance Rights;

      (iv)   the rights of Reorganized Debtor and the D&O Insurance Entities for the benefit of the D&O Trust (but only to the extent permitted or required under Section 6.7 of this Plan or the Insurance Assignment Agreement) to prosecute any action based on or arising from D&O Insurance Rights;

      (v)   the rights of the D&O Trust to assert any Claim, debt, obligation, or liability for payment against a D&O Insurance Entity based on or arising from the D&O Insurance Rights;

      (vi)   the rights of Reorganized Debtor and the D&O Insurance Entities for the benefit of the D&O Trust (but only to the extent permitted or required under Section 6.7 of this Plan or the Insurance Assignment Agreement) to assert any Claim, debt, obligation, or liability for payment against such D&O Insurance Entity based on or arising from the D&O Insurance Right;

      (vii)   the rights of Reorganized Debtor and the D&O Insurance Entities for the benefit of the D&O Trust (but only to the extent permitted or, required under Section 6.7 of this Plan or the Insurance Assignment Agreement) to assign a Cause of Action against any D&O Insurance Entity to a holder of a D&O Trust Claim or Defense Costs and for such Claimant to assert any Claim, debt obligation, or liability for payment against such D&O Insurance Entity; and

      (viii)   any rights of the TA Debtors that may arise under any of the D&O Policies.

6.10   The D&O Trust Channeling Injunction.   Pursuant to and in connection with the Confirmation Order, the Bankruptcy Court shall enter or affirm the D&O Trust Channeling Injunction.

## ARTICLE VII

### VOTING AND DISTRIBUTIONS;
### AND TREATMENT OF DISPUTED, CONTINGENT
### AND UNLIQUIDATED CLAIMS AND EQUITY INTERESTS

7.1   Voting of Claims.   Each holder of an Allowed Claim in an impaired Class which is entitled to retain or receive property under this Plan shall be entitled to vote separately to accept or reject this Plan and indicate such vote on a duly executed and delivered Ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan, or any other order or orders of the Bankruptcy Court.

7.2   Nonconsensual Confirmation.   If any impaired Class entitled to vote shall not accept this Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected this Plan, the Debtor reserves the right (a) to undertake to have the Bankruptcy Court confirm this Plan under Section 1129(b) of the Bankruptcy Code and (b) to amend this Plan in accordance with Section 13.3 of this Plan to the extent necessary to obtain entry of the Confirmation Order.

7.3   Method of Distributions Under this Plan

(a)   In General.   Subject to Bankruptcy Rule 9010, all Distributions under this Plan, other than with respect to Secured Bondholder Claims which are Reinstated pursuant to this Plan, on account of D&O Trust Claims, South Dakota Pollution Control Bond Claims, Gas Transition Bond Claims and Montana Pollution Control Bond Claims, shall be made by Reorganized Debtor (or the Disbursing Agent) to the holder of each Allowed Claim at the address of such holder as listed in the Debtor's books and records or on the Schedules as of the Confirmation Date, unless the Debtor or Reorganized Debtor have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address, if any, for such holder different from the address reflected in the Debtor's books and records or on the Schedules; provided that all Distributions to the DIP Lenders under Section 4.3(b) of this Plan shall be made by Reorganized Debtor (or the Disbursing Agent) to Bank One, N.A., as agent, or any successor agent thereto, for disbursement to the DIP Lenders. With respect to D&O Trust Claims, Distributions to holders of D&O Trust Claims shall be made in accordance with the terms of the D&O Trust Documents. With respect to South Dakota Pollution Control Bond Claims, Gas Transition Bond Claims and Montana Pollution Control Bond Claims, Distributions to holders of South Dakota Pollution Control Bond Claims, Gas

Transition Bond Claims or Montana Pollution Control Bond Claims, as the case may be, shall be made to the respective indenture trustees. Each indenture trustee shall, in turn, administer the distribution to the holders of the debt issues under the applicable indenture in accordance with the terms of such indenture. The reasonable fees and expenses of each indenture trustee incurred on or after the Effective Date in connection with the Distributions described herein, including the reasonable fees and expenses of the indenture trustee's professionals and agents, shall be paid by the Reorganized Debtor without further application to or order of the Bankruptcy Court.

(b)    <u>Distributions of Cash</u>.    Any payment of Cash made by Reorganized Debtor (or the Disbursing Agent) or the D&O Trust pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer; provided that all Distributions of Cash to the DIP Lenders shall be made by Reorganized Debtor (or the Disbursing Agent) to Bank One, N.A., as agent, or any successor DIP Agent under the DIP Loan Agreement, by wire transfer of immediately available funds for disbursement to the DIP Lenders.

(c)    <u>Timing of Distributions</u>.    Any payment or Distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    <u>Fractional Dollars</u>.    Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollars (rounding down in the case of $0.50 or less and rounding up in the case of more than $0.50).

(e)    <u>Fractional Shares</u>.    No fractional shares of New Common Stock shall be distributed under this Plan. When any Distribution on account of an Allowed Claim pursuant to this Plan would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, such fractional interests shall be combined into as many whole shares as possible and shall be redistributed to holders of Allowed Claims with fractional interests, in descending order, until all such whole shares are distributed.

(f)    <u>Distributions to Holders as of the Confirmation Date</u>.    As of the close of business on the Confirmation Date, the claims register (for Claims) and the transfer ledgers (for Secured Notes and Unsecured Notes) shall be closed, and there shall be no further changes in the record holders of any Claims or Equity Interests. The Debtor and Reorganized Debtor shall have no obligation to recognize any transfer of any Claims or Equity Interests occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under this Plan (except as to voting to accept or reject this Plan pursuant to Section 7.1 of this Plan) with only those holders of record as of the close of business on the Confirmation Date.

7.4    Objections to and Resolution of Administrative Claims, Claims and Equity Interests. Except as to applications for allowance of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code (with respect to which procedures respecting objections shall be governed by Section 2.2(b) of this Plan and the Confirmation Order or other Final Order), any party in interest may file objections to the allowance of any Administrative Claims, Claims and Equity Interests subsequent to the Confirmation Date. All objections shall be litigated to Final Order; provided, however, that Reorganized Debtor shall have the exclusive authority to compromise, settle, otherwise resolve or withdraw any objections filed by Reorganized Debtor. If any joinder is made with respect to an objection, and the objection is subsequently withdrawn, the joinder shall be deemed withdrawn as well. Unless otherwise ordered by the Bankruptcy Court, all objections to the allowance of Administrative Claims, Claims or Equity Interests that are the subject of proofs of claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses), shall be filed and served upon the holder of the Administrative Claim, Claim or Equity Interest as to which the objection is made as soon as is practicable, but in no event later than ninety (90) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

7.5    Establishment and Maintenance of Reserve for Disputed Claims. Reorganized Debtor shall maintain the Disputed Claims Reserve equal to the aggregate of any distributable amounts of Cash and New Common Stock equal to the relevant percentage of the Distributions to which holders of Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or such lesser amount as required by a Final Order. For the purposes of effectuating the provisions of this Section and the Distributions to holders of Allowed Claims, the Debtor may, at any time and regardless of whether an objection to the Disputed Claim has been brought, request that the Bankruptcy Court estimate, set, fix or liquidate the amount of Disputed Claims pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so estimated, fixed or liquidated shall be deemed the Allowed amounts of such Claims for purposes of distribution under this Plan. In lieu of estimating, fixing or liquidating the amount of any Disputed Claim, the Bankruptcy Court may determine the amount to be reserved for such Disputed Claim (singularly or in the aggregate), or such amount may be fixed by an agreement in writing by and between the Debtor and the holder of a Disputed Claim.

7.6    Distributions Upon Allowance of Disputed Claims. The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive Distributions from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with this Plan based upon the Distributions that would have been made to such holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date plus any interest, dividends or other Distributions earned thereon. No holder of a Disputed Claim shall

ATL/1005339.47                    -59-

have any Claim against the Disputed Claims Reserve or Reorganized Debtor with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest, dividends or other Distribution on such Disputed Claim except as provided in this Section.

       7.7    <u>Surplus Distribution</u>. The following assets shall constitute Surplus Distributions: (i) Unclaimed Property; and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, any excess of the amount of Cash or New Common Stock in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash or New Common Stock actually distributed on account of such Disputed Claim plus any interest, dividends or other Distributions earned thereon. On each Subsequent Distribution Date, the holders of Allowed Claims shall receive a Pro Rata Share in the Surplus Distributions attributable to such holders' Class; <u>provided</u>, <u>however</u> that Reorganized Debtor shall not be under any obligation to make Surplus Distributions on a Subsequent Distribution Date unless the aggregate market value of the Surplus Distributions (which value shall be determined based on the intrinsic value as of the Effective Date) to be distributed on such Subsequent Distribution Date exceeds $50,000 in any Class; <u>provided</u>, <u>further</u> that if the Final Distribution required under this Plan is less than $25,000 in aggregate market value in any Class such Surplus Distributions shall revest in Reorganized Debtor.

       7.8    <u>Distributions Relating to Allowed Insured Claims</u>. Distributions under this Plan to each holder of an Allowed Insured Claim shall be in accordance with the treatment provided under this Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the holder thereof under any pertinent insurance policies and applicable law. Nothing contained in this Section shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Person may hold against any other Person, including, without limitation, insurers under any policies of insurance.

       7.9    <u>Plan Committee</u>. On or before the Effective Date, the Creditors' Committee shall appoint members of the existing Creditors' Committee to a committee (the "<u>Plan Committee</u>") for the purpose of overseeing the remaining Claims reconciliation and settlement process. Notwithstanding any other provision in this Plan, after the Effective Date, both the Debtor and Reorganized Debtor shall settle and compromise Claims according to the following procedures: (i) if the resulting settlement provides for an Allowed Claim in an amount less than or equal to $100,000, Reorganized Debtor may settle the claim and execute necessary documents, including a stipulation of settlement or release, in its sole discretion and without notice to any party; and (ii) if the resulting settlement provides for an Allowed Claim in an amount greater than $100,001, Reorganized Debtor may settle the Claim, in accordance with the provisions and procedures set forth in the Plan Committee By-Laws, which provides the Plan Committee with, among other things, the right to object such claims.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION CLAIMS; AND RETIREE BENEFITS

8.1    Executory Contracts and Unexpired Leases.

(a)    Subject to Section 8.1(b) of this Plan, and excluding the Milltown Settlement and Milltown Stipulation, any unexpired lease or executory contract that has not been expressly rejected by the Debtor or treated in this Plan with the Bankruptcy Court's approval on or prior to the Confirmation Date shall, as of the Effective Date, be deemed to have been assumed by the Debtor unless there is pending before the Bankruptcy Court on the Effective Date a motion to reject such unexpired lease or executory contract (including, but not limited to any collective bargaining agreements) or such executory contract or unexpired lease is otherwise designated for rejection (including, but not limited to any collective bargaining agreements), provided, that (i) such lease or executory contract is ultimately rejected; (ii) the filing of the Confirmation Order shall be deemed to be a rejection of all then outstanding unexercised stock options, warrants and similar rights; and (iii) in accordance with Section 1123(a)(5)(G) of the Bankruptcy Code, on the Effective Date or within ninety (90) days of the Effective Date, or such other time as may be agreed to by the Reorganized Debtor and the claimant, Reorganized Debtor shall cure all defaults under any executory contract or unexpired lease assumed pursuant to this Section 8.1 by making a Cash payment in an amount agreed to between Reorganized Debtor and the claimant, or as otherwise fixed pursuant to a Final Order.

(b)    At least fifteen (15) days prior to the Voting Deadline (or such later date as the Bankruptcy Court may fix), the Debtor shall file schedules setting forth each of its executory contracts and unexpired leases to be assumed and assigned under this Plan and identifying those contracts and leases to be rejected, and the Person to which such executory contract or unexpired lease shall be assigned, together with the cure amount(s), if any, to be paid respecting such executory contracts and leases. Any party who disputes the proposed cure amount must file an objection not later than the date fixed for filing objections to confirmation of this Plan and any dispute respecting such cure amounts will be determined by the Bankruptcy Court at the Confirmation Hearing or on such later date as the Bankruptcy Court may fix. Notwithstanding the foregoing, the Debtor reserves the right, until five (5) days prior to the Confirmation Hearing, to seek to reject any executory contract or unexpired lease included on the schedule, to assume subject to the other contract party's right to (a) receive notice of the rejection, (b) object to the Debtor's rejection and (c) change its vote on the Debtor's Plan. The listing of a contract or lease on the foregoing schedules shall not constitute an admission by the Debtor that such agreement is an executory contract or an unexpired lease or that the Debtor has any liability thereunder.

8.2     Claims Deadline for Filing Proofs of Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to this Plan.  Claims arising out of the rejection of an executory contract or unexpired lease designated for rejection hereunder or pursuant to the Confirmation Order, must be filed with the Bankruptcy Court and served upon the Debtor or Reorganized Debtor by no later than 30 days after the notice of entry of an order approving such rejection or as otherwise may be provided in the Confirmation Order.  Any Claims not filed within such time will be forever barred from assertion against the Debtor, the Estate, Reorganized Debtor and its property, and the holders thereof shall not be entitled to any Distribution under this Plan or otherwise from the Debtor or Reorganized Debtor.  Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under this Plan.

8.3     Insurance Policies.  Each of the Debtor's insurance policies (except for the proceeds of certain D&O Policies being assigned to the D&O Trust) and any agreements, documents or instruments relating thereto, including, without limitation, any retrospective premium rating plans relating to such policies, are treated as executory contracts under this Plan.  Notwithstanding the foregoing, distributions under this Plan to any holder of a Claim covered by any such insurance policies and related agreements, documents or instruments that are assumed hereunder, shall be in accordance with the treatment provided under Article IV and Article VI hereof.  Each of the D&O Policies being assigned to the D&O Trust and any agreements, documents or instruments relating thereto, including, without limitation, any retrospective premium rating plans relating to such policies, are treated as assumed under this Plan.  Nothing contained in this Section 8.3 shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any Person, including, without limitation, the insurer under any of the Debtor's policies of insurance.

The Debtor is the plaintiff in an adversary proceeding styled NorthWestern Corporation v. National Union Fire Insurance Company of Pittsburgh, P.A., Adv. Proc. No. 04-53072 (CGC) (the "National Union Adversary Proceeding").  In the National Union Adversary Proceeding, the parties dispute whether the Debtor has a right to coverage arising from or under Commercial Umbrella Policy, number BE-932-96-74, with a policy period of September 1, 1999 through September 1, 2000, issued to Montana Power Company by National Union Fire Insurance Company of Pittsburgh, P.A. (the "National Union Policy").  The parties intend that only a final binding order or settlement agreement entered in the National Union Adversary Proceeding shall control the parties' respective rights and obligations arising from or under the National Union Policy.  As such, nothing contained in the Plan or Confirmation Order, including the Debtor's assumption of executory contracts under Section 8.1 through 8.3 of this Plan, shall affect coverage under the National Union Policy or National Union's rights, defenses, limitations and/or exclusions to be raised in the National Union Adversary Proceeding.

ATL/1005339.47                          -62-

8.4     <u>Indemnification Claims</u>.  Indemnity claims not channeled to the D&O Trust shall be paid: (i) if Allowed on the Effective Date, in full in cash on the Effective Date; and (ii) if not then Allowed, such indemnity claim shall be assumed and paid in the ordinary course when such claim is Allowed.

8.5     <u>Compensation and Benefit Programs</u>.     Except as otherwise provided in this Plan or subsequent motion prior to the Effective Date, all employment plans, practices, programs and policies maintained by the Debtor as of the Effective Date shall remain in full force and effect following the Effective Date, subject to any and all rights of the Debtor under applicable non-bankruptcy law to amend or terminate such plans, practices, programs and policies.

8.6     <u>Retiree Benefits</u>.     Payment of any Retiree Benefits (as such benefits may have been modified during the Chapter 11 Case) shall be continued solely to the extent, and for the duration of the period, the Debtor is contractually or legally obligated to provide such benefits, subject to any and all rights of the Debtor under applicable law (including, without limitation, the Debtor's right to amend or terminate such benefits prior to or after the Effective Date).

The Debtor has established and maintained two (2) pension plans for its employees, known as the NorthWestern Energy Pension Plan and the NorthWestern Pension Plan (collectively, the "<u>Pension Plans</u>").  The Pension Plans are single employer defined benefit plans covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("<u>ERISA</u>"), 29 U.S.C. § 1301 <u>et seq</u>.  The Pension Plans will not be terminated during the Debtor's Chapter 11 Case and the Debtor will continue to sponsor the Pension Plans after emerging from Chapter 11, assuming the Plan is confirmed.

The Pension Benefit Guaranty Corporation ("<u>PBGC</u>"), a United States Government corporation which guarantees the payment of certain pension benefits upon termination of a pension plan, has asserted that the Pension Plans may be underfunded on a termination basis.  The PBGC has filed contingent claims against the Debtor for unfunded benefit liabilities under 29 U.S.C. §§ 1362 and 1368; for unpaid minimum funding contributions under 29 U.S.C. § 1082 and 26 U.S.C. § 412; and for unpaid premiums under 29 U.S.C. § 1307.  The PBGC has asserted that portions of these claims may be entitled to priority.  PBGC's claims are contingent upon termination of the Pension Plans during the Chapter 11 Case.

8.7     <u>QF Agreements</u>.  As of the Petition Date, the Debtor was party to approximately fourteen (14) power purchase agreements giving rise to the QF Claims as defined herein.  As of the filing of the Plan, the Debtor has elected not to file a motion to reject any of the QF agreements.  Unless the Debtor files a motion to reject any of the QF agreements on or before the Confirmation Date, as of the Effective Date, such QF agreements shall be deemed assumed by the Reorganized Debtor.