**RELIEF REQUESTED**

26.     For the reasons set forth herein, the Debtor respectfully requests, pursuant to sections 105(a), 363(b) and 502(c) of the Bankruptcy Code, Bankruptcy Rule 9019 and Section 7.5 of the Second Amended Plan, that this Court estimate the amount of the Law Debenture Claim for all purposes, including for purposes of distribution under the Second Amended Plan.

**BASIS FOR RELIEF**

27.     Section 502(c) of the Bankruptcy Code provides in pertinent part that "[t]here shall be estimated for purpose of allowance under this section — (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c).

28.     A court may authorize the estimation and approximation of the value of a claim using "whatever method is best suited to the circumstances" at issue and recognizing that absolute certainty is not possible. In re Brints Cotton Marketing, Inc., 737 F.2d 1338, 1341 (5th Cir. 1984). Although the court is bound by the legal rules that govern the ultimate value of the claim, it has wide discretion in establishing the method to be used to arrive at an estimate of the value of a claim or claims. Id.; Bittner v. Borne Chemical Co., 691 F.2d 134, 135 (3d Cir. 1982) (estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim"); In re Windsor Plumbing Supply Co., Inc., 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (advocating use of probabilities in estimation of claims rather than more simplistic all or nothing approach); In re Baldwin-United Corp., 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985) (estimation "does not require that a bankruptcy judge be clairvoyant").

29.     Bankruptcy courts have wide discretion in choosing the process for estimating a claim. The methods used by courts include summary trials (Baldwin, 55 B.R. at 899), a review of written submissions of proposed facts (Windsor, 170 B.R. at 517), and a review of the

pleadings and briefs. In re Lane, 68 B.R. 609, 613 (Bankr. D. Hawaii 1986); see also Baldwin, 55 B.R. at 898 (court estimated certain claims at $0 for purposes of allowance under 502(c) based on a prior opinion in *Multi-District Litigation* and a hearing on the merits of the claims); In re Zolner, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994), aff'd, 249 B.R. 287 (N.D. Ill. 2000) (estimation of union contract claims based upon testimony and arguments, in addition to briefing and submission of affidavits); In re Apex Oil Co., 92 B.R. 843, 845 (Bankr. E.D. Mo. 1988) (applying summary trial brief on each claim subject to estimation). Whatever the procedure the bankruptcy court chooses to estimate a claim, it must be consistent with the policy underlying chapter 11, that a "reorganization must be accomplished quickly and efficiently." Bittner, 691 F.2d at 137 (citing 124 Cong. Rec. H 11101-H 11102 (daily ed. Sept. 28, 1978)). See also, In re Enron Corp. *et al.*, Docket No. 4737, Order (I) Approving Procedures for Disputing Estimation in Connection With Estimation of Claims of Certain Former Employees Arising from Termination o f E mployment a nd ( II) Approving Form and M anner o f Notice, d ated Ju ne 2 4, 2002.

30.    Just as bankruptcy courts have wide discretion in choosing the process for estimating a claim, bankruptcy courts have similar latitude in determining the process for hearing any counterclaim. Bankruptcy Rule 3007 provides that, whenever a claim for affirmative relief (e.g. a counterclaim) is included in an objection to a proof of claim, the objection is automatically converted to an adversary proceeding. *See* FED. R. BANKR. P. 3007. As an adversary proceeding, the Section VII rules apply to the Objection, including Rule 7016 concerning pre-trial procedures. *See* FED. R. BANKR. P. 7001 and 7016.

31.    Bankruptcy Rule 7016 makes applicable Rule 16 of the Federal Rules of Civil Procedure. Pursuant to Rule 16, trial courts have broad authority to enter orders to "provide for

9

the prompt litigation and disposition of every adversary proceeding and to require strict adherence the Scheduling Order." See In re Bonfiglio, 231 B.R. 197, 198 (Bankr. S.D.N.Y. 1999). Rule 16 is designed to give the trial court a "firm hand" with which it can control the litigation before it. See Campania Management Company v. Rooks, Pitts, & Poust, 290 F.3d 843, 851-52 (7th Cir. 2002). Rule 16 also gives the trial court the powers it needs to "achieve the orderly and expeditious disposition of cases." See Link v. Wabash Railroad Co., 370 U.S. 626, 630-31 (1962), reh'g denied, 371 U.S. 873 (1962); Spain v. Board of Education, 214 F.3d 925, 930 (7th Cir. 2000). These powers include the ability of the trial court to conduct pre-trial conferences to force the litigants to refine the issues and particularize their claims. See Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 28-29 (1st Cir. 1996). If after conducting such pre-trial conferences the trial court is convinced that summary judgment is proper, the court is empowered to *sua sponte* dispose of those claims. Id. ("there is no reason to require that the elimination of non-trialworthy claims await a formal motion for summary judgment.")

32.    Specifically, Rule 16 grants authority for trial courts to issue orders to:

a.    Limit the time available for discovery and the types of discovery to be used (F.R.C.P. 16(b)(3),(c)(6));

b.    Formulate and simplify the issues, including the elimination of frivolous claims or defenses (F.R.C.P. 16(c)(l)); Berkowitz, 89 F.3d at 28-29.

c.    Avoid unnecessary proof and cumulative evidence and place limitations or restrictions on the use of expert testimony (F.R.C.P. 16(c)(4));

d.    Examine the appropriateness of summary adjudication under Rule 56 (F.R.C.P. 16(c)(5));

e.    Schedule the exchange of pre-trial briefs (F.R.C.P. 16(c)(7));

f.    Employ special procedures to assist in resolving the dispute when authorized by statute or local rule (F.R.C.P. 16(c)(9)), including the use of

10

mini-trials and summary trials, (1993 Notes of
Advisory Committee to Rule 16, ¶ 10);

g.    Establish limits on the time allowed for
presenting evidence (F.R.C.P. 16(c)(15)); and

h.    Facilitate in the "just, speedy, and inexpensive
disposition of the action." (F.R.C.P. 16(c)(16).

33.    Likewise, section 105 of the Bankruptcy Code grants bankruptcy courts wide

latitude to "issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of [the Bankruptcy Code or] . . . making any determination necessary or appropriate

to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. §

105(a). For example, the authority granted by F.R.C.P. 16 and section 105 permits a bankruptcy

court to issue an order precluding contribution and indemnification claims against a settling

defendant in an adversary proceeding brought by the chapter 11 debtor. See In the Matter of

Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996).

a.    **The Debtor Should not be Required to Reserve for the Amount of the Magten Claim**

34.    The Law Debenture Claims are Disputed Claims under the Second Amended

Plan. It is likely that the Magten Adversary Proceeding will not be resolved prior to the

Continued Hearing. As a result, the Debtor may be required to fund the Disputed Claims

Reserve with New Common Stock equal to the relevant percentage of the Distributions to which

Law Debenture would be entitled under the Second Amended Plan, as if the Law Debentures

Claim were an Allowed Claim.

35.    In its objection to confirmation, Law Debenture has sought to have the Debtor

reserve the same $69 million in the Disputed Claims Reserve that Magten has sought to have the

Debtor reserve in the Magten Objection.

36.    On August 20, 2004, the Debtor filed a Motion Pursuant to Sections 105(a),

363(b) and 502(c) of the Bankruptcy Code for Estimation of Magten Asset Management's Claim

11

and to Establish Disputed Claim Reserve (the **"Magten Motion"**)[Docket No. 1951]. For the reasons set forth in the Magten Motion, the Debtor believes that the Magten Claim should be subordinated under section 510(c) of the Bankruptcy Code to the level of Class 13 Equity Interests. Class 13 Equity Interests are not entitled to receive any Distributions under the Second Amended Plan. Therefore if the Magten Claim is subordinated, Magten would not be entitled to any Distributions and the Debtor should not be required to reserve anything for Magten's Claim.

37.    Magten holds approximately 40% of the QUIPS. If the Magten Claim is estimated to be subordinated, the Disputed Claims Reserve, if any, to be established for the Law Debenture Claims should be reduced in the amount of $27,815,149.

**b.    The Debtor Should not be Required to Reserve for QUIPS Holders that Vote in Favor of the Plan and Accept Class 8(b) Treatment**

38.    Under the Second Amended Plan, Class 8(b) Claims are Claims by the holders of an Unsecured Subordinated Note Claim represented by the QUIPS Notes (each a **"QUIPS Claim"**). Pursuant to the Second Amended Plan, unless the Debtor or another party-in-interest either objects or specifically reserves the right to object to a QUIPS Claim, then on the Effective Date, the Unsecured Subordinated Note Claims represented by the QUIPS Notes shall be deemed Allowed in the aggregate amount of $69,537,873, which includes accrued and unpaid interest on the QUIPS Notes relating to the period up to but not including the Petition Date.

39.    On August 20, 2004, the Debtor commenced an adversary proceeding against Magten and therein objected to the Magten Claim. Therefore $27,815,149 (approximately 40% of the aggregate amount of $69,537,873 held by Magten) is not deemed Allowed for purposes of establishing the Disputed Claims Reserve.

40.    Furthermore, p ursuant t o t he S econd A mended Plan, e ach Q UIPS h older w ho accepts or rejects the Plan may opt to receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim either, but not both:

(a)    a Pro Rata Share of 505,591 shares of New Common Stock (such 505,591 shares representing 1.4% of the New Common Stock to be issued and outstanding on the Effective Date prior to any dilution resulting from shares of New Common Stock issued pursuant to the New Incentive Plan and exercise of the Warrants), plus Warrants exercisable for an additional 2.3% of New Common Stock (collectively, **"Option 1"**); or

(b)    a Pro Rata Share of recoveries, if any, upon resolution of the QUIPS Litigation (**"Option 2"**).

41.    If a holder of a QUIPS Claim votes to accept o r reject the Second Amended Plan and chooses Option 1, then: (i) such holder will receive its Pro Rata Share of the Distribution provided for under Option 1; and (ii) such Distribution will be in lieu of and release of any claims and rights the holder may have with respect to the QUIPS Litigation.

42.    If a holder of a QUIPS Claim votes to accept or reject the Second Amended Plan and chooses Option 2, then:  (i) such holder's claims shall be treated as a Class 9 General Unsecured Claim, subject to estimation and reserves for Disputed Claims as provided for by Section 7.5 of the Second Amended Plan, with Distributions to holders of QUIPS Claims which choose Option 2 being made, if at all, only upon entry of a Final Order resolving the QUIPS Litigation (unless otherwise agreed to by the Debtor and the Committee); and (ii) any New Common Stock which otherwise would have been distributable to such holder if such holder had chosen Option 1, shall be distributed, pro rata to Class 7 and Class 9, and the Warrants which otherwise would have been distributable will be canceled.

43.    If a holder of a QUIPS Claim votes to accept the Plan and does not designate its choice of Option 1 or Option 2, or designates both Option 1 and Option 2, such holder shall be

13

deemed to have chosen Option 1 and its receipt of its Pro Rata Share of the Distribution provided for under Option 1 will be in lieu of and release of any claims and rights to recoveries such holder may have with respect to the QUIPS Litigation.

44.    If a holder of a QUIPS Claim does not vote either to accept or reject the Second Amended Plan but Class 8(b), as a Class, votes to accept the Plan, then such non-voting holder shall be deemed to have chose Option 1 and its receipt of its Pro Rata Share of the Distribution provided by Option 1 will be in lieu of and release of any claims and rights to recoveries such holder may have with respect to the QUIPS Litigation.

45.    If a holder of a QUIPS Claim does not vote either to accept or reject the Plan but Class 8(b), as a Class, votes to reject the Plan then: (i) such non-voting holder shall be deemed to have chosen Option 2, with Distributions to such holder being made, if at all, only upon entry of a Final Order resolving the QUIPS Litigation (unless otherwise agreed to by the Debtor and the Committee); and (ii) any New Common Stock which otherwise would have been distributable to such holder if such holder had accepted the Plan and chosen Option 1, shall be distributed pro rata to Class 7 and Class 9, and the Warrants which otherwise would have been distributable will be canceled.

46.    By providing Option 1 and Option 2 to holders of the QUIPS Claims, the Second Amended Plan provides the holder of such Claims the opportunity to choose whether the holder wishes to receive a distribution of New Common Stock and Warrants as provided in Option 1 or to receive its recovery, if any, on account of its Claims by pursuing the QUIPS Litigation as provided in Option 2.

47.    Option 1 provides certainty and immediate distribution of New Common Stock to holders of the QUIPS Claims. Because holders of QUIPS Claims that choose Option 1 are

14

agreeing to not pursue the QUIPS Litigation, the Debtor believes that for each such holder, that it not be required to reserve any New Common Stock in the Disputed Claims Reserve.

**c.     In Setting the Reserve, the Court Should Consider the Difficulty in Proving Actual Fraud**

48.     In its Decision, this Court held that Magten and Law Debenture lack standing as creditors of Clark Fork to pursue a fraudulent conveyance action against the Debtor due to the Section 1102 release, unless they can prove under applicable law that the Section 1102 release was obtained through **actual fraud** or as part of a fraudulent scheme.

49.     Under Montana law, in order to prove actual fraud, the plaintiff must establish nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be relied on; (6) the hearer's ignorance of falsity of the representation; (7) the hearer must rely on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury caused by reliance on the representation. Bartlett v. Allstate Ins. Co., 929 P.2d 227, 231-2 (Mont. 1996).

50.     Given the Decision, in order for Law Debenture to go forward with the Magten Adversary Proceeding, Law Debenture is required to prove actual fraud in the procurement of the Section 1102 release, and therefore it must prove the nine elements of actual fraud listed above. As a threshold matter, Law Debenture has not plead with particularity facts to support any claim for actual fraud in procuring the release against the Debtor or Clark Fork, and therefore it is unlikely that the Magten Adversary Proceeding will be successful.

51.     Furthermore, given the facts of this case, including, without limitation, (i) the fact that the intention to transfer assets from Clark Fork to NorthWestern was disclosed in both public documents and in amendments to the QUIPS Indenture that were executed by the

15

Indenture Trustee; (ii) the fact that the QUIPS Indenture expressly permits the "going flat" transaction, and (iii) the fact that the Indenture Trustee never objected to the "going flat" transaction, the Debtor believes it is impossible for Magten or Law Debenture to prove actual fraud in this case under Montana law.

52.     Given the heavy burden of proof in establishing the actual fraud necessary to continue the Magten Adversary Proceeding, the Debtor believes that it should not be required to reserve any New Common Stock in the Disputed Claims Reserve for Option 2 electing QUIPS Creditors.    Alternatively, if the Court believes that some New Common Stock should be reserved, the Debtor believes that only a very limited amount should be reserved, in proportion to the very low probability of Law Debentures success in proving actual fraud.

### d.     The Court Should Limit Reserve to Only QUIPS Holders Who Opt out of Class 8(b) and who held QUIPS at the Time of the "Going Flat" Transaction

53.     As set forth above, the Debtor believes that it should not be required to reserve for holders of a QUIPS Claim choosing Option 1.   In addition, because the QUIPS are public securities and because fraudulent conveyance statutes were designed to protect creditors from secret transactions by debtors, the Debtor should not be required to reserve for creditors who purchased the QUIPS in open market transactions, after the "going flat" transaction was publicly disclosed and consummated. Cf. Lippi v. City Bank, 955 F.2d 599, 606-07 (9th Cir. 1992); Kupetz v. Wolf, 845 F.2d 842, 849-50 (9th Cir.1988).   Both Lippi and Kupetz stand for the proposition that state fraudulent conveyance laws do not apply to parties who extend credit to a debtor entity, after details of a transaction are disclosed.   For example, in Lippi, the Court stated that "future creditors' right to sue must be limited to cases where there is actual intent to defraud or to conceal the transaction from public scrutiny." Id.  Similarly, in Kupetz, the Court held that, as fraudulent conveyance statutes are designed to protect creditors from secret transactions,

16

"future creditors may not complain when they knew or could easily have found out about the transaction." Id.

54.     On or about December 20, 2000, NorthWestern disclosed its intention to "go flat" with the Montana Utility Assets in a joint application by NorthWestern and Montana Power filed with the Federal Energy Regulatory Commission ("FERC"). The application stated that the proposed transaction was not contingent on any particular structure and that NorthWestern would either: (a) form a holding company so that it would acquire Montana Power as a wholly-owned subsidiary; or (b) acquire Montana Power in its current "flat" structure, whereby Montana Power would become a separate division of NOR rather than a subsidiary. Attached to the FERC application were charts demonstrating NorthWestern's post-transaction organizational structure for both potential options.

55.     On or about January 12, 2001, NorthWestern again disclosed its intention to "go flat" with the Montana Utility Assets in a joint application filed with the Montana Public Service Commission ("MPSC").

56.     NorthWestern also stated in its SEC 10-K report for the period ended December 31, 2001, filed on April 1, 2002, that "we intend to transfer the energy and natural gas transmission and distribution operations of NorthWestern Energy LLC to NorthWestern Corporation during 2002."

57.     NorthWestern also disclosed its intention to "go flat" with the Montana Assets in its October 25, 2002 application to the FERC seeking authorization to assume the liabilities of Clark Fork.[4] All of these public disclosures were made in advance of the November 15, 2002 transfer of assets from Clark Fork to NorthWestern.

---

[4] This application was subsequently approved by FERC on November 15, 2002.

58.    Further, NorthWestern's intention to "go flat" with the Montana Utility Assets was expressed in two documents executed by the Trustee – the Second Supplemental Indenture and the Amendment to Guarantee Agreement. Both of these documents were executed on August 13, 2002 and both state that Clark Fork and NorthWestern retained the right to transfer substantially all of their assets to another entity. These documents clarify that Clark Fork was not hindered in its ability to transfer substantially all of its assets to NorthWestern, with the result that Clark Fork would be relieved of all obligations under the QUIPS Indenture and to QUIPS holders.

59.    These disclosures, made directly to and ratified by the Indenture Trustee, combined with the numerous public disclosures of "going flat" show that NorthWestern lacked actual fraudulent intent, and as such Plaintiffs' Complaint fails to allege facts sufficient to support a fraudulent transfer claim.

60.    In an equally analogous line of cases under federal securities laws, it is well settled that a plaintiff cannot recover for fraud where the plaintiff transacts in securities after knowledge of the supposed fraud. See Rolex Employees Retirement Trust v. Mentor Graphics Corp., 136 F.R.D. 658, 663-64 (D. Or. 1991) (finding that purchases made by proposed class representative after learning of the alleged misrepresentations severs the link between the alleged fraud and the representative's stock purchases). It is well-settled that a plaintiff cannot recover under Section 10(b) of the Securities Act where the plaintiff transacts in securities after knowledge of the supposed fraud because reliance or "in connection with" elements would be lacking. See Rolex, 136 F.R.D. at 664; John Alden Life Insurance Co. v. C.A. Cavendes, 591 F. Supp. 362, 369 (S.D. Fla. 1984) (granting motion for summary judgment because plaintiff sold securities after gaining knowledge of supposed fraudulent scheme); Safecard Services, Inc. v.

18

Dow Jones & Co., Inc., 537 F. Supp. 1137, 1142-43 (E.D. Fla. 1984) (noting that a "finding of 'in connection with' where a person sells after knowledge of a fraud would put him in an anomalous risk-free situation"). Essentially, a "private plaintiff may not recover under section 10(b) unless the defendant misrepresented or omitted a material fact and the plaintiff had no knowledge of that fact." Mayer v. Oil Filed Systems Corp., 803 F.2d 749, 755 (2d Cir. 1986); see also Burke v. Jacoby, 1991 WL 221417, at * 5 (S.D.N.Y.) (granting defendant's motion for summary judgment because plaintiff "already had actual knowledge of" the purported fraud such that "she may not recover under Section 10(b) for its omission").

61.    The Debtor believes that the above cases are analogous to the Law Debenture Claims and the "going flat" transaction that the claims are based upon. Because the transfer of assets to NorthWestern from Clark Fork was publicly disclosed, in both regulatory filings and in documents executed by the Indenture Trustee, the Debtor believes that it should not be required to reserve any New Common Stock in the Disputed Claims Reserve for QUIPS Claims creditors who purchased their QUIPS in open market transactions, after the "going flat" transaction was publicly disclosed and consummated. See Pare v. Morrison, 241 Mont. 218, 786 P.2d 655 (1990) (upholding a lower court ruling that the buyers of property that was encumbered with restrictive covenants were not fraudulently induced into purchasing property because the buyers knew of the restrictive covenants before the purchase). It would be unfair to allow future creditors to challenge the "going flat" transaction as fraudulent when they knew or could easily have found out about the transaction before purchasing the QUIPS.

## CONCLUSION

62.    In light of the express authority granted in F.R.C.P. 16 and sections 105(a), 363(b) and 502(c) of the Bankruptcy Code, for the reasons set forth above, the Debtor

respectfully requests that this Court estimate the amount of Law Debentures Claim for all purposes, including for purposes of distribution under the Second Amended Plan.

## NOTICE

63.    Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel for the Debtor's Pre-Petition Lenders; (iii) counsel for the Debtor's proposed Post-Petition Lenders; (iv) counsel for the Informal Committee, (v) counsel for the Official Committee of the Unsecured Creditors; (vi) the Securities and Exchange Commission; (vii) the Federal Energy Regulatory Commission; (viii) the Montana Public Service Commission; (ix) the South Dakota Public Utilities Commission; (x) the Nebraska Public Service Commission; and (xi) all other entities that have filed requests for notice pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that such notice is sufficient, and requests that this Court find that no further notice of the relief requested herein is required.

## PRIOR RELIEF

64.    No previous motion for the relief herein requested has been made to this or any other Court.

[CONCLUDED ON NEXT PAGE]

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order in the form annexed hereto, granting the relief requested herein and such other and further relief as the Court may deem appropriate.

Dated:  Wilmington, Delaware
        September 17, 2004

                    Respectfully submitted,

                    PAUL, HASTINGS, JANOFSKY & WALKER LLP
                    600 Peachtree Street
                    Suite 2400
                    Atlanta, GA 30308
                    Jesse H. Austin, III
                    Karol K. Denniston
                    Telephone: (404) 815-2400

                        and

                    GREENBERG TRAURIG, LLP

                    Scott D. Cousins (No. 3079)
                    William E. Chipman, Jr. (No. 3818)
                    The Brandywine Building
                    1000 West Street, Suite 1540
                    Wilmington, DE 19801
                    Telephone: (302) 661-7000

                    *Co-Counsel for the Debtor and Debtor-in-Possession*

21

**EXHIBIT K**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (CGC) |
| | : | |
| Debtor. | : | Relates to Docket Nos. 2020 |
| | : | and 2237 |
| | : | |

**NOTICE OF ESTABLISHMENT OF CLAIM RESERVE PURSUANT TO SECTION 7.5 OF
DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND
PARAGRAPH 27 OF THE CONFIRMATION ORDER**

PLEASE TAKE NOTICE that on August 31, 2004, the Debtor filed its Second Amended
and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 2020]
(the "Plan").

PLEASE TAKE FURTHER NOTICE that on October 19, 2004, the Court entered its Order
Confirming Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of
the Bankruptcy Code [Docket No. 2237] (the "Confirmation Order").

PLEASE TAKE FURTHER NOTICE that pursuant to Section 7.5 of the Plan and Paragraph
27 of the Confirmation Order, the Debtor is directed to maintain a Disputed Claim Reserve[1] equal to
the aggregate of any distributable amounts of New Common Stock equal to the relevant percentage
of the Distributions to which holders of Disputed Claims would be entitled under the Plan if such
Disputed Claims were Allowed Claims in the amount of such Disputed Claim or such lesser amount
as required by a Final Order.

PLEASE TAKE FURTHER NOTICE that pursuant to Paragraph 27 of the Confirmation
Order, the Debtor shall establish an initial reserve of 13.5% of New Common Stock allocated to
Class 7 and Class 9 for the Disputed Claims Reserve and such reserve is subject to adjustment prior
to the Effective Date pursuant to Section 7.5 of the Plan.

PLEASE TAKE FURTHER NOTICE that the Debtor and Law Debenture have conducted
settlement discussions which have resulted in the circulation of a draft stipulation. No settlement of
the Debtor's Motion Pursuant to Sections 105(a), 363(b) and 502(c) of the Bankruptcy Code for
Estimation of Claims of Law Debenture Trust Company of New York ("Law Debenture") and to
Establish Disputed Claim Reserve [Docket No. 2093] and Motion Pursuant to Sections 105(a),
363(b) and 502(c) of the Bankruptcy Code for Estimation of Magten Asset Management's

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such term in the Plan.

("Magten") Claim and to Establish Disputed Claim Reserve [Docket No. 1951] has been finalized.

PLEASE TAKE FURTHER NOTICE that consistent with Section 7.5 of the Plan, the Debtor has included in the initial reserve of 13.5% of New Common Stock a claim of $25 million to address the claims of the QUIPS Litigation Claims holders. Any claim by any QUIPS Litigation Claimant will be afforded the treatment accorded Class 9, General Unsecured Claims, as set forth in the Plan.

Dated: Wilmington, Delaware
      October 25, 2004

                            Respectfully submitted,

                            PAUL, HASTINGS, JANOFSKY & WALKER LLP
                            600 Peachtree Street
                            Suite 2400
                            Atlanta, GA 30308
                            Jesse H. Austin, III
                            Karol K. Denniston
                            Telephone: (404) 815-2400

                            and

                            GREENBERG TRAURIG, LLP

                            Scott D. Cousins (No. 3079)
                            Victoria Watson Counihan (No. 3488)
                            William E. Chipman, Jr. (No. 3818)
                            The Brandywine Building
                            1000 West Street, Suite 1540
                            Wilmington, DE 19801
                            Telephone: (302) 661-7000

                            *Co-Counsel for the Debtor and*
                            *Debtor-in-Possession*

**<u>EXHIBIT L</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------- x
                                                    :
In re:                                              :        Chapter 11
                                                    :
NORTHWESTERN CORPORATION,                            :        Case No. 03-12872 (CGC)
                                                    :
                                    Debtor.         :
                                                    :
                                                    :
-------------------------------------------------------------------- x

### OBJECTION OF MAGTEN ASSET MANAGEMENT CORPORATION TO THE DEBTOR'S NOTICE OF ESTABLISHMENT OF CLAIM RESERVE PURSUANT TO SECTION 7.5 OF DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND PARAGRAPH 27 OF THE CONFIRMATION ORDER [DOCKET NO. 2270]

Magten Asset Management Corporation (*"Magten"*), by and through its undersigned

counsel, submits this Objection (the *"Objection"*) to the Debtor's Notice of Establishment of

Claim Reserve (the *"Notice"*) Pursuant to Section 7.5 of the Debtor's Second Amended and

Restated Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the *"Plan"*) and

Paragraph 27 of the Confirmation Order (the *"Confirmation Order"*), and respectfully states as

follows:

### OBJECTION

1.      The Debtor has filed a Notice with the Bankruptcy Court stating that it has

included in the Disputed Claims Reserve[1] a claim of $25 million on account of the fraudulent

conveyance litigation asserted by the holders of the QUIPS, (the *"QUIPS Litigation Claims"*).

According to the Debtor's prior statements and pleadings, holders of approximately $50 million

---

[1]      All terms not expressly defined herein shall have the meaning ascribed to them in the Plan.



of QUIPS chose to pursue the QUIPS Litigation Claims. Pursuant to the plain terms of the Plan, the Confirmation Order, and Judge Case's oral ruling on confirmation (the *"Oral Ruling"*), the Debtor is required to set aside a Disputed Claims Reserve sufficient to satisfy all disputed claims as if they were Allowed Claims, unless there is a Final Order to the contrary. Despite this mandate, the Debtor has unilaterally halved the QUIPS Litigation Claims without a final court order permitting such reduction.

2.    Section 7.5 of the Plan provides that the Disputed Claims Reserve must contain sufficient stock to make the "Distributions to which holders of Disputed Claims would be entitled under this Plan if such Disputed Claims were allowed Claims in the amount of such Disputed Claim or such lesser amount as required by a Final Order." Plan at § 7.5 (emphasis added). A copy of the Plan is attached hereto as Exhibit "A".

3.    In addition, on October 8, 2004, the Bankruptcy Court delivered its Oral Ruling on confirmation. In its Oral Ruling, the Bankruptcy Court stated "the QUIPS come to the debtor's table like any other unsecured creditors [and] are to be treated the same way." Oral Ruling at p. 29-30 A copy of the relevant pages of the Oral Ruling is attached hereto as Exhibit "B". By unilaterally cutting the QUIPS Litigation Claims in half without first obtaining a Final Order permitting such action, the Debtor is seeking to treat the QUIPS differently than (i.e., junior to) the Debtor's other unsecured creditors.

4.    Similarly, on October 19, 2004 the Bankruptcy Court entered the Confirmation Order. Consistent with Section 7.5 of the Plan and the Oral Ruling, the Confirmation Order states that "[t]he Reorganized Debtor is hereby directed to maintain the Disputed Claims Reserve equal to the aggregate of any distributable amounts of New Common Stock equal to the relevant

-2-

percentage of the Distributions to which holders of Disputed Claims would be entitled under the Plan <u>if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim</u> or such lesser amount as required by a Final Order." <u>Confirmation Order</u> at 80-81 (emphasis added). A copy of the Confirmation Order is attached hereto as Exhibit "C".

5.    Although Magten understands that the Law Debenture Trust Company of New York and the Debtor have engaged in negotiations regarding the establishment of a disputed claims reserve to satisfy the QUIPS Litigation Claims, as directed by the Bankruptcy Court, no agreement on the amount of a necessary reserve for these claims has been reached. Therefore, the Debtor must include in the claims reserve an amount equal to the claim to which the holders of the QUIPS Litigation Claims would be entitled if such claim was an Allowed Claim -- $50 million -- absent a Final Order to the contrary.  As there is no such Final Order, the Debtor's unilateral estimation of the QUIPS Litigation Claims is improper and is a blatant disregard of the plain terms of the Plan.

6.    Lastly, at a telephonic hearing on October 25, 2004 regarding Magten's motion for a stay of the Confirmation Order pending an appeal, Judge Case determined that the holders of the QUIPS were adequately protected because the Debtor would be reserving stock in the Disputed Claims Reserve to satisfy the QUIPS Litigation Claims.  At no time during that hearing did the Debtor inform the Court that it would unilaterally reduce the amount of the reserve and, therefore, remove the very protection from the QUIPS holders that the Court relied upon in denying Magten's motion.

- 3 -

## CONCLUSION

7.    Therefore, the Debtor must set aside sufficient stock to allow a $50 million claim on account of the QUIPS Litigation Claims, in accordance with the terms of the Plan. Wherefore, Magten respectfully requests that the Court strike the Notice, require the Debtor to comply with Section 7.5 of the Plan, and grant such other relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      October 28, 2004

**BLANK ROME LLP**

_(signature)_

Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 425-6400
Facsimile:    (302) 425-6464

-and -

**FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP**
Bonnie Steingart
Gary L. Kaplan
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:  (212) 859-4000

Counsel for Magten Asset Management
      Corporation

- 4 -

## CERTIFICATE OF SERVICE

I, *Elio Battista, Jr.*, certify that I am not less than 18 years of age, and that on October 28,

2004, I caused service of the attached *Objection of Magten Asset Management Corporation to*

*the Debtor's Notice of Establishment of Claim Reserve Pursuant to Section 7.5 of Debtor's*

*Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy*

*Code and Paragraph 27 of the Confirmation Order [Docket No. 2270]* to be made on the parties

listed on the attached service list as indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.

Elio Battista, Jr.

**EXHIBIT <u>M</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 |
| | : |
| Debtor. | : |
| | : |
| | : |

STIPULATION AND ORDER ESTABLISHING A
DISPUTED CLAIMS RESERVE

NorthWestern Corporation (the "Debtor") together with Law Debenture Trust Company
of New York, solely as successor trustee ("Law Debenture") to The Bank of New York as
trustee under a certain Indenture dated as of November 1, 1996, as amended, pursuant to which
The Montana Power Company issued certain 8.45% Junior Subordinated Debentures (the
"Debentures") to Montana Power Capital I, which then issued certain 8.45% Cumulative
Quarterly Income Preferred Securities, Series A (the "QUIPS") hereby stipulate and agree that:

WHEREAS, On September 14, 2003, the Debtor filed its voluntary petition for relief
under chapter 11 of title 11 of the United States Code ("the Bankruptcy Code") with the United
States District Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, on April 16, 2004, Magten Asset Management Corporation ("Magten") and
Law Debenture initiated an adversary proceeding against the Debtor (the "QUIPS Adversary
Proceeding") on behalf of all holders of the QUIPS asserting, among other things, that the
Debtor was the recipient of certain utility assets in a fraudulent conveyance; and

WHEREAS, on August 20, 2004, the Bankruptcy Court granted in part and denied in
part the Debtor's motion to dismiss the QUIPS Adversary Proceeding; and

WHEREAS, on August 20, 2004, the Debtor initiated an adversary proceeding against
Magten styled NorthWestern Corporation v. Magten Asset Management Corporation, Case No.

04-55051, United States Bankruptcy Court for the District of Delaware (the "NOR Adversary," collectively with the QUIPS Adversary Proceeding, the "Adversary Proceedings"); and

WHEREAS, on September 17, 2004, the Debtor filed a Motion Pursuant to Sections 105(a), 363(b) and 502(c) of the Bankruptcy Code for Estimation of Claims of Law Debenture Trust Company of New York and to Establish Disputed Claim Reserve (the "Law Debenture Estimation Motion"); and

WHEREAS, on September 29, 2004, Law Debenture filed an objection to the Law Debenture Estimation Motion; and

WHEREAS, by order dated October 19, 2004 (the "Confirmation Order"), the Bankruptcy Court confirmed the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated August 18, 2004 (the "Plan"); and

WHEREAS, the Confirmation Order provided that holders of the QUIPS Litigation Claims would have a disputed Class 9 Claim under the Plan; and

WHEREAS, on or about October 25, 2004, the Debtor filed its Notice of Establishment of Claim Reserve Pursuant to Section 7.5 of the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and Paragraph 27 of the Confirmation Order (the "Disputed Claims Reserve Notice"). A copy of the Disputed Claims Reserve Notice is attached hereto as Exhibit A. As set forth in the Disputed Claims Reserve Notice, the Debtor included in its initial reserve of 13.5% of New Common Stock a claim of $25 million to address the claims of the QUIPS Litigation Claims holders.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Debtor and Law Debenture, by their respective counsel, as follows:

1.    Upon approval of this Stipulation by the Bankruptcy Court, and in accordance with the terms of the Confirmation Order and consistent with the Disputed Claims Reserve Notice, the Reorganized Debtor shall set aside a portion of its initial reserve of 13.5% of New Common Stock solely to satisfy in full a $25 million Class 9 claim of the QUIPS Litigation Claims holders (the "QUIPS Litigation Claims Reserve"). For purposes hereof, any claim by

any QUIPS Litigation claimant will be afforded the treatment accorded Class 9 General Unsecured Claims, as set forth in the Plan. To the extent that the Allowed QUIPS Litigation Claims ultimately exceed $25 million, the holders of such claims shall have any deficiency satisfied out of the general Disputed Claims Reserve (as such is described in the Plan and the Confirmation Order).

2.      Unless otherwise agreed by the parties, the QUIPS Litigation Claims Reserve shall be maintained and not released by the Debtor until the QUIPS Litigation claimants', by and through Law Debenture, seek a distribution from the QUIPS Litigation Claims Reserve pursuant to a final judgment in the QUIPS Adversary Proceeding or as the parties may otherwise agree to a release or reduction in the QUIPS Litigation Claims Reserve or pursuant to further court order.

3.      To the extent that the QUIPS Litigation Claims are determined by final non-appealable order in the QUIPS Adversary Proceeding to be less than $25,000,000, any additional common stock from the QUIPS Litigation Claims Reserve will be released to the Debtor for addition to the Disputed Claims Reserve (as defined in the Debtor's Plan). Likewise, to the extent the QUIPS Litigation Claims against the QUIPS Litigation Claims Reserve is more than $25,000,000, the QUIPS Litigation claimants shall be entitled to draw on any assets remaining in the Disputed Claim Reserve. The Debtor has no obligation to replenish the Disputed Claim Reserve. Moreover, to the extent that the Debtor establishes any other segregated reserve for the benefit of individual creditors, or for any other reason, once the disputed claims of those individual creditors are resolved any excess common stock in those segregated reserves, if any, shall be released to the Disputed Claim Reserve, from which the QUIPS Litigation claimants and any other holder of a disputed Class 9 claim shall be entitled to draw, in accordance with the terms set forth above.

4.      The establishment of the QUIPS Litigation Claims Reserve and the Disputed Claims Reserve (collectively, the "Reserves") is without prejudice to the claims of the QUIPS Litigation claimants and the Debtor in the Adversary Proceedings. Counterclaims,

setoff, and recoupment rights, if any, and Magten's, Law Debenture's and the Debtor's objections and defenses thereto, if any, will not be deemed to be estopped, reduced or limited in any way by the creation or maintenance of the Reserves, or by the terms set forth herein. The establishment of the QUIPS Litigation Reserve shall not be deemed an admission by either party as to the existence of any liability or as to the amount of any claim.

5.      Nothing contained herein shall be deemed an admission or concession by either party as to the extent, validity or merits of the Adversary Proceedings and the establishment of the QUIPS Litigation Claims Reserve is without prejudice to any of the rights, claims and/or defenses of the Debtor, Magten and Law Debenture in the Adversary Proceedings.

6.      Nothing contained herein shall be deemed an admission or concession by either party as to the extent, validity and merits of the Confirmation Order and this Stipulation and the establishment of the QUIPS Litigation Claims Reserve is without prejudice to any of the rights, claims and/or defenses of Magten and Law Debenture to appeal the Confirmation Order. No party to this Stipulation shall use or refer to this Stipulation or to the terms hereof for any purpose in connection with any appeal or any relief sought in connection with the Confirmation Order or in any other litigation or proceeding involving Magten or Law Debenture; provided, however, that nothing contained in this paragraph shall prevent any party to this Stipulation from using or referring to the terms hereof in connection with the enforcement of the provisions of this Stipulation.

7.      Upon the approval of this Stipulation by the Bankruptcy Court, the Law Debenture Estimation Motion shall be deemed withdrawn with prejudice.

8.      This Stipulation shall be governed and enforced by the Bankruptcy Court in accordance with the laws of the United States of America and the laws of the State of New York without giving effect to New York's choice of law or conflicts of law principles.

9.      Neither this Stipulation, nor any of its terms may be modified, altered, amended or waived, except in a writing signed by the party against whom such modification, alteration, amendment, or waiver is to be enforced.

10.    This Stipulation is subject to the approval of the Bankruptcy Court and shall be of no force and effect unless and until the Stipulation is approved by the Bankruptcy Court.

11.    Upon approval by the Bankruptcy Court, this stipulation shall be effective immediately. The Bankruptcy Court shall retain jurisdiction to hear any matters or disputes arising from or relating to this Stipulation.

12.    This Stipulation may be executed with counterpart signature pages or in more than one counterpart, all of which shall be deemed one and the same agreement. Facsimile signatures shall be binding to the same effect as originals.

13.    This Stipulation shall be binding upon and shall inure to the benefit of the Parties and their legal representatives, predecessors, successors and assigns.

[SIGNATURE ON NEXT PAGE]

Dated:    Atlanta, Georgia                NORTHWESTERN CORPORATION
          October 29, 2004                By its Attorneys,

                                          PAUL, HASTINGS, JANOFSKY & WALKER
                                          LLP
                                          By:

                                          _____
                                          JESSE H. AUSTIN, III
                                          A Member of the Firm
                                          600 Peachtree Street, N.E.,
                                          Atlanta, GA 30308
                                          ( 404) 815-2208


Dated:    Boston, Massachusetts           LAW DEBENTURE TRUST COMPANY OF
          October ___ 2004                NEW YORK,
                                          By its Attorneys,

                                          NIXON PEABODY LLP
                                          By:



                                          _____
                                          JOHN SNELLINGS
                                          A Member of the Firm
                                          100 Summer Street
                                          Boston, MA  02110
                                          (617) 345-1202


**SO ORDERED** this 3rd day of
November, 2004 in Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE


ATL/1067316.7                             6

Dated:  Atlanta, Georgia
        October ___, 2004

NORTHWESTERN CORPORATION
By its Attorneys,

PAUL, HASTINGS, JANOFSKY & WALKER
LLP
By:

_____
JESSE H. AUSTIN III
A Member of the Firm
600 Peachtree Street, N.E.,
Atlanta, GA 30308
(404) 815-2208

Dated:  Boston, Massachusetts
        October 29, 2004

LAW DEBENTURE TRUST COMPANY OF
NEW YORK,
By its Attorneys,

NIXON PEABODY LLP
By:

_____
JOHN S. BELLINGS
A Member of the Firm
100 Summer Street
Boston, MA 02110
(617) 345-1202

**SO ORDERED** this ___, day of
November, 2004 in Wilmington, Delaware.

_____
UNITED STATES BANKRUPTCY JUDGE

ATL/1067316.7                                  6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **NORTHWESTERN CORPORATION,** | ) | |
| | ) | Case No. 03- 12872 (CGC) |
| | ) | |
| Debtor. | ) | Hearing Date: November 3, 2004 at 2:00 p.m. |
| | ) | |
| | ) | Relates to Docket Nos. 2093 and 2137 |
| | ) | |

### NOTICE OF STIPULATION

PLEASE TAKE NOTICE that the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby gives notice of filing the attached Stipulation and Order Establishing a Disputed Claims Reserve (the "Stipulation") filed in connection with and resolving the Debtor's Motion Pursuant to Sections 105(a), 363(b) and 502(c) of the Bankruptcy Code for Estimation of Claims of Law Debenture Trust Company of New York and to Establish Disputed Claim Reserve [Docket No. 2093] in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that a hearing (the "Hearing") to consider the Stipulation will be held on **November 3, 2004 at 2:00 p.m.** before The Honorable John L. Peterson, United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

Dated: Wilmington, Delaware       GREENBERG TRAURIG, LLP
       November 1, 2004

                                    By: _____

                                      Scott D. Cousins (No. 3079)
                                      William E. Chipman, Jr. (No. 3818)
                                      The Brandywine Building
                                      1000 West Street, Suite 1540
                                      Wilmington, DE 19801
                                      (302) 661-7000

                                      - and –

                                      Jesse H. Austin, III, Esquire
                                      Karol K. Denniston, Esquire
                                      PAUL, HASTINGS, JANOFSKY
                                      & WALKER LLP
                                      600 Peachtree Street, N.E., 24th Floor
                                      Atlanta, GA 30308
                                      (404) 815-2400

                                      COUNSEL FOR DEBTOR
                                       AND DEBTOR IN POSSESSION

# **EXHIBIT N**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 (JLP) |
| | : |
| Reorganized Debtor. | : |
| | : |
| | : |

### NOTICE OF SUBSTANTIAL CONSUMMATION OF THE DEBTOR'S SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**TO ALL HOLDERS OF CLAIMS,**
**HOLDERS OF INTEREST AND OTHER PARTIES IN INTEREST:**

PLEASE TAKE NOTICE, that on or about October 19, 2004, an order (the "Confirmation Order") was entered by the Honorable Charles G. Case, United States Bankruptcy Judge, confirming, pursuant to the provisions of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), the Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan")[1] of NorthWestern Corporation, former debtor and debtor-in-possession (the "Debtor"). A copy of the Confirmation Order is on file with the Clerk of the Bankruptcy Court for the District of Delaware and is available for inspection at the Clerk's office during normal business hours and on the Court's website at www.deb.uscourts.gov. A copy of the Confirmation Order may also be obtained by submitting a written request for such documents to the Debtor's Noticing Agent, Kurtzman Carson

---

[1] Any capitalized terms not defined herein shall have the meaning ascribed to such term in the Plan.

Consultants LLC, 12910 Culver Blvd., Suite I, Los Angeles, California 90066-6709; Attn:

NorthWestern Corporation, or by viewing the document on the noticing agent's website at

www.kccllc.net/northwestern.  In addition, copies of the Confirmation Order may be viewed on

the Debtor's website at www.northwestern.com.

PLEASE TAKE FURTHER NOTICE, that the Effective Date of the Plan occurred on

November 1, 2004.

PLEASE TAKE FURTHER NOTICE, that pursuant to Section 1101(2) of the

Bankruptcy Code, "substantial consummation" means:

(a)  transfer all of or substantially all of the property proposed by the Plan to be
transferred;

(b)  assumption by the debtor or by the successor to the debtor under the Plan of the
business or of the management of all or substantially all of the property dealt with
by the Plan; and

(c)  commencement of distribution under the Plan.

PLEASE TAKE FURTHER NOTICE, that as of November 1, 2004, the Debtor

transferred substantially all of the property proposed by the Plan to be transferred including

delivery of all the Trust Assets to the D&O Trust.

PLEASE TAKE FURTHER NOTICE, that as of November 1, 2004, the Reorganized

Debtor assumed substantially all of the property dealt with by the Plan.

PLEASE TAKE FURTHER NOTICE, that the Reorganized Debtor completed

distribution to holders of allowed claims under the Plan, including the following distributions:

1.  Class 7 Distributions.  On or about November 1, 2004, consistent with Section 4.7 of the
Debtor's Plan, 28,250,900 shares of New Common Stock were issued to the Depository
Trust Company ("DTC") for credit in book-entry form to the accounts of the DTC
participants representing holders of Class 7 Allowed Claims.  On or about November 5,
2004, these shares were credited by DTC to the accounts of the above-referenced DTC
participants.

2.    Class 8(a) Distributions.

    (a)    On or about November 1, 2004, consistent with Section 4.8(a) of the Debtor's Plan, 2,278,769 shares were issued to DTC for credit in book entry form to the accounts of the DTC participants representing holders of Class 8(a) Allowed Claims. On or about November 5, 2004, these shares were credited by DTC to the accounts of the above-referenced DTC participants.

    (b)    On or about November 1, 2004, consistent with Section 4.8(a) of the Debtor's Plan, 4,366,092 warrants were issued to DTC for credit in book-entry form to the accounts of the DTC participants representing holders of Class 8(a) Allowed Claims. On or about November 5, 2004, these warrants were credited by DTC to the accounts of the above-referenced DTC participants.

    (c)    On November 1, 2004, consistent with Section 5.18 of the Debtor's Plan, 55,640 shares were issued to DTC for credit to Wilmington Trust Company pursuant to its exercise of its Indenture Trustee Charging Lien.

3.    Class 8(b) Distributions. On or about December 23, 2004, mindful of its obligation to deliver shares of Common Stock and Warrants to holders of Class 8(b) claims who elected, or were deemed to have elected, Option 1 under Section 4.8(b) of the Debtor's Plan and Law Debenture Trust Company of New York's exercise of its Indenture Trustee Charging Lien, the Debtor authorized its transfer agent, LaSalle Bank National Association, to transfer (i) physical stock certificates issued in the name of "Law Debenture Trust Company of New York" 136,965 shares of Common Stock and (ii) physical warrant certificate in the name of "Law Debenture Trust Company of New York" 254,241 Warrants to purchase shares of Common Stock pursuant to Section 4.8(b) and Section 5.18 of the Debtor's Plan.

4.    Class 9 Distributions. The following actions have been taken by the Debtor with respect to Allowed Class 9 claims:

    (a)    Issuance of a physical certificate to Comanche Park LLC in the amount of 23,620 shares for its Allowed Class 9 Claim; and

    (b)    Establishment of a Disputed Claims Reserve. Consistent with Section 7.5 of the Debtor's Plan, the Debtor reserved 4,409,100 shares for potential future distribution to holders of Allowed Class 9 Claims. This Disputed Claims Reserve includes specific reserves as follows: (i) shares of common stock equal to the value of $50,000,000, valued as of the Effective Date, in connection with PPL Montana LLC's disputed claim; and (ii) a $25,000,000 Class 9 claim in connection with the disputed QUIPS Litigation Claims.

    (c)    Issuance to DTC of 614,125 shares for credit to the account of CRT Capital Group LLC, in resolution of the $19,500,000 allowed Class 9 claims of the Cornerstone Propane entities.

5.    Class 10 Distribution.    The Debtor made 100% of the payments to holders of Allowed Convenience Class Claims pursuant to Section 4.10 of the Debtor's Plan.  The Debtor has paid $954,443.89 to holders of Allowed Convenience Class Claims.

6.    Cure Payments in Connection with Assumed Contracts. The Debtor made 100% of the undisputed cure payments in connection with assumed contracts pursuant to Section 8.1 of the Debtor's Plan.  The Debtor has paid approximately $2,170,341.64 in undisputed cure payments in connection with assumed contracts.

**PLEASE TAKE FURTHER NOTICE**, that on or about December 7, 2004, consistent with Section 9.3 of the Debtor's Plan in connection with the Special Recognition Grants, physical certificates in the amount of (i) 103,360 shares of Common Stock were issued to certain executive officers, members of the extended leadership team and executive-level key managers (not subject to tax withholding at this time); and (ii) 7,630 shares of Common Stock were issued to non-executive-level key managers (subject to tax withholding at this time).  The Debtor withheld 3,174 shares of Common Stock to satisfy the tax withholding liability of the individuals comprising the non-executive-level key manager group resulting from the stock issuance.

**PLEASE TAKE FURTHER NOTICE**, that, as described above, the Debtor has substantially consummated its Plan.

**[Signature on next page]**

Dated: Wilmington, Delaware
      December 29, 2004

                  Respectfully submitted,

                  PAUL, HASTINGS, JANOFSKY & WALKER LLP
                  600 Peachtree Street
                  Suite 2400
                  Atlanta, GA 30308
                  Jesse H. Austin, III
                  Karol K. Denniston
                  Telephone: (404) 815-2400

                  and

                  GREENBERG TRAURIG, LLP

                  Scott D. Cousins (No. 3079)
                  William E. Chipman, Jr. (No. 3818)
                  The Brandywine Building
                  1000 West Street, Suite 1540
                  Wilmington, DE 19801
                  Telephone: (302) 661-7000

                  ***Co-Counsel for NorthWestern Corporation***

**<u>EXHIBIT O</u>**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .        Chapter  11

Northwestern Corporation,       .
Netexit, Inc.,                  .        Bankruptcy #03-12872 (JLP)

            Debtor(s).          .        Bankruptcy #04-11321 (JLP)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                        Wilmington, DE
                        March 8, 2005
                        9:30 a.m.


                TRANSCRIPT OF MOTIONS HEARING
        BEFORE THE HONORABLE JOHN L. PETERSON
            UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For The Debtor(s):              Karol K. Denniston, Esq.
                                Paul Hastings Janofsky
                                & Walker, LLP
                                600 Peachtree St.-24th Fl.
                                Atlanta, GA   30308

                                Jesse H. Austin, Esq.
                                Paul Hastings Janofsky
                                & Walker, LLP
                                600 Peachtree St.-24th Fl.
                                Atlanta, GA   30308

For The Official Committee:     Charlene D. Davis, Esq.
of Unsecured Creditors          The Bayard Firm
                                222 Delaware Ave.-Ste. 900
                                Wilmington, DE 19899

                                Neil Glassman, Esq.
                                The Bayard Firm
                                222 Delaware Ave.-Ste. 900
                                Wilmington, DE 19899



Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191



2

```
 1                                  Alan W. Kornberg, Esq.
                                    Paul Weiss Rifkind Wharton
 2                                  & Garrison, LLP
                                    1285 Avenue of the Americas
 3                                  New York, NY 10019

 4                                  Donna L. Harris, Esq.
                                    Cross & Simon, LLC
 5                                  913 North Market St.-Ste. 1001
                                    Wilmington, DE 19801
 6
       For Ad Hoc Committee of:     Thomas M. Mayer, Esq.
 7     Class 7 Creditors            Kramer Levin Naftalis
                                    & Frankel, LLP
 8                                  919 Third Ave.
                                    New York, NY 10022
 9
                                    Jeffrey S. Trachtman, Esq.
10                                  Kramer Levin Naftalis
                                    & Frankel, LLP
11                                  919 Third Ave.
                                    New York, NY 10022
12
       For Law Debenture Trust:     John V. Snellings, Esq.
13     Company of New York          Nixon Peabody, LLP
                                    100 Summer Street
14                                  Boston, MA 02110

15                                  Amanda D. Darwin, Esq.
                                    Nixon Peabody, LLP
16                                  100 Summer Street
                                    Boston, MA 02110
17
                                    Kathleen Miller, Esq.
18                                  Smith Katzenstein & Furlow, LLP
                                    The Corporate Plaza
19                                  800 Delaware Ave
                                    Wilmington, DE 19899
20
       For Magten Asset Management: Elio Battista, Jr., Esq.
21                                  Blank Rome, LLP
                                    Chase Manhattan Centre
22                                  1201 Market Street-Ste. 800
                                    Wilmington, DE 19801
23

24

25
```

3

```
 1                              Bonnie Steingart, Esq.
                                Fried Frank Harris Shriver
 2                              & Jacobson, LLP
                                One New York Plaza
 3                              New York, NY 10004

 4                              Gary Kaplan, Esq.
                                Fried Frank Harris Shriver
 5                              & Jacobson, LLP
                                One New York Plaza
 6                              New York, NY 10004

 7   For Netexit, Inc.:        David L. Finger, Esq.
                                Finger & Slanina, LLC
 8                              One Commerce Center
                                1201 Orange Street-Ste. 725
 9                              Wilmington, DE 19801

10   For City of New York:     Barbara Moretti, Esq.
     Controller                City of New York
11   (Via telephone)           Law Department
                                100 Church Street
12                              New York, NY 10007

13   For Montana Public Service: Al Brogan, Esq.
     Commission                State of Montana
14   (Via telephone)           Public Service Commission
                                1701 Prospect Ave.
15                              Helena, MT  59620

16   For Leonard Street &:     Michael Taylor, Esq.
     Deinard, PA               Leonard Street & Deinard, PA
17   (Via telephone)           Ste. 2300
                                150 South Fifth Street
18                              Minneapolis, MN 55402

19   For Wells Fargo:          Noel C. Burnham, Esq.
                                Montgomery McCracken Walker
20                              & Rhoads, LLP
                                300 Delaware Ave.-Ste. 750
21                              Wilmington, DE 19801

22

23

24

25
```

4

```
1   Audio Operator:              Brandon J. McCarthy

2   Transcribing Firm:           Writer's Cramp, Inc.
                                 6 Norton Rd.
3                                Monmouth Jct., NJ 08852
                                 732-329-0191
4
    Proceedings recorded by electronic sound recording, transcript
5   produced by transcription service.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

1    THE CLERK:  All rise.  The United States Bankruptcy
2    Court for the District of Delaware is now in session, the
3    Honorable John L. Peterson presiding.

4    THE COURT:  Please be seated.  Good morning.  In the
5    Northwestern cases, there's been a failure to comply with the
6    procedures for objection deadlines.  The Motion of the
7    Committee for Reimbursements of amounts paid by Netexit on
8    behalf of Northwestern Corporation were filed late -- over nine
9    business days prior to the hearing so that all pleadings are in
10   the binders, that's #1.  Number 2, I just received from
11   Northwestern this morning -- at about 7:45, the three binders
12   relative to the hearing matters.  I will say that I haven't had
13   -- I've had an opportunity to examine all of the matters before
14   coming here, but I don't think there's any compliance with the
15   local rules and Netexit -- and I don't know whether you want to
16   -- I don't know whether to continue this matter or not.  It's
17   the fourth time that we've had a request for this
18   reimbursement, and the parties are ready to proceed on Netexit,
19   let's take that and I'll get it out of the way.  But I would
20   appreciate if the Counsel would be more diligent relative to
21   the filing of the papers in a timely manner, so that the
22   Clerk's Office and myself can have proper examination of them
23   in anticipation of the hearing.  Well, we'll go to the Netexit
24   Agenda.  It was amended this morning.  Motion for an Order
25   Exempting the Debtors from collateralization requirements of

*Writer's Cramp, Inc.*
Certified Court Transcribers
732-329-0191

1  the escrow account.

2  　　　　MS. DENNISTON:  Yes, Your Honor.  This is the motion

3  where the Debtor is seeking an exemption from certain

4  collateralization requirements because the funds are invested -

5  - and the Debtor believes, invested safely.  We have Mr.

6  Cleaver here that can testify to the Court.  This is a

7  situation that has arisen in the Netexit case one other time,

8  in the sense that it's the Debtor's business judgment that

9  these funds should be invested in accounts where they have a

10  higher rate of return and we'd otherwise be permitted.  The

11  reason the Debtor seeks the relief on these particular accounts

12  is that they are escrow accounts for which there are third

13  parties that have interest in seeing that those accounts are

14  not only preserved but they're invested and the beneficiaries

15  of those accounts are Avaya under the sale of Exponets to

16  Avaya.  And they have consented in connection with the closing

17  of the sale to the establishment of those accounts.  So the

18  Debtor has moved, at the request of the United States Trustee,

19  for an Order allowing the Debtor to continue those investments

20  based on the stipulation presently in place.

21  　　　　THE COURT:  All right.

22  　　　　MS. DENNISTON:  There were no objections filed and if

23  the Court is willing, the Debtor can hand up an Order at this

24  time.

25  　　　　THE COURT:  Very well.

1          MS. DENNISTON: May I approach, Your Honor?

2          THE COURT: Sure. Thank you.

3     (Ms. Denniston approaches Bench)

4          THE COURT: Now we'll revisit the Motion to Compel

5 Reimbursement of the amounts?

6          MS. DENNISTON: Yes, Your Honor. Based on the

7 communications from the Court on Friday and a request from the

8 Netexit committee, both Northwestern and Netexit have agreed to

9 continue that matter if the Court is willing to do so. And to

10 continue it to the April Omnibus hearing.

11          THE COURT: You don't want me to deny it?

12          MS. DENNISTON: Well, of course, Your Honor, if the

13 Court were in the mind to deny it, we would not argue with that

14 relief. We believe, based on the papers that it was presented

15 to the Court, and filed in connection with the option -- the

16 objection that the motion should be denied.

17          THE COURT: I think what I'll do is -- rather than

18 have it scheduled, I'll continue it until April but I'll have

19 it -- is there going to be any more submissions on it?

20          MS. DENNISTON: Not from Netexit, Your Honor. Mr.

21 Stratton is here and can speak as to Northwestern.

22          MR. STRATTON: Good morning, Your Honor, David

23 Stratton, Pepper Hamilton, conflicts Counsel for Northwestern.

24 We filed an objection last week. I apologize for the

25 misunderstanding with respect to the Court's proceedures. I

1   don't anticipate, unless the Netexit committee who is

2   represented here today intends to file a reply, that there will

3   be anymore briefing.   I think this is the third time around and

4   I'm sure we've got the issues nailed down.   And I think what we

5   need is a hearing to deal with this once and for all.

6           THE COURT:   I'm just going to deem the matter

7   submitted.   And I'll get out an appropriate Order.

8           MS. HARRIS:   Thank you, Your Honor.   Just for the

9   record, Donna Harris on behalf of the Netexit committee.   This

10  particular motion was submitted pursuant to the colloquy I had

11  in Court last time, where it was stated that we should make a

12  demand upon Northwestern for those people that had become, or

13  had agreed to become, part of the Northwestern benefits plan.

14  So that's why there was a new motion filed, based on that

15  particular colloquy with the Court.

16          THE COURT:   You don't have anything further to submit,

17  though?

18          MS. HARRIS:   We don't believe so, Your Honor.   We've

19  received a very large -- well, very large -- maybe about a

20  stack this high of documents from Allegiance itself.   We don't

21  believe that there's anything in those documents that will

22  really help the Court at this time, but I have honestly just

23  received those late Friday.   And I have not been able to go

24  through them this morning --

25          THE COURT:   Well, I'll give you 10 days in which to

1  submit any other documents relative to this motion.  And then

2  I'll deem the matter after that 10 day period to be closed and

3  under advisement.

4       MS. HARRIS:  Thank you, Your Honor.

5       MS. DENNISTON:  Your Honor, based on what may be

6  presented, could the Debtor and Northwestern have a three-day

7  period to reply, if it appears that a reply will be needed for

8  any further submission?

9       THE COURT:  Correct.

10       MS. DENNISTON:  Thank you, Your Honor.

11       THE COURT:  Number 3?

12       MS. DENNISTON:  Number 3, Your Honor, is the

13  application of the Debtors for an Order Authorizing the

14  retention of Leonard Street and Deinard.  No objections were

15  filed and unless the Court has questions about the application,

16  we would request that an Order be entered at this time.

17       THE COURT:  What are they going to do?

18       MS. DENNISTON:  Your Honor, they're actually the

19  Counsel that we needed to consult with on the other matter

20  that's on the Agenda today.  And that is the wage an hour

21  dispute with the New York Office of the Comptroller, and issues

22  relating to that.  They were the Debtor's pre-petition Counsel

23  on employment-related matters and we have had to utilize their

24  services in connection with activities related to that matter.

25       THE COURT:  All right.  Your Order will be granted.

1    MS. DENNISTON:  Thank you, Your Honor.  If I could
2  hand up an Order.

3    THE COURT:  All right.  Thank you.

4    (Ms. Denniston approches Bench)

5    THE COURT:  And the last matter, item #4, Nextexit vs.
6  the Comptroller?

7    MS. DENNISTON:  Yes, Your Honor.  This is the Debtor's
8  adversary, and the Debtor's Motion for a Temporary Restraining
9  Order and preliminary injunction staying the petition before
10  the Office of Administrative Trials and Hearings.  And as this
11  Court recalls, the Court entered an Order to Show Cause,
12  setting that for hearing today as to why a preliminary
13  injunction should not be entered.  I have reviewed the papers
14  filed by the Office of Administrative Trials and Hearings.
15  I've also read the cases and would note for the Court initially
16  that there is a dispute between the various Bankruptcy Courts
17  and circuits as to whether or not this matter should be stayed.
18  That being said, Your Honor, we still believe a preliminary
19  injunction is appropriate in this case for two primary reasons.
20  The first one being the holding that recently came down from
21  the Third Circuit, In Re: Kaiser Group International Inc.  And
22  I have copies of this for the Court, if it would be convenient.
23  It's matter # -- it was case #04-1634.  This case is important,
24  and actually dispositive of this issue because in the case, the
25  Court determined that once a Creditor or an interest holder had

1  filed a claim with the Bankruptcy Court, the Bankruptcy Court
2  has exclusive jurisdiction over the termination of that claim
3  in equity.

4  THE COURT:  Well, were these wage earners -- filed a
5  claim in this Netexit case?

6  MS. DENNISTON:  Yes, Your Honor, we actually have two
7  sets of claims that have been filed and are identical.  The
8  first claim that was filed, it is identical is the claim filed
9  by the comptroller.  That claim sets forth the same causes of
10 action, the same facts and circumstances pursuant to which the
11 comptroller now seeks to hold the administrative hearing.  The
12 second set of claims that were filed are the 16 claims filed by
13 the individual claimants that are subject of the comptroller's
14 notice and intended hearing.  Based on the holdings, we believe
15 -- and on face of the claim, which I would like to submit a
16 copy of the claim as Exhibit #1 to the Debtor's motion.  As
17 soon as we have that out, Your Honor, I'll like to hand that up
18 and ask that that be marked as Exhibit --

19 THE COURT:  Are Counsel for the comptroller here?  Are
20 you on the phone?

21 MS. MORETTI:  Barbara Moretti --

22 THE COURT:  Are you on the phone?  All right, why
23 don't you identify yourself for the record?

24 MS. MORETTI:  Barbara Moretti, Corporation Counsel of
25 the City of New York, appearing for the Comptroller of the City