IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>    Reorganized Debtor. | Chapter 11<br><br>Bankruptcy Case No. 03-12872 (JLP) |
| MAGTEN ASSET MANAGEMENT CORPORATION,<br><br>    Appellant,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>    Appellee. | CA 04-1389-JJF |

**DEBTOR'S REPLY TO MAGTEN ASSET MANAGEMENT CORPORATION'S OPPOSITION TO MOTION TO DISMISS THE CONSOLIDATED APPEALS**

PAUL, HASTINGS, JANOFSKY & WALKER LLP
Jesse H. Austin, III
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400

- and -

PAUL, HASTINGS, JANOFSKY & WALKER LLP
Kristine M. Shryock
75 East 55th Street
New York, NY 10022
Telephone (212) 318-6000

Dated: July 12, 2005
Wilmington, Delaware

GREENBERG TRAURIG, LLP

Adam D. Cole
885 Third Avenue
New York, NY 10022
Telephone: (212) 801-2100

- and -

GREENBERG TRAURIG, LLP

Scott D. Cousins (No. 3079)
William E. Chipman, Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

*Co-Counsel for NorthWestern Corporation*

DEBTOR'S REPLY MEMORANDUM OF LAW

NY55/468773.7

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | PREFATORY STATEMENT | 1 |
| II. | REPLY ARGUMENT AND CITATION OF LEGAL AUTHORITY | 2 |
| | A. Substantial Consummation | 3 |
| | B. Whether A Stay Has Been Obtained | 5 |
| | C. Reliance By Third Parties | 7 |
| | D. Whether the Relief Requested Would Affect the Success of the Plan | 10 |
| | E. The Public Policy of Affording Finality to Bankruptcy Judgments | 11 |
| III. | CONCLUSION | 12 |

## TABLE OF AUTHORITIES

### CASES

Almeroth v. Innovative Chemical Solutions Ltd. (In re Innovative Clinical Solutions, Ltd.),
 302 B.R. 136 (Bankr. D. Del. 2003) ...................................................................8, 9

In re AOV Industries, Inc.,
 792 F.2d 1140 (D.C. Cir. 1986) ..........................................................................3, 4, 5

Central States v. Central Transp., Inc.,
 841 F.2d 92 (4th Cir. 1988) ................................................................................3

In re Continental Airlines,
 91 F.3d 553 (3d Cir. 1996) ..................................................................................1, 2, 6, 7, 10, 12

Gillman v. Continental Airlines (In re Continental Airlines),
 203 F.3d 203 (3d Cir. 2000) ................................................................................12

In re Innovative Clinical Solutions, Ltd, et al.,
 302 B.R. 136 (Bankr. D. Del. 2003) .....................................................................8

In re Ionosphere Clubs, Inc.,
 184 B.R. 648 (S.D.N.Y. 1995) ............................................................................3

In re Montgomery Ward Holding Corp.,
 306 B.R. 489 (Bankr. D. Del. 2004) .....................................................................9

Nordhoff Invs. v. Zenith Electric Corp. (In re Zenith Elecs. Corp.),
 258 F.3d 180 (3d Cir. 2001) ................................................................................2, 3, 12

Nordhoff Invs. v. Zenith Electronics Corp. (In re Zenith Electronics Corp.),
 250 B.R. 207 (D. Del. 2000), aff'd, 258 F.3d 180 (3d Cir. 2001) .........................6

In re NVF Co.,
 309 B.R. 698 (Bankr. D. Del. 2004) .....................................................................9

In re PWS Holding Corp.,
 228 F.3d 224 (3d Cir. 2000) ................................................................................3

In re Texaco, Inc.,
 92 B.R. 38 (S.D.N.Y. 1988) ................................................................................3

Upstream Energy Services v. Enron Corp. (In re Enron),
 04-Civ. 8883 (VM), 2005 U.S. Dist. LEXIS 12427 (S.D.N.Y. June 23, 2005) ....3

# TABLE OF AUTHORITIES
(Continued)

In re Vencor, Inc.,
  284 B.R 79 (Bankr. D. Del. 2002) .................................................................................9

In re Zenith Elecs. Corp., 329 F.2d 338 (3d Cir. 2003) ...............................................................11

## STATUTE

11 U.S.C. § 1101(2) .........................................................................................................................3

The appellee NorthWestern Corporation ("NorthWestern" or the "Reorganized Debtor") pursuant to this Court's order dated June 6, 2005, hereby files its reply and memorandum of law (the "Reply") to Magten Asset Management Corporation's ("Magten") opposition (the "Opposition") to NorthWestern's Motion to Dismiss and Memorandum of Law (collectively, the "Motion to Dismiss").

## I.   PREFATORY STATEMENT

Shockingly it appears that there is some common ground between NorthWestern's position and Magten's Opposition. Although the Opposition spends ten pages reiterating complaints about events in the bankruptcy case, ultimately the Opposition is clear on a few important points. The first is that Magten concedes that there are five factors that the Third Circuit courts apply to determine whether under the doctrine of equitable mootness an appeal should be dismissed. These factors are identified in the Continental case as "(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments." In re Continental Airlines, 91 F.3d 553, 560 (3rd Cir. 1996) (en banc). Thus, in deciding the Motion to Dismiss, the parties have both identified the same five factor test and each take a position on the applicability of those factors to this Appeal.[1]

Not only do the parties agree on the five factor test, but Magten and NorthWestern both agree that two of the factors are met. Magten agrees with NorthWestern that the Plan has been substantially consummated and also acknowledges

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

that a stay of effectiveness of the Confirmation Order was not obtained. Therefore, the only remaining factors for this Court to consider in dismissing Magten's appeal on equitable mootness grounds are: (1) whether Magten's requested relief will affect third parties; (2) whether Magten's requested relief would affect the success of the plan; and (3) public policy of the finality of bankruptcy orders.

Therefore, a very important question is understanding the relief requested by Magten in its Appeal and, upon understanding that relief, how the relief will affect the remaining three factors. Heretofore, Magten's nine issues raised on appeal appeared to require revocation of the confirmation order and unwinding of the confirmed Plan. However, through the Opposition, Magten repeatedly asserts that it is merely seeking a 100% payment of its claim – a claim disputed by the Reorganized Debtor and not yet allowed – or an additional $18.5 million either in stock or cash from the Reorganized Debtor.

As discussed herein, the remaining three factors support the Reorganized Debtor's Motion to Dismiss Magten's appeal and Magten has failed to produce relevant case law to support its position to the contrary.

## II.  REPLY ARGUMENT AND CITATION OF LEGAL AUTHORITY

As stated above, in Continental, the en banc Third Circuit Court identified five factors in determining whether the merits of a bankruptcy appeal should be considered: "(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments." Id. at 560 (citations omitted), accord, e.g., Nordhoff Invs. v. Zenith Elec. Corp., 258 F.3d 180, 185

(3d Cir. 2001). Therefore, this Reply examines Magten's response to each of the five factors.

### A. Substantial Consummation

As stated in PWS Holding, each of the five factors may be considered independently, but strong consideration must be given to the substantial consummation of the reorganization plan. PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000). Indeed, in the context of a bankruptcy order which has been substantially consummated, there is a strong presumption that any appeal has been rendered moot and "it is inherently improbable . . . that an appellate court will be able to fashion effective relief." In re Texaco, Inc., 92 B.R. 38, 46 (S.D.N.Y. 1988); Upstream Energy Servs. v. Enron Corp. (In re Enron), 04-Civ. 8883 (VM), 2005 U.S. Dist. LEXIS 12427 (S.D.N.Y. June 23, 2005).

In the Opposition, Magten readily admits that the Plan has been substantially consummated. See Opposition at 3, 12 and 16. Based upon this admission, this Court is not required to conduct a separate review of substantial consummation under 11 U.S.C. §1101 (2) which is detailed with great specificity in NorthWestern's Motion to Dismiss. Notwithstanding the clear admission that the Plan is substantially consummated, Magten turns to the D.C. Circuit, the 4th Circuit and the Southern District of New York decisions[2] in a desperate attempt to persuade this Court that even if the Plan

---

[2] In discussion of substantial consummation Magten cites to In re AOV Indus., Inc., 792 F.2d 1140 (D.C. Cir. 1986), In re Ionosphere Clubs, Inc., 184 B.R. 648 (S.D.N.Y. 1995) (although the court did state that substantial consummation did not make it impossible to grant relief, ultimately the court found that no relief was possible without completely unraveling the plan) and Central States v. Central Transp., Inc., 841 F.2d 92 (4th Cir. 1988) (this Court did fashion a relief, but primarily because all parties to the foreclosure were parties to the transaction and participated in the appeal process).

is substantively consummated, this Court can "fashion" a remedy which does not result in an unraveling of the Plan.

The remedy that Magten advocates is an increase in its potential 63% recovery to a 100% recovery, either in the form of shares of stock or cash for a economic increase to Magten in the amount of approximately $18.5 million. See Opposition at 3, 14, 16 and 17. As more fully discussed in Article C.2 of the Motion to Dismiss, as a holder of a QUIPS claim, Magten had the election of receiving a specified percentage in stock of its claim or the alternative of electing to retain its fraudulent conveyance action and if successful in the litigation, Magten's claim would participate as a general unsecured creditor in Class 9 and receive approximately 63% of its claim in stock. Plan § 4.8(b)(ii)(2). This new request that the Court "fashion" a remedy resulting in an additional $18.5 million to Magten not only greatly impacts factors three and four of the equitable mootness test, but also violates the confirmed Plan. The Plan addressed all of NorthWestern's assets and within the priority scheme of the Bankruptcy Code created a plan of reorganization that compromised NorthWestern's liabilities. For a single creditor to assert that it does not seek to unravel the Plan, but to suggest receiving a 100% distribution on its disputed, not yet allowed claim is incongruous and contrary to the Bankruptcy Code and the treatment afforded similarly situated creditors under the confirmed Plan.

Yet the cases outside of the Third Circuit cited by Magten do not support its claimed remedy. For instance, in In re AOV Industries, Inc., the Court specifically stated that it was able to find relief for the appellant without unwinding the Plan because the letter of credit proceeds at issue were sufficient to pay all unsecured claims in that

class and the remaining funds would revert back to the issuers of the letters of credit. In re AOV Indus., Inc., 792 F.2d 1140, 1153 (D.C. Cir. 1986). Therefore, the Court found that the unsecured creditors were not affected by the treatment of the excess letter of credit funds and the plan allowed post confirmation modifications to reconcile inconsistencies in the plan, disclosure statement or confirmation order if the modifications did not materially or adversely affect other creditors. Id. at 1153. In this instance, NorthWestern does not have $18.5 million in cash or stock that is not used or set aside in the Plan for Magten's disputed claim. Not only would the disbursement of an extra $18.5 million of value in stock or cash be in violation of the confirmed plan and regulatory rules[3], but it would also deplete the enterprise value of the Reorganized Debtor. As the Plan has been substantially consummated, there is no cash or stock that is not already designated pursuant to the Plan to satisfy Magten's illusory remedy. Magten's suggested "alternative" remedy would materially and adversely affect other creditors.

### B. Whether A Stay Has Been Obtained

The record is clear that although Magten tried on two occasions to obtain a stay of the confirmation order, the Bankruptcy Court and this Court both flatly denied the requests. Magten has clearly had its "day" in court and in each instance been unable to sustain its burden and has been rebuffed. Once again, Magten refers this Court to decisions outside controlling Third Circuit law, all with the same inference that a failure

---

[3] Magten specifically notes that the Reorganized Debtor's charter authorizes the issuance of 200 million shares of stock, however Magten does not acknowledge that the Debtor cannot issue any additional stock at this time unless such issuance is approved by both the Federal Energy Regulatory Commission and the Montana Public Service Commission, neither approval which can be assured and which process is involved and lengthy.