to obtain a stay does not per se render an appeal moot if the Plan is substantively consummated. The only applicable Third Circuit case cited by Magten is Nordhoff Invs. v. Zenith Elecs. Corp. (In re Zenith Elecs. Corp.), 250 B.R. 207 (D. Del. 2000). In the Zenith case, the court ultimately concluded that a party seeking a stay or not seeking a stay was an additional factor to evaluate the equities of the situation. Id., 250 B.R. at 217. In NorthWestern's case, however, the Bankruptcy Court and this Court specifically denied a stay based upon the view that Magten would not succeed on the merits of its appeal and no showing of irreparable harm to Magten. October 25 Transcript, p.30 and Stay Pending Appeal Ruling at 46 [Debtor, Exh. 22]. Further, as noted in Continental "the seeking of a stay may not be enough." In re Continental Airlines, 91 F.3d at 562. Therefore, the fact that two courts independently evaluated Magten's claims and both determined that a stay was not appropriate is a factor which should weigh in favor of equitable mootness of Magten's claims.

Again Magten concludes that because the failure to obtain a stay is not per se a bar against relief to a consummated plan that this court can "easily fashion appropriate relief". See Opposition at 15. However, as addressed above, the special relief that Magten seeks is only possible if the entire Plan were unwound or relief was fashioned in contravention of the Plan and priorities under the Bankruptcy Code. Magten's Opposition cites to the Continental case for the proposition that an appeal is not moot if the court can provide "some form of meaningful relief". See Opposition at 16 citing to Continental, 91 F.3d at 558. However, in that section, the Contential court was addressing constitutional mootness (whether the case or controversy standard under Article III §1 is satisfied) and specifically finding that the issue in the Continental case

was not constitutional mootness, but rather equitable mootness. Id. at 558. In addressing equitable mootness, the Continental court instead found that an appeal must be dismissed as moot if the fashioned relief would be inequitable. Id. at 558-559.

### C. Reliance By Third Parties

From the statements in the Opposition related to this Court "fashioning" relief, it appears that Magten concedes that the Plan should not be unraveled and all rights of third parties modified. See Opposition at 3, 12, 14, 15, 16, 17, 18 and 21. Therefore, this Court should examine how Magten's requested relief would impact third parties. It is undisputed that Magten effectively elected Option 2 under the Plan by specifically voting against Option 1 which would have provided a fixed percentage recovery on Magten's claim. Thus through the Plan voting process, Magten is now bound by the terms of the confirmed Plan which provide that Magten shall receive on account of its claim:

> ... a Pro Rata Share of recoveries, if any, upon resolution of the QUIPS Litigation ("Option 2").

> ... If a holder of a Class 8(b) Unsecured Subordinated Note Claim votes to accept or reject the Plan and chooses Option 2, then: (i) such holder's claims shall be treated as a Class 9 General Unsecured Claim, subject to estimation and reserves for Disputed Claims as provided for by Section 7.5 of the Plan, with Distributions to holders of Class 8(b) Unsecured Subordinated Note Claims which choose Option 2 being made, if at all, only upon entry of a Final Order resolving the QUIPS Litigation (unless otherwise agreed to by the Debtor and the Committee); and (ii) any New Common Stock which otherwise would have been distributable to such holder if such holder had chosen Option 1, shall be distributed, pro rata to Class 7 and Class 9, and the Warrants which otherwise would have been distributable will be canceled.

See Plan § 4.8(b)(ii)(2).

The "remedy" proposed by Magten apparently assumes that it will be successful in the QUIPS Litigation and that due to the issues raised in the Appeal, it should also receive an extra $18.5 million to achieve a 100% recovery.

There are two immediate impacts in considering this type of relief. The first is that it is in contravention of the terms of the Plan. While the Reorganized Debtor has the ability to settle and compromise claims under the Plan, it does not have the ability to change a class' treatment under the Plan. See Plan §§ 7.4 and 7.9. This point has already been decided against Magten when the Bankruptcy Court denied approval of a settlement which was determined to be in contravention of the confirmed Plan. See Order Denying Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York [Magten, Exh. 264] and Memorandum Opinion Denying Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York [Magten, Exh. 263].

Moreover, even if the Reorganized Debtor had the ability to pick and choose classes and modify their treatment, to do so would undermine the entire bankruptcy scheme to create a plan which is fully disclosed, negotiated, voted upon by all creditors, approved by the Court under 11 U.S.C. §1129 of the Bankruptcy Code and then after substantial consummation of the plan, radically modify the treatment of one creditor in a class in contravention of such plan. See Plan §14.3 (expressly limiting modifications to the Plan pursuant to 11 U.S.C. §§ 1112, 1123, 1125 and 1129). The modification of a plan of reorganization after confirmation is statutorily limited. See, e.g., Almeroth v. Innovative Chemical Solutions Ltd. (In re Innovative Clinical Solutions, Ltd.), 302 B.R. 136, 143-44 (Bankr. D. Del. 2003) (the court denied the plaintiffs' request to modify the

confirmation order to permit plaintiffs to recover damages from non-debtor defendants holding that Section 1127(b) provides the sole means of modifying a confirmed plan). See also In re Vencor, Inc., 284 B.R 79, 85 (Bankr. D. Del. 2002) ("striking the releases granted to Ventas in the Plan . . . is a modification of the Plan . . . . Such a modification may not be requested by anyone other than the plan proponent, and may not be made after the plan has been substantially consummated").

Upon the substantial consummation of a plan of reorganization, it becomes a binding contract between the debtor and its creditors. See e.g., In re NVF Co., 309 B.R. 698, 701 (Bankr. D. Del. 2004) ("[a] confirmed plan 'becomes a legally binding agreement' and 'a creditor's rights are governed exclusively by the terms of that plan'") (citations omitted); In re Montgomery Ward Holding Corp., 306 B.R. 489, 495 (Bankr. D. Del. 2004) ("Section 1141(a) of the Code provides that the plan becomes a legally binding agreement"). Therefore, for this Court to "fashion" a remedy by modifying the Plan, would be revising the Reorganized Debtor's binding contract with its other creditors.

The second impact is the source of this extra suggested consideration to Magten. While Magten flippantly states that $18.5 million is *de minimus* in the context of the health of the Reorganized Debtor, it ignores the fact that it was only through the successful negotiation and implementation of the Plan that the Reorganized Debtor has cash on its balance sheet and has achieved a significant enterprise and market value. See Opposition at 16. Essentially Magten is claiming the fruits of the other creditors' compromises and discharge of claims. If this Court were to find that the Reorganized Debtor was required to issue additional common stock or cash to Magten, it would

adversely affect all creditors that participated in the bankruptcy process by diluting their recoveries distributed pursuant to the Plan. In re Continental, 91 F.3d at 565 (holding that allowance of appellate review of an unstayed confirmation order that specially addressed the claims raised in the appeal would decrease the success of large corporate reorganizations.)

### D. Whether the Relief Requested Would Affect the Success of the Plan

As fully discussed in section V.A.4 of the Motion to Dismiss, reversal of the Plan would cause the Plan to fail and create irreparable harm to third parties that relied upon the Court approved transaction. However, the Opposition does not appear to seek reversal of the Plan and instead introduces the concept of a court fashioned remedy which would effectively give Magten an additional $18.5 million worth of stock or cash not distributed to similar Class 9 creditors. See Opposition at 14, 15, and 16. As discussed above, it is impossible for this remedy to be part of the Plan. Magten's claims are included in Class 9 of the Plan along with general unsecured creditors. See Plan § 4.8(b)(ii)(2). This class will receive allocated common stock based upon allowed claims and appropriate reserves for disputed claims. See Plan §§ 4.9 and 7.5. If Magten is successful on its claims, its treatment would be what is provided for in the Plan – there is no extra $18.5 million in value of stock or cash for Magten as a Class 9 creditor. Therefore, to "fashion" a remedy, this Court would not only have to assume that Magten prevails in the QUIPS Litigation, but also would have to provide for greater recovery to Magten than other Class 9 creditors. The Class 9 creditors are only receiving a pro rata distribution of stock on their allowed claims. See Plan § 4.9. By disproportionably increasing Magten's recovery from Class 9 as Magten suggests, each of the remaining Class 9 creditors would be adversely affected because this recovery would be diluted.

Magten's second suggestion is that the Reorganized Debtor can simply pay a *de minimus* $18.5 million of cash from its current operations. See Opposition at 16. It is obvious that a payment of $18.5 million reduces the enterprise value of the Reorganized Debtor which adversely affects shareholders, the Reorganized Debtor's business plans, the Reorganized Debtor's new lenders and other creditors that rely upon and test the strength of the Debtor's financials in making purchases or investments. To compare an additional $18.5 million disbursement to Magten to the $76,500 sought by the Trustee in the Zenith case is a distortion of the case holding. See Opposition at 17 citing to In re Zenith Elecs. Corp., 329 F.3d 338 (3d Cir. 2003). In Zenith, the additional $76,500 would have come from funds disgorged from another creditor and not directly from the debtor's funds or disgorgement from an entire class of creditors. Zenith, 329 F.3d at 346. Moreover, an additional distribution of cash would provide Magten with a greater and different recovery than other similarly situated Class 9 claimants. This is not provided for in or allowed by the Plan.

E. **The Public Policy of Affording Finality to Bankruptcy Judgments**

It is hard to dispute the general public policy that parties in interest should be allowed to rely upon the finality of bankruptcy court orders. This is particularly true in the Debtor's case in light of the fact that the order at issue is the confirmation order which was overwhelmingly approved by creditors voting for the Plan. See Affidavit of Christopher R. Schepper Regarding Tabulation of Votes in Connection with the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code at ¶ 16 [Magten, Exh. 192]. Magten tries to distinguish this general principal by asserting that the "special" relief requested – the payment in full of its claim – would not necessarily require the unraveling of the Plan. See Opposition at 3, 12, 14,

15 and 17. However, Magten overlooks the fact that creditors, specifically, the senior unsecured creditors allowing consideration to flow to junior Class 7 and litigation claimants that released claims and other similarly situated Class 9 creditors, relied upon the <u>entire</u> scheme of the Plan in voting their claims.

It would be directly against public policy to induce creditors to accept a compromise of their claims while post confirmation allow another creditor to receive 100% of its claim. Magten asserts that NorthWestern's reliance on the Third Circuit cases of <u>Continental</u> and <u>Zenith</u> is not applicable because in those cases the facts and circumstances required an unwinding of the Plan to effectuate relief. Instead, Magten asserts that this Court should follow a Southern District of New York case that involved property valued at $2.4 million where the court applying the Second Circuit test specifically stated that the holding was limited to the facts of this case. <u>See</u> Opposition at 18. Further, unlike the finding in <u>Continental</u>, Magten has participated every step of the way throughout this Bankruptcy Case and has had more than one day in Court to assert and protect its interests. <u>See</u> <u>Gillman v. Continental Airlines (In re Continental Airlines)</u>, 203 F.2d 203, 211 (3d Cir. 2000). Therefore, in balancing the public policy of the finality of the confirmed plan against protecting Magten's interests in raising objections to the Plan, public interest and creditor interests are best served by application of the equitable mootness doctrine and dismissing Magten's Appeal.

### III. CONCLUSION

Magten has conceded factors one and two of the five part test and not raised any evidence to refute the public policy of not disturbing a Confirmation Order which has been substantially consummated. The only factors this Court should consider are whether Magten's request for 100% payment on its claim (an additional $18.5 million in

value) will have an impact upon the success of the Plan and impact third parties. Clearly Magten cannot and has not satisfied this burden. For the reasons set forth herein and in the Motion to Dismiss, NorthWestern requests that this Court grant its Motion to Dismiss the Consolidated Appeals of Magten Asset Management Corporation and dismiss Magten's appeal of both the Confirmation Order and the MOU Order in their entirety.

| | |
|---|---|
| Dated: July 12, 2005<br>Wilmington, Delaware | Respectfully submitted, |
| PAUL, HASTINGS, JANOFSKY &<br>WALKER LLP<br>Jesse H. Austin, III<br>600 Peachtree Street<br>Suite 2400<br>Atlanta, GA 30308<br>Telephone: (404) 815-2400 | GREENBERG TRAURIG, LLP<br>Adam D. Cole<br>885 Third Avenue<br>New York, NY 10022<br>Telephone: (212) 801-2100 |
| - and - | - and - |
| PAUL, HASTINGS, JANOFSKY &<br>WALKER LLP<br>Kristine M. Shryock<br>75 East 55th Street<br>New York, NY 10022<br>Telephone: (212) 318-6000 | GREENBERG TRAURIG, LLP<br><br>_/s/_<br>Scott D. Cousins (No. 3079)<br>William E. Chipman, Jr. (No. 3818)<br>The Brandywine Building<br>1000 West Street, Suite 1540<br>Wilmington, DE 19801<br>Telephone: (302) 661-7000<br><br>*Co-Counsel for NorthWestern Corporation* |
| - and - | |