# ATTACHMENT "1"

LEXSEE 2005 U.S. DIST. LEXIS 12427

In re ENRON CORP., et al., Reorganized Debtors. UPSTREAM ENERGY SERVICES, as Agent for Certain Texas Gas Producers, Appellant, v. ENRON CORP., et al., THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ENRON CORP., et al., Appellees.

04 Civ. 8883 (VM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 12427

June 23, 2005, Decided
June 24, 2005, Filed

**PRIOR HISTORY:** Upstream Energy Servs. v. Enron N. Am. Corp. (In re Enron N. Am. Corp.), 312 B.R. 27, 2004 U.S. Dist. LEXIS 14603 (S.D.N.Y., 2004)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant gas producers' agent appealed the confirmation order of the United States Bankruptcy Court for the Southern District of New York entered as part of the Chapter 11 bankruptcy proceedings of appellee debtor and its reorganized entities.

**OVERVIEW:** The agent represented gas producers who had sold natural gas to the debtor and had not been paid for those shipment. After about two years of negotiations, the negotiating parties agreed on a plan. The agent filed many objections to the plan and the bankruptcy court permitted the objecting parties to collect discovery concerning the plan. The agent failed to participate in the discovery. The plan was eventually accepted and the agent appealed. The sole issue that was on appeal as the enforceability of the exculpation provision that was contained in the confirmation plan. The district court found the entirety of the agent's appeal had been rendered equitably moot by the substantial confirmation of the plan. All property proposed by the plan to be transferred had been transferred and all equity interests in the debtor proposed to be cancelled had been cancelled. To remove the exculpation provision would be inequitable to all those who participated in good faith to bring it into fruition. The agent failed to diligently pursue a stay of the confirmation order, nor did it seek expedited review of its appeal from the district court.

**OUTCOME:** The appeal was dismissed.

**CORE TERMS:** entity, moot, confirmation, consummation, effective, exculpation, rendered moot, inequitable, appointment, negotiation, transferred, negotiated, confirmation hearing, additionally, participated, reorganized, consummated, affiliated, exculpated, equitable, entirety, strong presumption, failure to obtain, applicable law, indemnification, reorganization, authorization, postpetition, unidentified, shareholders

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Creditor Claims & Objections*
[HN1] To be an authorized agent of a multiple grouping, Fed. R. Bank. P. 2019 requires that every person purporting to represent more than one creditor in a Chapter 11 reorganization case file a verified statement setting forth the names and addresses of the creditors, the nature and amount of the claims and the relevant facts and circumstances surrounding the employment of the "agent." Only when an agent has express authorization may he file a claim on behalf of another.

*Bankruptcy Law > Practice & Proceedings > Appeals*

Case 1:04-cv-01389-JJF   Document 61-3   Filed 07/12/2005   Page 3 of 4

Page 2
2005 U.S. Dist. LEXIS 12427, *

*Constitutional Law > The Judiciary > Case or Controversy > Mootness*

[HN2] Mootness doctrine has two aspects in the context of a bankruptcy appeal. First, there exists the U.S. Const. art. III concern that the court consider only actual cases and controversies. U.S. Const. art. III, § 2. When, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for the appellate court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. Second, the court must consider whether, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable. Where such inequity exists in the implementation of the remedy sought, the appeal is rendered moot.

*Bankruptcy Law > Chapter 11 (Reorganization) > Automatic Stay*
*Bankruptcy Law > Practice & Proceedings > Appeals*
*Constitutional Law > The Judiciary > Case or Controversy > Mootness*

[HN3] With regard to mootness of a bankruptcy appeal, in the context of a bankruptcy order that has been substantially consummated, there fairly exists a "strong presumption" that appellants' challenges have been rendered moot due to their inability or unwillingness to seek a stay. It is inherently improbable, once there has been "substantial consummation," that an appellate court will be able to fashion effective relief. "Substantial confirmation" is defined in the Bankruptcy Code as: (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan. 11 U.S.C.S. § 1101(2).

*Bankruptcy Law > Chapter 11 (Reorganization) > Postconfirmation*
*Bankruptcy Law > Practice & Proceedings > Appeals*
*Constitutional Law > The Judiciary > Case or Controversy > Mootness*

[HN4] With regard to appeal of a Chapter 11 plan, notwithstanding the presumption of mootness, constitutional and equitable considerations dictate that substantial consummation will not moot an appeal if all of the following circumstances exist: (a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the bankruptcy court; (d) the parties who would be adversely effected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

**COUNSEL:** [*1] For Upstream Energy Services as Agent for Certain Texas Gas Producers, Appellant: Barry A. Brown, Houston, TX.

For The Official Committee of Unsecured Creditors of Enron Corp., Appellee: Susheel Kirpalani, Matthew Scott Barr, Milbank, Tweed, Hadley & McCloy, L.L.P., New York, NY.

For Enron Corp., Appellee: Brian Scott Rosen, Weil, Gotshal & Manges LLP, New York, NY.

**JUDGES:** Victor Marrero, U.S.D.J.

**OPINIONBY:** Victor Marrero

**OPINION:**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

On November 9, 2004, Upstream Energy Services ("Upstream"), appearing as an agent for certain Texas gas producers ("Texas Producers"), appealed the Order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on July 15, 2004 (the "Confirmation Order") as a part of the Chapter 11 bankruptcy proceedings of appellees Enron Corp. and certain of its affiliated reorganized debtor entities (collectively, "Enron") confirming the Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, and Related Relief (the "Plan"). Enron filed a Motion to Dismiss Upstream's [*2] appeal as moot on January 19, 2005, which was joined by appellees The Official Committee of Unsecured Creditors of Enron Corp., et al. (collectively, the "Creditors' Committee") on January 20, 2005.

On May 20, 2005, the parties informed the Court that they agreed that the majority of issues raised by Upstream in its appeal were moot, and that the sole issue remaining in this action was the enforceability of the exculpation provision contained in Section 42.7 of the Plan (the "Exculpation Provision"). (Joint Letter from Weil, Gotshal & Manges LLP to the Court, dated May

Case 1:04-cv-01389-JJF    Document 61-3    Filed 07/12/2005    Page 4 of 4

Page 3
2005 U.S. Dist. LEXIS 12427, *

20, 2005 ("May 20 Letter"), at 2.) Because the Court finds that Upstream's appeal as to this provision is also moot, the Court dismisses Upstream's appeal in its entirety.

## I. BACKGROUND

The Chapter 11 bankruptcy of Enron was one of the largest in history, and most of the facts of those proceedings are irrelevant to the appeal at hand. Therefore, only facts necessary for the resolution of the present dispute are recited herein.

### A. UPSTREAM'S CLAIM AGAINST ENRON n1

> n1 The details of Upstream's relationship with Enron are more fully described in the opinions rendered on the issue of whether Upstream's claim is secured or unsecured. See In re Enron N. Am. Corp., 312 B.R. 27 (S.D.N.Y. 2004) ("Upstream Security II"); In re Enron Corp., et al., 302 B.R. 455 (Bankr. S.D.N.Y. 2003) ("Upstream Security I"). Familiarity with these opinions is assumed.

[*3]

In October 2001, Upstream entered into a series of agreements with Enron North America Corp. ("ENA") for the delivery of natural gas to ENA in November 2001. Upstream Security I, 302 B.R. at 457. In entering these agreements, Upstream acted as an agent for the undisclosed and heretofore unidentified Texas Producers. n2 Id. at 461. ENA received the gas, but, by reason of its having filed for bankruptcy in December 2001, was unable to pay for the shipments when the obligations became due. Upstream filed a Proof of Claim in the ENA bankruptcy in July 2002 as an agent for the Texas Producers, n3 which Upstream claims were undisclosed principals that held title to the gas delivered under the October agreements. Upstream Security II, 312 B.R. at 29.

> n2 Nowhere in the record presented to the Court on this appeal does Upstream list the Texas Producers for which it is acting as the agent. As noted in the Appellees' Reply Memorandum, Upstream has not revealed this information to the Bankruptcy Court either, as is required under Bankruptcy Rule 2019. (See Appellees' Reply Mem. of Law in Response to Upstream's Opp'n to Motion to Dismiss Appeal, dated March 9, 2005 ("Appellees' Reply Mem."), at 14 n.10.) [*4]

> n3 Upstream's failure to submit the required disclosures under Bankruptcy Rule 2019 raises the question of whether these unidentified Texas Gas Producers in fact have consented to this agency relationship in relation to the bankruptcy. As stated in In re Ionosphere Clubs, Inc.,
>
> > [HN1] to be an authorized agent of a multiple grouping, Bankruptcy Rule 2019 requires that every person purporting to represent more than one creditor in a Chapter 11 reorganization case file a verified statement setting forth the names and addresses of the creditors, the nature and amount of the claims and the relevant facts and circumstances surrounding the employment of the "agent." . . . Only when an agent has express authorization may he file a claim on behalf of another.
>
> 101 B.R. 844, 851-52 (Bankr. S.D.N.Y. 1989) (internal quotation marks and citations omitted).

### B. ENRON'S CHAPTER 11 PROCEEDINGS

The Enron debtors, which at the time comprised approximately 180 affiliated debtor entities, each filed for Chapter 11 bankruptcy beginning on December 2, 2001 in the United States Bankruptcy [*5] Court for the Southern District of New York. n4 All of the affiliated debtor entities' Chapter 11 cases were consolidated for administrative purposes before Judge Arthur J. Gonzalez. (Findings of Fact and Conclusions of Law Confirming the Plan, dated July 15, 2004 (the "Findings Opinion" or "Findings Op.") at 7, included as Appendix Item 11 to Appellees' Mem.)

> n4 Not all of the Enron entities filed for bankruptcy on December 2, 2001. The individual filing dates for the various debtor entities are listed in the Notice of Occurrence of Effective Date and Deadline for the Filing of Claims for Administrative Expenses, which is included as Appendix Item 14 to Appellees' Memorandum of Law in Support of Motion to Dismiss Upstream's Appeal, dated January 19, 2005 ("Appellees' Mem.").

After approximately two years of negotiations between Enron, the Creditors' Committee and the ENA