# UNREPORTED CASES

LEXSEE 2000 US DIST LEXIS 14761

In re AMERICA'S VOICE, INC., Debtor. FERMAN PATTERSON, Plaintiff-Appellee, v. AMERICA'S VOICE, INC., Defendant-Appellant.

Civil Action No. 00-1408 (ESH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

2000 U.S. Dist. LEXIS 14761

October 4, 2000, Decided
October 4, 2000, Filed

**DISPOSITION:** [*1] Decision of United States Bankruptcy Court for District of Columbia AFFIRMED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For FERMAN PATTERSON, plaintiff: Marcia Kaplan Docter, DOCTER, DOCTER & LYNN, P.C., Washington, DC.

For AMERICA'S VOICE INC., defendant: Richard Alan Gross, ROSENMAN & COLIN, L.L.P., Washington, DC.

**JUDGES:** ELLEN SEGAL HUVELLE, United States District Judge.

**OPINIONBY:** ELLEN SEGAL HUVELLE

**OPINION:**

### MEMORANDUM OPINION

Before the Court is the appeal of defendant, America's Voice, Inc., from the Final Judgment of United States Bankruptcy Judge S. Martin Teel, Jr., which granted judgment to the plaintiff in the amount of $ 36,857.00, and denied, without prejudice, the remainder of the relief requested by the plaintiff. Having considered the pleadings and the entire record herein, the court affirms the decision of the bankruptcy court.

### BACKGROUND

On June 30, 1998, Ferman Patterson filed a complaint against America's Voice, Inc. alleging employment discrimination. America's Voice and Patterson settled the matter on November 22, 1999. On December 24, 1999, American International Specialty Lines Insurance Company ("the Insurer"), who insured America's Voice for employment practices liability, issued a [*2] check to America's Voice in the amount required by the settlement agreement and noted on the check, "Funding of Settlement Ferman Patterson." On December 30, 1999, America's Voice filed Chapter 11 proceedings, and on January 4, 2000, it deposited the insurance check into its operating account.

Mr. Patterson filed a Complaint to Compel Turnover of Wrongfully Held Insurance Proceeds in the United States Bankruptcy Court for the District of Columbia, alleging that the insurance proceeds were not the property of the debtor's estate because they were held in constructive trust for the benefit of Patterson. On April 24, 2000, the bankruptcy court granted summary judgment to Patterson as to $ 36,857.00, the sum which could be traced as having been derived from the insurance proceeds. The bankruptcy court found that the proceeds of the liability insurance policy were held in constructive trust by America's Voice for the benefit of Patterson and could not be included in the debtor's estate.

Pursuant to 28 U.S.C. § 158(a), America's Voice appeals the decision of the bankruptcy court. At issue in this appeal is the bankruptcy court's determination that, under § 514(a) [*3] of the Bankruptcy Code, the insurance proceeds were held in constructive trust for the plaintiff's benefit, and, therefore, were not the property of the bankrupt's estate.

### LEGAL ANALYSIS

**A. Standard of Review**

In reviewing bankruptcy court decisions, the district court acts as an appellate court would, applying the same standards of review as would apply in other cases. A bankruptcy court's decision to grant summary judgement is reviewed de novo. See In re Baumblit, 251 B.R. 444, 445 (E.D.N.Y. 2000); South Bend Comm. Sch. Corp. v. Eggleston, 215 B.R. 1012 (N.D. Ind. 1997); In re Ashby Enterprises, Ltd., 47 B.R. 394, 397 (D.D.C. 1985).

## B. Funds Held in Constructive Trust

Courts have long recognized that while Congress intended a broad range of property to be included in a debtor's estate, Congress plainly excluded property of others held in trust by the debtor. See U.S. v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 10, 76 L. Ed. 2d 515, 103 S. Ct. 2309 (1982) (citing H.R. Rep. No. 95-595, at 368 (1977); S. Rep. No. 95-989, at 82 (1978)); In re Unicom Computer Corp., 13 F.3d 321, 324 (9th Cir. 1994). [*4] The bankruptcy court's jurisdiction over the debtor's property extends only as far as the debtor's particular interest in the property. See In re Marrs-Winn Co., Inc., 103 F.3d 584, 589 (7th Cir. 1996). Because debtors do not have an equitable interest in property they hold in trust for another, trust funds cannot be included in the property of the estate. See id.

In cases where no express trust has been created, bankruptcy courts have imposed constructive trusts in order to prevent unjust enrichment. See In re Amer. Int'l Airways, Inc, 44 B.R. 143, 146 (Bankr. E.D. Pa. 1984). For example, courts will impose a constructive trust upon a debtor who is holding property subject to an equitable duty to convey that property to a third party. See id. (citing In re Angus 9 B.R. 769, 771 (Bankr. D. Ore. 1981)).

Plaintiff bears the burden of establishing the existence of a constructive trust under state law. See Amer. Int'l Airways, 44 B.R. at 146. Under D.C. law, a constructive trust exists "where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would [*5] be unjustly enriched if permitted to retain it." Gray v. Gray, 412 A.2d 1208, 1210 (D.C. App. 1980). A careful review of the undisputed facts in the present case supports the bankruptcy court's finding of a constructive trust held by America's Voice for the benefit of Patterson.

## C. The Bankruptcy Court's Finding of a Constructive Trust n1

n1 Because the court agrees with the bankruptcy court's finding that the proceeds of America's Voice's insurance policy were held in constructive trust for the benefit of Patterson, and, therefore, excluded from the debtor's estate, it need not address the question of whether liability insurance proceeds are always excluded from a debtor's estate.

According to paragraph 18 of America's Voice's insurance policy, the Insurer is only subject to liability to a third party if a judgement against America's Voice is entered "after actual trial or by written agreement of the Insureds, the claimant and the Insurer." While Appellants contend that no such [*6] written agreement had been executed giving rise to any liability of the Insurer to Patterson, the check issued by the Insurer to America's Voice with the notation "Funding of Settlement Ferman Patterson" constitutes sufficient evidence that the Insurer acquiesced in the settlement of Patterson's claim. Appellants argue that the fact that the Insurer acquiesced in the settlement did not obligate the Insurer to Patterson under America's Voice's insurance policy because no written agreement had been entered into by the insured, the claimant, and the Insurer. This argument was properly rejected by the bankruptcy court because the Insurer would be legally obligated to Patterson for the settlement funds on the basis of the undisputed evidence of its consent to the settlement agreement. Therefore, when the Insurer conveyed the money to America's Voice, it did so with the intent that America's Voice would then convey those funds to Patterson, and by so doing, the Insurer subjected itself to third-party liability under the insurance agreement in the event that America's Voice did not convey those funds to Patterson.

By retaining the proceeds of the insurance policy, America's Voice was unjustly [*7] enriched because the Insurer has a legal obligation to pay Patterson, not America's Voice. Given the Insurer's obligation to pay Patterson, America's Voice cannot rely on Auto-Train Corp., Inc. v. Midland-Ross Corp., 810 F.2d 270 (D.C. Cir. 1987). In Auto-Train, the Court addressed a three-party dispute in which the debtor was acting as a middle man between the purchaser and the manufacturer of railroad equipment. Id. at 272. The debtor received funds from the purchaser intended to be used to purchase materials from the manufacturer. Before conveying the purchase funds to the manufacturer, the debtor declared bankruptcy. The Court held that the purchase funds were not held in constructive trust for the manufacturer because the manufacturer and the purchaser retained their rights under contract law to seek compensation from the debtor. Id. at 273-74. In the present case, however, the parties are not in a typical debtor-creditor relationship. Patterson has the ability to seek redress directly from the Insurer, who has conveyed the settlement funds to America's Voice for Patterson's benefit. America's Voice was obligated to transfer [*8]

Case 1:04-cv-01389-JJF    Document 63-2    Filed 07/15/2005    Page 4 of 15

Page 3
2000 U.S. Dist. LEXIS 14761, *

those funds to Patterson and would be unjustly enriched if permitted to retain them.

America's Voice's reliance on Ross v. Hacienda Cooperative, Inc, 686 A.2d 186 (D.C. App. 1996), is also misplaced. In Ross, a purchaser of an apartment building asked the court to impose a constructive trust on a vendor's tax return for the benefit of the purchaser to cover the costs of a roof repair. The court held that, because the vendor and the purchaser entered into an arm's-length agreement and had not agreed who would bear the costs of the repair, the court could not convert their agreement into a constructive trust. Id. at 191. The court went on to recognize that, had the parties shared a reasonable expectation that the vendor would be responsible for the repair, equitable remedies would have been appropriate. Id. at 191-92. In the present case, America's Voice and Patterson were not negotiating an arm's-length purchase agreement but a settlement agreement in which both parties agreed that the insurance proceeds from the Insurer would be paid to Patterson to settle his claim. In this case, the parties did share a reasonable expectation [*9] regarding the use of the insurance proceeds, and, therefore, it is appropriate for the court to enforce those expectations through equitable remedies.

Appellants also cite In re Moskowitz, 14 B.R. 677 (Bankr. S.D.N.Y. 1981), for the proposition that, absent an assignment by the debtor of the insurance proceeds, the funds are the property of the debtor's estate. In the present case, however, the settlement agreement entered into by America's Voice and Patterson, which was consented to by the Insurer, constituted an assignment of the insurance proceeds by the debtor to Patterson. Because the insurance proceeds were assigned to Patterson prior to America's Voice's receipt of the funds, America's Voice necessarily held them in a fiduciary capacity under constructive trust and they cannot constitute property of the estate. Id. at 680 (citing Gamble v. Mathias, 61 F.2d 911 (5th Cir. 1932)).

As recognized by the bankruptcy court, the Fifth Circuit case of Edgeworth v. Edgeworth, 993 F.2d 51 (5th Cir. 1993), is analogous to this case. In Edgeworth, the court addressed the question of whether the proceeds of a medical [*10] liability insurance policy possessed by the debtor, who was a doctor, were included in the debtor's estate. The court held that, because the insurance proceeds were payable only for the benefit of those injured by the debtor, the debtor had no legally cognizable claim to the funds. The debtor in Edgeworth had no right to receive and keep the insurance proceeds, and, therefore, the proceeds could not be considered property of the estate. See id. at 55-56. Similarly, in the present case, America's Voice had no right to receive or to keep the funds that the Insurer paid for the benefit of Patterson. Because America's Voice had no right to these funds, they cannot be included in the property of the estate.

### CONCLUSION

For the foregoing reasons, the court finds that the record fully supports the decision of the bankruptcy court that the proceeds of the liability insurance policy were not property of the debtor's estate. The decision of the bankruptcy court is affirmed. A separate Order accompanies this Opinion.

ELLEN SEGAL HUVELLE

United States District Judge

DATE: 10/4/00

### ORDER

Upon consideration of the parties' briefs and the entire record [*11] herein, it is hereby **ORDERED** that the decision of the United States Bankruptcy Court for the District of Columbia is **AFFIRMED**.

**SO ORDERED.**

ELLEN SEGAL HUVELLE

United States District Judge

DATE: 10/4/00

LEXSEE 1999 BANKR LEXIS 1891

In re: James and Regina Hellesen, Debtors

BK No. 97-11695-MWV, Chapter 13

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW HAMPSHIRE

1999 BNH 2; 1999 Bankr. LEXIS 1891

January 11, 1999, Decided

**DISPOSITION:** [*1] Family Bank's motion on its opposition to avoid judicial liens outline the formula under section 522(f)(2) of the Bankruptcy Code amended.

**LexisNexis(R) Headnotes**

**JUDGES:** Mark W. Vaughn, Bankruptcy Judge.

**OPINIONBY:** Mark W. Vaughn

**OPINION:**

### ORDER

The Court has before it the Debtors' Motion to Avoid Judicial Liens on Exempt Property Pursuant to Section 522(f) and Family Bank F.S.B.'s two motions: (1) an Objection to Debtors' Claims of Exemption and (2) a Motion to Dismiss or to Convert Chapter 13 Case. These three motions and their responses frame the issue at the heart of this litigation: Family Bank, F.S.B. ("Family Bank") contends that certain of the Debtors' property actually belongs to Family Bank and that the Debtors cannot claim this property as property of the estate or claim exemptions on it. Specifically, Family Bank asserts that the Debtors hold assets in a constructive trust for its benefit because Regina Hellesen embezzled money from Family Bank and used that money to make payments on, or buy, certain assets. The Debtors maintain otherwise: they listed Family Bank as an unsecured creditor for $ 120,000 on Schedule F of their bankruptcy petition, n1 they claim certain assets, including two retirement [*2] plans, as exempt on Schedule C of their petition, and they moved to avoid the judicial liens held by Family Bank on those assets. As more specifically set out below, the Court finds that $ 9,898.80 plus the principal portion of the mortgage payments described in Part C herein are subject to a constructive trust in favor of Family Bank on the real estate and $ 5,000 is subject to a constructive trust in favor of Family Bank in the Debtors' IRA. In addition, the Court denies without prejudice Family Bank's motion to dismiss or convert and overrules Family Bank's objection to the Debtors' claims of exemption with respect to both of the Debtors' retirement accounts. As more fully outlined in this decision, the Court defers its ruling on the Debtors' Motion to Avoid Judicial Liens and Family Bank's Objection to the [remaining] Debtors' Claims of Exemption until it receives Family Bank's statement and amended motions.

n1 This debt is listed as owed solely by Regina Hellesen.

This Court has jurisdiction of the subject [*3] matter and the parties pursuant to 28 U.S.C. § § 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). These matters are core proceedings to which this Court has jurisdiction in accordance with 28 U.S.C. § 157(b).

### FACTS

During the course of her employment with Family Bank, Regina Hellesen was in charge of handling and maintaining retirement, IRA and Kehoe accounts for Family Bank's customers. In September 1996, Regina Hellesen was terminated from her position with Family Bank after admitting to misappropriating funds. In

October 1996, Family Bank commenced a civil action against Regina Hellesen and obtained judicial liens against her and her husband's property. On August 18, 1997, Regina Hellesen pleaded guilty to embezzling funds from Family Bank and was ordered to pay $ 149,844.48 in restitution by the District Court for the District of Massachusetts.

The Debtors purchased their home located at 219 Oakridge Road, Plaistow, New Hampshire ("Property") on December 12, 1991, and paid $ 28,192.57 [*4] as a down payment. Family Bank claims the Debtors obtained $ 9,898.80, or 35.11% of that amount, n2 from funds Regina Hellesen embezzled from Family Bank.

> n2 The remainder of the down payment, $ 18,293.77, was from the net proceeds from the sale of the Debtors' prior residence.

James and Regina Hellesen ("Debtors") filed their Chapter 13 bankruptcy petition, including completed schedules, and a Chapter 13 plan on May 7, 1997. On Schedule C of their petition, the Debtors claimed a homestead exemption in their Property. On July 31, 1997, Family Bank timely filed a proof of claim in the amount of $ 149,844.48, the amount of its judgment for restitution ordered by the Massachusetts District Court. Shortly thereafter, the Debtors filed a Motion to Avoid Judicial Liens on Exempt Property Pursuant to Section 522(f) ("Motion to Avoid Liens"), seeking to avoid judicial liens held by Family Bank. Family Bank objected. Before the hearing could be held on the Debtors' Motion to Avoid Liens, Family Bank filed an Objection [*5] to Debtors' Claims of Exemption. Its objection claimed that, with regard to certain disputed assets traceable to funds Mrs. Hellesen embezzled from Family Bank, the Debtors hold those assets in a constructive trust for the benefit of Family Bank.

## DISCUSSION

### I. Family Bank's Motion to Dismiss or Convert.

The Debtors filed a general objection, alleging that their Chapter 13 plan was filed in good faith and is feasible. (Debtors' Obj. to Family Bank's Mot. to Dismiss or Convert.) Family Bank, however, asserts that the Debtors' plan was filed in bad faith for the following reasons: (1) the plan is not feasible; (2) the Debtors' expenses are understated; (3) the Debtors had an opportunity to settle with Family Bank, but did not; (4) the Debtors continued to accumulate debt, by incurring credit card debt and taking a vacation, when they knew filing bankruptcy was imminent; and (5) the Debtors did not file Chapter 7 because they wanted to forestall their creditors.

Family Bank asserts that, under the factors in In re Love, 957 F.2d 1350 (7th Cir. 1992), the Debtors' case should be dismissed for bad faith. The Court, however, denies Family Bank's motion without [*6] prejudice. First, whether the plan is feasible and whether the Debtors' expenses are understated are issues for confirmation. The Debtors have not filed an amended plan or schedules. Second, the Court in Cardillo v. Andover Bank (In re Cardillo), 169 B.R. 8 (Bankr. D.N.H. 1994), noted that it is the movant's burden to show lack of good faith, there is no presumption of bad faith, and many of the factual allegations alleged in Cardillo, as in this case, are, more properly, issues for confirmation. Id. at 10-11.

### II. The Debtors' Motion to Avoid Liens.

Pursuant to Bankruptcy Code section 522(f), see 11 U.S.C.A. § 522(f) (West 1988 & Supp. 1998) (providing that a debtor may avoid a nonpossessory, nonpurchase-money security interest or judicial lien which impairs an exemption), and Bankruptcy Rules 4003(d), see FED. R. BANKR. P. 4003(d) (Bankruptcy Rule 9014 governs motions to avoid liens), and 9014 (lien avoidance is a contested matter to be requested by motion), the Debtors move to avoid seven judicial liens held by Family Bank, all recorded outside the ninety-day preference period under section 547 of the Bankruptcy [*7] Code. See 11 U.S.C.A. § 547(b) (West 1988 & Supp. 1998) (authorizing a trustee to avoid a transfer if five conditions are met, one of which is that the transfer occurred during the ninety days immediately preceding the commencement of the bankruptcy case). Those liens are as follows:

| Asset | Value |
| --- | --- |
| Family Bank CD # 333-0016207 | $ 641.31 |
| Community Bank checking account # 000-2201674 | $ 1,437.23 |
| Community Bank checking account # 000-2201593 | $ 3,656.84 |

| Asset | Value |
|---|---|
| Community Bank savings account # 000-6202020 | $ 10,264.45 |
| 1987 Chevrolet Nova automobile | $ 400 |
| 1994 Ford Explorer automobile, subject to a purchase money security interest of $ 18,836.10 | $ 20,000 |
| 219 Oakridge Road, Plaistow, NH, held by the Debtors as joint tenants, and subject to a purchase money mortgage of $ 141,000 | $ 162,000 |

(See Debtors' Mot. to Avoid Liens.) In its response, Family Bank denied obtaining a judicial lien against property of Regina Hellesen at Family Bank. (Opposition of Family Bank, FSB to Mot. to Avoid Judicial Liens at 2.) Further, Family Bank requested an evidentiary hearing, asserting that any assets held by the Debtors in a constructive [*8] trust for the benefit of Family Bank were not property of the estate pursuant to section 541, see 11 U.S.C.A. § 541 (West 1988 & Supp. 1998), and were not subject to lien avoidance pursuant to section 522(d) and (f), see § 522(d) and (f).

III. Family Bank's Objection to the Debtors' Claims of Exemption.

Pursuant to Bankruptcy Rule 4003, see FED. R. BANKR. P. 4003(b) ("any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors"), Family Bank timely objected to the Debtors' claims of exemption on certain disputed assets ("Disputed Assets"), alleging that some or all of these assets are held by the Debtors in a constructive trust for the benefit of Family Bank. The Debtors claimed these assets, listed below in the column "Exemption Claimed," as exempt on Schedule C of their bankruptcy petition. (See Debtors' Voluntary Pet., Schedule C.) The Disputed Assets are listed in the following table:

| Disputed Asset | Claimant | Scheduled Value | Exemption Claimed |
|---|---|---|---|
| 219 Oakridge Road, Plaistow NH | Joint | $ 162,000 | $ 21,000 |
| 1994 Ford Explorer | Joint | $ 20,000 | $ 1,163.90 |
| Family Bank checking account No. 88-0076419 | Joint | $ 288.55 | $ 190.35 |
| Family Bank checking account No. 022-0481 | Joint | $ 161.05 | $ 161.05 |
| Family Bank checking account No. 222-061966 | Joint | $ 231.27 | $ 231.27 |
| Community Bank checking account No. 000-2201674 | Joint | $ 1,439.43 | $ 1,439.43 |
| Community Bank checking account No. 000-2201674 | Joint | $ 3,662.45 | $ 3,662.45 |
| Community Bank savings account No. 000-6202020 | Joint | $ 10,288.10 | $ 10,288.10 |

| Disputed Asset | Claimant | Scheduled Value | Exemption Claimed |
|---|---|---|---|
| Fleet Bank savings account No. 939-1446931 | Joint | $ 27.23 | $ 27.23 |
| Family Bank savings account No. 939-1446931 | Joint | $ .12 | $ .12 |
| Family Bank Employee Stock Ownership Plan | Wife | $ 48,800 | $ 48,800 |
| Massachusetts State Employees Retirement Plan | Husband | $ 35,687.21 | $ 35,687.21 |

[*9]

To begin, the Court holds that both the Debtors' retirement plans are fully exempt. With regard to Mrs. Hellesen's Family Bank Employee Stock Ownership Plan ("ESOP" or "retirement plan"), the Court finds that the ESOP is an ERISA-qualified plan as defined by 26 U.S.C. § 401(a), n3 see 26 U.S.C.A. § 401(a) (West 1986 & Supp. 1998) (setting forth the requirements for qualified trusts), and is not property of the bankruptcy estate. When Regina Hellesen was terminated from her position with Family Bank on October 1, 1996, she had a 100% vested interest in her retirement plan. Between the date of her termination and the date of the filing of the bankruptcy petition, Regina Hellesen made no application to Family Bank for a voluntary cash-out of her interest in the plan. Paragraph 10.6 of the plan, "Voluntary and Involuntary Cash-Outs," provides that:

> if the Participant, upon termination of Service for any reason other than retirement, death, of Total Disability, does not consent to the payment of the vested portion of the Participant's Account, and if the value of such Account exceeds $ 3,500 on the Valuation Date immediately following [*10] the Employee's termination of Service (or as of any prior Valuation Date), n4 the Committee shall direct the Trustee to place the then value of such Account in one (1) or more investment accounts permitted under the Plan in trust for the named Employee for distribution commencing on the Valuation date immediately following his attainment of age 65 (or death, if earlier). The Account and all accumulated interest shall be paid to the Employee at the time he attains his Normal Retirement Age.

n3 The plan is also tax exempt pursuant to 26 U.S.C. § 501(a) and (c). See 26 U.S.C.A. § 501(a) and (c) (West 1986 & Supp. 1998) (providing that certain organizations under subsection (c) shall be exempt under subsection (a)).

n4 Regina Hellesen's vested interest exceeded this amount.

(ESOP Document at P 10.6). This Court follows its holding in In re Damast, 136 B.R. 11 (Bankr. D.N.H. 1991), in which it rejected a "control" argument, stating that "control [*11] of this kind [that the debtor may terminate and cash out her plan] is not tantamount to the power to assign or alienate plan benefits in contravention of ERISA's statutory restrictions." Further, although the funds are not part of the plan per se, they are not available until the Debtor until she reaches her retirement age. Therefore, the Court overrules Family Bank's objection: Regina Hellesen's retirement plan is not property of the estate and is exempt.

Regarding Mr. Hellesen's Massachusetts State Employees Retirement Plan, the Court finds that this, too, is not property of the estate and is exempt. In doing so, the Court follows the holding in In re Silviera, 186 B.R. 168 (Bankr. E.D. Mass. 1995), in which the court, citing Whetzal v. Alderson, 32 F.3d 1302 (8th Cir. 1994), found that, since the Debtor had no right to receive benefits under a state-created public employee retirement plan unless he quit his job, his benefits were not property of the estate. At the final evidentiary hearing, Family Bank agreed that Mr. Hellesen's plan contained the Massachusetts anti-alienation provision required under Chapter 32 of the Massachusetts General Laws. [*12] See MASS. GEN. LAWS ch. 32, § 16 (1998). For the same reasons as outlined above, the Court finds that Mr. Hellesen's retirement plan is exempt under the terms and provisions of ERISA, and overrules Family Bank's objection.

Regarding the remaining claims of exemption, the Court, as outlined more fully below, will defer its ruling until it receives Family Bank's amended motion.

IV. The Constructive Trust.

Family Bank asserts that the evidence presented at the evidentiary hearings establishes by a preponderance of the evidence that certain of the misappropriated sums are directly traceable to mortgage. payments or down payments on the Debtors' Property. Thus, Family Bank alleges that since the Debtors hold the Property in a constructive trust for the benefit of Family Bank, it is not property of the estate and the Debtors may not claim an exemption on it. The Debtors respond that, to the extent any of their expenses exceeded their monthly disposable income, they always paid their mortgage first; thus, the Debtors hold neither all nor part of their Property in a constructive trust for the benefit of Family Bank.

Whether a constructive trust exists is a matter of state, not [*13] federal, law. In the case at bar, the Debtors filed bankruptcy in New Hampshire, yet the misappropriations occurred in Massachusetts. Therefore, as a threshold matter, since both New Hampshire and Massachusetts have an interest in this matter, the Court must first determine which state's law applies.

A. Choice of Law.

In choice of law situations, the forum state determines what law is to be used. Therefore, New Hampshire law determines whether this Court should apply New Hampshire or Massachusetts law to the issue of whether there is a constructive trust. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941); American Title Ins. Co. v. East West Fin. Corp., 959 F.2d 345, 348 (1st Cir. 1992).

The law of whether a constructive trust exists is substantive, since the imposition of one is an equitable remedy. See Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 549 A.2d 1187, 1191 (N.H. 1988) (in choice of law situations, the court must first determine whether the matter is substantive or procedural). Next, the Court must determine whether the New Hampshire and Massachusetts laws on constructive [*14] trust conflict. Id. The law of New Hampshire on constructive trusts is as follows:

> Parties seeking to prove a constructive trust "take upon themselves a heavy burden of proof," Patey v. Peaslee, 101 N.H. 26, 30, 131 A.2d 433, 436 (1957), as they must demonstrate by clear and convincing evidence that a constructive trust is warranted. Clooney v. Clooney, 118 N.H. 754, 758, 394 A.2d 313, 316 (1978). The imposition of a constructive trust is appropriate when a plaintiff produces clear and convincing evidence that property has been transferred by one person to another, the transferee was in a confidential relationship with the transferor, and the transferee would be unjustly enriched were he or she allowed to retain the property. See Cornwell v. Cornwell, 116 N.H. 205, 209, 356 A.2d 683, 686 (1976); Kachanian v. Kachanian, 100 N.H. 135, 137, 121 A.2d 566, 568 (1956).

Salisbury v. Lowe, 140 N.H. 82, 663 A.2d 611, 612 (N.H. 1995). In comparison, Massachusetts law on this issue is as follows:

> A constructive trust is one means of making a breaching fiduciary accountable for any profits [*15] he may have obtained as a result of his breach. This mechanism is available if the property acquired through the wrongful disposition of trust property is still held by the wrongdoer and can be traced. Alternatively, if the beneficiary is simply seeking to restore the dollar value of what was taken and not seeking what was gained by the wrongdoer, the beneficiary may enforce an equitable lien upon the product of the wrongful disposition of trust property that may still be held by the trustee and can be traced. "The persons interested in the trust estate have the option of taking the profits, or of taking interest." Id. See also RESTATEMENT (SECOND) OF TRUSTS § 202. "A constructive trust may be said to be a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation. . . ." Barry v. Covich, 332 Mass. 338, 342, 124 N.E.2d 921 (1955). It "arises when the duty to make restitution arises," which is created at the moment title to property is wrongfully acquired. [*16] 5 AUSTIN W. SCOTT & WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 462.4 (4th ed. 1989). See also LORING: A TRUSTEE'S HANDBOOK, § 3.3(3) at

Case 1:04-cv-01389-JJF    Document 63-2    Filed 07/15/2005    Page 10 of 15

Page 6
1999 BNH 2; 1999 Bankr. LEXIS 1891, *

23 (7th ed. rev., Charles E. Rounds, Jr. & Eric P. Hayes 1994) ("If a person comes into possession of property as a result of fraud, . . . or some other such intentional wrong . . . he will hold the property not for himself . . . but as a constructive trustee for the person who, but for the wrong, would have received the property.").

Boston Safe Deposit and Trust Co. v. Seifert, 6 Mass. L. Rptr. 410, 1997 Mass. Super. LEXIS 566, *10, 1997 WL 64043, at *3 (Mass. Super. Jan. 29, 1997); see also Collins v. Guggenheim, 417 Mass. 615, 631 N.E.2d 1016, 1017 (Mass. 1994) ("Absent fraud, breach of a fiduciary duty or other misconduct, we shall not impose a constructive trust.") (citing Barry v. Covich, 332 Mass. 338, 124 N.E.2d 921 (Mass. 1955)); Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 625 N.E.2d 1352, 1357-58 (Mass.) ("Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach [*17] of duty, or in other circumstances indicating that he would be unjustly enriched.") (citing Nessralla v. Peck, 403 Mass. 757, 532 N.E.2d 685 (1989)), cert. denied, 511 U.S. 1142 (1994).

The Court agrees with Judge Lavian in Kagan v. Martin that "an examination of Massachusetts law and New Hampshire law, however, reveals that both states' laws are similar on the relevant issues." Kagan v. Martin (In re Tufts Elecs., Inc.), 34 B.R. 455, 457 n.2 (Bankr. D. Mass 1983). The Court also notes that the First Circuit has stated that "when a choice-of-law question has been reduced to the point where nothing turns on more precise refinement, that should be the end of the matter." Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1092 (1st Cir. 1989) (citing Hart Eng'g Co. v. FMC Corp., 593 F. Supp. 1471, 1477 n. 5, 1481 (D.R.I. 1984)). Therefore, the Court will apply Massachusetts law to this constructive trust issue. By doing so, the Court notes that Massachusetts is protected by the use of its laws in determining whether misappropriations that occur within its borders constitute constructive trusts. At [*18] any rate, since the laws of New Hampshire and Massachusetts are so similar, choosing Massachusetts law imposes no real effect on New Hampshire's governmental interest that its laws be applied in this situation.

B. Constructive Trusts under Massachusetts Law.

The law on constructive trusts in Massachusetts is clear. As the following excerpts from cases illustrate, the Court may impose a constructive trust under Massachusetts law upon one who acts as a fiduciary and misappropriates traceable funds.

The Massachusetts District Court has stated that:

> A constructive trust may be said to be a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation or where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information. Massachusetts Wholesalers of Malt Beverages, Inc. v. Attorney General, 409 Mass. 336, 342, 567 N.E.2d 183 (1991) (quoting Barry v. Covich, 332 Mass. 338, 342, 124 N.E.2d 921 (1955)). [*19]

Federal Trade Comm'n v. American Inst. for Research and Dev., 219 B.R. 639, 645 (D. Mass. 1998); see also Branch v. Federal Deposit Ins. Corp., 825 F. Supp. 384, 411 (D. Mass. 1993) ("When property has been acquired in circumstances that the holder of the legal title may not in good conscience obtain the beneficial interest, equity converts him into a trustee.") (citing Broomfield v. Kosow, 349 Mass. 749, 212 N.E.2d 556 (Mass. 1965), and quoting Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378 (N.Y. 1919) (Cardozo, J.) ("Constructive trust is the formula through which the conscience of equity finds expression.")). Further, the Court reiterates that "absent fraud, breach of a fiduciary duty or other misconduct," Collins, 631 N.E.2d at 1017, the Court may not impose a constructive trust. See also Feinman v. Lombardo, 214 B.R. 260, 265 (D. Mass. 1997) ("evidence of fraud, breach of fiduciary duty, or other misconduct on the part of the defendants" must be shown). Finally,

> when trust property has been mingled with the trustee's personal property, a constructive [*20] trust may be enforced on the mingled property "in such proportion as the trust property so mingled bears to the whole of the mingled property." Id. at comment h. See also Mickelson v. Barnet, 390 Mass. 786, 790, 460 N.E.2d 566 (1984) (embezzler of investor's funds would become "constructive trustee of the money and its

traceable proceeds"); Sullivan v. Sullivan, 321 Mass. 156, 158, 71 N.E.2d 894 (1947) (refusing to trace money belonging to guardian's ward into real estate because of the lack of proof as to "what proportion of the price of Sullivan's title consisted of the plaintiff's money").

Boston Safe Deposit and Trust Co., 1997 Mass. Super. LEXIS 566, *23, 1997 WL 64043, at *3 (Mass. Super. Jan. 29, 1997).

In addition, section 541 is no defense to the Court's ability to apply the remedy of a constructive trust on the Property. See, e.g., 11 U.S.C.A. § 541 (West 1988 & Supp. 1998). Constructive trust property never becomes property of the estate because it belongs to someone else.

C. Misappropriated Funds.

Family Bank asserts that, where the funds are "fairly traceable" to Regina Hellesen's misappropriations, the Debtors [*21] hold the Property in a constructive trust for the benefit of Family Bank. The Court first notes that Family Bank carries the burden of proof and must prove by a preponderance of the evidence that Regina Hellesen used misappropriated funds to pay for her down payment and mortgage payments. Lewis v. Mills, 32 Mass. App. Ct. 660, 593 N.E.2d 1312, 1314 (Mass. 1992).

As a threshold matter, the Court first finds that Regina Hellesen had a confidential, fiduciary relationship with Family Bank. She possessed and controlled her own teller identification number and was responsible for handling and maintaining retirement, IRA and Kehoe accounts for Family Bank's customers.

Next, the Court finds that Regina Hellesen misappropriated $ 59,458.34, which may be subject to a constructive trust. Regina Hellesen allocated these funds as follows: $ 44,559.54 on the Hellesen's mortgage with Family Bank, $ 9,898.80 towards the Hellesen's down payment on their home, and $ 5,000 for their IRA; further, the Court finds that these monies are fairly traceable to her misappropriations.

To begin, counsel for Family Bank, after the Court's hearings on this matter, filed a memorandum outlining [*22] exactly which funds it considered traceable in Exhibit 35 submitted at the evidentiary hearing. (Mem. of Family Bank Regarding Constructive Trust at 4-6 and Exh. A.) In its memorandum, Family Bank first alleges that Regina Hellesen misappropriated funds from a customer's account in August 1991 to produce a $ 5,000 down payment on her house. Second, Family Bank asserts that Regina Hellesen misappropriated an additional $ 7,402.27 in September 1991, which she then used at the closing on the Property in December 1991. n5 Third, Family Bank asserts that between October 1991 and September 1996, Regina Hellesen misappropriated $ 36,243.55 in her customers' funds which she then used to pay her mortgage. (Mem. of Family Bank Regarding Constructive Trust at 8.)

n5 The Court notes that in Exhibit A of its memorandum, Family Bank listed the funds traceable to the purchase as $ 12,000 ($ 5,000 deposit plus $ 7,000 at the closing). (Mem. of Family Bank Regarding Constructive Trust, Exh. A at 2.) Exhibit 31 shows that a $ 5,000 deposit, or earnest money, was provided by the Debtors, and that an additional $ 23,192.57 was tendered in cash at the closing. (See Exh. 31.)

[*23]

At the evidentiary hearings, Family Bank offered the testimony of Nina Calkins, the Assistant Vice President and Security Compliance Officer for Family Bank, to corroborate Exhibit 35. Exhibit 35, which is voluminous, shows various check deposits and withdrawals from September 5, 1991 through September 3, 1996. On direct examination, Ms. Calkins testified that Exhibit 35 is comprised of all the reports generated from Regina Hellesen's computer system; on cross-examination, Ms. Calkins agreed that another bank employee hypothetically could have used Regina Hellesen's teller number and system to effectuate these transfers and reports. However, the Court finds that Ms. Calkins' cross-examination testimony is insufficient to show that by some remote chance Regina Hellesen did not execute these transfers.

Based on Ms. Calkins' credible testimony, n6 Exhibits 6, 23, 24, 27, 28, 29, 30, 35 and 41, and other facts adduced at the evidentiary hearings, the Court finds that the principal portion of the following mortgage payments made on the Debtors' Property are subject to a constructive trust on behalf of Family Bank:

| Date    | Amount     |
|---------|------------|
| 5/29/92 | $ 1,218.82 |
| 9/16/92 | $ 1,253.30 |

| Date | Amount |
|---|---|
| 10/16/92 | $ 1,218.82 |
| 11/13/92 | $ 1,218.82 |
| 3/13/93 | $ 1,406.55 |
| 4/15/93 | $ 1,406.55 |
| 5/13/93 | $ 1,406.55 |
| 6/16/93 | $ 1,406.55 |
| 10/15/93 | $ 1,406.55 |
| 3/11/94 | $ 1,000.00 |
| 4/15/94 | $ 1,444.00 |
| 5/12/94 | $ 1,000.00 |
| 8/12/94 | $ 1,444.00 |
| 9/8/94 | $ 1,444.00 |
| 12/15/94 | $ 1,444.00 |
| 1/13/95 | $ 1,400.00 |
| 2/15/95 | $ 1,469.00 |
| 5/16/95 | $ 1,469.00 |
| 6/19/95 | $ 1,469.00 |
| 7/11/95 | $ 1,469.00 |
| 9/14/95 | $ 1,469.00 |
| 10/13/95 | $ 1,469.00 |
| 11/7/95 | $ 1,469.00 |
| 12/14/95 | $ 1,469.00 |
| 1/12/96 | $ 1,464.00 |
| 2/16/96 | $ 1,464.00 |
| 3/4/96 | $ 1,464.00 |
| 4/11/96 | $ 1,464.00 |
| 5/8/96 | $ 1,464.00 |
| 6/6/96 | $ 1,464.00 |
| 6/28/96 | $ 1,464.00 |
| Total: | $ 44,559.54 |

[*24]

| Date | Comments |
|---|---|
| 5/29/92 | |
| 9/16/92 | |
| 10/16/92 | |
| 11/13/92 | |
| 3/13/93 | |
| 4/15/93 | |
| 5/13/93 | |
| 6/16/93 | |
| 10/15/93 | |
| 3/11/94 | The total check amount was $ 1,444.00, but only $ 1,000 in funds is fairly traceable. |
| 4/15/94 | The Court finds that on 4/13/94, Regina Hellesen misappropriated a total of $ 8,861.64 from Herman Steckerel's Keogh account number 18101275. On that same day, $ 4,726.97 of the $ 8,861.64 was deposited into the Debtors' account and the remainder, $ 4,134.67, n7 was paid in the form of a treasurer's check to the Debtors' American Express charge account. (See |

Case 1:04-cv-01389-JJF    Document 63-2    Filed 07/15/2005    Page 13 of 15

Page 9
1999 BNH 2; 1999 Bankr. LEXIS 1891, *

| Date | Comments |
|---|---|
|  | Exhs. 23, 29 and 35.) The Court finds that $ 1,444.00 is fairly traceable to the Debtors' mortgage payment. |
| 5/12/94 | The total check amount was $ 1,444.00, but only $ 1,000 in funds is fairly traceable. |
| 8/12/94 |  |
| 9/8/94 | This amount was paid from a 9/1/94 deposit of $ 5,000 in misappropriated funds. |
| 12/15/94 |  |
| 1/13/95 | The total check amount was $ 1,469.00, but only $ 1,400 in funds is fairly traceable. |
| 2/15/95 |  |
| 5/16/95 |  |
| 6/19/95 | The Court finds that on 5/15/96, Regina Hellesen misappropriated $ 1,884.76 from R. Lawrence, and on 5/20/96, she misappropriated $ 3,851.33 from Charles Curtis. (See Exh. 23.) |
| 7/11/95 |  |
| 9/14/95 |  |
| 10/13/95 |  |
| 11/7/95 |  |
| 12/14/95 |  |
| 1/12/96 |  |
| 2/16/96 |  |
| 3/4/96 | The Court finds that Regina Hellesen misappropriated $ 10,000 from account number 0180101275 and deposited $ 8,600 into the Debtors' account on 2/28/96. The records also show that $ 3,500 was withdrawn on 2/29/96, but no evidence tended to show for what purpose those monies were used--copies of checks numbered 5191 through 5222 were not provided to the Court. |
| 4/11/96 |  |
| 5/8/96 |  |
| 6/6/96 |  |
| 6/28/96 |  |
| Total: |  |

[*25]

n6 Much of Mr. Hellesen's testimony was vague--he testified that Regina Hellesen handled most of the family's finances, that he was not good with figures, and that he suffered a brain aneurism which caused a memory loss between November 1996 and April 1997. Regina Hellesen was not present at the evidentiary hearings.

n7 $ 4,134.67 + $ 4,726.97 = $ 8,861.64.

Since only principal amounts of the payments went into the equity on the Debtors' home, n8 the Court finds that the principal portion of the mortgage payments are subject to the constructive trust and shall be calculated by Family Bank and filed with the Court on or before January 29, 1999.

n8 Family Bank, in its memorandum submitted after the evidentiary hearings, noted that "the bank allocated some portion of these payments to principal and some portion to interest." (Mem. of Family Bank Regarding Constructive Trust, Exh. A at 8.)

[*26]

Second, with regard to misappropriated funds used towards the Hellesen's down payment on the Property

and also deposited into their IRA, the Court finds that $ 9,898.80 is fairly traceable to the down payment. Family Bank alleged that of the down payment on the Debtors' home, anywhere from $ 9,898.80 to $ 12,000.00 derived from misappropriated funds. The proffered records show a $ 5,262.01 balance on October 5, 1991 after an immediate previous balance of $ 382.29; further, the Debtors' paid $ 5,000 in earnest money as a down payment on their home on or before December 5, 1991. (See Exh. 35.) In addition, Exhibit 35 shows a deposit of $ 7,402.27 made on September 16, 1991 when the Debtors' account balance was $ 40, and another unaccounted-for deposit on $ 267.74 on September 23, 1991. (See Exh. 35.) Also, a deposit of $ 22,449.27 was made on October 15, 1991, when the account balance was $ 382.29, and a check was written for $ 22,892.57 on January 15, 1991. (See Exh. 35.) As noted earlier in this decision, only $ 18,293.77 of the Hellesen's total $ 28,192.57 down payment originated from the net proceeds from the sale of the Debtors' prior residence. Based on the records [*27] before the Court, $ 9,898.80, or the difference from the net proceeds on their previous home and their down payment, is fairly traceable from an approximate amount of $ 12,000 alleged as misappropriated. The Court derives this amount from two sources: the alleged and uncontested misappropriations totaling approximately $ 12,000, and the unaccounted for difference in the down payment amount.

Third, the Court also finds that the Debtors hold an additional $ 5,000 in constructive trust for Family Bank. Regina Hellesen withdrew this amount from Herman Steckerel's Keogh account on August 9, 1991 and deposited to the her IRA account on that same day. (See Exhs. 23, 24, and 30.) Herman Steckerel was one of the customers of Regina Hellesen's at Family Bank from whose account she misappropriated funds. (See generally Exhs. 23, 24, and 30.)

The Court has scrutinized the exhibits and has reviewed carefully the testimony offered at the evidentiary hearings to reach this total. What has been adjudged fairly traceable rests on evidence pored through both at, and after, the hearings on this matter. Although the bank records were voluminous, counsels' efforts at the hearings have provided [*28] the Court with the opportunity to rest today's decision on stronger grounds than those on which other courts have applied the remedy of a constructive trust. See generally Chiu v. Wong, 16 F.3d 306 (8th Cir. 1994) (partner sufficiently traced proceeds of his converted partnership property into debtor's homestead), on remand, In re Wong, 1994 Bankr. LEXIS 1601, No. 4-91-4582, 1994 WL 586985 (Bankr. D. Minn. Sep. 30, 1994), appeal denied, Chiu v. Wong, 85 F.3d 633 (8th Cir. 1996). n9

   n9 This case is cited in an article entitled "Restitution in Bankruptcy: Reclamation and Constructive Trust." In this article, author Andrew Kull writes that:

   . . . . Courts will sometimes employ "liberal" tracing--a euphemism for abandoning the standard tracing requirement-- where the interests of justice appear to be served thereby. The temptation is strongest where a defrauded claimant confronts a debtor who has acquired homestead property with untraceable funds. Because the homestead is exempt from the claims of the general creditors, the contest in such cases is strictly between the restitution claimant and the misbehaving debtor. Tracing the funds into the property defeats the homestead exemption in a case where it is felt to result in injustice. See, e.g., Chiu v. Wong, 16 F.3d 306[, 310] (8th Cir. 1994) [court shifted the burden of proof, stating that "only to the extent that Wong can differentiate her funds used to purchase the house from those wrongfully converted and commingled is the house free from the constructive trust in favor of Chiu."] (citing Petersen v. Swan, 239 Minn. 98, 57 N.W.2d 842, 846-47 (Minn. 1953)].

   Andrew Kull, Restitution in Bankruptcy: Reclamation and Constructive Trust, 72 AM. BANKR. L. J. 265 (1998).

[*29]

V. The Value of the Homestead.

The Court finds that the value of the Debtors' home is $ 162,000, which amount shall be used by Family Bank in its calculations. Family Bank, in its closing arguments at the final evidentiary hearing, noted that Mr. Hellesen could not estimate the fair market value of his home; however, this testimony, without more, is insufficient proof against the scheduled value of the Debtors' home. Further, Family Bank, in its Opposition of Family Bank, FSB to Motion to Avoid Judicial Liens, did not contest the value of the home. Paragraph 5 of its

Case 1:04-cv-01389-JJF   Document 63-2   Filed 07/15/2005   Page 15 of 15

Page 11
1999 BNH 2; 1999 Bankr. LEXIS 1891, *

opposition states only that "Family Bank denies the value of the real estate attachment. . . ." (Opposition of Family Bank, FSB to Mot. to Avoid Judicial Liens at 2, P 5.)

VI. Continued Hearing, Statement and Amended Motions.

On or before January 29, 1999, Family Bank shall file: (1) a statement with the Court which shall outline for the Court and the Debtors the amount of the principal portion of the mortgage payments which the Court has ordered are subject to a constructive trust; and (2) amended motions on its objection to the Debtors' claim exemptions and opposition to avoid judicial liens. Family [*30] Bank's amended motion on its opposition to avoid judicial liens shall outline the formula under section 522(f)(2) of the Bankruptcy Code. The hearing on confirmation, and the amended motions, is hereby continued to February 5, 1999 at 11:30 a.m.

DATED this 11th day of January, 1999, at Manchester, New Hampshire.

Mark W. Vaughn, Bankruptcy Judge