**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| NORTHWESTERN CORPORATION, | ) | Bankruptcy Case No. 03-12872 (JLP) |
| Reorganized Debtor. | ) | |
| MAGTEN ASSET MANAGEMENT CORPORATION, | ) | |
| Appellant, | ) | CA 04-1389-JJF |
| v. | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| Appellee. | ) | |

**DEBTOR'S REPLY TO MAGTEN ASSET MANAGEMENT CORPORATION'S OPENING BRIEF OF APPELLANT**

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
Jesse H. Austin, III
Karol K. Denniston
Carolyn Chayavadhanangkur
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400

**GREENBERG TRAURIG, LLP**

Victoria Watson Counihan (No. 3488)
William E. Chipman, Jr. (No. 3818)
Dennis A. Meloro (No. 4435)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

Dated: August 12, 2005
Wilmington, Delaware

***Co-Counsel for NorthWestern Corporation***

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ... 1

II. SUMMARY OF ARGUMENT ... 4

III. STATEMENT OF FACTS ... 5

A. The Confirmation Hearings and Ruling on Confirmation ... 5

1. The Bankruptcy Court Order Denying Stay Pending Appeal ... 6

2. This Court's Denial of the Stay Pending Appeal ... 6

B. Magten's Claims and Treatment Under the Plan ... 6

1. Magten's Claims ... 6

2. Legal Remedies Provided to QUIPS Holders Under the Plan ... 7

3. QUIPS Litigation Claims ... 8

(a) Initiation of the Adversary Proceeding ... 8

(b) The Motion to Dismiss ... 9

(c) Magten's Confirmation Objections Overruled in Their Entirety ... 9

C. The Memorandum of Understanding ... 10

1. Approval of the Memorandum of Understanding ... 10

2. Treatment of Claims Related to Class Action Under the Plan ... 12

D. Staying of Magten's Adversary Proceeding Seeking to Revoke Confirmation Order ... 12

IV. ARGUMENT AND CITATION OF LEGAL AUTHORITY ... 13

A. The Confirmation Order Should Be Affirmed Because the Plan Has Been Substantially Consummated ... 14

B. Magten's Statement of Issues to be Presented on Appeal ... 15

1. The Plan Complies with Section 1122 and 1129(a)(1) of the Bankruptcy Code ... 16

2. The Plan Satisfies the Requirements of Section 1129(b) of the Bankruptcy Code ... 19

(a) The Plan Does Not Unfairly Discriminate Against Holders of Class 8(b) Claims ... 19

(b) The Plan Does Not Violate the Absolute Priority Rule ... 20

3. The Bankruptcy Court Did Not Err in Confirming the Plan Prior to Resolution of the QUIPS Litigation ... 22

**TABLE OF CONTENTS**
(continued)

| | | Page |
|---|---|---|
| V. | CONCLUSION | 25 |

# TABLE OF AUTHORITIES

## CASES

Airwork Corp. v. Markair Express, Inc. (In re Markair Express, Inc.), 172 B.R. 638 (B.A.P. 9th Cir. 1994) ....20

Allen-Bradley Co., Inc. v. Commodore Bus. Machines, Inc. (In re Commodore Bus. Machines, Inc.), 180 B.R. 72 (Bankr. S.D.N.Y. 1995) ....20

American Casualty Company of Reading, Pennsylvania v. Federal Deposit Insurance Corporation, 16 F.3d 152 (7th Cir. 1994) ....18

Boatman v. Berg, 577 P.2d 382 (Mont. 1978) ....20

In re C&R Beer & Soda Inc., 186 B.R. 173 (Bankr. E.D.N.Y. 1995) ....19

Cohen v. National Union Fire Insurance Company of Pittsburgh, PA, 280 B.R. 319 (Bankr. S.D.N.Y 2002) ....18, 19

Consolidated Rock Products Co. v. DuBois, 312 U.S. 510 (1941) ....17

In re Continental Airlines, 91 F.3d 553 (3d Cir. 1996) ....11

In re Continental Airlines, 203 F.3d 203 (3d Cir. 2000) ....4

In re Continental Airlines Corp., 60 B.R. 903 (Bankr. S.D. Tex. 1986) ....22

In re Dow Corning Corp., 270 B.R. 393 (Bankr. E.D. Mich. 2001) ....15

In re Estate of McDermott, 51 P.3d 486 (Mont. 2002) ....20

In re Exide Techs, 2004 WL 1465760 ....13, 14

Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc), 12 F.3d 426 (5th Cir. 1994) ....20

In re Johns-Manville Corp., 68 B.R. 618 (Bankr. S.D.N.Y. 1986) ....15

**TABLE OF AUTHORITIES**
(Continued)

Johnson v. Kenneth D. Collins Agency, Inc., 865 P.2d 312 (Mont. 1993) ..... 20

Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972) ..... 14

Levy v. National Union Fire Insurance Co. of Pittsburgh, PA, 889 F.2d 433 (2d Cir. 1989) ..... 18

Nordhoff Investments, Inc. v. Zenith Electrics Corp. (In re Zenith Electrics Corp.), 250 B.R. 207 (D. Del. 2000) ..... 13

Phoenix Mutual Life Insurance Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture), 995 F.2d 1274 (5th Cir. 1991), cert. denied, 506 U.S. 821 (1992) ..... 16

Research-Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.), 60 B.R. 915 (Bankr. D. Utah 1986) ..... 20

Sholer v. Carmichael (In re PKR, P.C.), 220 B.R. 114 (B.A.P. 10th Cir. 1998) ..... 20

Shubert v. Jeter (In re Jeter), 171 B.R. 1015 (Bankr. W.D.Mo. 1994), aff'd, 73 F.3d 205 (8th Cir. 1996) ..... 20

In re Stein, 314 B.R. 306 (D.N.J. 2004) ..... 13

Tekinsight.com, Inc. v. Stylesite Marketing, Inc. (In re Stylesite Marketing,. Inc.), 253 B.R. 503 ..... 20

In re Texaco, Inc., 92 B.R. 38 (S.D.N.Y. 1988) ..... 12

Torres v. Eastlick (In re North America Coin & Currency, Ltd.), 767 F.2d 1573 (9th Cir. 1985), cert. denied, 475 U.S. 1083 (1986) ..... 20

In re Toy & Sports Warehouse, Inc., 37 B.R. 141 (Bankr. S.D.N.Y. 1984) ..... 17

United States v. U.S. Gypsum Co., 333 U.S. 364, 68 S. Ct. 525 (1948) ..... 13

Upstream Energy Servs. v. Enron Corp. (In re: Enron) 04-Civ. 8883 (VM) 2005 U.S. Dist. LEXIS 12427 (S.D.N.Y. June 23, 2005) ..... 12

In re Zenith Electrics Corp., 241 B.R. 92 (Bankr. D. Del. 1999) ..... 15

## TABLE OF AUTHORITIES
(Continued)

In re Zepecki,
277 F.3d 1041 (8th Cir. 2002) ........ 14

### STATUTES

11 U.S.C. §§ 101-1330 ........ 2

11 U.S.C. §1101(2) ........ 12

72 Mont. Code Ann. § 33-319 ........ 20

15 U.S.C. §§ 79-79z-6 ........ 8

28 U.S.C. 157(b)(1) ........ 2

### MISCELLANEOUS

5 Lawrence P. King, Collier on Bankruptcy ¶ 1122.03[3], at 1122-8 (15th ed. rev. 2004) ........ 16

The appellee NorthWestern Corporation ("NorthWestern" or the "Reorganized Debtor") pursuant to the Court's order dated June 6, 2005, hereby files its reply and memorandum of law (the "Reply") to Magten Asset Management Corporation's ("Magten") opening brief ("Magten's Opening Brief").

## I. PRELIMINARY STATEMENT[1]

This consolidated appeal (the "Appeal") arises from Magten's appeal of (i) the Order dated October 19, 2004 (the "Confirmation Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") Confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated August 18, 2004 (as modified, the "Plan")[2] [Magten, Exh. 163];[3] and (ii) the Order dated October 14, 2004, approving Memorandum of Understanding (the "MOU Order")[4] [Magten, Exh. 201].

---

[1] On or about December 30, 2004, the Court entered its Order Granting Motion of NorthWestern Corporation and Magten Asset Management Corporation to Consolidate the Appeals. Under the order, the appeal of the Confirmation Order has been consolidated with Magten's appeal of the Memorandum of Understanding under Civ. No. 04-1389.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan or Motion to Dismiss (as defined below), as may be appropriate.

[3] Exhibit references related to items identified in Magten Asset Management Corporation's Amended Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented on Appeal from the Order Confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 2335] are referred to herein as "Magten, Exh. ___." Exhibit references related to the exhibits identified in the Reorganized Debtor's Designation of Additional Documents for the Record and Objection to Statement of Issues on Appeal [Docket No. 2364] are referred to herein as "Debtor, Exh. ___."

[4] The issues to be presented on appeal of the MOU Order, as set forth in Magten's Designation of Items to be Included in the Record on Appeal from the Order Approving the Memorandum of Understanding Entered on October 18, 2004, dated November 5, 2004, are directly related to the Plan and involve many of the same issues presented by Magten in connection with its appeal of the Confirmation Order. As the appeal of the MOU Order is directly tied to the Plan and Magten's appeal of the Confirmation Order, the arguments set forth herein apply equally to the appeal of the MOU Order. As set forth in greater detail below and as previously argued by NorthWestern, Magten's appeal of both the Confirmation Order and the MOU Order is moot.

As set forth in NorthWestern's Motion to Dismiss [Docket No. 40], Memorandum of Law [Docket No. 41] and Reply to Opposition to Motion to Dismiss the Consolidated Appeals [Docket No. 61] (collectively, the "Motion to Dismiss"), Magten's appeal of the Confirmation Order and MOU Order is now moot for several reasons. First, the Plan has been substantially consummated within the meaning of Section 1101(2) of The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). On or about December 29, 2004, the Debtor filed its Notice of Substantial Consummation of the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Notice of Substantial Consummation") [Bankruptcy Docket No. 2519]. Indeed, Magten agrees that the Plan has been substantially consummated.[5]

Second, Magten attempted but failed to obtain a stay of the consummation of the Plan despite its knowledge that the Effective Date for the Plan was scheduled to occur on November 1, 2004. Specifically, Magten failed not once, but twice, to stay the Confirmation Order because it was wholly unable to satisfy any of the requirements for the issuance of a stay pending appeal. Magten itself acknowledges and agrees that it failed to obtain a stay of the Confirmation Order and that without the stay NorthWestern was free to consummate its Plan.[6]

---

[5] See Memorandum of Law of Magten Asset Management Corporation in Support of Opposition to (I) NorthWestern Corporation's Motion to Dismiss the Consolidated Appeals and (II) Joinder of Plan Committee to NorthWestern Corporation's Motion to Dismiss (the "Opposition to the Motion to Dismiss") at 3, 12, and 16.

[6] Indeed, at the July 12, 2005 hearing, the Court overruled Magten's objections to the approval of certain settlements and the allowance of certain claims and held as follows:

> I determine that there is no legitimate challenge to the jurisdiction of this Court to pass upon the pending motions either because of Magten's appeal of the order of confirmation or the filing of its complaint under 1144. Specifically 28 USC 157(b)(1) through (d) give the Court the right in a court proceeding to determine allowance and disallowance of claims of the estate, and that is precisely what we are doing.

Third, the reversal of the Confirmation Order and/or the MOU Order on appeal, whether in whole or in part, would severely affect the rights of creditors and interest holders not before the Court who have received their distributions under the Plan. The reversal of either order would deny the creditors and interest holders of the Reorganized Debtor the benefits they negotiated and have received under the terms of the Plan. As was true when this Court found that there would be "substantial harm" inflicted on the Reorganized Debtor and its creditors if this Court were to grant the Emergency Motion for Stay, Stay Pending Appeal Ruling at 47-48, so too would there be substantial harm to parties not before this Court if this Court were to reverse the Confirmation Order on appeal. Any reversal – even if possible now that the Plan has been substantially consummated – would have a deleterious effect on the Plan and call into question the conversion of approximately $1.2 billion in senior and subordinated unsecured public debt obligations and other claims for New Common Stock in the Reorganized Debtor, not to mention the issuance of New Common Stock to unsecured creditors in Classes 7, 8(a), 8(b) and 9, payment of cure amounts and convenience class claims, and settlements made pursuant to the MOU Settlement (as defined below).[7]

---

Transcript of Proceedings Before the Honorable John L. Peterson, United States Bankruptcy Court Judge [Bankruptcy Docket No. 3192] (the "July 12 Transcript"), pp. 46-47. NorthWestern respectfully requests that the Court take judicial notice of the July 12 Transcript and the Settlement Orders (as defined below).

[7] In light of Magten's failure to obtain a stay of the Confirmation Order, NorthWestern continues with the claims adjudication process. Indeed, the Court entered, over Magten's objections, the following orders approving settlements, allowance of claims and distribution of shares from the Disputed Claims Reserve in July 2005 (collectively, the "Settlement Orders"): (i) Order Authorizing NorthWestern to Enter Into Stipulations of Settlement with Certain Members of the NorthWestern Corporation Cash Balance Supplemental Executive Retirement Plan and the NorthWestern Energy Executive Long-Term Incentive Plan [Bankruptcy Docket No. 3195]; (ii) Order Authorizing NorthWestern to Enter Into Stipulations of Settlement with Certain Members of the NorthWestern Corporation Supplemental Income Security Plan, the NorthWestern Public Service Company Deferred Compensation Plan for Non-Employee Directors and the NorthWestern Public Service Company Directors' Retirement Plan [Bankruptcy Docket No. 3201]; (iii) Order Authorizing NorthWestern to Enter Into Stipulations of Settlement with Certain

Fourth, the relief requested by Magten in the appeal, if granted, would negatively affect the success of the Plan. Through its appeal, Magten seeks to rewrite the Plan by ultimately removing a substantial portion of the estate's assets under a variety of theories that have been flatly rejected by the Bankruptcy Court.

Finally, Magten failed to present any evidence during the confirmation process to support its assertions that the Plan failed to satisfy the requirements of the Bankruptcy Code. Indeed, at the Confirmation Hearing, Magten did not offer any exhibits, present any witnesses or cross-examine any witnesses in connection with its objections. Magten cannot now satisfy its significant burden of overcoming the Bankruptcy Court's detailed findings of fact and law as to the Confirmation Order and the MOU Order where Magten presented no evidence, and there is no evidence on the record, to support its appeal. Accordingly, the Reorganized Debtor respectfully requests that this Court dismiss Magten's consolidated appeal in its entirety.

## II.   SUMMARY OF ARGUMENT

As set forth in the Motion to Dismiss and incorporated herein, because the Plan has been substantially consummated, Magten is not entitled to and cannot be granted any relief on appeal even if Magten is successful. Even assuming, arguendo, relief could conceivably be fashioned, implementation of that relief would be inequitable because: (1) Magten failed to obtain a stay pending appeal; (2) the Plan has been substantially consummated; (3) the relief requested would adversely impact the material rights of creditors and other third parties under the Plan terms who are not before the Court and who have received their Plan and MOU Settlement distributions; and (4) the relief requested would negatively affect the success of the Plan and undermine the public

---

Individuals with Retirement or Consulting Agreements [Bankruptcy Docket No. 3204]; and (iv) Order Authorizing Debtor to Enter Into Stipulation of Settlement with the Claimants Under the Montana Power Company Benefit Restoration Plan [Bankruptcy Docket No. 3214]. Upon entry of the Settlement Orders, NorthWestern issued instructions to its transfer agent to distribute shares on account of the Allowed Claims from the Disputed Claims Reserve.

policy of affording finality to bankruptcy orders. Accordingly, Magten's consolidated appeal should be dismissed because it is equitably moot. See In re Continental Airlines, 203 F.3d 203 (3d Cir. 2000).

Moreover, Magten failed to present any evidence during the confirmation process to support its arguments that the Plan does not meet the requirements of Section 1122 and 1129 of the Bankruptcy Code. Magten cannot now satisfy its significant burden of overcoming the Bankruptcy Court's findings of fact and law as to the Confirmation Order and the MOU Order where Magten presented no evidence, and there is no evidence on the record, to support its appeal.

## III. STATEMENT OF FACTS[8]

### A. The Confirmation Hearings and Ruling on Confirmation

On August 25, 2004 and again on October 6, 2004, the Bankruptcy Court held hearings to consider, among other things, confirmation of the Plan (the "Confirmation Hearings"). At the Confirmation Hearings Magten presented no evidence and failed to examine or cross-examine any witnesses in its opposition of the Plan. On October 8, 2004, the Bankruptcy Court orally issued its findings of fact and conclusions of law confirming the Plan in all respects and overruling all objections to confirmation not otherwise withdrawn or resolved, specifically including Magten's objections. Transcript of Proceedings Before the Honorable Charles G. Case, II, United States Bankruptcy Judge, dated October 8, 2004 at 27 ("Confirmation Ruling") [Magten, Exh. 213]. In confirming the Plan, the Confirmation Ruling specifically found that: (i) the Plan is a "gift plan" to subordinated creditors such as Magten; and (ii) Magten as a subordinated unsecured creditor was afforded an adequate remedy at law for its claims, including the QUIPS Litigation discussed below.

[8] The facts are drawn from documents filed of record in the Debtor's bankruptcy case.

**1. The Bankruptcy Court Order Denying Stay Pending Appeal**

Following an emergency teleconference with the Bankruptcy Court on October 25, 2004, on October 26, 2004, the Bankruptcy Court entered its Order Denying Emergency Motion of Magten Asset Management Corporation for a Stay Pending Appeal of the Order Confirming the Debtor's Second Amended and Restated Plan of Reorganization (the "Bankruptcy Court Order Denying Stay Pending Appeal") [Bankruptcy Docket No. 2274]. In denying the Emergency Motion for Stay, the Bankruptcy Court found "There has been no new evidence to suggest – or new arguments to suggest that the decisions that were decided adversely to Magten at the time of the confirmation hearing are likely to be reversed on appeal." October 25 Transcript at 29-30 [Magten, Exh. 218].

**2. This Court's Denial of the Stay Pending Appeal**

This Court also denied Magten's request for a stay pending appeal on October 29, 2004 finding that Magten failed to satisfy any of the four factors on the showing of the likelihood of success on the merits. Stay Pending Appeal Ruling at 46. [9]

**B. Magten's Claims and Treatment Under the Plan**

**1. Magten's Claims**

Magten is a distress investor that acquired a substantial position in certain of the Debtor's 8.45% Quarterly Income Preferred Securities (the **"**QUIPS**"**) long after and with the knowledge of the Going Flat Transaction (as defined below). The QUIPS were issued by Montana Power Capital I (the "Trust"), a business trust established pursuant to the Delaware Business Trust Act. The Trust's sole assets are the 8.45% Junior Subordinated Debentures due 2036.

---

[9] Magten's efforts to obtain a stay pending appeal related only to the Confirmation Order. Magten never sought a stay of implementation of the MOU Order.

**2. Legal Remedies Provided to QUIPS Holders Under the Plan**

QUIPS holders are provided for in Class 8(b) of the Plan.[10] Because of the existence of an adversary proceeding (the "QUIPS Litigation") described below, the Debtor's Plan provided QUIPS holders with two options. QUIPS holders electing "Option 1" received, or will receive when Law Debenture Trust Company of New York ("Law Debenture"), the QUIPS indenture trustee, distributes the shares that have been transferred to it by the Debtor's transfer agent, a pro rata share of 505,591 shares of the New Common Stock (such 505,591 shares representing 1.4% of the New Common Stock issued and outstanding on the Effective Date prior to any dilution resulting from shares of New Common Stock issued pursuant to a new incentive plan and exercise of the Warrants), plus Warrants exercisable for an additional 2.3% of the New Common Stock. QUIPS holders electing Option 1 were required to release any claims arising out of or related to the QUIPS Litigation. See Plan, §4.8(b).

QUIPS holders electing "Option 2" received a Class 9 general unsecured claim and a pro rata share of recoveries, if any, upon resolution of the QUIPS Litigation. The QUIPS holders electing Option 2 also received the benefit of the Class 9 Reserve for Disputed Claims established pursuant to Section 7.5 of the Plan.[11] Option 1 and Option 2 allowed QUIPS Claims holders to (1) choose a distribution of New Common Stock and Warrants, or (2) preserve their litigation claims as part of the QUIPS Litigation and be treated as Class 9 unsecured claimants for any

[10] The structure of the Plan is simple – conversion of approximately $1.2 billion of senior and subordinated unsecured debt claims in exchange for 35.5 million shares of newly issued common stock (the "New Common Stock"). The QUIPS represent only $69.0 million of the debt being exchanged for equity.

[11] On or about November 3, 2004, the Bankruptcy Court entered an order approving the Stipulation and Order Establishing a Disputed Claims Reserve between NorthWestern and Law Debenture which provided that the Reorganized Debtor shall set aside a portion of its initial reserve of 13.5% of New Common Stock solely to satisfy in full a $25 million Class 9 claim of the QUIPS Litigation Claims holders. Any claim by a QUIPS Litigation claimant is to be

damages ultimately awarded to claimants participating in the QUIPS Litigation. See Plan, §4.8(b).

**3. QUIPS Litigation Claims**

(a) Initiation of the Adversary Proceeding

On April 16, 2004, just over eight months after initiation of the Debtor's Chapter 11 case and after the Debtor had timely filed its initial proposed reorganization plan, Magten and Law Debenture (Law Debenture together with Magten, the "Plaintiffs") initiated the QUIPS Litigation, challenging a pre-petition transfer of certain energy and natural gas transmission and distribution assets (the "Montana Utility Assets") by a wholly-owned subsidiary of the Debtor, to the Debtor as part of the Debtor's acquisition of The Montana Power Company's transmission and distribution assets. The Plaintiffs assert that the transfer, sometimes referred to as the "Going Flat Transaction," was a fraudulent conveyance and that the assets transferred to the Debtor are not property of the Debtor's estate. The Plaintiffs further assert that a constructive trust should be imposed on the transferred assets.

The Debtor vehemently denies all of the Plaintiffs' allegations. As the Bankruptcy Court held, simply asserting the existence of a fraudulent conveyance claim and a constructive trust does not make them so.[12] Moreover, and as the Bankruptcy Court noted, Magten made no effort to enforce its wholly unsubstantiated allegations into any form of legal remedy either pre-petition or post-bankruptcy filing. As reflected by the Bankruptcy Court's Confirmation Ruling, the Going Flat Transaction was nothing more than the last stage of the Debtor's acquisition of The

---

afforded the treatment accorded Class 9 General Unsecured Claims, as set forth in the Plan [Debtor, Exh. 6].

[12] See Confirmation Ruling, pp. 27-28. The Bankruptcy Court held "[e]very one agrees that there has been no action yet actually taken to impose a constructed trust. . . . There's nothing in the remedy section that I found of the Montana fraudulent conveyance law that gives rise to an automatic constructive trust upon the mere filing of a lawsuit."

Montana Power Company assets, an acquisition that was initiated in February 2002 and completed with the closing of the Going Flat Transaction in November 2002. The Bankruptcy Court found:

> in reviewing all of the underlying transaction documents in connection with the going-flat transaction, it is clear to me – and the applicable law, it is clear to me that this was really all one transaction.

See Confirmation Ruling at 33.

(b)    The Motion to Dismiss

On May 14, 2004, Northwestern filed its Motion and Supporting Brief to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted (the "Motion to Dismiss") [Magten, Exh. 225]. On August 20, 2004, the Bankruptcy Court issued its Under Advisement Decision re: Motion to Dismiss (the "Opinion") granting in part and denying in part the Debtor's Motion to Dismiss. In its Opinion, the Bankruptcy Court held that in order to pursue a recovery Magten and Law Debenture would need to prove under applicable law that one of the releases given in connection with the Going Flat Transaction was obtained through actual fraud or as part of a fraudulent scheme. Confirmation Ruling at 26 (emphasis added).[13] On or about December 7, 2004, the Bankruptcy Court entered an order staying the QUIPS Litigation pending resolution of the Appeal.

(c)    Magten's Confirmation Objections Overruled in Their Entirety

On August 9, 2004, Magten filed objections to confirmation of the Plan ("Magten Confirmation Objections") [Magten, Exh. 110]. On September 21, 2004, Magten filed supplemental objections to confirmation of the Plan ("Magten Supplemental Confirmation

---

[13] On October 4, 2004, the Plaintiffs amended the Complaint (the "Amended Complaint"). The Amended Complaint added a count seeking a declaration that all documents executed in furtherance of the alleged fraudulent transfer are void under the Public Utility Holding Company Act of 1935, as codified in title 15 of the United States Code, 15 U.S.C. §§ 79-79z-6 ("PUHCA"). The Debtor has moved to dismiss this portion of the Amended Complaint.

Objections," and together with the Magten Confirmation Objections, the "Magten Objections") [Magten, Exh. 180]. In the Magten Objections, Magten argued that the Plan could not be confirmed because the principal assets of the Debtor's estate, the Montana Utility Assets, were being held by NorthWestern in constructive trust for the benefit of the QUIPS holders. Magten also argued that the Montana Utility Assets were not the property of the Debtor's estate. Finally, Magten claims that because Debtor's PUHCA exemption application was not allegedly filed in good faith that certain senior debt obligations incurred by the Debtor after February 14, 2002 were void.[14]

As set forth in the Confirmation Ruling and Confirmation Order, Magten's Objections were overruled in their entirety. The Bankruptcy Court held that "all objections not previously resolved in accordance with my opening comments are overruled in accordance with this oral ruling." See Confirmation Ruling at 45 and Confirmation Order at 33-47.

### C. The Memorandum of Understanding

#### 1. Approval of the Memorandum of Understanding

On or about April 28, 2004, NorthWestern filed its Motion for Order pursuant to Bankruptcy Rule 9019 Approving Memorandum of Understanding requesting entry of an order approving the Memorandum of Understanding (the "MOU") providing for settlement (the "Settlement") and dismissal with prejudice of all claims against all parties in the consolidated securities class action styled In re NorthWestern Corporation Securities Litigation, Case No. CIV-03-4049, including Golman Family Trust v. NorthWestern Corp., Case No. CIV-03-4226 (collectively, the "Securities Litigation") and In re NorthWestern Derivative Litigation, Case No. 03-4091 (the "Derivative Litigation", collectively with the Securities Litigation, the "Class

[14] As set forth in its Opening Brief, Magten has determined not to pursue its appeal in connection with the PUHCA issue.