IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 03-12872 (JLP) |
| MAGTEN ASSET MANAGEMENT CORP.<br><br>　　　　　　　　　　Appellant,<br>　　　　v.<br><br>NORTHWESTERN CORPORATION,<br><br>　　　　　　　　　　Appellee. | CA NO. 04-1389 (JJF) |

**APPELLANT'S CONSOLIDATED REPLY TO (I) NORTHWESTERN CORPORATION'S REPLY TO MAGTEN ASSET CORPORATION'S OPENING BRIEF OF APPELLANT AND (II) JOINDER OF PLAN COMMITTEE IN SUPPORT OF NORTHWESTERN'S REPLY BRIEF**

FRIED, FRANK, HARRIS, SHRIVER
　& JACOBSON LLP
Bonnie Steingart, Esq.
Gary L. Kaplan, Esq.　　　　-and-
Evan S. Jacobson, Esq.
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000

BLANK ROME LLP
Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400

Counsel for Magten Asset Management Corporation

Dated: August 26, 2005
Wilmington, Delaware

Table of Contents

Page

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................... 1

Argument .................................................................................................................................. 2

I.  THE CONFIRMATION ORDER SHOULD BE REVERSED REGARDLESS OF WHETHER THE PLAN HAS BEEN SUBSTANTIALLY CONSUMMATED ............... 2

II. THE PLAN DOES NOT COMPLY WITH SECTIONS 1122 AND 1129(A)(1) OF THE BANKRUPTCY CODE ............................................................................................ 3

III. THE PLAN DOES NOT COMPLY WITH SECTION 1129(B) OF THE BANKRUPTCY CODE ............................................................................................ 5

   A. The Plan Discriminates Against Holders of Class 8(B) Claims ............................. 5

   B. The Plan Violates the Absolute Priority Rule ........................................................ 6

IV. THE BANKRUPTCY COURT ERRED IN CONFIRMING THE PLAN PRIOR TO RESOLUTION OF THE FRAUDULENT TRANSFER PROCEEDING ..................... 7

Conclusion ................................................................................................................................ 9

## Table of Authorities

### Cases
Alstrin v. St. Paul Mercury Ins. Co.,
179 F. Supp. 2d 376, 404 (D. Del. 2002)..................................................................................7

In re County Seat Stores, Inc.,
280 B.R. 319 (Bankr. S.D.N.Y. 2002)......................................................................................7

Goldin v. Primavera Familienstiftung (In re Granite Partners, LP),
194 B.R. 318, 328 (Bankr. S.D.N.Y. 1996)..............................................................................6

In re Ionosphere Clubs, Inc.,
17 F.3d 600, 606 (2d Cir. 1994) ...............................................................................................6

### Other Authorites

11 U.S.C. § 541 ............................................................................................................................8

11 U.S.C. § 1141(d)(1)..................................................................................................................8

Richard A. Lord, Williston on Contracts § 69:50 (4th ed. 2003).....................................................4

Magten Asset Management Corporation ("Magten"), by and through its undersigned counsel, respectfully submits this reply (this "Reply") in response to (i) NorthWestern Corporation's ("NorthWestern") Reply ("NorthWestern's Reply Brief") to Magten's Opening Brief (the "Opening Brief"), and (ii) the Joinder of the Plan Committee (the "Plan Committee")[1] in Support of NorthWestern's Reply Brief (the "Plan Committee's Joinder Brief"); and to further support its appeal (the "Appeal") arising from orders of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (i) Confirming NorthWestern's Second Amended and Restated Plan of Reorganization (the "Plan"), entered on October 19, 2004 (the "Confirmation Order"), and (ii) Approving the Memorandum of Understanding, entered on October 18, 2004. In support of this Reply, Magten respectfully states as follows:[2]

## Preliminary Statement

The bulk of NorthWestern's Reply Brief is merely a recitation of undisputed facts, or a thinly veiled attempt to reargue legal theories already addressed in the brief related to the Motion to Dismiss. For example, NorthWestern spends most of its time arguing that because the Plan has been substantially consummated, the Appeal is equitably moot. Pursuant to this Court's order dated June 6, 2005, however, the parties have already separately briefed the issues with respect to whether the Appeal is moot. While Magten will not burden this Court with duplicative briefing on the same issue (as set forth in Magten's Opposition to Motion to Dismiss, which was filed with this Court on June 30, 2005), because this Court can fashion a remedy without unraveling the Plan, the Appeal is not equitably moot and Magten should not be deprived of its appellate rights.

---

[1] As set forth in its Memorandum of Law in Support of Opposition to (I) NorthWestern's Motion to Dismiss the Appeal and (II) Joinder of Plan Committee to NorthWestern's Motion to Dismiss (the "Opposition to Motion to Dismiss"), Magten objected to the Plan Committee's standing to be heard and argued that the Plan Committee's Joinder Brief should be disregarded. While Magten has addressed herein the arguments set forth in the Plan Committee's Joinder Brief, it should in no way be construed as a recognition that the Plan Committee has standing or that the Plan Committee's Joinder Brief should not be disregarded.

[2] All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Opening Brief.

Moreover, in NorthWestern's Reply Brief, NorthWestern simply ignores the many legal and factual errors made by the Bankruptcy Court in confirming the Plan. As set forth below, and for the reasons set forth in the Opening Brief, the order confirming the Plan plainly violated the Bankruptcy Code and this Court should reverse the Confirmation Order.

### Argument

I. **THE CONFIRMATION ORDER SHOULD BE REVERSED REGARDLESS OF WHETHER THE PLAN HAS BEEN SUBSTANTIALLY CONSUMMATED**

As set forth in much further detail in the Opening Brief, the Confirmation Order violates numerous provisions of the Bankruptcy Code and ignores fundamental tenets of the Bankruptcy Code. Rather than addressing the merits, NorthWestern's Reply Brief merely argues that the Plan has been substantially consummated and that the Appeal is equitably moot. See NorthWestern's Reply Brief, pp. 2-5, 13-15. NorthWestern, however, fails to recognize that the fact that the Plan was substantially consummated neither (i) renders this Court unable to grant relief to Magten without unraveling the Plan, nor (ii) remedies the fatal illegalities of the provisions of the Plan or the Confirmation Order.

As explained more fully in Magten's Opposition to Motion to Dismiss (the appropriate pleading to discuss such arguments), there are several ways to provide Magten with a recovery on the full value of its claim without unraveling the Plan. See Opposition to Motion to Dismiss, pp. 16-18. The total amount of the QUIPS claims is $50 million. As a $1.8 billion company with $77 million of cash on its balance sheet, 160 million authorized but unissued shares of stock, and with sufficient stock sitting in a reserve for disputed claims (such as those held by the QUIPS), NorthWestern could easily provide Magten with stock from the reserve, issue new stock, and/or pay cash to satisfy the full value of Magten's claim. See id. None of these options prejudice any other creditors and none require the unraveling of the Plan. As such, the Appeal is not equitably moot and this Court should consider the merits of the Appeal.

2

## II. THE PLAN DOES NOT COMPLY WITH SECTIONS 1122 AND 1129(A)(1) OF THE BANKRUPTCY CODE

As explained in the Opening Brief, the Plan violated sections 1122 and 1129(a)(1) of the Bankruptcy Code by improperly classifying the claims of the holders of the QUIPS and should be reversed. The Plan failed to properly classify the QUIPS because (i) the claims of the TOPrS and the QUIPS for principal and interest are substantially similar, and (ii) the claims of the QUIPS on account of principal and interest and the Fraudulent Transfer Proceeding are separate and distinct rights. See Opening Brief, pp. 11-17.

NorthWestern has not disputed that earlier in its bankruptcy case, it repeatedly acknowledged that the claims of the holders of the TOPrS and the QUIPS for principal and interest were substantially similar and that there was no basis to separately classify them. Indeed, NorthWestern must necessarily concede this fact since it originally classified the claims of the TOPrS and the QUIPS together. If, as NorthWestern now claims, there truly were, "substantial differences between the claims under the QUIPS and TOPrS," NorthWestern could never have placed both sets of holders in the same class, as it originally did in the first and first amended versions of the Plan (and related disclosure statement and pleadings), while representing to the Bankruptcy Court that the Plan complied with the Bankruptcy Code. NorthWestern's Reply Brief, p.18. However, the version of the Plan confirmed by the Confirmation Order impermissibly separately classified the claims of the holders of the QUIPS and the TOPrS and forced the holders of the QUIPS to release their rights and claims in the Fraudulent Transfer Proceeding in order to obtain a recovery for principal and interest on the QUIPS notes, ultimately denying the holders of the QUIPS their rightful recovery on account of their claim.

In addition, the claims of the QUIPS on account of principal and interest and the Fraudulent Transfer Proceeding are not substantially similar. Neither NorthWestern nor the Plan Committee address the fact that even the Bankruptcy Court acknowledged that the claims arising

from the Fraudulent Transfer Proceeding were distinct from the principal plus interest claims on account of the QUIPS debt. See Magten Ex. 213, p. 39.[3] The right to recover in the Fraudulent Transfer Proceeding is separate and apart from the right to be compensated on account of the QUIPS claims and NorthWestern could not force the QUIPS holders to choose between two recoveries to which they were rightfully entitled. See Opening Brief, pp. 12-14.

NorthWestern and the Plan Committee also mistakenly argue that the claims for principal and interest and the claims arising under the Fraudulent Transfer Proceeding are somehow mutually exclusive and not cumulative. See NorthWestern's Reply Brief, p. 17; Plan Committee's Joinder Brief, pp. 4-5. In support of this proposition, the Plan Committee quoted from a contract law treatise that states, "Ordinarily, one cannot in equity seek to rescind a contract on the ground of fraud and, at the same time, retain the benefits derived from that contract." See Plan Committee's Joinder Brief, p. 4 (citing Richard A. Lord, A Treatise on the Law of Contracts, § 69.50 (4th ed. 2003)). However, the immediately following sentence in what appears to be the same treatise states:

> Thus, in a suit in equity for rescission the plaintiff who has received consideration commonly offers in the complaint to restore the consideration, and even in the absence of such offer, rescission may be properly granted because the decree in such a suit will provide, not simply for the return by the defendant of what was wrongfully acquired, but for the restoration of the consideration by the plaintiff.

Richard A. Lord, Williston on Contracts § 69:50 (4th ed. 2003). Hence, as Magten has consistently stated, the **claims** under the QUIPS for principal and interest, and the **claims** arising under the Fraudulent Transfer Proceeding are not mutually exclusive, despite the fact it may be impermissible for Magten to ultimately **recover** on account of both claims. See id. Magten is

---

[3] The Bankruptcy Court stated, "Certainly Class 9 is not treated better than the fraudulent conveyance claim, because I found that the fraudulent conveyance claims should be in 9 and should be treated as 9." Magten Ex. 213, p. 39.

4

simply seeking to be made whole, and is not seeking to recover a windfall.

Therefore, as set forth more fully in the Opening Brief, the Confirmation Order should be reversed because the Plan violated sections 1122 and 1129(a)(1) of the Bankruptcy Code.

### III. THE PLAN DOES NOT COMPLY WITH SECTION 1129(B) OF THE BANKRUPTCY CODE

#### A. The Plan Discriminates Against Holders of Class 8(B) Claims

As set forth more fully in the Opening Brief, the Plan does not comply with section 1129(b) of the Bankruptcy Code, which requires that a plan may not "discriminate unfairly" with respect to each impaired class of creditors or interest holders that does not accept the plan. The Plan discriminates against holders of QUIPS claims by placing them in Class 8(b), and treating them differently than the holders of the TOPrS in Class 8(a). See Opening Brief, pp. 17-19. Because the TOPrS (Class 8(a)) and the QUIPS (Class 8(b)) are of equal rank with respect to their claims for principal plus accrued interest, creditors in Class 8(b) did not receive the same treatment as similarly situated creditors, when compared with the priorities of all other unsecured creditor classes. Holders of QUIPS (Class 8(b)) who selected Option 2 received no recovery for the principal and interest owed under the QUIPS. Therefore, the Plan discriminated unfairly and violated section 1129(b) of the Bankruptcy Code.

By initially grouping the TOPrS and the QUIPS in the same class in the first versions of the Plan and by maintaining in various pleadings that the Plan conformed with the requirements of the Bankruptcy Code, NorthWestern explicitly acknowledged that the claims of the TOPrS and the QUIPS were pari passu and deserved equal treatment. See Opening Brief, pp. 17-21. This operates as an estoppel on NorthWestern. Moreover, despite representations to the contrary by NorthWestern, the Bankruptcy Court never decided that the QUIPS and the TOPrS were not pari passu, instead stating, "So that it can neither be said that the [QUIPS]' indenture by its terms subordinates the QUIPS to the [TOPrS] nor can it be said that the [TOPrS]' indenture, quote, 'expressly provide,' . . . which is the language from that indenture that the [TOPrS] are not

superior to the [QUIPS]." Magten Ex. 213, pp. 37-38. Hence, the Confirmation Order should be reversed because the Plan violated section 1129(b) of the Bankruptcy Code by segregating similar claims into separate classes and providing separate treatment for those classes.

B.  The Plan Violates the Absolute Priority Rule

Simply put, chapter 11 plans distribute property of a debtor's estate. As set forth more fully in the Opening Brief, the Plan violates the absolute priority rule by distributing estate property to Classes 12 and 14 before creditors senior to such classes were fully compensated. See Opening Brief, pp. 21-24. If the property distributed to Classes 12 and 14 was not property of the estate, it could not be distributed under the Plan. Moreover, the fact that the Plan was a "gift plan" does not except the Plan from the Bankruptcy Code's requirements with respect to the absolute priority rule. As set forth more fully in the Opening Brief, the Bankruptcy Court incorrectly interpreted the law to reach this result, in large part by relying on an argument without any legal merits whatsoever, i.e., by finding that because the Plan was a "gift plan," the Bankruptcy Court and NorthWestern could blatantly ignore section 1129(b) of the Bankruptcy Code. See Opening Brief, pp. 19-21. Notably, neither NorthWestern nor the Plan Committee have attempted to refute the fact that there is simply no "gift plan exception" to complying with section 1129(b) of the Bankruptcy Code.

NorthWestern argues that the Plan did not violate the absolute priority rule because the distribution to Class 12 and Class 14 is from insurance policy proceeds and is not estate property. See NorthWestern's Reply Brief, pp. 20-22. On the contrary, it is well settled law that claims brought in a derivative action belong to the estate and any damages recovered in such action inure directly to NorthWestern's estate. See Goldin v. Primavera Familienstiftung (In re Granite Partners, LP), 194 B.R. 318, 328 (Bankr. S.D.N.Y. 1996); In re Ionosphere Clubs, Inc., 17 F.3d 600, 606 (2d Cir. 1994). In addition, the proceeds of an insurance policy may inure to the benefit of a bankruptcy estate if a bankruptcy estate representative, i.e., a trustee, brings such claims and

acts to distribute the proceeds to the debtor's estate. See Alstrin v. St. Paul Mercury Ins. Co., 179 F. Supp. 2d 376, 404 (D. Del. 2002); see also In re County Seat Stores, Inc., 280 B.R. 319 (Bankr. S.D.N.Y. 2002).

For the foregoing reasons, the Plan violated the absolute priority rule and the Confirmation Order should be reversed.

### IV. THE BANKRUPTCY COURT ERRED IN CONFIRMING THE PLAN PRIOR TO RESOLUTION OF THE FRAUDULENT TRANSFER PROCEEDING

As set forth in further detail in the Opening Brief, the Bankruptcy Court erred in confirming the Plan prior to the resolution of the Fraudulent Transfer Proceeding, which asserts that NorthWestern wrongfully appropriated certain assets of a subsidiary and that the holders of the QUIPS (as direct creditors of that subsidiary as well as NorthWestern) had the right to have their claims paid in full before those assets could be made available to satisfy the claims of NorthWestern's other creditors. First, the Plan improperly treated the Montana Utility Assets as property of NorthWestern's estate, and second, the Fraudulent Transfer Proceeding was not a claim and cannot be discharged through the Confirmation Order. See Opening Brief, pp. 24-26.

NorthWestern is simply incorrect in asserting that Magten has not established the existence of a constructive trust and that the claims arising under the Fraudulent Transfer Proceeding can be discharged. Magten sought to pursue the Fraudulent Transfer Proceeding from the beginning of NorthWestern's bankruptcy case, and obtained relief from the automatic stay to commence the Fraudulent Transfer Proceeding and seek to enforce the constructive trust. Although the Bankruptcy Court denied NorthWestern's motion to dismiss the Fraudulent Transfer Proceeding, it took the Bankruptcy Court several months to issue a decision and enter the order. Furthermore, at the time the Plan was filed and the Confirmation Order was entered, the Fraudulent Transfer Proceeding had not been resolved, and the Bankruptcy Court stayed the Fraudulent Transfer Proceeding, pending resolution of the Appeal. Magten simply should not

lose its constructive trust claim because the Bankruptcy Court did not hear the Fraudulent Transfer Proceeding prior to confirmation of the Plan.

In addition, section 541 of the Bankruptcy Code provides a detailed list of the property comprising a bankruptcy estate, as well as property that is explicitly excluded from the estate, and funds held in constructive trust are excluded from estate property. See 11 U.S.C. § 541. The Plan violated the Bankruptcy Code by including property, the Montana Utility Assets, that was not property of the estate. See Opening Brief, pp. 24-25. Moreover, the "claims" arising from the Fraudulent Transfer Proceeding could not be discharged. Such causes of action are not dischargeable because they do not fall within the Bankruptcy Code's definition of "claims" that can be discharged through the Confirmation Order. See 11 U.S.C. § 1141(d)(1); see also Opening Brief, pp. 25-26.

NorthWestern's arguments simply do not defeat the fact that the Bankruptcy Court erred in confirming the Plan prior to the resolution of the Fraudulent Transfer Proceeding.

## Conclusion

For the reasons set forth herein, and for the reasons set forth in the Opening Brief, Magten respectfully requests that this Court reverse the Confirmation Order and grant such other relief as it deems just and proper.

Dated: Wilmington, Delaware
       August 26, 2005

> BLANK ROME LLP
>
> _____
> Mark J. Packel (DE No. 4048)
> Elio Battista, Jr. (DE No. 3814)
> 1201 Market Street, Suite 800
> Wilmington, DE 19801
> Telephone: (302) 425-6400
> Facsimile: (302) 425-6464
>
> -and-
>
> FRIED, FRANK, HARRIS, SHRIVER &
>    JACOBSON LLP
> Bonnie Steingart, Esq.
> Gary L. Kaplan, Esq.
> Evan S. Jacobson, Esq.
> One New York Plaza
> New York, NY 10004
> Telephone: (212) 859-8000
> Facsimile: (212) 859-4000
>
> Counsel for Appellant, Magten Asset
>    Management Corp.

506232