## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Bankruptcy Case No. 03-12872 (JLP) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |
| MAGTEN ASSET MANAGEMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Appellant, | ) | CA 04-1389-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

---

## DEBTOR'S SUPPLEMENTAL BRIEF IN SUPPORT OF
## MOTION TO DISMISS CONSOLIDATED APPEALS

---

**PAUL, HASTINGS, JANOFSKY &
WALKER LLP**
Jesse H. Austin, III
Karol K. Denniston
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400

- and -

Dated:  April 20, 2006
Wilmington, Delaware

**GREENBERG TRAURIG, LLP**

Victoria Watson Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 661-7000

*Co-Counsel for NorthWestern
Corporation*

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **<u>Page</u>**

<u>In re PWS Holding Corp.</u>,
    228 F.3d 224 (3d Cir. 2000)................................................................................2

<u>In re SLI, Inc.</u>,
    Case No. 04-4231, 2006 U.S. App. LEXIS 5188 (3d Cir. Mar. 1, 2006)..........................................1,2

<u>Nordhoff Inves. Inc. v. Zenith Elec. Corp.</u>,
    258 F.3d 180 (3d Cir. 2001)................................................................................2

<u>Osram Sylvania, Inc. v SLI, Inc.</u>,
    Case No. Civ. A. 03-729-KAJ, 2004 WL 2346021 (D. Del. Oct. 5, 2004)..........................................1

## ARGUMENT AND CITATION OF AUTHORITIES

The appellee, NorthWestern Corporation ("NorthWestern" or the "Reorganized Debtor"), hereby files this supplemental brief in support of NorthWestern's Motion to Dismiss the above-referenced consolidated appeals.[1]  These Consolidated Appeals arise from Magten Asset Management Corporation's ("Magten") appeal of: (i) the Order dated October 19, 2004 (the "Confirmation Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") confirming the Debtor's Second Amended and Restated Plan of Reorganization under Chapter 11 of the Bankruptcy Code dated August 18, 2004 (as modified, the "Plan") [Magten, Exh. 163]; and (ii) the Order dated October 14, 2004, approving the Memorandum of Understanding (the "MOU Order")[2] [Magten, Exh. 201].  By its counsel's letter to this Court dated April 5, 2006 NorthWestern renewed its Motion to Dismiss the Consolidated Appeals (the "Motion to Dismiss").

NorthWestern files this supplemental brief to bring to this Court's attention the recent decision of In re SLI, Inc., Case No. 04-4231, 2006 U.S. App. LEXIS 5188 (3d Cir. Mar. 1, 2006), a decision of the United States Court of Appeals for the Third Circuit affirming a decision of the United States District Court for the District of Delaware which dismissed an appeal of a confirmation order on the grounds of equitable mootness.  See Osram Sylvania, Inc. v SLI, Inc., Case No. Civ. A. 03-729-KAJ, 2004 WL 2346021 (D.

---

[1] On or about December 30, 2004, the Court entered its Order Granting Motion of NorthWestern Corporation and Magten Asset Management Corporation to Consolidate the Appeals.  Under the order, the appeal of the Confirmation Order has been consolidated with Magten's appeal of the Order approving the Memorandum of Understanding under Civ. No. 04-1389 (collectively, the "Consolidated Appeals").

Del. Oct. 5, 2004).   Copies of the Third Circuit's and District Court's opinions are attached hereto as Exhibits A and B, respectively.

Each of the decisions in the SLI case reaffirms that NorthWestern's Motion to Dismiss the Consolidated Appeals should be granted.   As the Third Circuit noted, "under the doctrine of equitable mootness, an appeal should be dismissed, even if the court has jurisdiction and could fashion relief, if the implementation of that relief would be inequitable." 2006 U.S. App. LEXIS 5188, at *4 (quoting In re PWS Holding Corp., 228 F.3d 224, 235-236 (3d Cir. 2000) (emphasis supplied)).   In affirming the District Court's order dismissing the appeal on mootness grounds, the Third Circuit in SLI reiterated the five factors to be considered:

      1.     whether the reorganized plan has been substantially consummated;

      2.     whether a stay has been obtained;

      3.     whether the relief requested would affect the rights of the parties not before the Court;

      4.     whether the relief requested would affect the success of the plan; and

      5.     the public policy of affording finality to bankruptcy judgments.

SLI, 2006 U.S. App. LEXIS 5188, at *5 (citing Nordhoff Invs. Inc. v Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir. 2001)).   In evaluating the five factors in affirming dismissal of the appeal, the Third Circuit reinforced and reiterated that "a court's foremost consideration must be whether the reorganization plan has been substantially

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan or the Motion to Dismiss as may be appropriate.

consummated.  <u>SLI</u>, 2006 U.S. App. LEXIS 5188 at *5 (citing <u>In re PWS Holding Corp.</u>, 228 F.3d at 236 (emphasis supplied)).

As in the <u>SLI</u> appeal, there is no question that NorthWestern's Plan has been substantially consummated.  All of the property required to be transferred under the Plan has been transferred, new equity has been issued for NorthWestern as a reorganized debtor, new credit agreements have been entered into and new debt claims have been created with respect to exiting Chapter 11, and NorthWestern has now been operating for almost eighteen months as a reorganized entity whose stock is actively traded on the NASDAQ public stock exchange.  Thus, as stated by the <u>SLI</u> court, the foremost consideration – substantial consummation of NorthWestern's Plan – clearly supports granting NorthWestern's Motion to Dismiss the Consolidated Appeals.

This is not to belittle any of the other four factors, all of which weigh in favor of applying equitable mootness to dismiss the Magten appeals, and each of which NorthWestern has amply demonstrated in prior legal memorandum in support of the Motion to Dismiss.  Thus, in applying the Third Circuit's recent <u>SLI</u> decision – where NorthWestern's circumstances are identical to those presented in <u>SLI</u> – this court should enter an order granting NorthWestern's Motion to Dismiss the Consolidated Appeals on equitable mootness grounds.

Wherefore, NorthWestern requests that this Court affirm the Confirmation Order and MOU Order by granting NorthWestern's Motion to Dismiss Magten's Consolidated Appeals, and such other and further relief as is deemed appropriate.

Dated:  April 20, 2006
       Wilmington, Delaware

PAUL, HASTINGS, JANOFSKY &
    WALKER LLP
Jesse H. Austin, III
Karol K. Denniston
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400

- and -

Respectfully submitted,

GREENBERG TRAURIG, LLP

Victoria Watson Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 661-7000
GREENBERG TRAURIG, LLP

*Co-Counsel for NorthWestern Corporation*

# EXHIBIT A

1 of 10 DOCUMENTS

**IN RE: SLI INC.; CHICAGO MINIATURE OPTOELECTRONIC TECHNOLOGIES INC.; ELECTRO-MAG INTERNATIONAL INC; CHICAGO MINIATURE LAMP SYLVANIA LIGHTING INTERNATIONAL, INC.; SLI LIGHTING PRODUCTS, INC.; SLI LIGHTING COMPANY; SLI LIGHTING SOLUTIONS, INC. and CML AIR INC., Debtors OSRAM SYLVANIA, INC., Appellant v. SLI, INC., CHICAGO MINIATURE OPTOELECTRONIC TECHNOLOGIES, INC.; ELECTRO-MAG INTERNATIONAL, INC.; CHICAGO MINIATURE LAMP SYLVANIA LIGHTING INTERNATIONAL, INC., SLI LIGHTING PRODUCTS, INC., SLI LIGHTING COMPANY, SLI LIGHTING SOLUTIONS, INC., and CML AIR, INC.**

No. 04-4231

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

*2006 U.S. App. LEXIS 5188*

**January 26, 2006, Argued**
**March 1, 2006, Filed**

**NOTICE:** [*1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Delaware. (D.C. Civil No. 03-cv-00729). District Judge: Honorable Kent Jordan. *Osmar Sylvania, Inc. v. SLI, Inc., 2004 U.S. Dist. LEXIS 20600 (D. Del., Oct. 5, 2004)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant unsecured creditor sought review of a decision of the United States District Court for the District of Delaware, which dismissed the creditor's appeal a bankruptcy court order of confirmation of appellee debtor's plan of reorganization.

**OVERVIEW:** The bankruptcy court approved the reorganization plan (plan) despite the creditor's objections. By the time the creditor appealed to the district court, large equity investments had been made into the reorganized debtor, liens securing a loan were discharged, the debtors stock had been cancelled and delisted, and the reorganized debtor had been incorporated. The district court dismissed the appeal on the grounds of equitable mootness. Finding no abuse of discretion in the district court's application of the five prudential factors for evaluating equitable mootness, the court affirmed. At the time of the appeal, the plan had been substantially consummated, and if successful, the creditor's appeal would unravel the plan. The creditor had not sought a stay of the implementation of the plan. The relief requested by the creditor would affect the rights of several parties not before the court. The requested relief would essentially destroy the success of the plan. And finally, the public policy objective of finality of the bankruptcy judgment outweighed any interest asserted by the creditor.

**OUTCOME:** The court affirmed the district court's equitable mootness dismissal of the creditor's appeal.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Bankruptcy Law > Chapter 11 (Reorganization) > Plan Confirmation*
*Civil Procedure > Justiciability > Mootness*
[HN1] In the context of appeals of bankruptcy confirmation orders, because a mootness determination involves a discretionary balancing of equitable and prudential factors, an appellate court reviews a district court's equitable mootness decision for abuse of discretion. The appellate court accepts the district court's findings of fact unless they are clearly erroneous.

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Justiciability > Mootness*
[HN2] Under the doctrine of equitable mootness, an appeal should be dismissed, even if the court has jurisdiction and could fashion relief, if the implementation of that relief would be inequitable. In effect, the equitable mootness doctrine prevents a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract.

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Justiciability > Mootness*
[HN3] Five prudential factors are evaluated to determine if a bankruptcy case is equitably moot: (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of the parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments. District courts have the discretion to give varying weight to these five factors, depending on the particular circumstances of the case before them. However, the doctrine of equitable mootness is limited in scope and should be cautiously applied.

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Justiciability > Mootness*
[HN4] Though the district courts have the discretion to give varying weight to the five factors for equitable mootness, a court's foremost consideration must be whether the reorganization plan has been substantially consummated. This is especially so where the reorganization involves intricate transactions, or where the outside investors have relied on the confirmation of the plan.

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Civil Procedure > Justiciability > Mootness*
[HN5] An appellant risks the application of equitable mootness if it fails to obtain a stay of execution of an objectionable order. Though the failure to seek a stay is not necessarily fatal, it weighs heavily in favor of a district court's declination to delve into the merits of an appeal.

*Bankruptcy Law > Practice & Proceedings > Appeals*
*Bankruptcy Law > Chapter 11 (Reorganization) > Plan Confirmation*
*Civil Procedure > Justiciability > Mootness*

[HN6] The importance of allowing approved reorganizations to go forward in reliance on bankruptcy court confirmation orders may be the central animating force behind the equitable mootness doctrine.

**COUNSEL:** Martin J. Weis, Dilworth Paxson, Philadelphia, PA; Albert Solochek [ARGUED], Howard, Solochek & Webber, Milwaukee, WI, Counsel for Appellant.

William H. Sudell, Jr. [ARGUED], Daniel B. Butz, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Counsel for Appellees.

**JUDGES:** Before: RENDELL and SMITH, Circuit Judges, and IRENAS *, District Judge.

* Honorable Joseph E. Irenas, Senior District Judge for the District of New Jersey, sitting by designation.

**OPINIONBY:** RENDELL

**OPINION:**

OPINION OF THE COURT

RENDELL, Circuit Judge

Osram Sylvania, Inc. ("OSI"), an unsecured creditor of SLI, Inc. and certain affiliates ("SLI" or "Debtor"), appeals from the District Court's dismissal of its appeal of the Bankruptcy Court's order of confirmation of the Debtor's plan of reorganization. The District Court dismissed the appeal on the grounds of equitable mootness. Because [*2] we find that the District Court did not abuse its discretion in applying equitable mootness to dismiss OSI's case, we will affirm.

I.

On September 9, 2002, SLI filed a voluntary petition for relief under *chapter 11 of title 11 of the United States Code*. On May 15, 2003, SLI filed a Second Amended Joint Plan of Reorganization (the "Plan") and related disclosure statement. The Bankruptcy Court approved the disclosure statement and fixed June 19, 2003 as the date to consider confirmation of the Plan.

OSI was a prepetition unsecured creditor of SLI, holding a claim in the approximate amount of $ 500,000. At the confirmation hearing, OSI objected to the Plan's feasibility and to the scope of the releases, injunctions, and exculpation and limitation of liability provisions it contained. In addition, OSI argued that the Plan did not adequately disclose the counterclaims SLI might assert against OSI, in violation of a May 13, 2003 order of the

Bankruptcy Court requiring such disclosure. SLI stated in court filings only that it had counterclaims against OSI in "unknown" amounts. Despite OSI's objections, the Bankruptcy Court approved the Plan in a June 19, 2003 confirmation order (the "Confirmation [*3] Order") and set June 30, 2003 as the effective date of the Plan.

On the effective date, participants who elected to take part invested $ 26 million in equity in the Reorganized SLI. The Reorganized SLI entered into a term loan agreement with several institutional investors (the "Investors") and received $ 20 million. The sum of $ 20 million was paid to the DIP loan provider and all liens securing the DIP loan were discharged. The stock of SLI was cancelled and delisted and the Reorganized Debtor was incorporated. All of the interests in the Reorganized Debtor were distributed to Plan participants. A litigation trust was formed and the sum of $ 1,475,000 was transferred to the trust. The sum of $ 2,370,451 was paid under the key employee retention plan in exchange for releases from the Plan. Since the effective date, SLI has also entered into a new, secured loan agreement with Bank of America, replacing the term loan, which was repaid in full.

When OSI appealed the Confirmation Order to the District Court, SLI moved to dismiss on the grounds of equitable mootness. In an October 5, 2004 order, the District Court granted the motion to dismiss. OSI timely filed this appeal. We have jurisdiction [*4] under 28 U.S.C. § 158(d) to review the District Court's order dismissing OSI's appeal.

II.

[HN1] Because the mootness determination we review here involves a discretionary balancing of equitable and prudential factors, we review the District Court's decision for abuse of discretion. In re Continental Airlines, 91 F.3d 553, 560 (3d Cir. 1996) (Continental I). We accept the District Court's findings of fact unless they are clearly erroneous. Nordhoff Invs. Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 182 (3d Cir. 2001).

[HN2] "Under the doctrine of equitable mootness, an appeal should be dismissed, even if the court has jurisdiction and could fashion relief, if the implementation of that relief would be inequitable." In re PWS Holding Corp., 228 F.3d 224, 235-236 (3d Cir. 2000). "In effect, the equitable mootness doctrine prevents a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." Nordhoff, 258 F.3d at 185.

We have identified [HN3] five prudential factors that we evaluate to determine if a bankruptcy [*5] case is equitably moot:

(1) whether the reorganization plan has been substantially consummated,

(2) whether a stay has been obtained,

(3) whether the relief requested would affect the rights of the parties not before the court,

(4) whether the relief requested would affect the success of the plan, and

(5) the public policy of affording finality to bankruptcy judgments.

Nordhoff, 258 F.3d at 185. District courts have the discretion to give varying weight to these five factors, depending on the particular circumstances of the case before them. PWS, 228 F.3d at 236; Continental I, 91 F.3d at 560. We have noted, however, that the doctrine of equitable mootness "is limited in scope and should be cautiously applied." PWS, 228 F.3d at 236.

III.

[HN4] Though the district courts have the discretion to give varying weight to the five factors for equitable mootness, a court's "foremost consideration" must be whether the reorganization plan has been substantially consummated. PWS, 228 F.3d at 236. "This is especially so where the reorganization involves intricate transactions, [*6] or where the outside investors have relied on the confirmation of the plan." Continental I, 91 F.3d at 560-61 (citations omitted). We agree with the District Court that the Plan has been substantially consummated and that, if successful, OSI's appeal would unravel the Plan. See In re Zenith Elecs. Corp., 329 F.3d 338, 346 (3d Cir. 2003). All of the property required to be transferred under the Plan has been transferred, 11 U.S.C. § 1101(2)(A), the Reorganized Debtor has assumed the management of the Debtor's business, id. § 1101(2)(B), and all distributions required to be made under the Plan have been made, id. § 1101(2)(C). Furthermore, the stock of SLI was cancelled and new equity was issued for the Reorganized Debtor. OSI contends that the Plan has not been substantially consummated because the litigation trust and professional fee transfers were placed in escrow, rather than directly distributed. The escrowed property, however, is irrelevant for purposes of this analysis because it was irrevocably transferred in accordance with the Plan.

The second factor also weighs in favor of applying equitable mootness to [*7] OSI's appeal. Our previous

cases in this area leave no doubt that [HN5] an appellant risks the application of equitable mootness if it fails to obtain a stay of execution of the objectionable order. *Nordhoff, 258 F.3d at 186-87.* OSI "never applied for a stay and has not provided an adequate explanation for [its] failure to do so." *Nordhoff, 258 F.3d at 191-92* (Alito, J., concurring). Though the failure to seek a stay is not necessarily fatal, *In re United Artists Theatre Co., 315 F.3d 217, 228 (3d Cir. 2003),* it undoubtedly "weighs heavily in favor of the District Court's declination to delve into the merits of [OSI's] appeal," *Continental I, 91 F.3d at 562.*

The potential harm to third parties from an appeal, measured under the third factor, is central to whether the relief OSI seeks would be inequitable. *Id.* OSI argues that there was little evidence in the record to substantiate a claim that the relief requested would affect the rights of parties not before this Court. We disagree. The record shows that there are several parties not before us whose rights would be affected by this appeal, including new lenders, [*8] new contracting parties, new secured interest holders, new senior management, and new unsecured creditors. In addition, numerous liens have been released against SLI by secured creditors in reliance on the Plan. Thus, we cannot find that the District Court abused its discretion by weighing this factor in favor of equitable mootness.

With respect to the fourth factor, OSI acknowledges that its request for a full reversal of the Plan would "knock the props out from under" it. *Zenith, 329 F.3d at 346.* OSI therefore proposes three forms of alternative relief that it believes would fix the Plan without altogether unraveling it: (1) striking the releases and exculpation provisions; (2) barring SLI from asserting claims against OSI that arose prior to confirmation but were not disclosed in the Plan; and (3) remanding with instructions that the Plan be confirmed in an order that is consistent with Official Form 15. OSI did not object to the form of the Confirmation Order before the Bankruptcy Court.

As an initial matter, we note that the Confirmation Order stated that its provisions, as well as those of the Plan, were "non-severable and mutually dependent." This undoubtedly [*9] militates against the partial modification of the Plan that OSI proposes. Setting this problem aside though, each form of intermediate relief OSI proposes would impair the success of the Plan.

The District Court found that the releases by the Debtor and the Investors were consideration for an investment of $ 20 million and a conversion of $ 325 million in claims to equity. The record supports this factual finding. *See* Confirmation Order P27 at R-397-98 (noting

that the releases are essential to implementing the Plan and important to its overall objectives). Because they are consideration for investment that was crucial to the Plan, the releases form an "'integral nexus' with the feasibility of the . . . plan of reorganization." *In re Continental Airlines, 203 F.3d 203, 209 (3d Cir. 2000) (Continental II).* Likewise, OSI's request that the Bankruptcy Court issue a new confirmation order consistent with Form 15 is akin to a full reversal because it requires the entirety of the Confirmation Order to be stricken.

OSI's other request -- that SLI be prohibited from asserting counterclaims against OSI that it did not disclose in the Plan -- is simply not a valid [*10] "intermediate option" to reversing the entire Plan. *PWS, 228 F.3d at 236.* There is no authority under which we would preemptively strike future counterclaims SLI may have against OSI simply because SLI could not identify them more specifically in its disclosure. SLI did not consciously attempt to hide the counterclaims, *see Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corporation, 337 F.3d 314, 322-23 (3d Cir. 2003),* or solicit the support of the creditors generally, or OSI in particular, without disclosing the potential for counterclaims against OSI, *see Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 418 (3d Cir. 1988).* And given that SLI will only assert the "unknown" counterclaims if OSI initiates litigation against it, we cannot see how OSI would be unfairly surprised by the counterclaims. Under these circumstances, there is no basis for modifying the Plan in the way OSI suggests.

Finally, the District Court did not abuse its discretion in holding that the fifth factor weighed in favor of dismissing the case. [HN6] "The importance of allowing approved reorganizations to go forward in reliance on bankruptcy [*11] court confirmation orders may be the central animating force behind the equitable mootness doctrine." *Continental I, 91 F.3d at 565.* OSI argues that there are competing policy concerns that should take priority here, including full disclosure in bankruptcy cases, reluctance to discharge obligations of non-debtors, and respect for prior court decisions. OSI has not persuaded the Court that these policy objectives outweigh our interest in promoting the finality of the bankruptcy judgment at issue here.

IV.

We agree with the District Court's determination that all five prudential factors we evaluate to determine if a bankruptcy case is equitably moot weigh in favor of dismissing OSI's appeal. Because the District Court did not abuse its discretion in holding the case equitably moot, we will affirm.

10045C

********* Print Completed *********

Time of Request:     April 19, 2006  01:37 PM EDT

Print Number:        2822:94767720
Number of Lines:     214
Number of Pages:

Send To:   SILAS, TORONDA
           PAUL HASTINGS JANOFSKY & WALKER - TRANS
           600 PEACHTREE ST NE STE 2400
           ATLANTA, GA 30308-2265

**EXHIBIT B**



**H**

Motions, Pleadings and Filings

United States District Court,
D. Delaware.
OSMAR SYLVANIA, INC., Appellant,
v.
SLI, INC., Chicago Miniature Optoelectronic
Technologies, Inc., Electro-Mag
International, Inc., Chicago-Miniature Lamp-
Sylvania Lighting International,
Inc., SLI Lighting Products, Inc., SLI Lighting
Company, SLI Lighting
Solutions, Inc., and CML Air, Inc., Appellees.
In re: SLI, INC., Chicago Miniature Optoelectronic
Technologies, Inc., Electro-
Mag International, Inc., Chicago-Miniature Lamp-
Sylvania Lighting
International, Inc., SLI Lighting Products, Inc., SLI
Lighting Company, SLI
Lighting Solutions, Inc., and CML Air, Inc.,
Reorganized Debtors.
No. Civ.A. 03-729-KAJ, 02-12608(MFW).

Oct. 5, 2004.

Gregg Mattisen Galardi, Skadden, Arps, Slate,
Meagher & Flom, Wilmington, DE, for Debtors.

Martin James Weis, Dilworth Paxson LLP,
Wilmington, DE, for Appellant.

Daniel Bryan Butz, Morris, Nichols, Arsht &
Tunnell, Wilmington, DE, for Appellees.

Mark S. Kenney, U.S. Trustee, Wilmington, DE, pro
se.

*MEMORANDUM ORDER*

JORDAN, J.

**\*1** Presently before the Court is an appeal by Osram
Sylvania, Inc. ("OSI") from the June 19, 2003 Order
of the Bankruptcy Court (the "Order") confirming the
Second Amended Joint Chapter 11 Plan of
Reorganization of the Debtors-in-Possession and the
Official Committee of Unsecured Creditors (the
"Creditors' Committee") (the "Plan"). For the reasons
that follow, the Order is affirmed.

I. Background

  On September 9, 2002, SLI Holdings International,
LLC et. al., ("SLI" or "Debtor") filed a voluntary
petition for relief under chapter 11 of title 11 of the
United States Code, 11 U.S.C. § § 101 et. seq. [FN1]
(Docket Item ["D.I."] 1 at 1.) On May 15, 2003,
Debtor filed a plan of reorganization (the "Plan") and
related disclosure statement. (*Id.*) On the same day,
the Bankruptcy Court approved the disclosure
statement and fixed June 19, 2003 as the date to
consider confirmation of the Plan. (*Id.*) On June 19,
2003, the Bankruptcy Court held a confirmation
hearing and approved the Plan. (*Id.*)

> FN1. Hereinafter, unless otherwise
> indicated, all references to " § ___" are to a
> section of the Bankruptcy Code as codified
> at 11 U.S.C. § 101 et. seq.

  The Plan, *inter alia,* provided that the Debtor
releases its officers, directors, Chapter 11
professionals and funder of the Plan from claims
arising from postpetition conduct. (D.I. 4 at 22.) The
releases do not extend to
> (i) claims arising out of willful misconduct, gross
> negligence, fraud or self-dealing, (ii) claims for
> which there would exist no right to
> indemnification, contribution or reimbursement fro
> the Debtor, and (iii) claims arising under or which
> may be asserted pursuant to Bankruptcy Code
> sections 544, 547, 548 or 550...."
(D.I. 4 at R-0854.) The Plan further provided for
limited releases of potential claims by the Debtor
against M Capital and certain of its affiliates (the "M
Capital Parties") related to sales between the two.
Finally, the Plan provided that
> Neither the Debtors, the Reorganized Debtor, the
> Creditor's Committee the Investors [or their
> affiliates] ... shall have or incur any liability ... for
> any post-Petition Date act or Omission ... except
> for actions or omissions that (w) are the result of
> fraud, self-dealing, gross negligence, or willful
> misconduct, (x) constitute claims or causes of
> action covered by applicable insurance, but only to
> the extent of such instances, or (y) constitute
> claims of causes of action for which such persons
> would not be entitled to indemnity, contribution or
> reimbursement from the Debtors ...
(D.I. 18 at R-001588.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2
Not Reported in F.Supp.2d, 2004 WL 2346021 (D.Del.), 52 Collier Bankr.Cas.2d 1610
(Cite as: 2004 WL 2346021 (D.Del.))

At the confirmation hearing, objections to the scope of the releases, injunctions, and exculpation and limitation of liability provisions were made by OSI. (D.I. 15 at 4.) Despite OSI's objections, the Bankruptcy Court approved the Plan on June 19, 2003. (D.I.I.)

Soon after the approval of the Plan participants who elected to take part invested $26 million in equity in the Reorganized SLI. (D.I. 21 at 7.) The Reorganized SLI entered into a term loan agreement and received $20 million. (*Id.*) The sum of $20 million was paid to the DIP loan provider and all liens securing the DIP loan were discharged. (*Id.*) The stock of SLI was cancelled and delisted and the Reorganized Debtor was incorporated. (*Id.*) All of the interests in the Reorganized Debtor were distributed to Plan participants. (*Id.*) A litigation trust was formed and the sum of $1,475,000 was transferred to the trust. (*Id.*) The sum of $2,370,451 was paid under the key employee retention plan in exchange for releases from the Plan. (*Id.*)

II. Standard of Review

*2 This court has jurisdiction over appeals from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). On appeal, the court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir.1999).* When reviewing mixed questions of law and fact, the court will accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but [will] exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir.1991)* (internal quotes omitted).

III. Discussion

Under the doctrine of equitable mootness, an appeal should be dismissed, even if the court has jurisdiction and could fashion relief, if the implementation of that relief would be inequitable. *See In re Continental Airlines, 91 F.3d 553, 559 (3d Cir.1996) (Continental I).* The Third Circuit has held that there are five factors to consider when evaluating equitable mootness:
(1) whether the plan has been substantially consummated;

(2) whether a stay has been obtained;
(3) whether the relief requested would affect the rights of parties not before the Court;
(4) whether the relief requested would affect the success of the plan; and
(5) the public policy of affording finality to bankruptcy judgments.
*Nordhoff Investments, Inc. v. Zenith Electronics Corp. (In re Zenith Electronics, Corp.), 258 F.3d 185 (3d Cir.2001).*

A. Substantial Consummation

The Plan has been substantially consummated. The substantial consummation factor is the "foremost consideration" in an equitable mootness analysis. (*Id.*) The Bankruptcy Code defines "substantial consummation" to mean:
(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C) commencement of distribution under the plan. 11 U.S.C. § 1101(2).

"The requirements of subparagraph (A) have been met when all transfers that were to be made at or near the time of confirmation have been completed." *In re Eddington Thread Mfg. Co., 189 B.R. 898, 904 (D.Pa., 1995).*

All transfers that were to be made at the time of confirmation have been completed. (D.I. 22 at 2-6.) Appellant argues that because some assets were transferred to accounts and not transferred to the ultimate recipient there has not been a substantial consummation of the Plan. (D.I. 28 at 3.) Appellant cites *In re Gene Dunavant & Son Dairy, 75 B.R. 328 (D.Tenn., 1987).* That case, however, is distinguishable from the case at bar, as in that case the debtor continued to have legal title of the property placed in escrow. *Id. at 332-33.* In the instant case, all assets have been transferred according to the Plan. The fact that some of the transfers were to escrow accounts is immaterial in this case. *See, In re Eddington Thread Mfg. Co., 189 B.R. 898, 904 (D.Pa., 1995).* Consequently, there has been substantial consummation of the Plan.

B. Obtaining of a Stay

*3 OSI conceded that they failed to obtain a stay of the sale pending appeal. (D.I. 28 at 4.) Consequently,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 3
Not Reported in F.Supp.2d, 2004 WL 2346021 (D.Del.), 52 Collier Bankr.Cas.2d 1610
**(Cite as: 2004 WL 2346021 (D.Del.))**

this factor weighs in favor of a finding of equitable mootness.

C. Reliance of Third Parties Not Before the Court

Bank of America has entered into various lending arrangements with the Reorganized Debtor. (D.I. 22 at 5.) The granting of OSI's appeal would unjustly affect those actions taken in reliance of the Plan. [FN2]

> FN2. Appellant argues that Bank of America is a sophisticated entity and assumed the risk that this appeal would be successful and the Plan reversed. (D.I. 28 at 5.) Appellant's argument runs counter to the underlying premise of equitable mootness, namely bankruptcy orders should be given finality so that post-bankruptcy entities can enter into meaningful business arrangements.

D. Success of the Plan

The relief OSI seeks would derail the Plan. OSI maintains that the Plan should be reversed, (D.I. at 15 at 33) which would obviously affect the success of the Plan. In its Reply Brief, Appellant, however, maintains that relief, short of reversing the Plan, can be furnished by the court that will not affect the success of the Plan. (D.I. 28 at 5.) However, the release of potential claims against Creditors, and the Debtor's related companies by the Debtor and the exculpation provision with regard to the Creditors' Investors are consideration for an investment of $20 million and a conversion of $325 million in claims to equity. Removing those provisions would clearly affect the success of the Plan.

E. Public Policy

Reversal of the Plan would compel the Debtor to restart negotiations and consequently, would necessitate the need to hire additional professionals as well as return $20 million in new equity. This would be contrary to a "strong public policy in favor of maximizing debtor's estates and facilitating successful reorganization, reflected in the code itself, [which] clearly weighs in favor of encouraging such reliance." *Zenith* 258 F.3d at 190.

Accordingly, modification or reversal of the Bankruptcy Court's Order would inequitably affect the validity of the Plan and is impermissible under the Doctrine of Equitable Mootness.

IV. Conclusion

Therefore, IT IS HEREBY ORDERED that:

The Committee's Motion to Dismiss the appeal (D.I.20) is GRANTED.

Not Reported in F.Supp.2d, 2004 WL 2346021 (D.Del.), 52 Collier Bankr.Cas.2d 1610

**Motions, Pleadings and Filings (Back to top)**

• 1:03cv00729 (Docket) (Jul. 18, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.